# DECEMBER 14, 2015

# CASE MANAGEMENT CONFERENCE

# PLAINTIFFS' BINDER

EXHIBIT B

## INDEX

1. Overview

2. Most Important Point

3. Deters Law Office 520 Cases

4. Our Clients

5. Defense Strategy

6. Writ Status

7. Hamilton County Filed Cases

8. Categories Chart for all Hamilton County Cases

9. Proposed Agenda

10. Law on Discovery Abuse

11. Proposed Sanction

12. Pending Motions in Hamilton County Case by Case

13. Pending Motions in Hamilton County Cases by Category

14. Group Motions

15. Motions in Limine for All Trials

16. Plaintiffs' Position on All Pretrial Issues

17. Children's Case No SOR Issues

18. Children's Cases Filed at Age 19

19. List of All Children's Cases

20. Cases Set for Trial in Hamilton and Moved Before December 14, 2015 (Ready for Trial)

21. Cases Before Judge Ruehlman Because Filed After Consolidation and Were Never Before Another Hamilton County Judge

22. 2016 Durrani Trials

23. Cases Coming from Butler County with Completed Discovery and Were Set For Trial

24. Best Cases Coming from Butler County

25. Best Cases Ready for Trial Based Upon Discovery Complete and No Issue Such as SOR

26. Hamilton County 2016 Durrani Trials

27. First and Second Groups of Twenty

28. Cases in Butler County Which Were Set for Trial and the Discovery Cut Off Over

29. Cases from Butler County To Be Filed On or Before December 11, 2015

30. *Suida v. Howard*- Group Trials Allowed

31. Suggested Group Trials

32. C1-C2 Fusion Cases

33. Cases When Suspended

34. Class Actions They Are Trying to Remove to Federal Court

35. Other Claims

36. Butler County Cases All Rule 41A and Refiling in Hamilton County

37. Negligent Credentialing and Retention Law

38. 40 Cases That Have to Say in Butler County but Are Subject to a Pending Motion to Transfer to Hamilton County

39. Motion for Change of Venue/Transfer from Butler County

40. Hospitals Not Producing Discovery

41. Answered Written Discovery Proof

42. *Young* Decision

# OVERVIEW

# OVERVIEW

To assist the Court and parties on December 14, 2015 at the Case Management Conference in the Dr. Durrani litigation, we have prepared these materials.

It is not complicated.

These materials are to prove how the issues and the cases can be managed in an expedited fashion.

# MOST IMPORTANT POINT

# MOST IMPORTANT POINT

Based upon our agreeing to move trials because of what turned out to be bad faith mediation and a one year battle of consolidation, there has not been a single trial in Hamilton County since January, 2014.  For those two years, no trial in Hamilton County.  Cases set for trial in 2015, have come and gone during their consolidation delay which has now been struck not once, but twice by the First District and once by the Supreme Court.

It is time for action, long overdue fairness to the Plaintiffs and trials in Hamilton County.

# DETERS LAW OFFICE
# 520 CASES

# DETERS LAW OFFICE 520 CASES AGAINST DR. DURRANI

330 of those involve West Chester/UC Health

93 Children's

75 Christ

41 Journey Lite

9 Good Samaritan

8 Deaconess

5 Riverview (Dayton)

*Many of the cases have more than one hospital Defendant. This accounts for some overlap.

# OUR CLIENTS

# OUR CLIENTS

1. Suffering/Pain

2. Suicides from pain

3. Deaths

4. Evictions

5. Foreclosures

6. Fear

7. Stress

8. Unable to get treatment

# DEFENSE
# STRATEGY

# DEFENSE STRATEGY

1. Want Motion practice.

2. Want to delay.

3. Don't want trials.

4. Don't want ANY sanction for Dr. Durrani's refusal to give a deposition.

## DURRANI DEFENSE COUNSEL

## COUNSEL FOR ABUBAKAR A. DURRANI, M.D.,
## CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC.

**Lindhorst & Dreidame Co., L.P.A.**
Mike F. Lyon, Esq.
Jim Brockman, Esq.
David Williamson, Esq.
Brad McPeek, Esq.
Matthew Karas, Esq.

**Bonezzi Switzer Polito & Hupp Co. L.P.A.**
Paul W. McCartney, Esq.
Jason Paskan , Esq.

## COUNSEL FOR WEST CHESTER HOSPITAL AND UC HEALTH

**Frost Brown Todd, LLC**
Walter E. Haggerty, Esq.
Bill J. Paliobeis, Esq.
Austin Musser, Esq.

**Rendigs Fry Kiely & Dennis, LLP**
Karen A. Carroll, Esq.
Jeffrey M. Hines, Esq.

**Dinsmore & Shohl LLP**
Marilena Walters. Esq.
Melissa Korfage. Esq.
Mary Jo Pullen, Esq.

## COUNSEL FOR CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER

**Dinsmore & Shohl LLP**
J. David Brittingham, Esq.
Michael J. Gray, Esq.
Allison Knerr, Esq.
Thomas Kemp, Esq.

## COUNSEL FOR GOOD SAMARITAN HOSPITAL

**Rendigs Fry Kiely & Dennis, LLP**
Thomas Evans
Arthur Phelps, Jr., Esq.
Jon Sweeten, Esq.

## COUNSEL FOR JOURNEY LITE OF CINCINNATI

**Reminger & Co.**
Rick Weil, Esq.

**Porter, Wright, Morris & Arthur LLP**
Carolyn A. Taggart, Esq.
Kendall V. Shaw, Esq.
Ana E. Perez, Esq.

## COUNSEL FOR RIVERVIEW HEALTH INSTITUTE

**Calderhead, Lockemeyer & Peschke Law Office**
David S. Lockemeyer, Esq.
Joshua DeBra, Esq.

## COUNSEL FOR CHRIST HOSPITAL

**Dinsmore & Shohl**
Jennifer Mitchell, Esq.
Jessica Schoenfeld , Esq.
Jenna Moran, Esq
Jeremie Imbus, Esq.

## DEACONESS HOSPITAL

Bruce Knabe, Esq.
Keith Collett, Esq.

## WCH BOARD OF DIRECTORS
## INDIVIDUAL COUNSEL

**Taft**
Russel Sayre, Esq.

# WRIT STATUS

# WRIT STATUS

If they claim an appeal of their Writ to the Ohio Supreme Court stays Judge Ruehlman from acting, it does not.

The law is clear:

Unless there is a Stay Order entered by a Court, a Writ filing and even if they appeal the Court of Appeals Order striking their Writ, there is no reason Judge Ruehlman can't move forward.

Also, on a practical matter, there are the attached lists of cases which are not subject to the consolidation issue:

1. Cases assigned to Judge Ruehlman in the first place.

2. Cases assigned to Judge Ruehlman which have been assigned to Judge Ruehlman after their filing and were never assigned to another Judge before based upon Judge Ruehlman's consolidation order.

# HAMILTON COUNTY FILED CASES BY FILED DATE AND ASSIGNMENT

# FACT/ISSUE ONE

The attached list of cases are the cases filed in Hamilton County.

No action required.

## HAMILTON COUNTY FILED CASES

| NAME | CASE NUMBER | DATE FILED |
|------|-------------|------------|
| Jeff Potts | 1.  A1206877 | 8/29/12 |
| Cathy Beil | 2.  A1302781 | 4/10/13 |
| Doris Botner | 3.  A1302782 | 4/10/13 |
| Tammy Mann | 4.  A1302870 | 4/15/13 |
| Chris Clark | 5.  A1302874 | 4/15/13 |
| Sarah Mueller | 6.  A1302875 | 4/15/13 |
| Sierra Stratman | 7.  A1305127 | 7/25/13 |
| George Hutchinson | 8.  A1305173 | 7/26/13 |
| Frieda Aaron | 9.  A1407452 | 8/28/13 |
| Rebecca Breitenstein | 10. A1306847 | 10/10/13 |
| Alissa Hightchew | 11. A1306915 | 10/14/13 |
| Kimberly Schmidt | 12. A1307239 | 10/29/13 |
| Heather Pickett | 13. A1307306 | 10/31/13 |
| Staci Smith | 14. A1307300 | 10/31/13 |
| Eric Courtney | 15. A1307859 | 11/26/13 |
| Brandon Mathis | 16. A1307861 | 11/26/13 |
| ████████ N.L. | 17. A1307857 | 11/26/13 |
| Jack Marcheschi | 18. A1308383 | 12/23/13 |
| Kevin Schmit | 19. A1400009 | 1/2/14 |

Page 2

| | | |
|---|---|---|
| Amanda Ayres | 20. A1400578 | 1/31/14 |
| Scott Daniel | 21. A1400577 | 1/31/14 |
| Brandon Lacinak | 22. A1400586 | 1/31/14 |
| Karen Crissinger | 23. A1400584 | 1/31/14 |
| Kathryn Curley | 24. A1400583 | 1/31/14 |
| Jacob Cotter | 25. A1401186 | 2/27/14 |
| Hillary Levandofsky | 26. A1401181 | 2/27/14 |
| Patrick Calligan | 27. A1401182 | 2/27/14 |
| Brandon Schoborg | 28. A1401289 | 3/4/14 |
| Kevin McDonald | 29. A1401890 | 4/1/14 |
| Samantha Mink | 30. A1401893 | 4/1/14 |
| Cory Wright | 31. A1402534 | 4/29/14 |
| Jimmy Allen | 32. A1402537 | 4/29/14 |
| Laura Aker | 33. A1402757 | 5/9/14 |
| Charles Nelson | 34. A1402760 | 5/9/14 |
| Helen Ward | 35. A1402762 | 5/9/14 |
| Timothy Byrd | 36. A1402938 | 5/19/14 |
| Alex Taylor | 37. A1402940 | 5/19/14 |
| Christina & Joe Rutter for ████ C.R. | 38. A1402941 | 5/19/14 |

Page 3

| | | |
|---|---|---|
| Anthony Bode | 39. A1402942 | 5/19/14 |
| Joshua Ault | 40. A1403072 | 5/28/14 |
| Emanuel Wyatt | 41. A1403073 | 5/28/14 |
| Trey Billing | 42. A1403074 | 5/28/14 |
| Amber Johnson | 43. A1403174 | 5/30/14 |
| Shamyia Ford | 44. A1402763 | 5/9/14 |
| Michelle Beavan | 45. A14 02758 | 5/9/14 |
| Jacob Wade Durham | 46. A1403361 | 6/9/14 |
| Sydney Jones | 47. A1403363 | 6/9/14 |
| Asia Shannon | 48. A1403365 | 6/9/14 |
| Ruth Sears | 49. A1403488 | 6/12/14 |
| Brenda & Michael Butler | 50. A1403489 | 6/12/14 |
| Lindsay Walsh | 51. A1403490 | 6/12/14 |
| Daniel & Shirley Webber | 52. A1403644 | 6/19/14 |
| Minuet Healy | 53. A1403757 | 6/25/14 |
| Troy & Emily Beckelhimer | 54. A1404075 | 7/11/14 |
| Deon Stigall | 55. A1501742 | 4/1/15 |
| Patricia Shott | 56. A1502144 | 4/21/15 |
| Dana Setters (Class Action) | 57. A1502629 | 5/15/15 |

| | | |
|---|---|---|
| Karen Crissinger (Christ) | 58. A1502865 | 5/27/15 |
| Evelyn Young | 59. A1502866 | 5/27/15 |
| Lyndsey Middendorf (Class Action) | 60. A1502907 | 5/29/15 |
| Jacob Durham (Class Action) | 61. A1502908 | 5/29/15 |
| Heather McCann (Class Action | 62. A1502909 | 5/29/15 |
| Amanda Ayers (Christ) | 63. A1502990 | 6/1/15 |
| Derek List | 64. A1503024 | 6/2/15 |
| Rahman Nisbett | 65. A1503128 | 6/9/15 |
| Shawnda Benton | 66. A1503378 | 6/23/15 |
| Jacob Feltner | 67. A1503379 | 6/23/15 |
| Dawn Bowling Merland | 68. A1503354 | 6/22/15 |
| Kevin Hunley | 69. A1503649 | 7/8/15 |
| Karen Feltner | 70. A1503650 | 7/8/15 |
| Angela Pennington | 71. A1503651 | 7/8/15 |
| Tracy Esselman | 72. A1503652 | 7/8/15 |
| Kameron McNeal | 73. A1503653 | 7/8/15 |
| Joshua Kauffman | 74. A1503668 | 7/9/15 |
| Tyler McKnight | 75. A1503669 | 7/9/15 |
| Robert Houghton, Jr | 76. A1504133 | 8/4/15 |

Page 5

| | | |
|---|---|---|
| Maggie Knauer | 77. A1504130 | 8/4/15 |
| Rose Koehler | 78. A1504135 | 8/4/15 |
| Carla Griessman | 79. A1504132 | 8/4/15 |
| Sara Jonas | 80. A1504134 | 8/4/15 |
| Julie Freeman | 81. A1504131 | 8/4/15 |
| John Collins | 82. A1504451 | 8/19/15 |
| Michael Brophy | 83. A1504460 | 8/19/15 |
| Alexandra Scully | 84. A1504452 | 8/19/15 |
| Margaret Dailey | 85. A1504459 | 8/19/15 |
| Bradley Arnold | 86. A1504450 | 8/19/15 |
| Beth Leisring | 87. A1504457 | 8/19/15 |
| Benjamin Thaeler | 88. A1504449 | 8/19/15 |
| Taura Halbert on Behalf of Paris | 89. A1504448 | 8/19/15 |
| Denise and Nick Benge | 90. A1504447 | 8/19/15 |
| Adrian Lilly | 91. A1504446 | 8/19/15 |
| Nick and Denise Benge | 92. A1504454 | 8/19/15 |
| Heather Slayback | 93. A1504453 | 8/19/15 |
| Richard Elliot | 94. A1504466 | 8/19/15 |
| Vicki and Steve Wallace | 95. A1504458 | 8/19/15 |

Page 6

| Adam Hartman | 96. A1504465 | 8/19/15 |
|---|---|---|
| Paul and Kimberly Baker | 97. A1504464 | 8/19/15 |
| Grant McKenney | 98. A1504462 | 8/19/15 |
| Orris Smoote | 99. A1504461 | 8/19/15 |
| Cathleen Weber | 100.      A1504463 | 8/19/15 |
| Samantha Redrow | 101.      A1504456 | 8/19/15 |
| Charlann Shepherd | 102.      A1504455 | 8/19/15 |
| Maggie Knauer, Executor For Christopher Knauer | 103.      A1504787 | 9/4/15 |
| Tracy & Pamela Janson | 104.      A1505049 | 9/18/15 |
| Martha & Steve Hutton | 105.      A1505050 | 9/18/15 |
| Michael Odulana | 106.      A1505419 | 10/9/15 |
| Ryan Tackett | 107.      A1505420 | 10/9/15 |
| Deborah Doyle | 108.      A1505421 | 10/9/15 |
| Andrew Carr | 109.      A1505422 | 10/9/15 |
| Michelle Beavan | 110.      A1505423 | 10/9/15 |
| Kenneth Conger | 111.      A1505424 | 10/9/15 |
| Shannon Wallace | 112.      A1505425 | 10/9/15 |
| Troy Fite | 113.      A1505426 | 10/9/15 |
| Denise Hamilton for ████ W.H. | 114.      A1505427 | 10/9/15 |

Page 7

| Heather Pickett (Childrens) | 115. | A1505428 | 10/9/15 |
|---|---|---|---|
| Brandon Webster | 116. | A1505429 | 10/9/15 |
| Alyssa Hall | 117. | A1505430 | 10/9/15 |
| Stephanie Moore | 118. | A1505431 | 10/9/15 |
| Tiffany Messerschmidt | 119. | A1505432 | 10/9/15 |
| Chris Haynes for Emily Haynes | 120. | A1505433 | 10/9/15 |
| Antoine Powell | 121. | A1505434 | 10/9/15 |
| Michelle Agee (Alphatec) | 122. | A1505508 | 10/14/15 |
| Lynne List | 123. | A1505509 | 10/14/15 |
| Patricia Legendre (Childrens & Christ) | 124. | A1505510 | 10/14/15 |
| Karen Johnson | 125. | A1505624 | 10/16/15 |
| Jan Campbell | 126. | A1505625 | 10/16/15 |
| Kayla Burton | 127. | A1505678 | 10/20/15 |
| Alisa Wilson on behalf of ▓▓▓ J.W. | 128. | A1505775 | 10/26/15 |
| Forrest Crowe on behalf of ▓▓▓ K.C. | 129. | A1505776 | 10/26/15 |
| Tara Brown | 130. | A1505777 | 10/26/15 |
| Kenneth Mahlenkamp | 131. | A1505868 | 10/30/15 |
| Gary Neu | 132. | A1505869 | 10/30/15 |
| Victoria Landrum | 133. | A1505870 | 10/30/15 |

| Earl Stamps Jr. | 134. | A1505871 | 10/30/15 |
| Teresa Robbinson-Woods | 135. | A1505872 | 10/30/15 |
| Tempie Stephenson | 136. | A1505873 | 10/30/15 |
| Cheryl Wyatt | 137. | A1505970 | 11/4/15 |
| Jennifer Myers | 138. | A1505971 | 11/4/15 |
| Jessica Hastings | 139. | A1505972 | 11/4/15 |
| Michelle Noble | 140. | A1506041 | 11/6/15 |
| Thomas Augst | 141. | A1506042 | 11/6/15 |
| Teresa Worley | 142. | A1506043 | 11/6/15 |
| Gayle Bachman | 143. | A1506044 | 11/6/15 |
| Michael Koelblin | 144. | A1506160 | 11/12/15 |
| Mary Ravenscraft | 145. | A1506161 | 11/12/15 |
| Patrick Schmit | 146. | A1506162 | 11/12/15 |
| Joseph Davis | 147. | A1506163 | 11/12/15 |
| Tammy Jones | 148. | A1506164 | 11/12/15 |
| Jenny Grimm | 149. | A1506165 | 11/12/15 |
| Stephanie Deaton | 150. | A1506166 | 11/12/15 |
| Laura Weisbecker | 151. | A1506223 | 11/18/15 |
| David Harris | 152. | A1506224 | 11/18/15 |

Page 9

| Barbara Boggs, Deceased | 153. | A1506302 | 11/19/15 |
|---|---|---|---|
| Ronald Schuster | 154. | A1506303 | 11/19/15 |
| Ryan Tanner | 155. | A1506304 | 11/19/15 |
| Hannah Zmyslo | 156. | A1506305 | 11/19/15 |
| Jacqueline Judkins | 157. | A1506306 | 11/19/15 |
| Damon Deck | 158. | A1506307 | 11/19/15 |
| Kimberly Luse | 159. | A1506308 | 11/19/15 |
| Mark Reed | 160. | A1506490 | 11/30/15 |
| Dana Setters | 161. | A1506570 | 12/3/15 |
| Michelle Agee | 162. | A1506571 | 12/3/15 |
| Heather McCann | 163. | A1506572 | 12/3/15 |
| Todd Ray | 164. | A1506573 | 12/3/15 |
| Robert Campbell | 165. | A1506574 | 12/3/15 |
| Jordan Vance | 166. | A1506575 | 12/3/15 |
| Lawrence Pridemore | 167. | A1506576 | 12/3/15 |
| Mackenzie Bender | 168. | A1506577 | 12/3/15 |
| Arlene and Philip Fait | 169. | A1506606 | 12/4/15 |
| Linda Favaron for Neil Favaron | 170. | A1506607 | 12/4/15 |
| Connie and Robert Ellington | 171. | A1506608 | 12/4/15 |

Page 10

| Edythe and Roy Bishop | 172. | A1506609 | 12/4/15 |

## HAMILTON COUNTY FILED CASES WITH ASSIGNED JUDGE

| NAME | CASE NUMBER | ASSIGNED JUDGE |
|---|---|---|
| Jeff Potts | 1. A1206877 | Judge Ruehlman |
| Cathy Beil | 2. A1302781 | Judge Ruehlman |
| Doris Botner | 3. A1302782 | Judge Ruehlman |
| Tammy Mann | 4. A1302870 | Judge Ruehlman |
| Chris Clark | 5. A1302874 | Judge Ruehlman |
| Sarah Mueller | 6. A1302875 | Judge Ruehlman |
| Sierra Stratman | 7. A1305127 | Judge Ruehlman |
| George Hutchinson | 8. A1305173 | Judge Ruehlman |
| Frieda Aaron | 9. A1407452 | Judge Ruehlman |
| Rebecca Breitenstein | 10. A1306847 | Judge Ruehlman |
| Alissa Hightchew | 11. A1306915 | Judge Ruehlman |
| Kimberly Schmidt | 12. A1307239 | Judge Ruehlman |
| Heather Pickett | 13. A1307306 | Judge Ruehlman |
| Staci Smith | 14. A1307300 | Judge Ruehlman |
| Eric Courtney | 15. A1307859 | Judge Ruehlman |
| Brandon Mathis | 16. A1307861 | Judge Ruehlman |
| ███ N.L. | 17. A1307857 | Judge Ruehlman |
| Jack Marcheschi | 18. A1308383 | Judge Ruehlman |
| Kevin Schmit | 19. A1400009 | Judge Ruehlman |

Page 2

| | | |
|---|---|---|
| Amanda Ayres | 20. A1400578 | Judge Ruehlman |
| Scott Daniel | 21. A1400577 | Judge Ruehlman |
| Brandon Lacinak | 22. A1400586 | Judge Ruehlman |
| Karen Crissinger | 23. A1400584 | Judge Ruehlman |
| Kathryn Curley | 24. A1400583 | Judge Ruehlman |
| Jacob Cotter | 25. A1401186 | Judge Ruehlman |
| Hillary Levandofsky | 26. A1401181 | Judge Ruehlman |
| Patrick Calligan | 27. A1401182 | Judge Ruehlman |
| Brandon Schoborg | 28. A1401289 | Judge Ruehlman |
| Kevin McDonald | 29. A1401890 | Judge Ruehlman |
| Samantha Mink | 30. A1401893 | Judge Ruehlman |
| Cory Wright | 31. A1402534 | Judge Ruehlman |
| Jimmy Allen | 32. A1402537 | Judge Ruehlman |
| Laura Aker | 33. A1402757 | Judge Ruehlman |
| Charles Nelson | 34. A1402760 | Judge Ruehlman |
| Helen Ward | 35. A1402762 | Judge Ruehlman |
| Timothy Byrd | 36. A1402938 | Judge Ruehlman |
| Alex Taylor | 37. A1402940 | Judge Ruehlman |
| Christina & Joe Rutter for ████ C.R. | 38. A1402941 | Judge Ruehlman |

Page 3

| Anthony Bode | 39. A1402942 | Judge Ruehlman |
|---|---|---|
| Joshua Ault | 40. A1403072 | Judge Ruehlman |
| Emanuel Wyatt | 41. A1403073 | Judge Ruehlman |
| Trey Billing | 42. A1403074 | Judge Ruehlman |
| Amber Johnson | 43. A1403174 | Judge Ruehlman |
| Shamyia Ford | 44. A1402763 | Judge Ruehlman |
| Michelle Beavan | 45. A14 02758 | Judge Ruehlman |
| Jacob Wade Durham | 46. A1403361 | Judge Ruehlman |
| Sydney Jones | 47. A1403363 | Judge Ruehlman |
| Asia Shannon | 48. A1403365 | Judge Ruehlman |
| Ruth Sears | 49. A1403488 | Judge Ruehlman |
| Brenda & Michael Butler | 50. A1403489 | Judge Ruehlman |
| Lindsay Walsh | 51. A1403490 | Judge Ruehlman |
| Daniel & Shirley Webber | 52. A1403644 | Judge Ruehlman |
| Minuet Healy | 53. A1403757 | Judge Ruehlman |
| Troy & Emily Beckelhimer | 54. A1404075 | Judge Ruehlman |
| Deon Stigall | 55. A1501742 | Judge Ruehlman |
| Patricia Shott | 56. A1502144 | Judge Ruehlman |
| Dana Setters (Class Action) | 57. A1502629 | Judge Kubicki |

| Karen Crissinger (Christ) | 58. A1502865 | Judge Ruehlman |
| Evelyn Young | 59. A1502866 | Judge Ruehlman |
| Lyndsey Middendorf (Class Action) | 60. A1502907 | Judge Metz |
| Jacob Durham (Class Action) | 61. A1502908 | Judge Marsh |
| Heather McCann (Class Action | 62. A1502909 | Judge Winkler |
| Amanda Ayers (Christ) | 63. A1502990 | Judge Ruehlman |
| Derek List | 64. A1503024 | Judge Ruehlman |
| Rahman Nisbett | 65. A1503128 | Judge Ruehlman |
| Shawnda Benton | 66. A1503378 | Judge Ruehlman |
| Jacob Feltner | 67. A1503379 | Judge Ruehlman |
| Dawn Bowling Merland | 68. A1503354 | Judge Ruehlman |
| Kevin Hunley | 69. A1503649 | Judge Ruehlman |
| Karen Feltner | 70. A1503650 | Judge Ruehlman |
| Angela Pennington | 71. A1503651 | Judge Ruehlman |
| Tracy Esselman | 72. A1503652 | Judge Ruehlman |
| Kameron McNeal | 73. A1503653 | Judge Ruehlman |
| Joshua Kauffman | 74. A1503668 | Judge Ruehlman |
| Tyler McKnight | 75. A1503669 | Judge Ruehlman |
| Robert Houghton, Jr | 76. A1504133 | Judge Ruehlman |

| Maggie Knauer | 77. A1504130 | Judge Ruehlman |
|---|---|---|
| Rose Koehler | 78. A1504135 | Judge Ruehlman |
| Carla Griessman | 79. A1504132 | Judge Ruehlman |
| Sara Jonas | 80. A1504134 | Judge Ruehlman |
| Julie Freeman | 81. A1504131 | Judge Ruehlman |
| John Collins | 82. A1504451 | Judge Ruehlman |
| Michael Brophy | 83. A1504460 | Judge Ruehlman |
| Alexandra Scully | 84. A1504452 | Judge Ruehlman |
| Margaret Dailey | 85. A1504459 | Judge Ruehlman |
| Bradley Arnold | 86. A1504450 | Judge Ruehlman |
| Beth Leisring | 87. A1504457 | Judge Ruehlman |
| Benjamin Thaeler | 88. A1504449 | Judge Ruehlman |
| Taura Halbert on Behalf of Paris | 89. A1504448 | Judge Ruehlman |
| Denise and Nick Benge | 90. A1504447 | Judge Ruehlman |
| Adrian Lilly | 91. A1504446 | Judge Ruehlman |
| Nick and Denise Benge | 92. A1504454 | Judge Ruehlman |
| Heather Slayback | 93. A1504453 | Judge Ruehlman |
| Richard Elliot | 94. A1504466 | Judge Ruehlman |
| Vicki and Steve Wallace | 95. A1504458 | Judge Ruehlman |

Page 6

| Adam Hartman | 96. A1504465 | Judge Ruehlman |
|---|---|---|
| Paul and Kimberly Baker | 97. A1504464 | Judge Ruehlman |
| Grant McKenney | 98. A1504462 | Judge Ruehlman |
| Orris Smoote | 99. A1504461 | Judge Ruehlman |
| Cathleen Weber | 100. A1504463 | Judge Ruehlman |
| Samantha Redrow | 101. A1504456 | Judge Ruehlman |
| Charlann Shepherd | 102. A1504455 | Judge Ruehlman |
| Maggie Knauer, Executor For Christopher Knauer | 103. A1504787 | Judge Ruehlman |
| Tracy & Pamela Janson | 104. A1505049 | Judge Ruehlman |
| Martha & Steve Hutton | 105. A1505050 | Judge Ruehlman |
| Michael Odulana | 106. A1505419 | Judge Ruehlman |
| Ryan Tackett | 107. A1505420 | Judge Ruehlman |
| Deborah Doyle | 108. A1505421 | Judge Ruehlman |
| Andrew Carr | 109. A1505422 | Judge Ruehlman |
| Michelle Beavan | 110. A1505423 | Judge Ruehlman |
| Kenneth Conger | 111. A1505424 | Judge Ruehlman |
| Shannon Wallace | 112. A1505425 | Judge Ruehlman |
| Troy Fite | 113. A1505426 | Judge Ruehlman |
| Denise Hamilton for W.H. | 114. A1505427 | Judge Ruehlman |

Page 7

| Heather Pickett (Childrens) | 115. | A1505428 | Judge Ruehlman |
|---|---|---|---|
| Brandon Webster | 116. | A1505429 | Judge Ruehlman |
| Alyssa Hall | 117. | A1505430 | Judge Ruehlman |
| Stephanie Moore | 118. | A1505431 | Judge Ruehlman |
| Tiffany Messerschmidt | 119. | A1505432 | Judge Ruehlman |
| Chris Haynes for Emily Haynes | 120. | A1505433 | Judge Ruehlman |
| Antoine Powell | 121. | A1505434 | Judge Ruehlman |
| Michelle Agee (Alphatec) | 122. | A1505508 | Judge Ghiz |
| Lynne List | 123. | A1505509 | Judge Ruehlman |
| Patricia Legendre (Childrens & Christ) | 124. | A1505510 | Judge West |
| Karen Johnson | 125. | A1505624 | Judge Ruehlman |
| Jan Campbell | 126. | A1505625 | Judge Ruehlman |
| Kayla Burton | 127. | A1505678 | Judge Ruehlman |
| Alisa Wilson on behalf of ▓▓▓ J.W. | 128. | A1505775 | Judge Ruehlman |
| Forrest Crowe on behalf of ▓▓▓ K.C. | 129. | A1505776 | Judge Ruehlman |
| Tara Brown | 130. | A1505777 | Judge Ruehlman |
| Kenneth Mahlenkamp | 131. | A1505868 | Judge Ruehlman |
| Gary Neu | 132. | A1505869 | Judge Ruehlman |
| Victoria Landrum | 133. | A1505870 | Judge Ruehlman |

Page 8

| | | | |
|---|---|---|---|
| Earl Stamps Jr. | 134. | A1505871 | Judge Ruehlman |
| Teresa Robbinson-Woods | 135. | A1505872 | Judge Ruehlman |
| Tempie Stephenson | 136. | A1505873 | Judge Ruehlman |
| Cheryl Wyatt | 137. | A1505970 | Judge Ruehlman |
| Jennifer Myers | 138. | A1505971 | Judge Ruehlman |
| Jessica Hastings | 139. | A1505972 | Judge Ruehlman |
| Michelle Noble | 140. | A1506041 | Judge Ruehlman |
| Thomas Augst | 141. | A1506042 | Judge Ruehlman |
| Teresa Worley | 142. | A1506043 | Judge Ruehlman |
| Gayle Bachman | 143. | A1506044 | Judge Ruehlman |
| Michael Koelblin | 144. | A1506160 | Judge Ruehlman |
| Mary Ravenscraft | 145. | A1506161 | Judge Ruehlman |
| Patrick Schmit | 146. | A1506162 | Judge Ruehlman |
| Joseph Davis | 147. | A1506163 | Judge Ruehlman |
| Tammy Jones | 148. | A1506164 | Judge Ruehlman |
| Jenny Grimm | 149. | A1506165 | Judge Ruehlman |
| Stephanie Deaton | 150. | A1506166 | Judge Ruehlman |
| Laura Weisbecker | 151. | A1506223 | Judge Ruehlman |
| David Harris | 152. | A1506224 | Judge Ruehlman |

Page 9

| Barbara Boggs, Deceased | 153. | A1506302 | Judge Ruehlman |
| Ronald Schuster | 154. | A1506303 | Judge Ruehlman |
| Ryan Tanner | 155. | A1506304 | Judge Ruehlman |
| Hannah Zmyslo | 156. | A1506305 | Judge Ruehlman |
| Jacqueline Judkins | 157. | A1506306 | Judge Ruehlman |
| Damon Deck | 158. | A1506307 | Judge Ruehlman |
| Kimberly Luse | 159. | A1506308 | Judge Ruehlman |
| Mark Reed | 160. | A1506490 | Judge Ruehlman |
| Dana Setters | 161. | A1506570 | Judge Ruehlman |
| Michelle Agee | 162. | A1506571 | Judge Ruehlman |
| Heather McCann | 163. | A1506572 | Judge Ruehlman |
| Todd Ray | 164. | A1506573 | Judge Ruehlman |
| Robert Campbell | 165. | A1506574 | Judge Ruehlman |
| Jordan Vance | 166. | A1506575 | Judge Ruehlman |
| Lawrence Pridemore | 167. | A1506576 | Judge Ruehlman |
| Mackenzie Bender | 168. | A1506577 | Judge Ruehlman |
| Arlene and Philip Fait | 169. | A1506606 | Judge Ruehlman |
| Linda Favaron for Neil Favaron | 170. | A1506607 | Judge Ruehlman |
| Connie and Robert Ellington | 171. | A1506608 | Judge Ruehlman |

Page 10

| Edythe and Roy Bishop | 172. | A1506609 | Judge Ruehlman |

# CATEGORIES CHART FOR ALL HAMILTON COUNTY CASES

**CATEGORIES CHART**
**HAMILTON COUNTY CASES**

| Plaintiff: | Categories: |
|---|---|
| 1. Agee, Michelle | <ul><li>Two SX</li><li>Late Dictation</li><li>Failed Hardware</li><li>Lost Wages</li><li>PureGen</li><li>Revision Surgery</li><li>Complication- HW Mal</li></ul> |
| 2. Aker, Laura | <ul><li>Five SX</li><li>BMP-2 Contraindicated</li><li>Cancer patient</li><li>Failed Hardware</li><li>Lost wages</li><li>Complication: Nonunion</li><li>Revision Surgery</li><li>HO Epdendymoma</li><li>PLSF for Nonunion</li><li>False Diagnosis</li><li>Misc- Adj Dis</li><li>Minor</li></ul> |
| 3. Allen, Jimmy | <ul><li>Obesity</li><li>Diabetes</li><li>Depression</li><li>Hypertension</li><li>One SX</li><li>Threat of Paralysis/Wheelchair</li></ul> |
| 4. Arnold, Brad | <ul><li>One SX</li><li>Hank</li><li>False Diagnosis</li></ul> |
| 5. Augst, Thomas | <ul><li>Waiting on Nurse Review</li><li>Lost Wages</li></ul> |
| 6. Ault, Joshua | <ul><li>One SX</li><li>BMP-2 Contraindicated</li><li>False Diagnosis</li><li>Minor</li></ul> |
| 7. Ayers, Amanda | <ul><li>One SX</li><li>BMP-2</li><li>Smoker</li><li>Late dictation</li><li>Lost Wages</li></ul> |
| 8. Bachman, Gayle | <ul><li>Surgery While Dr. Durrani Was Suspended</li><li>BMP-2</li></ul> |

1

**CATEGORIES CHART**
**HAMILTON COUNTY CASES**

|  |  |
|---|---|
|  | <ul><li>PureGen</li><li>Left In Hardware</li><li>AxiaLIF</li><li>David Rattigan</li><li>Nine SX</li><li>No Operative Report</li><li>EDS</li></ul> |
| 9. Baker, Paul | <ul><li>Asthma</li><li>One SX</li><li>David Rattigan</li><li>Lost Wages</li></ul> |
| 10. Beavan, Michelle | <ul><li>One SX</li><li>Durrani Signature Forged</li></ul> |
| 11. Beckelheimer, Troy | <ul><li>One SX</li><li>BMP-2</li><li>Lost Wages</li><li>Threat of Paralysis/Wheelchair</li><li>False Diagnosis</li></ul> |
| 12. Beil, Cathy | <ul><li>BMP-2</li><li>Wrong Cage</li><li>Scoliosis</li><li>Infection</li><li>Failed Hardware</li><li>Threat of Paralysis</li><li>Late Dictation</li><li>One SX</li><li>Lost Wages</li><li>Op Report 50 Days Late</li><li>False Diagnosis</li><li>Complication- Nonunion/HW Mal</li></ul> |
| 13. Bender, Mackenzie | <ul><li>Waiting on Nurse Review</li></ul> |
| 14. Benge, Denise | <ul><li>One SX</li><li>No CAST consent</li><li>BMP-2</li><li>Late dictation</li></ul> |
| 15. Benge, Nicholas | <ul><li>One SX</li><li>BMP-2</li><li>Late dictation</li></ul> |
| 16. Benton, Shawnda | <ul><li>Three SX</li><li>BMP-2</li><li>MRSA</li><li>Hank</li></ul> |
| 17. Billing, Trey | <ul><li>One SX</li></ul> |

**CATEGORIES CHART**
**HAMILTON COUNTY CASES**

|  |  |
|---|---|
|  | • BMP-2 Contraindicated<br>• Minor |
| 18. Bishop, Edythe | • BMP-2<br>• EDS<br>• C1 C2 False Pannus<br>• Atelectasis<br>• Swallowing Issues<br>• Sleep Apnea<br>• Failed Hardware<br>• David Rattigan<br>• Obesity<br>• Threat of Paralysis<br>• No hospital consent<br>• Smoker<br>• Shanti Shuffle<br>• Blank signed office consents<br>• False Diagnosis<br>• Complications- HW Mal<br>• Misc- Missing Screws<br>• C12 Fusion |
| 19. Bode, Anthony | • One SX<br>• Scoliosis<br>• False Diagnosis<br>• Misc- No nonop brace attempt |
| 20. Boggs, Barbara | • COPD<br>• Hypertension<br>• Deceased<br>• One SX<br>• Complication- Nonunion<br>• Misc- Broken T1 Ped Screw |
| 21. Botner, Doris | • Two SX<br>• BMP-2<br>• Elderly (70 yrs old)<br>• Late dictation<br>• Cancer patient |
| 22. Breitenstein, Rebecca | • One SX<br>• BMP-2<br>• No hospital consent form<br>• Late dictation<br>• Respiratory issues following surgery<br>• Penetrated aorta<br>• Failed hardware<br>• Lost wages |

**CATEGORIES CHART**
**HAMILTON COUNTY CASES**

| | |
|---|---|
| | • False Diagnosis<br>• Complications- HW Mal<br>• Misc- T7 Screw Near Aorta |
| 23. Brophy, Michael | • Two SX<br>• BMP-2<br>• Late dictation<br>• Failed hardware<br>• Lost Wages<br>• Complication- HW Mal<br>• False Diagnosis<br>• Revision<br>• Screw Near Aorta/Penetrated<br>• EDS |
| 24. Brown, Tara | • Waiting on Nurse Review |
| 25. Burton, Kayla | • Waiting on Nurse Review |
| 26. Butler, Brenda | • One SX<br>• Late dictation |
| 27. Byrd, Timothy | • Waiting on Nurse Review |
| 28. Calligan, Patrick | • One SX<br>• Billing issue with BMP<br>• BMP-2 Contraindicated<br>• Revision<br>• Minor |
| 29. Campbell, Jan | • One SX<br>• BMP-2<br>• Depression<br>• Smoker<br>• Shanti Only<br>• Lost wages |
| 30. Campbell, Robert | • Waiting on Nurse Review<br>• Lost wages<br>• Shanti Shuffle |
| 31. Carr, Andrew | • Three SX<br>• Scoliosis<br>• Late Dictation<br>• BMP-2<br>• Failed Hardware<br>• David Rattigan<br>• Lost Wages<br>• OP Report 37 Days Late<br>• AxiaLIF<br>• False Diagnosis<br>• Complication- Nonunion |

4

## CATEGORIES CHART
## HAMILTON COUNTY CASES

| | |
|---|---|
| 32. Clark, Chris | • Smoker<br>• Two SX<br>• Shanti<br>• Baxano<br>• Dural Tear<br>• Revision |
| 33. Collins, John | • One SX<br>• Smoker<br>• BMP-2 Contraindicated<br>• Failed hardware<br>• Lost wages<br>• False Diagnosis<br>• Revision<br>• Minor |
| 34. Conger, Kenneth | • Three SX<br>• BMP-2 Contraindicated<br>• Infuse billing issues<br>• Lost wages<br>• False Diagnosis<br>• Minor |
| 35. Cotter, Jacob | • Klipel-Feil Syndrome<br>• One kidney<br>• MRSA<br>• BMP-2 Contraindicated<br>• One SX<br>• False Diagnosis<br>• Revision<br>• C12 Fusion<br>• Minor |
| 36. Courtney, Eric | • Hypertension<br>• Heart attack<br>• Heart disease<br>• Heart failure<br>• One SX<br>• Lost wages<br>• Baxano<br>• False Diagnosis |
| 37. Crissinger, Karen | • Heart disease<br>• Hypertension<br>• Asthma<br>• Hepatitis C<br>• Smoker<br>• Three SX |

**CATEGORIES CHART**
**HAMILTON COUNTY CASES**

| | |
|---|---|
| | • BMP-2<br>• Late dictation<br>• Failed hardware |
| 38. ▓▓▓▓ K.C. | • Two SX<br>• Hardware failure<br>• Cementation was not on consent form |
| 39. Curley, Kathryn | • Spinal cord injury<br>• BMP-2 Contraindicated<br>• Hardware failure<br>• Lost wages<br>• Minor |
| 40. Dailey, Margaret | • Hypertension<br>• One SX<br>• BMP-2<br>• Elderly 70+ |
| 41. Daniel, Scott | • One SX<br>• BMP-2<br>• False Diagnosis |
| 42. Davis, Joseph | • Waiting on Nurse Review |
| 43. Deaton, Stefanie | • Waiting on Nurse Review<br>• Lost wages |
| 44. Deck, Damon | • BMP-2<br>• Kyphosis<br>• Atelectasis<br>• Failed Hardware<br>• David Rattigan<br>• No hospital consent<br>• One SX<br>• Shanti Shuffle<br>• Blank signed office consents |
| 45. Doyle, Deborah | • BMP-2<br>• OP Report 32 Days Late<br>• AxiaLIF<br>• False Diagnosis<br>• Obesity<br>• One SX<br>• Incomplete Consent |
| 46. Durham, Jacob | • Duchene Muscular Dystrophy<br>• Obesity<br>• Two SX<br>• BMP-2 Contraindicated<br>• False Diagnosis<br>• Complication- HW Mal |

6

**CATEGORIES CHART**
**HAMILTON COUNTY CASES**

| | |
|---|---|
| | • Revision<br>• Minor |
| 47. Ellington, Connie | • BMP-2<br>• Insurance Denial<br>• Scoliosis<br>• One SX<br>• Failed Hardware<br>• Lost Wages<br>• Threat of Paralysis/Wheelchair<br>• AxiaLIF<br>• OP Report 53 Days Late<br>• False Diagnosis<br>• Complication- HW Mal<br>• Misc- Screw Near Aorta |
| 48. Elliott, Richard | • One SX<br>• MRSA<br>• BMP-2<br>• Lost wages<br>• AxiaLIF<br>• False Diagnosis |
| 49. Esselman, Tracy | • Two SX<br>• Hardware failure |
| 50. Fait, Arlene | • BMP-2<br>• C1 C2 Pannus<br>• Swallowing Issues<br>• Failed Hardware<br>• AxiaLIF<br>• Threat of Paralysis<br>• Late Dictation<br>• Two SX<br>• Shanti Shuffle<br>• OP Report 78 Days Late |
| 51. Favaron, Neil | • Surgery While Dr. Durrani Was Suspended<br>• BMP-2<br>• AxiaLIF<br>• David Rattigan<br>• No hospital consent<br>• Three SX<br>• Lost wages<br>• Deceased<br>• OP Report 141 Days Late<br>• False Diagnosis |

7

## CATEGORIES CHART
## HAMILTON COUNTY CASES

| | |
|---|---|
| | • Misc- Small c hnp "very large" |
| 52. Feltner, Jacob | • One SX<br>• BMP-2 Contraindicated<br>• Failed Hardware<br>• Complication- Osteolysis<br>• Revision<br>• Minor |
| 53. Feltner, Karen | • Smoker<br>• MRSA<br>• Two SX<br>• BMP-2<br>• Hardware failure<br>• Late dictation<br>• Lost wages<br>• Misc- Ectopic bone<br>• Misc- Exposed to Hank |
| 54. Fite, Troy | • One SX<br>• BMP-2 Contraindicated<br>• Lost wages<br>• False Diagnosis<br>• Minor |
| 55. Ford, Shamyia | • One SX<br>• BMP-2 Contraindicated<br>• False Diagnosis<br>• Misc- Fused Skel mature adol<br>• Minor |
| 56. Freeman, Julie | • One SX<br>• Late dictation<br>• BMP-2 |
| 57. Griessman, Carla | • BMP-2<br>• Kyphosis<br>• Penetrated aorta<br>• Failed hardware<br>• Complication- HW Mal |
| 58. Grimm, Jenny | • BMP-2<br>• Kyphosis<br>• David Rattigan<br>• Obesity<br>• Smoker<br>• Two SX<br>• Hypertension<br>• False Diagnosis<br>• Misc- Claimed Spondylo |

## CATEGORIES CHART
## HAMILTON COUNTY CASES

| | |
|---|---|
| 59. Halbert, Paris | • BMP-2<br>• Cerebral Palsy<br>• One SX<br>• Failed Hardware<br>• Minor |
| 60. Hall, Alyssa | • One SX<br>• BMP-2<br>• False Diagnosis |
| 61. ▓▓▓▓▓▓ W.H. | • One SX<br>• CAST consent is not signed by the Dr<br>• Minor |
| 62. Harris, David | • Waiting on Nurse Review |
| 63. Hartman, Adam | • Kyphosis<br>• Two SX<br>• Incomplete/No Consent<br>• BMP-2 Contraindicated<br>• Late Dictation<br>• Minor |
| 64. Hastings, Jessica | • One SX<br>• Cut and Paste<br>• Lost wages<br>• No Intraop Reports |
| 65. Haynes, Emily | • BMP-2<br>• One SX |
| 66. Healy, Minuet | • One SX<br>• Revision |
| 67. Hightchew, Alissa | • Lost wages<br>• BMP-2 Contraindicated<br>• One SX<br>• Consent form altered<br>• False Diagnosis<br>• Minor |
| 68. Houghton, Robert II | • BMP-2 Contraindicated<br>• One SX<br>• False Diagnosis<br>• Misc- Dx'd pars fx<br>• Minor |
| 69. Hunley, Kevin | • BMP-2<br>• One SX<br>• Late dictation<br>• OP Report 65 Days Late<br>• False Diagnosis |
| 70. Hutchinson, George | • BMP-2 |

## CATEGORIES CHART
## HAMILTON COUNTY CASES

|  |  |
|---|---|
|  | • Threat of Paralysis/Wheelchair<br>• Elderly 70+<br>• Scoliosis<br>• Kyphosis<br>• AxiaLIF<br>• Failed hardware<br>• OP Report 47 Days Late<br>• Complication- Nonunion<br>• Revision |
| 71. Hutton, Martha | • BMP-1<br>• Smoker<br>• David Rattigan<br>• Two SX<br>• No CAST Consent<br>• Lost wages |
| 72. Janson, Tracy | • Hypertension<br>• Smoker<br>• One SX<br>• Late Dictation<br>• Failed Hardware<br>• OP Report 199 Days Late<br>• Complication- Nonunion<br>• BMP-2<br>• Misc- Nonunion |
| 73. Johnson, Amber | • Seven SX<br>• Failed Hardware |
| 74. Johnson, Karen | • Waiting on Nurse Review |
| 75. Jonas, Sara | • BMP-2<br>• One SX<br>• Hardware failure<br>• OP Report 14 Days Late<br>• Complication- Nonunion/HW Mal<br>• Revision<br>• Misc- Pancreatic tumor |
| 76. Jones, Sydney | • BMP-2 Contraindicated<br>• One SX<br>• Minor |
| 77. Jones, Tammy | • BMP-2<br>• PureGen<br>• Failed hardware<br>• False Diagnosis<br>• Complication- HW Mal<br>• Revision |

# CATEGORIES CHART
# HAMILTON COUNTY CASES

|  |  |
|---|---|
|  | • Misc- Graft Mal |
| 78. Judkins, Jacqueline | • Waiting on Nurse Review |
| 79. Kauffman, Joshua | • BMP-2 Contraindicated<br>• Penetrated aorta<br>• Failed hardware<br>• False Diagnosis<br>• Complication- HW Mal<br>• Minor<br>• Screw Near Aorta/Penetrated |
| 80. Knauer, Christopher | • BMP-2<br>• Late dictation<br>• One SX<br>• Failed hardware |
| 81. Knauer, Maggie | • BMP-2<br>• One SX |
| 82. Koehler, Rose | • BMP-2<br>• Threat of Paralysis/Wheelchair<br>• False Diagnosis<br>• Misc- Comp fx called burst with Kyphosis<br>• Misc- Completely normal C spine MRI<br>• OP Report 33 Days Late |
| 83. Koeblin, Mike | • Lost wages<br>• One SX<br>• No CAST Consent<br>• Baxano<br>• False Diagnosis |
| 84. Lacinak, Brandon | • BMP-2 Contraindicated<br>• Kyphosis<br>• Smoker<br>• Failed Hardware<br>• False Diagnosis<br>• Minor |
| 85. ██████████ N.L. | • Three SX<br>• Failed Hardware<br>• Minor |
| 86. Landrum, Victoria | • Waiting on Nurse Review |
| 87. Legendre, Patricia | • Lost wages<br>• BMP-2<br>• Failed hardware<br>• Threat of Paralysis/Wheelchair<br>• Kyphosis |

**CATEGORIES CHART**
**HAMILTON COUNTY CASES**

| | |
|---|---|
| | • Foot Drop<br>• No Hospital Consent<br>• OP Report 8 Days Late<br>• Complication- Nonunion<br>• False Diagnosis<br>• Revision |
| 88. Leisring, Beth | • BMP-2 Contraindicated<br>• One SX<br>• Incomplete Consent Form<br>• False Diagnosis<br>• Complication- Nonunion<br>• Revision<br>• Minor |
| 89. Levandofsky, Hillary | • Lost wages<br>• BMP-2<br>• False Diagnosis<br>• Removed bone from hip- not on OP Report |
| 90. Lilly, Adrian | • BMP-2 Contraindicated<br>• C1 C2 False Pannus<br>• Complication- Nonunion<br>• Revision<br>• Misc- Paralysis after Fixation Loss<br>• Minor |
| 91. List, Derek | • BMP-2<br>• EDS<br>• Smoker<br>• False Diagnosis<br>• One Surgery<br>• Late Dictation |
| 92. List, Lynne | • BMP-2<br>• False Diagnosis<br>• Complication- Nonunion<br>• Revision<br>• Misc- Had Discogenic pain, not facet<br>• One Sx<br>• Failed Hardware<br>• Lost Wages |
| 93. Luse, Kimberly | • Waiting on Nurse Review<br>• Lost wages |
| 94. Mahlenkamp, Kenneth | • Waiting on Nurse Review |
| 95. Mann, Tammy | • BMP-2<br>• Failed hardware |

## CATEGORIES CHART
## HAMILTON COUNTY CASES

| | |
|---|---|
| | <ul><li>Baxano</li><li>False Diagnosis</li><li>Complication- Metal</li><li>Revision</li></ul> |
| 96. Marcheschi, Jack | <ul><li>BMP-2- Contraindicated</li><li>False Diagnosis</li><li>Complication- Nonunion</li><li>One SX</li><li>Minor</li></ul> |
| 97. Mathis, Brandon | <ul><li>BMP-2 Contraindicated</li><li>Misc- C VB Fracture</li><li>One SX</li><li>Minor</li></ul> |
| 98. McCann, Heather | <ul><li>BMP-2</li><li>David Rattigan</li><li>AxiaLIF</li><li>One SX</li><li>Lost Wages</li><li>C12 Fusion</li><li>False Diagnosis</li><li>Complication- Nonunion</li><li>Revision</li></ul> |
| 99. McDonald, Kevin | <ul><li>No Operative Report</li><li>Minor</li><li>False Diagnosis</li><li>Four SX</li></ul> |
| 100.      McKenney, Grant | <ul><li>Four SX</li><li>Failed Hardware</li><li>Minor</li></ul> |
| 101.      McKnight, Tyler | <ul><li>BMP-2</li><li>False Diagnosis</li><li>One SX</li><li>Minor</li></ul> |
| 102.      McNeal, Kameron | <ul><li>BMP-2 Contraindicated</li><li>False Diagnosis</li><li>Misc- Operated on wrong level</li><li>Complication- Nonunion</li><li>Revision</li><li>Two SX</li><li>Minor</li></ul> |
| 103.      Merland, Dawn | <ul><li>Lost wages</li><li>Late Dictation</li><li>OP Report 34 Days Late</li></ul> |

## CATEGORIES CHART
## HAMILTON COUNTY CASES

| | | |
|---|---|---|
| | | • AxiaLIF<br>• False Diagnosis<br>• BMP-2 |
| 104. | Messerschmidt, Tiffany | • BMP-2<br>• Threat of Paralysis/Wheelchair<br>• Kyphosis<br>• Failed hardware<br>• False Diagnosis<br>• Misc- Painful scoliosis |
| 105. | Mink, Samantha | • BMP-2 Contraindicated<br>• One SX<br>• Late Dictation<br>• AxiaLIF<br>• OP Report 157 Days Late<br>• Complication- Nonunion<br>• Minor |
| 106. | Moore, Stephanie | • Lost wages<br>• False Diagnosis |
| 107. | Mueller, Sarra | • Scoliosis<br>• Atelectasis<br>• No Hospital Consent<br>• False Diagnosis<br>• Misc- Inad preop bracing<br>• Minor |
| 108. | Myers, Jennifer | • One SX<br>• Incomplete Consent Form |
| 109. | Nelson, Charles | • BMP-2 Contraindicated<br>• Misc- No Cons. Care<br>• Minor |
| 110. | Neu, Gary | • Waiting on Nurse Review |
| 111. | Nisbett, Rahman | • Threat of Paralysis/Wheelchair<br>• Cancer patient<br>• OP Report 47 Days Late<br>• Complication- Nonunion<br>• False Diagnosis<br>• BMP-2<br>• Misc- had Large L5S1 HNP, why L45 fused |
| 112. | Noble, Michelle | • One SX<br>• No CAST Consent Form<br>• Incorrect Hospital Consent Form |
| 113. | Odulana, Michael | • BMP-2 Contraindicated<br>• False Diagnosis |

14

# CATEGORIES CHART
## HAMILTON COUNTY CASES

| | | |
|---|---|---|
| | | • Complication- Nonunion<br>• Minor |
| 114. | Pennington, Angela | • BMP-2 Contraindicated<br>• One SX<br>• Threatened death if didn't have surgery<br>• Minor |
| 115. | Pickett, Heather | • BMP-2<br>• Scoliosis<br>• Foot Drop<br>• Obesity<br>• Diabetes<br>• Hypertension<br>• Mild Mental Retardation |
| 116. | Potts, Jeff | • BMP-2<br>• Breast Cancer<br>• Atelectasis<br>• Complication- Nonunion<br>• Revision |
| 117. | Powell, Antoine | • BMP-2<br>• Blank CAST Consent Form<br>• Exposed Screw in Back |
| 118. | Pridemore, Lawrence | • PureGen<br>• Elderly 70+<br>• David Rattigan<br>• Shanti Shuffle<br>• AxiaLIF<br>• Revision<br>• Misc- Extended fusion 14 months later<br>• False Diagnosis |
| 119. | Ravenscraft, Mary | • Lost wages<br>• BMP-2<br>• PureGen<br>• False Diagnosis |
| 120. | Ray, Todd | • Surgery While Dr. Durrani Was Suspended<br>• BMP-2<br>• Three SX<br>• Late Dictation<br>• Lost Wages<br>• OP Report 134 Days Late<br>• False Diagnosis |

**CATEGORIES CHART**
**HAMILTON COUNTY CASES**

| | | |
|---|---|---|
| 121. | Redrow, Samantha | • BMP-2 Contraindicated<br>• Failed hardware<br>• Two SX<br>• False Diagnosis<br>• Complication- Nonunion<br>• Revision<br>• Minor |
| 122. | Reed, Mark | • Waiting on Nurse Review<br>• Lost wages |
| 123. | Robbinson-Woods, Theresa | • BMP-2<br>• Wrong Cage<br>• Kyphosis<br>• Sleep Apnea<br>• Obesity<br>• No hospital consent<br>• Prior Mental Health Issues<br>• COPD<br>• One SX<br>• False Diagnosis<br>• Complication- Nonunion |
| 124. | ████████ C.R. | • BMP-2<br>• False Diagnosis<br>• Misc- experi sur<br>• Minor |
| 125. | Schmidt, Kim | • Threat of Paralysis/Wheelchair<br>• C1 C2 False Pannus Diagnosis<br>• No Surgery<br>• EDS |
| 126. | Schmit, Kevin | • Baxano<br>• False Diagnosis<br>• Complication- Nerve |
| 127. | Schmit, Patrick | • HTN<br>• Baxano<br>• One SX |
| 128. | Schoborg, Brandon | • BMP-2 Contraindicated<br>• One SX<br>• Minor |
| 129. | Schuster, Ronald | • BMP-2<br>• One SX<br>• Lost Wages<br>• Shanti Shuffle<br>• OP Report 8 Days Late<br>• AxiaLIF |

**CATEGORIES CHART**
**HAMILTON COUNTY CASES**

| | | |
|---|---|---|
| | | • False Diagnosis<br>• Complication- Nonunion |
| 130. | Scully, Ali | • BMP-2 Contraindicated<br>• False Diagnosis<br>• Complication- HW Mal<br>• Scoliosis<br>• Minor<br>• Two SX<br>• Informed Consent Not Correct |
| 131. | Sears, Ruthie | • BMP-2 Contraindicated<br>• False Diagnosis<br>• Complication- HW Mal<br>• Minor<br>• Consent Form Incorrect |
| 132. | Setters, Dana | • PureGen<br>• Baxano<br>• C1 C2 False Pannus<br>• Failed Hardware<br>• Insurance Denial<br>• Two SX<br>• Lost Wages<br>• False Diagnosis<br>• Complication- Nerve<br>• Misc- Experi Sur<br>• EDS |
| 133. | Shannon, Asia | • BMP-2 Contraindicated<br>• Threat of Paralysis/Wheelchair<br>• False Diagnosis<br>• Misc- Fused 55 Degree Curve Skel Mature adol<br>• Scoliosis<br>• Minor<br>• One SX<br>• Spinal Fusion Bleed |
| 134. | Shepherd, Charlann | • Misc- Spondylolisthesis<br>• False Diagnosis<br>• Obesity<br>• Sleep Apnea<br>• HTN<br>• One SX |
| 135. | Shott, Greg | • Deceased<br>• Complication- Nonunion<br>• BMP-2 |

17

## CATEGORIES CHART
## HAMILTON COUNTY CASES

| | | |
|---|---|---|
| | | • Pancreatic Cancer<br>• One SX<br>• Late Dictation |
| 136. | Slayback, Heather | • BMP-2 Contraindicated<br>• False Diagnosis<br>• Failed Hardware<br>• Diabetes<br>• Minor<br>• One SX |
| 137. | Smoote, Orris | • BMP-2<br>• Failed hardware<br>• Elderly 70+<br>• HTN<br>• One SX |
| 138. | Stamps, Earl | • Waiting on Nurse Review |
| 139. | Stephenson, Tempie | • Waiting on Nurse Review |
| 140. | Stigall, Deon | • BMP-2 Contraindicated<br>• Kyphosis<br>• Minor<br>• False Diagnosis<br>• Mental Health Issues |
| 141. | Stratman, Sierra | • BMP-2<br>• Threat of Paralysis/Wheelchair<br>• Surgery While Dr. Durrani Was Suspended<br>• AxiaLIF<br>• False Diagnosis<br>• Complication- HW Mal/Nonunion<br>• Revision |
| 142. | Tackett, Ryan | • BMP-2 Contraindicated<br>• Complication- HW Mal<br>• Insurance Denial<br>• Minor |
| 143. | Tanner, Ryan | • HTN<br>• Sleep Apnea<br>• Incomplete Consent Form<br>• One SX<br>• Revision |
| 144. | Taylor, Alex | • BMP-2 Contraindicated<br>• Minor<br>• Kyphosis<br>• One SX<br>• Lost Wages |

## CATEGORIES CHART
## HAMILTON COUNTY CASES

| | | |
|---|---|---|
| 145. | Thaeler, Ben | • BMP-2<br>• Threat of Paralysis/Wheelchair<br>• Scoliosis<br>• Failed hardware<br>• False Diagnosis<br>• Complication- Infection |
| 146. | Vance, Jordan | • Threat of Paralysis<br>• Klippel-Feil Syndrome<br>• Scoliosis<br>• Five SX<br>• Late Dictation<br>• Lost Wages |
| 147. | Wallace, Shannon | • BMP-2 Contraindicated<br>• Insurance Denial<br>• False Diagnosis<br>• Minor |
| 148. | Wallace, Vicki | • BMP-2<br>• False Diagnosis<br>• One SX<br>• No Consent Form |
| 149. | Walsh, Lindsay | • Lost wages<br>• BMP-2 Contraindicated<br>• False Diagnosis<br>• Insurance Denial<br>• Minor<br>• One SX |
| 150. | Ward, Helen | • Elderly 70+<br>• Sleep Apnea<br>• HTN<br>• Obesity<br>• BMP-2<br>• Failed Hardware<br>• False Diagnosis<br>• OP Report 3 Days Late<br>• Revision<br>• Misc- did corpectomies for sub<br>• Misc- Uniplate ost bone |
| 151. | Weber, Cathleen | • BMP-2 Contraindicated<br>• Minor<br>• False Diagnosis<br>• Threat of Paralysis/Wheelchair<br>• Incorrect Consent Form |

**CATEGORIES CHART**
**HAMILTON COUNTY CASES**

| | | |
|---|---|---|
| | | • One SX |
| 152. | Webber, Daniel | • Lost wages<br>• BMP-2<br>• PureGen<br>• No Hospital Consent<br>• Insurance Denial<br>• Failed hardware<br>• False Diagnosis<br>• Complication- Nonunion<br>• Revision |
| 153. | Webster, Brandon | • BMP-2 Contraindicated<br>• False Diagnosis<br>• Late Dictation<br>• Incorrect Consent Form<br>• Pneumothorax during surgery<br>• One SX |
| 154. | Weisbecker, Laura | • Lost wages<br>• Baxano<br>• False Diagnosis<br>• Complication- Pars Fx Nerve<br>• Revision<br>• One SX |
| 155. | ▮▮▮▮▮▮ J.W. | • Waiting on Nurse Review |
| 156. | Worley, Teresa | • Waiting on Nurse Review |
| 157. | Wyatt, Cheryl | • False Diagnosis<br>• Complication- Nonunion<br>• Revision<br>• One SX<br>• Misc- Consent C56 but did C45 too |
| 158. | Wyatt, Emanuel | • BMP-2<br>• False Diagnosis<br>• Misc- Fused for hemangioma |
| 159. | Young, Evelyn | • BMP-2<br>• One SX |
| 160. | Zmyslo, Hannah | • False Diagnosis<br>• Misc- Nl MRI; no indications other than blocks<br>• Minor<br>• One SX |

# PROPOSED AGENDA

## DETERS LAW OFFICE
## PROPOSED AGENDA ITEMS FOR DECEMBER 14 CASE MANAGEMENT
## CONFERENCE

**1. The sanction we are requesting under CR37 for Dr. Durrani refusing a deposition.**

We believe this is the most important issue in fair trials and resolving this litigation. It has been fully briefed.

**2. Trials**

These are trials which have been on the parties and counsel calendars from now and for ten years. From August 1, 2016 for ten years, Judge Guckenberger set three trials a month. Our point is that whatever cases are set—no one can claim they aren't available on these dates.

We want to stress that over a year ago Judge Guckenberger told both sides—prepare yourself for teams of lawyers to try more than one case at a time.

If we can try three or four trials at once, so can they. These are the largest law firms in Cincinnati.

We have agreed to move trials for mediation purposes. We will not agree to further trial continuances.

**3. Group Trials**

There are group trials allowed in medical malpractice cases. This case involved in irony—Dr. Durrani counsel and Judge Ruehlman.

We suggest group trials. If there were group trials, we would agree to move solo trials.

**4. "Best Cases"**

To help resolve this litigation, we suggest "best cases" go first and/or we pick one, they pick one.

We attach a "best case" list.

**5. Gag Order**

We would like the Court to acknowledge that any press in our Hamilton County cases where Judge Ruehlman has no gag order would not violate the Butler gag order.

Judge Guckenberger would never rule on this.

**6. Pending Motions to Dismiss**

The motions have been briefed or where not briefed, they are still the same issues in all of them.  These are also issues Judge Guckenberger and Judge Ruehlman have already ruled upon as reflected by our responses.

**7. Medical Records For Trials**

We want a stipulation from defense counsel that ALL medical records to try a case will be stipulated to, subject to any other issue like relevancy.  This would apply to both parties across the board including our clients past treating records.  In past trials, they won't agree until after we subpoena what we need.

**8. Subpoenas on Witnesses**

For any witness employees or controlled by a party, they should work with schedules without subpoenas.  We have been forced to subpoena and then they want us to work out the schedule.  This most applies to West Chester employees.

**9. Service on Durrani by Regular Mail**

This was allowed by Judge Guckenberger.  We have some more cases to do it on.  We have a pending and fully briefed Motion.

**10. Motions In Limine**

The attached is a list of these Motions applicable to every trial.

# LAW ON DISCOVERY ABUSE

## A CASE IN WHICH JUDGE RUEHLMAN DISMISSED A CASE WHERE THE PLAINTIFF GAVE A DEPOSITION BUT WAS NOT COOPERATIVE. IT WAS UPHELD ON APPEAL.

D87500397

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

FIVE STAR FINANCIAL
CORPORATION, *et al.*

       Plaintiffs

       vs.

MERCHANTS BANK & TRUST
COMPANY, *et al.*

       Defendants

:
:
:
:
:
:
:
:
:
:
:

Case No. A 0911042
(Consolidated with Case No. A0800266)

Judge Ruehlman

ENTRY DISMISSING COMPLAINT

ENTERED
MAR 18 2010

This matter came before the Court upon the Motion of Defendants Merchants Bank & Trust Co., Don Patterson, Paul Silva, and Mark Sams to Dismiss Plaintiffs, Five Star Financial Corporation and Steven A. Winter's Complaint. After considering the Motion and Supporting and Opposing Memoranda filed by the parties, the oral arguments presented by counsel, and the Court being otherwise sufficiently advised, the Court finds that the Motion is well-taken and is hereby granted in all respects. Therefore,

IT IS ORDERED that Plaintiff's Five Star Financial Corporation's and Steven A. Winter's Complaint against Defendants Merchants Bank & Trust, is dismissed in its entirety with prejudice. Costs are taxed to the Plaintiffs.

THERE IS NO JUST REASON FOR DELAY.

SO ORDERED this *18* day of *March*, 2010.

                              *For* Judge Robert Ruehlman

Submitted for entry by:

John M. Hands (0040151)
Jesse R. Lipcius (0078274)
ULMER & BERNE, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Phone: (513) 698-5000; Fax: (513) 698-5001
jhands@ulmer.com
jlipcius@ulmer.com
*Attorneys for Defendants*

Copies to:

Bryce A. Lenox, Esq.
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
*Attorney for The Merchants Bank and Trust
Company*

Jeffrey P. McSherry, Esq.
BRICKER & ECKLER LLP
9277 Centre Pointe Drive, Suite 100
West Chester, OH 45069
*Attorney for The Merchants Bank and Trust
Company*

J. Michael Debbeler
GRAYDON HEAD & RITCHEY
1900 Fifth Third Center
511 Walnut Street
Cincinnati, OH 45202
*Attorney for Defendant Peoples Community Bank*

Louis C. Schneider, Esq.
Richard M. Haines, Esq.
KOHNEN & PATTON LLP
PNC Center
201 E. Fifth Street, Suite 800
Cincinnati, OH 45202
*Attorneys for Defendant The Huntington
National Bank*

Has been seen and approved March 16,
2010:

Eric C. Deters, Esq.
ERIC C. DETERS & ASSOCIATES, P.S.C.
5247 Madison Pike
Independence, KY 45051-7941
*Attorney for Plaintiffs Five Star
Financial Corporation and Steve Winter*

Michael C. Fletcher, Esq.
GRIFFIN FLETCHER & HERNDON LLP
3500 Red Bank Road
Cincinnati, OH 45227
*Attorney for Cottage Savings Bank*

Robert A. McMahon, Esq.
EBERLY MCMAHON LLC
2321 Kemper Road, Suite 100
Cincinnati, OH 45206
*Attorney for Defendant Forge Lumber LLC*

Ryan F. Hemmerle, Esq.
KATZ, GREENBERGER & NORTON LLP
Fourth and Walnut Centre
105 E. Fourth Street, Suite 400
Cincinnati, OH 45202
*Attorney for Defendant Installed Building
Products, Inc., d/b/a Mollett Seamless Gutter
Company*

Leo Grote, Esq.
LEO GROTE LPA
Westlake Center
4555 Lake Forest Drive, Suite 194
Cincinnati, OH 45242
*Attorney for Defendant Leo Grote, LPA, as
Trustee*

Jonathan Dever, Esq.
DEVER LEGAL SERVICES
25323 Grandin Road
Cincinnati, OH 45208
*Attorney for Defendants Steven and Sarah Winter*

David W. Cliffe, Esq.
525 Vine Street, Suite 800
Cincinnati, OH 45202
*Attorney for Defendant National City Bank*

Candice J. Fogarty, Esq.
137 N. Main Street, Suite 500
Dayton, OH 45402
*Attorney for National City Bank*

Bruce K. Gilster, Esq.
119 E. Court Street, Suite 313
Cincinnati, OH 45202
*Attorney for Defendant Ferguson Enterprises Inc.*

Kevin R. Feazell, Esq.
CORS & BASSETT, LLC
537 East Pete Rose Way, Suite 400
Cincinnati, OH 45202
*Attorney for Defendant McGill Smith Punshon, Inc.*

Lawrence C. Baron, Esq.
Assistant Prosecuting Attorney
230 E. Ninth Street, Suite 4000
Cincinnati, OH 45202
*Attorneys for Defendants Auditor and Treasurer of Hamilton County, Ohio*
Richard O. Hamilton, Jr., Esq.
ROBBINS, KELLY, PATTERSON & TUCKER
7 West Seventh Street, Ste 1400
Cincinnati, OH 45202

Timothy R. Billick, Esq.
5601 Hudson Drive, Suite 400
Hudson, OH 44236

Lori Wight, Esq.
LERNER, SAMPSON & ROTHFUSS
Mercantile Center
120 E. Fourth Street, Suite 800
P.O. Box 5480
Cincinnati, OH 45202-4007

# PROPOSED SANCTION FOR DR. DURRANI REFUSING DEPOSITION

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| **EXHIBIT A** | : | **JUDGE RUEHLMAN** |
| | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | **ORDER ON RULE 37** |
| **ABUBAKAR ATIQ** | : | **SANCTION** |
| **DURRANI, M.D., et al** | : | |
| | : | |
| **Defendants** | : | |

On all cases in which Dr. Durrani has refused a deposition, pursuant to Ohio Civil Rule 37, the Court hereby Orders that at the trial of all those cases, the Court will instruct the jury as follows:

Dr. Durrani was indicted on August 7, 2013 for 5 counts under 18 U.S.C. Section 1035- false statements related to healthcare matters and 5 counts under 18 U.S.C. Section 1347- health care fraud.

On October 16, 2013, Dr. Durrani was indicted for 12 more counts under 18 U.S.C. Section 1347- health care fraud; 12 more counts under 18 U.S.C. section 1035; 1 count under 18 U.S.C. section 1341 and 2- fraud and swindles; and 11 counts under 21 U.S.C. section 841(a)(1)- unlawful distribution of a controlled substance.

On July 25, 2013, Dr. Durrani promised a federal judge in the Southern District of Ohio he would not flee the Court's jurisdiction.

The same judge set Dr. Durrani's trial for August 18, 2014.

In December 2013, Dr. Durrani fled the United States to Pakistan.

1

There is no extradition treaty with Pakistan, therefore, the U.S. government cannot bring Dr. Durrani back to the United States.

Dr. Durrani's Kentucky and Ohio medical licenses were permanently revoked. This happened after the care and treatment of his patients, not before, At the time he treated the Plaintiff, he had his medical license.

Dr. Durrani informed his counsel he will not return to the United States and his counsel has represented this fact on the record in open court.

Dr. Durrani has refused to give a deposition in this case. A deposition is sworn testimony and allows Plaintiff's counsel an opportunity to cross-examine Dr. Durrani on all issues relating to this case. A deposition is important. Dr. Durrani has cheated Plaintiff from one.

The jury is instructed they are allowed to consider all of this in their deliberation in this matter as it is a just and proper sanction from this Court.

So Ordered this _____ day of December, 2015.


_____
JUDGE ROBERT RUEHLMAN

2

# PENDING MOTIONS IN HAMILTON COUNTY CASE BY CASE

# FACT/ISSUE TWO

The attached are the list of motions pending in each filed case.

For the most part, ALL are either fully briefed or are the same as those fully briefed.

See next fact/issue three.

## PENDING MOTIONS IN HAMILTON COUNTY CASES

1. **Jeff Potts- A1206877**
   a. Plaintiffs Motion to Modify Rule 37 Sanction
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's motion to vacate order of January 29, 2015 (consolidation order)

2. **Cathy Beil- A1302781**
   a. Motion to Compel (Qui Tam info)
   b. Motion for a protection order (protect qui tam info)
   c. Plaintiffs' Motion to Modify Rule 37 Sanctions
   d. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   e. Defendant's motion to vacate order of January 29, 2015 (consolidation order)
   f. WCH- MSJ (SOL, Durrani not employee, not properly plead IIED)
   g. Durrani- MSJ (SOL)

3. **Doris Botner- A1302782**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015

4. **Tammy Mann- A1302870**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. JL motion for bifurcation
   e. JL Motion in limine to preclude Dr. Wilkey from relying on other patients medical records
   f. JL- MSJ

5. **Chris Clark- A1302874**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. JL Motion to bifurcate
   e. JL- MSJ

6. **Sarra Mueller- A1302875**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015

## PENDING MOTIONS IN HAMILTON COUNTY CASES

    c.  Defendant's Motion to vacate order of January 29. 2015
    d.  Motion for leave to Amend Complaint
    e.  CCHMC motion to Stay and alternatively modify case management order
    f.  Plaintiffs' motion to compel
    g.  CCHMC & Durrani motion for gag order

**7. Sierra Stratman- A1305127**
    a.  Plaintiffs' Motion to Modify Rule 37 Sanctions
    b.  Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c.  Defendant's Motion to vacate order of January 29. 2015
    d.  Durrani motion for continuance
    e.  Motion for extension to respond to Good Sam MTD (Good Sam 41a 12 days later)
    f.  Good Sam MTD

**8. George Hutchinson- A1305173**
    a.  Plaintiffs' Motion to Modify Rule 37 Sanctions
    b.  Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c.  Defendant's Motion to vacate order of January 29. 2015
    d.  Christ Motion for Stay of Discovery
    e.  Christ Motion for leave to extend expert disclosure deadline
    f.  Plaintiffs motion to stay pending consolidation
    g.  Christ MTD
    h.  Motion for Gag order
    i.  Motion under Rule 37
    j.  Plaintiff Motion to Amend Pleadings on BMP2 Product Liability claim

**9. Rebecca Breitenstein- A1306847**
    a.  Plaintiffs' Motion to Modify Rule 37 Sanctions
    b.  Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c.  Defendant's Motion to vacate order of January 29. 2015
    d.  Motion to stay proceedings pending Consolidation Decision and Clarification
    e.  Plaintiffs motion for extension of time to file a response to TCH MTD
    f.  Christ MTD
    g.  Durrani & CAST- MSJ
    h.  Motion to amend and supplement Pleadings on BMP2 Products Liability claim
    i.  Motion for leave to file Plaintiffs amended complaint and for an order to Join Christ as defendant

**10. Alissa Hightchew- A1306915**
    a.  Plaintiffs' Motion to Modify Rule 37 Sanctions

## PENDING MOTIONS IN HAMILTON COUNTY CASES

    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. CCHMC motion for protective order regarding Depo of Karen W Sparling
    e. Joint motion to issue new Case management order resetting all dates and deadlines
    f. Plaintiffs motion to set all motions pending in Exhibit A cases for hearing and set all cases for trial including case management orders
    g. Plaintiffs motion under CR37
    h. CCHMC MTD (Consumer sales and products liability claims)
    i. Motion to amend on BMP2 Products liability claim.

**11. Kimberly Schmidt- A1307239**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiffs motion under CR37

**12. Heather Pickett- A1307306**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Motion to vacate scheduling order
    e. Plaintiffs motion for extension of time and/or to Stay WCH's motion transferring venue pending consolidation
    f. WCH motion to file amended answer and to transfer venue
    g. CCHMC MJP

**13. Staci Smith- A1307300**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Durrani & CAST- MSJ

**14. Eric Courtney- A1307859**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. JL MTD Plaintiffs motion for mediation for lack of subject matter jurisdiction
    e. Plaintiffs motion under CR37
    f. Order granting alternative service, denying JL MTD

## PENDING MOTIONS IN HAMILTON COUNTY CASES

**15. NL a minor by his parents Lyndon and Maurine Lang- A1307857**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. Plaintiffs Motion to serve Dr. Durrani and CAST by regular mail
   e. CCHMC motion to extend expert ID date
   f. Plaintiffs motion under CR37
   g. Entry denying alternative service, denying CCHMC MTD

**16. Jack Marcheschi- A1308383**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. Durrani Motion to extend expert ID date
   e. Plaintiffs motion under CR37
   f. Motion to strike plaintiff's supplemental memo regarding alternative service
   g. Motion for an order for Alternative service

**17. Kevin Schmit- A1400009**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. Plaintiffs motion under CR37
   e. Plaintiffs motion alternative service
   f. JL MTD (vicarious liability, fraud, spoliation)- being held in abeyance

**18. Amanda Ayers- A1400578 & A1502990**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. Christ motion to stay discovery
   e. Christ MTD
   f. Christ motion to transfer
   g. Plaintiffs motion to serve Durrani & CAST by mail
   h. Plaintiffs motion for alternative service

**19. Karen Crissinger- A1400584 & A1502865**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015

## PENDING MOTIONS IN HAMILTON COUNTY CASES

    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiff motion alternative service
    e. Plaintiff motion to serve Durrani Regular Mail
    f. Christ motion to stay discovery
    g. Christ MTD

**20. Scott Daniel- A1400577**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Motion to stay proceedings pending finalization of consolidation and case management conference
    e. Plaintiffs motion under CR37
    f. Plaintiffs motion for alternative service

**21. Brandon Lacinak- A1400586**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Durrani motion to extend expert ID date
    e. Plaintiffs motion under CR37
    f. Plaintiff motion for alternative service

**22. Kathryn Curley- A1400583**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiffs motion under CR37
    e. Entry denying alternative service, motion to amend

**23. Jacob Cotter- A1401186**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiffs motion for alternative service

**24. Rahman Nisbett- A1503128**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Motion to serve Durrani & CAST regular mail

## PENDING MOTIONS IN HAMILTON COUNTY CASES

   e. Durrani motion to transfer to original judge

**25. Hilary Levandofsky- A1401181**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. Plaintiffs motion under CR37
   e. Plaintiffs motion for alternative service
   f. Entry denying Christ and Durrani MTD, granting Christ reconsider MTD, granting TCH MTD

**26. Patrick Calligan- A1401182**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. Plaintiffs motion to set all motions pending in Exhibit A cases for hearing and trial
   e. CCHMC- MJP
   f. Plaintiffs motion CR37
   g. Plaintiffs motion for alternative service

**27. Brandon Schoborg- A1401289**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. Motion to stay proceedings pending finalization of consolidation and CMC
   e. CCHMC- MJP
   f. Plaintiffs motion CR37
   g. Motion alternative service

**28. Kevin McDonald- A1401890**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. CCHMC & Durrani motion to extend expert ID date
   e. Plaintiffs motion CR37
   f. Plaintiffs motion alternative service

**29. Samantha Mink- A1401893**
   a. Plaintiffs' Motion to Modify Rule 37 Sanctions

## PENDING MOTIONS IN HAMILTON COUNTY CASES

    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Motion to serve Durrani & CAST regular mail
    e. Plaintiffs motion CR37
    f. Entry denying alternative service

**30. Cory Wright- A1402534**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. CCHMC & Durrani motion to extend expert ID date
    e. Plaintiffs motion alternative service

**31. Jimmy Allen- A1402537**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Good Sam- MTD
    e. Plaintiffs CR37
    f. Plaintiffs motion alternative service

**32. Laura Aker- A1402757**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Extension for us to respond MJP
    e. Durrani & CCHMC MJP
    f. Motion to stay pending ruling on Dec action
    g. Plaintiffs CR37
    h. Plaintiffs motion alternative service

**33. Charles Nelson- A1402760**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiffs CR37 motion
    e. Plaintiffs alternative service motion

**34. Helen Ward- A1402762**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions

## PENDING MOTIONS IN HAMILTON COUNTY CASES

    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiffs motion under CR37

**35. Timothy Byrd- A1402938**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiffs CR37 motion
    e. Plaintiffs alternative service motion

**36. Alex Taylor- A1402940**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiffs CR37 motion
    e. Defendants motion to reconsider authorizing alternative service

**37. Christina Rutter- A1402941**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiffs motion under CR37
    e. Plaintiffs motion for alternative service

**38. Anthony Bode- A1402942**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiffs motion under CR37
    e. Plaintiffs motion for alternative service
    f. CCHMC- MTD (Consumer sales and Products liability)

**39. Emanuel Wyatt- A1403073**
    a. Plaintiffs' Motion to Modify Rule 37 Sanctions
    b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c. Defendant's Motion to vacate order of January 29. 2015
    d. Plaintiffs motion under CR37
    e. Plaintiffs motion for alternative service
    f. Order granting Stay pending consolidation

## PENDING MOTIONS IN HAMILTON COUNTY CASES

      g.  CCHMC- MJP

**40. Trey Billing- A1403074**
    a.  Plaintiffs' Motion to Modify Rule 37 Sanctions
    b.  Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c.  Defendant's Motion to vacate order of January 29. 2015
    d.  Plaintiffs motion under CR37
    e.  Order granting motion for alternative service

**41. Amber Johnson- A1403174**
    a.  Plaintiffs' Motion to Modify Rule 37 Sanctions
    b.  Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c.  Defendant's Motion to vacate order of January 29. 2015
    d.  Plaintiffs motion under CR37
    e.  Plaintiffs motion for alternative service

**42. Shamyia Ford- A1402763**
    a.  Plaintiffs' Motion to Modify Rule 37 Sanctions
    b.  Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c.  Defendant's Motion to vacate order of January 29. 2015
    d.  Plaintiffs motion under CR37
    e.  Order Denying alternative service

**43. Michelle Beavan- A1402758 & A1505423**
    a.  Plaintiffs' Motion to Modify Rule 37 Sanctions
    b.  Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c.  Defendant's Motion to vacate order of January 29. 2015
    d.  Plaintiffs motion under CR37
    e.  Order granting alternative service

**44. Jacob Durham- A1403361**
    a.  Plaintiffs' Motion to Modify Rule 37 Sanctions
    b.  Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
    c.  Defendant's Motion to vacate order of January 29. 2015
    d.  Plaintiffs motion under CR37
    e.  Plaintiffs motion for alternative service

**45. Sydney Jones- A1403363**
    a.  Plaintiffs' Motion to Modify Rule 37 Sanctions
    b.  Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015

## PENDING MOTIONS IN HAMILTON COUNTY CASES

     c. Defendant's Motion to vacate order of January 29. 2015
     d. Plaintiffs motion under CR37
     e. Plaintiffs motion for alternative service
     f. Plaintiff motion to Stay proceedings pending consolidation
     g. Durrani MJP

**46. Asia Shannon- A1403365**
     a. Plaintiffs motion to serve by regular mail
     b. Plaintiffs' Motion to Modify Rule 37 Sanctions
     c. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
     d. Defendant's Motion to vacate order of January 29. 2015
     e. Plaintiffs motion under CR37
     f. Plaintiffs motion for alternative service
     g. CCHMC motion to dismiss Counts V and VI

**47. Ruth Sears- A1403488**
     a. Plaintiffs' Motion to Modify Rule 37 Sanctions
     b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
     c. Defendant's Motion to vacate order of January 29. 2015
     d. Plaintiffs motion under CR37
     e. Plaintiffs motion for alternative service

**48. Brenda Butler- A1403489**
     a. Plaintiffs' Motion to Modify Rule 37 Sanctions
     b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
     c. JL motion to dismiss motion to set mediation for lack of subject matter jurisdiction
     d. Defendant's Motion to vacate order of January 29. 2015
     e. Plaintiffs motion under CR37
     f. Plaintiffs motion for alternative service
     g. JK MTD negligence, negligent credentialing and supervision, fraud, consumer sales, product liability, spoliation, loss of consortium

**49. Lindsey Walsh- A1403490**
     a. Plaintiffs' Motion to Modify Rule 37 Sanctions
     b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
     c. Defendant's Motion to vacate order of January 29. 2015
     d. Plaintiffs motion under CR37
     e. Plaintiffs motion for alternative service
     f. CCHMC MTD consumer sales and product liability

**50. Daniel Webber- A1403644**

## PENDING MOTIONS IN HAMILTON COUNTY CASES

   a. Plaintiffs' Motion to Modify Rule 37 Sanctions
   b. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   c. Defendant's Motion to vacate order of January 29. 2015
   d. Plaintiffs motion under CR37
   e. Order granting alternative service, denying Riverview MTD

**51. Minuet Healy- A1403757**
   a. Motion to serve Durrani by regular mail
   b. Plaintiffs' Motion to Modify Rule 37 Sanctions
   c. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   d. Defendant's Motion to vacate order of January 29. 2015
   e. Plaintiffs motion under CR37
   f. Entry denying alternative service

**52. Troy Beckelhimer- A1404075**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. Plaintiffs' Motion to Modify Rule 37 Sanctions
   c. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   d. Defendant's Motion to vacate order of January 29. 2015
   e. Plaintiffs motion under CR37
   f. Order granting alternative service
      i. Defense motion to reconsider
   g. Motion to Stay pending consolidation
   h. Motion for extension of time to file a response to Christ MTD
   i. Christ motion to stay discovery
   j. Christ MTD

**53. Deon Stigall- A1501742**
   a. Motion to serve Durrani via regular mail
   b. Motion to transfer to original judge
   c. Plaintiffs' Motion to Modify Rule 37 Sanctions
   d. Motion to Set Consolidated Hamilton County cases for Mandatory Mediation August 31, 2015
   e. Defendant's Motion to vacate order of January 29. 2015
   f. Plaintiffs motion under CR37
   g. Plaintiffs motion for alternative service
   h. Agreed order staying case
   i. CCHMC & Durrani MTD
   j. Motion to file plaintiffs psychological medical report under seal (needed to respond to CCHMC & Durrani MTD)

**54. Patricia Shott- A1502144**
   a. Motion to serve Durrani by mail

## PENDING MOTIONS IN HAMILTON COUNTY CASES

     b.  Durrani MSJ
     c.  Christ Motion to stay, Dismiss

**55. Bradley Arnold- A1504450**
     a.  Motion to serve Durrani via regular mail
     b.  Motion to transfer to original judge
     c.  Plaintiffs motion for Sanctions and Attorney's fees
     d.  Durrani MTD
     e.  CCHMC MTD

**56. Beth Ann Leisring- A1504457**
     a.  Motion to serve Durrani via regular mail
     b.  Motion to transfer to original judge
     c.  CCHMC MTD

**57. Taura Halbert- A1504448**
     a.  Motion to serve Durrani via regular mail
     b.  Motion to transfer to original judge
     c.  Plaintiffs motion for Sanctions and Attorney's fees
     d.  CCHMC MTD

**58. Evelyn Young- A1502866**
     a.  Motion to serve Durrani via regular mail
     b.  Motion to transfer to original judge
     c.  Christ Motion to stay
     d.  Christ MTD
     e.  Christ Motion to transfer

**59. Derek List- A1503024**
     a.  Motion to serve Durrani via regular mail
     b.  Motion to transfer to original judge
     c.  Christ MTD
     d.  Christ Motion to transfer
     e.  Christ motion for a stay of discovery

**60. Shawnda Benton- A1503378**
     a.  Motion to serve Durrani via regular mail
     b.  Motion to transfer to original judge
     c.  Plaintiffs motion for leave to file out of time
     d.  Christ MTD
     e.  Christ Motion for stay
     f.  Durrani MTD

**61. Jacob Feltner- A1503379**
     a.  Motion to serve Durrani via regular mail
     b.  Motion to set all cases for CMC and trial

## PENDING MOTIONS IN HAMILTON COUNTY CASES

    c. CCHMC MTD

**62. Dawn Merland- A1503354**
    a. Motion to serve Durrani via regular mail
    b. Plaintiffs motion for leave to file out of time
    c. Christ MTD
    d. Christ Motion for stay

**63. Kevin Hunley- A1503649**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge

**64. Karen Feltner- A1503650**
    a. Motion to serve Durrani by regular mail
    b. Durrani motion to transfer to original Judge

**65. Angela Pennington- A1503651**
    a. Motion to serve Durrani via regular mail
    b. Motion to transfer to original judge
    c. CCHMC MTD

**66. Rahman Nisbett A1503128**
    a. Motion to serve Durrani via regular mail
    b. Motion to transfer to original judge
    c. Christ MTD
    d. Christ Motion to transfer
    e. Christ Motion to stay

**67. Tracy Esselman- A1503652**
    a. Motion to serve Durrani via regular mail
    b. Motion for extension of time to respond to JL MTD
    c. JL and individual defendants MTD
    d. JL motion to be reassigned to original judge

**68. Alexandra Scully- A1504452**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Plaintiffs motion for sanctions and attorney's fees
    c. Motion to transfer to original judge
    d. CCHMC MTD

**69. Margaret Dailey- A1504459**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. CCHMC MTD

**70. Kameron McNeal- A1503653**

**PENDING MOTIONS IN HAMILTON COUNTY CASES**

    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Motions for sur-reply
    d. Good Sam MTD
    e. CCHMC MTD

**71. Joshua Kauffman- A1503668**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. CCHMC MTD

**72. Tyler McKnight- A1503669**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge

**73. Robert Houghton II- A1504133**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Plaintiffs motion for sanctions and attorney's fees
    d. CCHMC MTD

**74. Maggie Knauer- A1504130**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Plaintiffs motion for sanctions and attorney's fees
    d. Christ MTD, transfer, stay

**75. Rose Koehler- A1504135**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Durrani MTD
    d. Plaintiffs motion for sanctions and attorney's fees
    e. Christ MTD
    f. Christ motion for stay & transfer
    g. CCHMC MTD

**76. Carla Griessman A1504132**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Plaintiffs motion for sanctions and attorney's fees
    d. CCHMC MTD

**77. Sara Jonas- A1504134**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Plaintiffs motion for sanctions and attorney's fees

## PENDING MOTIONS IN HAMILTON COUNTY CASES

    d. Christ MTD, motion to stay discovery, motion to transfer
    e. CCHMC MTD

**78. Julie Freeman- A1504131**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Plaintiffs motion for sanctions and attorney's fees
    d. Christ MTD, stay discovery, transfer, motion to strike,
    e. CCHMC MTD

**79. John D Collins- A1504451**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Plaintiffs motion for sanctions and attorney's fees
    d. CCHMC MTD

**80. Michael Brophy- A1504460**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Plaintiffs motion for sanctions and attorney's fees
    d. Christ MTD, motion for stay of discovery, transfer
    e. CCHMC MTD

**81. Adam Hartman- A1504465**
    a. Plaintiffs motion to serve Durrani by mail
    b. Durrani MTD
    c. Motion for sanctions and attorney's fees
    d. Motion to transfer to original judge
    e. CCHMC MTD

**82. Paul Baker- A1504464**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Plaintiffs motion for sanctions and attorney's fees
    d. Good Sam MTD
    e. Durrani MTD

**83. Grant McKenney- A1504462**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. CCHMC MTD

**84. Orris Smoote- A15 04461**
    a. Plaintiffs motion to serve Durrani by regular mail
    b. Motion to transfer to original judge
    c. Plaintiffs motion for sanctions and attorney's fees

**PENDING MOTIONS IN HAMILTON COUNTY CASES**

      d. Durrani MTD
      e. Christ MTD, motion to stay, motion to transfer

**85. Cathleen Weber- A1504463**
      a. Plaintiffs motion to serve Durrani by regular mail
      b. Motion to transfer to original judge
      c. CCHMC MTD

**86. Samantha Redrow- A1504456**
      a. Plaintiffs motion to serve Durrani by regular mail
      b. Motion to transfer to original judge
      c. Plaintiffs motion for sanctions and attorney's fees
      d. CCHMC MTD

**87. Charlann Shepherd- A1504455**
      a. Plaintiffs motion to serve Durrani by regular mail
      b. JL MTD, motion to strike

**88. Maggie Knauer Exec. For the Estate of Christopher- A1504787**
      a. Plaintiffs motion to serve Durrani by regular mail
      b. Motion to transfer to original judge
      c. CCHMC MTD
      d. Christ motion for stay of discovery
      e. Christ MTD, transfer

**89. Tracy Janson- A1505049**
      a. Plaintiffs motion to serve Durrani by regular mail
      b. Motion to transfer to original judge
      c. Christ MTD, strike

**90. Martha Hutton- A1505050**
      a. Plaintiffs motion to serve Durrani by regular mail
      b. Christ MTD, Strike, stay of discovery

**91. Michael Odulana- A1505419**
      a. Plaintiffs motion to serve Durrani by regular mail
      b. CCHMC MTD
      c. Plaintiffs motion to set all motions pending in Exhibit A for hearing and set all cases for trial

**92. Ryan Tackett- A1505420**
      a. Plaintiffs motion to serve Durrani by regular mail
      b. Motion to transfer to original judge
      c. CCHMC MTD

**93. Deborah Doyle (NEED AOM)-A1505421**

## PENDING MOTIONS IN HAMILTON COUNTY CASES

   a. Plaintiffs motion to serve Durrani by regular mail
   b. Motion to transfer to original judge
   c. CCHMC MTD
   d. Christ MTD, stay of discovery
   e. Motion for extension of time to file AOM (10-9-15)

**94. Andrew Carr- A1505422**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. Motion to transfer to original judge
   c. CCHMC MTD
   d. Christ MTD, stay of discovery, strike

**95. Kenneth Conger- A1505424**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. Motion to transfer to original judge
   c. CCHMC MTD

**96. Shannon Wallace- A1505425**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. CCHMC MTD

**97. Troy Fite- A1505426**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. Motion to transfer to original judge
   c. CCHMC MTD

**98. Denise Hamilton- A1505427**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. Motion to transfer to original judge
   c. CCHMC MTD

**99. Heather Pickett v. CCHMC- A1505428 (might need consolidated)**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. CCHMC MTD

**100. Brandon Webster- A1505429**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. Motion to transfer to original judge
   c. CCHMC MTD

**101. Alyssa Hall- A1505430**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. Motion to transfer to original judge
   c. CCHMC MTD
   d. Plaintiffs motion to set all motions pending in Exhibit A for hearing and
      set all cases for trial

## PENDING MOTIONS IN HAMILTON COUNTY CASES

**102. Stephanie Moore- A1505431**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. Motion to transfer to original judge
   c. CCHMC MTD

**103. Tiffany Messerschmidt- A1505432**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. Motion to transfer to original judge
   c. CCHMC MTD

**104. Chris Haynes- A1505433**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. CCHMC MTD (Counts V and VI)
   c. Motion to set all exhibit a cases for hearing and trials

**105. Antoine Powell- A1505434**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. Motion to transfer to original judge
   c. CCHMC MTD

**106. Michelle Agee v. Alphatec- A1505508**
   (Fed Court, also in front of Ghiz so if we get remanded needs motion to transfer to Ruehlman)

**107. Lynne List- A1505509**

**108. Patricia Legendre- A1505510 (JUDGE WEST HAS)**
   a. Motion to transfer to Judge R pending!
   b. Motion to serve Durrani regular mail
   c. Christ MTD, strike, stay of discovery
   d. CCHMC MTD

**109. Karen Johnson- A1505624**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. WCH MTD, Strike
   c. Motion set all pending exhibit A cases for hearing and trial

**110. Jan Campbell- A1505625**
   a. Plaintiffs motion to serve Durrani by regular mail

**111. Kayla Burton- A1505678**
   a. Plaintiffs motion to serve Durrani by regular mail
   b. CCHMC MTD (counts V & VI)

**112. Alisa Wilson- A1505775**
   a. Plaintiffs motion to serve Durrani by regular mail

## PENDING MOTIONS IN HAMILTON COUNTY CASES

      b.  CCHMC MTD (counts V & VI)

**113.**   **Forrest Crowe- A1505776**
      a.  Plaintiffs motion to serve Durrani by regular mail
      b.  CCHMC MTD

**114.**   **Tara Brown- A1505777**
      a.  Plaintiffs motion to serve Durrani by regular mail
      b.  WCH

**115.**   **Kenneth Mahlenkamp- A1505868**
      a.  Plaintiffs motion to serve Durrani by regular mail

**116.**   **Gary Neu- A1505869**
      a.  Plaintiffs motion to serve Durrani by regular mail

**117.**   **Victoria Landrum- A1505870**
      a.  Plaintiffs motion to serve Durrani by regular mail
      b.  Good Sam MTD

**118.**   **Earl Thomas Stamps Jr.- A1505871**
      a.  CCHMC MTD

**119.**   **Theresa Robbinson-Woods- A1505872**
      a.  Plaintiffs motion to serve Durrani by regular mail

**120.**   **Tempie Stephenson- A1505873**
      a.  Plaintiffs motion to serve Durrani by regular mail
      b.  WCH MTD, strike

**121.**   **Cheryl Wyatt- A1505970**

**122.**   **Jennifer Myers- A1505971**

**123.**   **Jessica Hastings- A1505972**

**124.**   **Michelle Ann Noble- A1506041**

**125.**   **Thomas August- A1506042**

**126.**   **Teresa Worley- A1506043**

**127.**   **Gayle Bachman- A1506044**

**128.**   **Michael Koelblin- A1506160**
      a.  Plaintiffs motion to serve Durrani by regular mail

## PENDING MOTIONS IN HAMILTON COUNTY CASES

129. **Mary Ravenscraft- A1506161**
   a. Plaintiffs motion to serve Durrani by regular mail

130. **Patrick Schmit- A1506162**
   a. Plaintiffs motion to serve Durrani by regular mail

131. **Joseph Davis- A1506163**
   a. Plaintiffs motion to serve Durrani by regular mail

132. **Tammy Jones- A1506164**
   a. Plaintiffs motion to serve Durrani by regular mail

133. **Jenny Grimm- A1506165**
   a. Plaintiffs motion to serve Durrani by regular mail

134. **Stefanie Deaton- A1506166**
   a. Plaintiffs motion to serve Durrani by regular mail

135. **Laura Weisbecker- A1506223**

136. **David Harris- A1506224**

137. **Barbara Boggs Deceased by Thru Her Son Next Friend MD- A1506302**

138. **Ronald Schuster- A1506303**

139. **Ryan Tanner- A1506304**

140. **Hannah Zmyslo- A1506305**

141. **Jacqueline Judkins- A1506306**

142. **Damon Deck- A1506307**

143. **Kimberly Luse- A1506308**

144. **Benjamin Thaeler- A1504440**
   a. CCHMC MTD
   b. Deaconess MTD
   c. Motion For Extension of Time to file AOM
   d. Durrani/Cast Motion to Transfer to original Judge-Jim Brockman
   e. Durrani/Cast MTD
   f. Abubakar Atiq Durrani Motion to transfer to original judge
   g. Plaintiffs motion for sanctions and attorney's fees
   h. Plaintiffs motion to serve Dr. Durrani and Cast by regular mail

## PENDING MOTIONS IN HAMILTON COUNTY CASES

145. **Denise & Nick Benge-A1504447**
   a. Christ Hospital Motion For Stay of discovery
   b. Christ Hospital Motion to dismiss
   c. Christ Hospital Motion to Transfer
   d. Christ Hospital Motion to Strike
   e. Motion to Transfer of Durrani/Cast to Original Judge
   f. Plaintiffs motion for sanctions and attorney's fees
   g. Plaintiffs Motion to serve Dr. Durrani and Cast By Mail

146. **Adrian lilly-A1504446**
   a. CCHMC MTD
   b. Abubakar Atiq Durrani M.D. Motion to Transfer
   c. Plaintiffs motion to serve Dr. Durrani by Mail

147. **Nick & Denise Benge-A1504454**
   a. Christ Motion for Stay of discovery
   b. Christ Hospital MTD
   c. Christ Hospital Motion to Transfer
   d. Christ hospital Motion to Strike
   e. Durrani/Cast Motion to Transfer
   f. Plaintiffs motion for sanctions and attorney's fees
   g. Plaintiffs motion to serve Dr. Durrani by Mail

148. **Nick & Denise Benge-A1504454**
   a. Christ Motion for Stay of discovery
   b. Christ Hospital MTD
   c. Christ Hospital Motion to Transfer
   d. Christ hospital Motion to Strike
   e. Durrani/Cast Motion to Transfer
   f. Plaintiffs motion for sanctions and attorney's fees
   g. Plaintiffs motion to serve Dr. Durrani by Mail

149. **Heather Slayback-A1504453**
   a. Christ Motion for Stay of discovery
   b. CCHMC MTD
   c. Durrani/Cast Motion to Transfer
   d. Christ hospital Motion to Strike
   e. Durrani/Cast Motion to Transfer
   f. Plaintiffs motion for sanctions and attorney's fees
   g. Plaintiffs motion to serve Dr. Durrani by Mail

150. **Richard Elliot-A1504466**
   a. Christ Motion for Stay of discovery
   b. Good Samaritan/Tri Health MTD
   c. Durrani/Cast MTD

**PENDING MOTIONS IN HAMILTON COUNTY CASES**

    d. Durrani/Cast Motion to Transfer
    e. Plaintiffs motion for sanctions and attorney's fees
    f. Plaintiffs motion to serve Dr. Durrani by Mail

151. **Vicki & Steve Wallace-A1504458**
    a. Durrani/Cast Motion to Transfer
    b. Plaintiffs motion for sanctions and attorney's fees
    c. Plaintiffs motion to serve Dr. Durrani by Mail

# PENDING MOTIONS IN HAMILTON COUNTY CASES

# FACT/ISSUE THREE

The attached are the list of motions pending on each filed case grouped by the motion subject matter.

The rulings on these, to be consistent, can be the same on each one. Once the Court determines the decision, it need not concern itself with the same motion facts/law on the other similar motions.

## LIST OF ALL PENDING MOTIONS IN HAMILTON COUNTY CASES

1. **Plaintiffs Motion to Modify Rule 37 Sanction**

   The Plaintiffs want an appropriate sanction against Dr. Durrani for refusing to give a deposition. Rule 37 allows default, striking of defenses and striking of experts. Plaintiffs point out in their Motion the following:

   A. It's supposed to be a sanction.

   B. It is not an Evidence Rule 401 and 403 analysis.

   C. Plaintiffs just want the jury to know the truth of why Dr. Durrani is not at trial.

   D. If Plaintiffs did not give a deposition, their claim would be dismissed.

   E. Defendant is benefitting from Dr. Durrani not being at trial because the jury thinks he's choosing not to be there and is busy working and/or overseas like a "doctor without borders." Four juries in Butler County thought this. The defense also benefits because he's not there to face cross-examination.

   F. This is the clear discretion of the Court.

2. **Motion to Set Consolidated Hamilton County Cases for Mandatory Mediation August 31, 2015**

   This is now moot. Mediation is over.

3. **Defendant's Motion to Vacate Order of January 29, 2015 (Consolidation Order)**

   The Court should overrule this based upon already being upheld on appeal.

4. **Motion to Compel (Qui Tam Info)**

   West Chester/UC Health paid $4.1 million to the U.S. Government based upon over 300 Dr. Durrani clients bringing a claim for Dr. Durrani doing unnecessary surgeries and West Chester/UC Health receiving Medicaid/Medicare money for them. It's relevant for the following reasons:

   A. Determining whether a medical lien has been paid for our clients.

   B. For a specific Plaintiff, it could be an admission.

   C. To determine admissibility and knowledge.

## LIST OF ALL PENDING MOTIONS IN HAMILTON COUNTY CASES

5. **Motion for A Protection Order (Protect Qui Tam Info)**

   See #4.  This motion should be denied.

6. **WCH- MSJ (SOL, Durrani Not Employee, Not Properly Plead IIED)**

   This has been fully briefed.

7. **Durrani- MSJ (SOL)**

   This has been fully briefed.

8. **JL Motion for Bifurcation**

   This has been fully briefed.

9. **JL Motion in Limine to Preclude Dr. Wilkey from Relying On Other Patient's Medical Records\**

   This has been fully briefed.  Every Judge who has tried a case has ruled that if we satisfy Evidence Rule 702 it would be allowed.

10. **JL- MSJ**

    This has been fully briefed.

11. **Motion for Leave to Amend Complaint**

    All motions for leave to amend complaints under Rule15 should be allowed.

12. **CCHMC Motion to Stay and Alternatively Modify Case Management Order**

    This is moot.

13. **Plaintiffs' Motion to Compel**

    Children's Hospital has refused to produce documents.

14. **CCHMC & Durrani Motion for Gag Order**

    This Court has never granted a gag order on any Dr. Durrani case.

15. **Durrani Motion for Continuance**

    This is moot.

## LIST OF ALL PENDING MOTIONS IN HAMILTON COUNTY CASES

16. **Motion for Extension to Respond to Good Sam MTD (Good Sam 41a 12 Days Later)**

   These type of extensions should be readily granted.

17. **Good Sam MTD**

   This has been fully briefed.

18. **Christ Motion for Stay of Discovery**

   Christ is yet to produce any documents we have formally requested to support our negligent credentialing and retention claim against them.

19. **Christ Motion for Leave to Extend Expert Disclosure Deadline**

   This is moot. They already disclosed. If they want to disclose more experts, no big deal.

20. **Christ MTD**

   The *Young* decision resolves this.

21. **Motion for Gag Order**

   There should be no gag order.

22. **Plaintiff Motion to Amend Pleadings On BMP2 Product Liability Claim**

   This has been fully briefed.

23. **Plaintiffs Motion for Extension of Time to File a Response to TCH MTD**

   These types of extensions should be readily granted.

24. **Durrani & CAST- MSJ**

   This has been fully briefed.

25. **Motion for Leave to File Plaintiffs Amended Complaint and for an Order to Join Christ as Defendant**

   These types of motions should be readily granted.

26. **CCHMC Motion for Protective Order Regarding Depo of Karen W Sparling**

## LIST OF ALL PENDING MOTIONS IN HAMILTON COUNTY CASES

We should be allowed to depose her on the insurance coverage issue.

**27. Joint Motion to Issue New Case Management Order Resetting All Dates and Deadlines**

This is moot. This is the purpose of December 14, 2015.

**28. Plaintiffs Motion to Set All Motions Pending in Exhibit a Cases for Hearing and Set All Cases for Trial Including Case Management Orders**

This is moot. This is the purpose of December 14, 2015.

**29. CCHMC MTD (Consumer Sales and Products Liability Claims)**

Even Judge Guckenberger has overruled all Motions to Dismiss consumer sales claims. This is fully briefed. The motion should be overruled.

**30. Plaintiffs Motion for Extension of Time and/or to Stay WCH's Motion Transferring Venue Pending Consolidation**

This is moot.

**31. WCH Motion to File Amended Answer and to Transfer Venue**

This has been fully briefed. It should be overruled.

**32. CCHMC MJP**

*Young* decides the SOR issue. The other issue should also be overruled.

**33. Durrani & CAST- MSJ**

This has been fully briefed.

**34. JL MTD Plaintiffs Motion for Mediation for Lack of Subject Matter Jurisdiction**

This is moot.

**35. Order Granting Alternative Service, Denying JL MTD**

Doesn't need any action.

**36. Plaintiffs Motion to Serve Dr. Durrani and CAST by Regular Mail**

## LIST OF ALL PENDING MOTIONS IN HAMILTON COUNTY CASES

We had asked for email service. Judge Guckenberger granted service by mail. We did. We want to keep it the same. They also have entered Answers to the complaints already.

### 37. CCHMC Motion to Extend Expert ID Date

They already disclosed. If they want to disclose more, fine.

### 38. Entry Denying Alternative Service, Denying CCHMC MTD

Doesn't need any action.

### 39. Motion to Strike Plaintiff's Supplemental Memo Regarding Alternative Service

See #36.

### 40. Motion for an Order for Alternative Service

See #36.

### 41. JL MTD (Vicarious Liability, Fraud, Spoliation)- Being Held in Abeyance

Should be overruled.

### 42. Christ Motion to Stay Discovery

It's far past time for discovery to move forward against Christ. They have used these Motions to not produce anything for a year.

### 43. Christ Motion to Transfer

All these should be denied. They are repetitive to the consolidation challenge and denied.

### 44. Entry Denying Alternative Service, Motion to Amend

No action required.

### 45. Durrani Motion to Transfer to Original Judge

See #43.

### 46. Entry Denying Christ and Durrani MTD, Granting Christ Reconsider MTD, Granting TCH MTD

## LIST OF ALL PENDING MOTIONS IN HAMILTON COUNTY CASES

This has been fully briefed.

**47. Plaintiffs Motion to Set All Motions Pending in Exhibit a Cases for Hearing and Trial**

Moot. This is the purpose of December 14.

**48. CCHMC & Durrani Motion to Extend Expert ID Date**

They have already disclosed. If they want to disclose more, fine.

**49. Motion to Stay Pending Ruling On Dec Action**

We withdraw.

**50. Defendants Motion to Reconsider Authorizing Alternative Service**

See #43.

**51. CCHMC- MTD (Consumer Sales and Products Liability)**

See #29.

**52. Durrani MJP**

*Young*, plus fully briefed.

**53. CCHMC Motion to Dismiss Counts V and VI**

*Young.*

**54. JL MTD Negligence, Negligent Credentialing and Supervision, Fraud, Consumer Sales, Product Liability, Spoliation, Loss of Consortium**

*Young.*

**55. CCHMC MTD Consumer Sales and Product Liability**

*Young.*

**56. Order Granting Alternative Service, Denying Riverview MTD**

No action required.

**57. Motion for Extension of Time to File a Response to Christ MTD**

## LIST OF ALL PENDING MOTIONS IN HAMILTON COUNTY CASES

These types of Motions should be readily granted.

### 58. Agreed Order Staying Case

Moot.

### 59. CCHMC & Durrani MTD

This has been fully briefed.

### 60. Motion to File Plaintiffs Psychological Medical Report Under Seal (Needed to Respond to CCHMC & Durrani MTD)

This should be granted.

### 61. Durrani MSJ

This has been fully briefed.

### 62. Plaintiffs Motion for Sanctions and Attorney's Fees

This has been fully briefed.

### 63. Durrani MTD

*Young.*

### 64. CCHMC MTD

*Young.*

### 65. Christ Motion to Transfer

Again, just another attempt to stop consolidation.

### 66. Motion for Extension of Time to Respond to JL MTD

These types of Motions should be readily granted.

### 67. JL and Individual Defendants MTD

This has been fully briefed.

### 68. JL Motion to Be Reassigned to Original Judge

See #65.

## LIST OF ALL PENDING MOTIONS IN HAMILTON COUNTY CASES

**69. Motions for Sur-Reply**

This has been fully briefed.

**70. Good Sam MTD**

*Young.*

**71. Christ MTD, Transfer, Stay**

*Young.*

**72. JL MTD, Motion to Strike**

*Young* and been fully briefed.

**73. Motion for Extension of Time to File AOM (10-9-15)**

These have all been granted by Judge Guckenberger and Judge Bessey.

**74. CCHMC MTD (Counts V and VI)**

*Young.*

**75. Motion to Transfer to Judge R Pending**

See #65.

**76. WCH MTD, Strike**

*Young.*

**77. Deaconess MTD**

*Young.*

**78. Motion for Extension of Time to File AOM**

See #73.

# GROUP MOTIONS

# GROUP MOTIONS

1. Sanction on Rule 37 for Dr. Durrani's refusal to give a deposition.

2. Motion for Service by regular mail against Dr. Durrani.

3. Motion to Compel- Beil

# MOTIONS IN LIMINE FOR ALL TRIALS

# MOTIONS IN LIMINE FOR ALL TRIALS

1. Motion In Limine On Use Of Prior Cases/Litigation Against Our Expert Dr. Keith Wilkey, Defense Experts And Dr. Durrani

2. Motion In Limine On Deposition Testimony Of Dr. Durrani Which Contradicts His Actions In This Case

3. Motion In Limine To Allow The Testimony Of Dr. Tayeb Pertaining To Standard Dr. Durrani And CAST Practices

4. Motion In Limine On Hearsay Within Hearsay In The Medical Records

5. Motion In Limine Regarding Rehabilitation Of Our Expert After Cross Examination

6. Plaintiff's Motion In Limine Regarding Evidence Of Dr. Durrani's Fraudulent Misrepresentation Of The Necessity Of Surgery In Other Patients To Show Common Intent, Opportunity And Plan

7. Plaintiff's Motion In Limine On BMP-2 Or Infuse

8. Plaintiff's Motion To Hold Separate Trials With Separate Juries For What Has Been Referred To As Stage I And Stage II

9. Plaintiff's Motion In Limine On Apportionment And Damages Stage II

10. Plaintiff's Motion In Limine To Exclude Medical Field Jurors

11. Plaintiff's Motion In Limine On Dr. Durrani's CV, Resume And Background

12. Plaintiff's Motion In Limine To Allow Flight As Consciousness Of Guilt

13. Plaintiff's Motion In Limine On BMP-2 As A Damages Issue

14. Plaintiff's Motion To Exclude All Defense Expert Opinions, All Demonstrative Exhibits Of The Defense And Any Exhibits Not Produced In Discovery

15. Plaintiff's Motion In Limine Of Potential Jurors Who Have Time Constraints

16. Plaintiff's Motion For A Real Rule 37 Sanction

17. Plaintiff's Motion In Limine Regarding Preemptory Challenges

18. Plaintiff's Motion In Limine Regarding Dr. Durrani's Current Employment & Practice In Pakistan

19. Plaintiff's Motion In Limine Regarding Dr. Wilkey's Use Of Patients Medical Records In Stage II Of Proceedings

20. The Coddling Of Dr. Durrani While Victims Receive No Concern For Their Plight

# PLAINTIFFS' POSITION ON ALL PRETRIAL ISSUES

## What Would Be Favorable Ruling for Plaintiff On All Pre-trial Issues

- **Sanction**
  - Judge tells the jury the whole truth surrounding Durrani's, indictment, flight, and current practice in Pakistan
- **Apportionment**
  - There is no apportionment between Dr. Durrani and the hospital
  - Damages are separate
- **BMP-2 / Puregen**
  - Jury will be allowed to consider the use of BMP-2 for non-economic damages (increased fear of contracting cancer) as well as for malpractice and lack of informed consent.
- **Bifurcation**
  - The trial will not be bifurcated. There will be one stage, in which the jury hears all about Dr. Durrani's negligence as well as the hospital's misconduct/ negligence.
- **Peer Review**
  - Plaintiffs will be allowed to reference and ask questions regarding what information is unknown/unavailable due to the peer review privilege as well as to if Durrani ever underwent a peer review process.
- **Peremptory Challenges**
  - Each side only gets 3 peremptory challenges. Plaintiffs get 3 and Defendants get 3 collectively.
  - Alternative is Plaintiffs get 6 and Defendants get 3 each (6 total)
- **Similarly Situated Plaintiffs**
  - Plaintiffs will be allowed to call other "patients" who saw Dr. Durrani and he treated them the same (threat of paralysis, head will fall off, make them as good as new) in order to show common scheme and plan.
- **Flight as consciousness of Guilt**
  - Plaintiffs will be allowed to make reference to and argue that Dr. Durrani's subsequent flight from the United States is evidence of his consciousness of guilt regarding his care and treatment of Plaintiffs.
- **Motions regarding potential jurors**
  - Jurors who have heard of Dr. Durrani will be voir dired separately but not lose their place in "line" if they attest that they can be fair and impartial
  - Jurors who work for defendant hospitals or have close family who works for defendant hospitals will be excluded for cause
  - Jurors who indicate that they are not free for a potential 4+ week trial will be excluded for cause.

- **Motions regarding current & prior cases against Dr. Wilkey**
  - Defendants will not be allowed to question Dr. Wilkey about prior medical malpractice claims unless they are "similarly situated" as required by the rules
  - If defendants are allowed to use unrelated, collateral cases to cross examine Dr. Wilkey, Plaintiffs will be allowed to use as much unrelated, collateral matter to examine defense witnesses.
    - Plaintiffs will also be allowed to introduce evidence of all of the lawsuits pending against Dr. Durrani to call his character into question like Defense did with Dr. Wilkey
  - Plaintiffs will be allowed to rehabilitate Dr. Wilkey using anything that Defense used in its cross-examination of Dr. Wilkey (ex: his deposition where certain quotes were taken out of context)
- **Motion to exclude all expert opinions and demonstratives from the defense**
  - The defense failed to provide detailed explanations of their experts' opinions, as requested by Plaintiffs numerous times. Because of their failure to disclose, any expert testimony that was not provided in a detailed report will be excluded and striken.
  - Likewise Defendants have failed to provide any demonstrative exhibits they intend to use at trial, as requested, and will be precluded from doing so. This includes any powerpoint presentations, spine models, etc...
- **Motion regarding Durrani's CV and background**
  - Plaintiffs may use Dr. Durrani's CV and background (including records from the Ohio, Kentucky, and Texas State Medical Boards) to call into question Dr. Durrani's character for truthfulness.
- **Reputation / opinion testimony**
  - Treating physicians and any other witness that is qualified to answer questions as to Dr. Durrani's reputation in the medical community or their opinion as to Dr. durrani's character for truthfulness and/or as a spine surgeon will be allowed to answer.
- **Dr. Tayeb's testimony about Standard Practices at CAST**
  - Dr. Tayeb will be allowed to testify as to how CAST was run by Dr. Durrani and how it's operating procedures were backwards from how they should have been. (Ex: surgery first and then conservative care and not the other way around)
- **Motions regarding Durrani's prior deposition testimony**
  - Plaintiffs will be allowed to introduce statements Dr Durrani made in previous depositions that contradict his actions in the case at bar. (ex: he states conservative care should be exhausted and that pain alone is not a surgical indication).
-

# CHILDREN'S CASES NO SOR ISSUE

## CHILDREN'S CASES WITH NO SOR ISSUE UNDER ANY CIRCUMSTANCE
## BECAUSE FILED BEFORE THEIR 19TH BIRTHDAY

1. Kayla Burton
2. Jacob Cotter
3. ████████ K.C.
4. Jacob Durham
5. Jacob Feltner
6. ████████ W.H.
7. Emily Haynes
8. ████████ E.G.H.
9. ████████ N.L.
10. Kyra McClendon
11. Sarra Mueller
12. ████████ C.R.
13. ████████ J.W.
14. Cory Wright

## CHILDREN'S CASES
## DATE OF BIRTH/DATE OF FILING

| CHILDREN'S CASE | DOB | DATE OF FILING | FILED BEFORE 19th BDAY | AGE WHEN CASE WAS FILED |
|---|---|---|---|---|
| Kayla Burton | /97 | 10/20/15 | YES | 18 |
| Jacob Cotter | /96 | 2/27/14 | YES | 17 |
| K.C. | /00 | 10/26/15 | YES | 15 |
| Jacob Durham | /95 | 6/9/14 | YES | 18 |
| Jacob Feltner | /94 | 2/19/13 | YES | 18 |
| W.H. | /98 | 8/4/14 | YES | 16 |
| Emily Haynes | /97 | 10/9/15 | YES | 18 |
| E.G.H. | /98 | 6/12/14 | YES | 15 |
| N.L. | /99 | 11/26/13 | YES | 13 |
| Kyra McClendon | /97 | 7/24/13 | YES | 16 |
| Sarra Mueller | /97 | 4/19/13 | YES | 15 |
| C.R. | /05 | 5/19/14 | YES | 9 |
| J.W. | /00 | 10/26/15 | YES | 14 |
| Cory Wright | /94 | 2/24/13 | YES | 18 |

# CHILDREN'S CASES FILED AT AGE 19

**CHILDREN'S CASES FILED AT AGE 19**

| CHILDREN'S CASE | DOB | DATE OF FILING | FILED BEFORE 19th BDAY | AGE WHEN CASE WAS FILED |
|---|---|---|---|---|
| Caela Finnell | ▮/94 | 6/9/14 | NO | 19 |
| Minuet Healy | ▮/95 | 6/25/14 | NO | 19 |
| Alyssa Hightchew | ▮/94 | 10/14/13 | NO | 19 |
| Charles Hurd | ▮/93 | 4/15/13 | NO | 19 |
| Jack Marcheschi | ▮/94 | 12/23/13 | NO | 19 |
| Samantha Mink | ▮/94 | 4/1/14 | NO | 19 |
| Ruthie Sears | ▮/94 | 6/12/14 | NO | 19 |
| Jordan Vance | ▮/94 | 6/9/14 | NO | 19 |

**Re:** Minors and Statute of Repose 2305.113

**Answer:** A minor is given one additional year to file a medical malpractice claim after the disability is removed. In this case the disability is being a minor. So after the client turns 18 client has until they are 19 to file suit regardless of whether 4 years has passed. Ex. Client is a Children's patient who had surgery in 2007 when client was 10, client decides to bring suit in 2015. Client is now 18. Client will have until 2016 to bring suit. R.C. 2305.113(C) exceptions provide for this. Client must bring suit before client turns 19. Client is legally permissible to bring suit even though 8 years have passed.

**Note:** Because a parent's claim for loss of consortium against a third party for injuries to the parent's minor child is an interest that is "joint and inseparable" from the child's own claim for purposes of RC 2305.16, a parent's claim may be tolled during the child's disability.[15]

**Case Law/Treatises:**

{¶ 2} R.C. 2305.113(C) sets a four-year statute of repose for medical-malpractice claims.[1] Except for minors or those of **293 unsound mind, a person must file a *409 medical claim no later than four years after the alleged act of malpractice occurs or the claim will be barred. Limited exceptions also exist for malpractice discovered during the fourth year after treatment and for malpractice that leaves a foreign object in a patient's body. R.C. 2305.113(D)(1) and (2). Those exceptions allow one additional year after discovery of an injury to file suit. *Id.*Ruther v. Kaiser, 2012-Ohio-5686, ¶ 2, 134 Ohio St. 3d 408, 408-09, 983 N.E.2d 291, 292-93

**Statute of limitations extended for minority and unsound mind.** If the injured party is a minor or of unsound mind at the time the cause of action accrues, the statute of limitations set forth in RC 2305.113 applies after the disability is removed.[5] Further, if there is more than one

1

injured party and their interests are "joint and inseparable," the disability of one benefits all of the injured parties with joint and inseparable interests.[6]

Oh. Personal Injury § 14:23 (2015 ed.)

**Four years is the outside limit, usually.** The commencement of medical malpractice claims has an outside limit of four years from the date the incident giving rise to the claim occurred except for those matters involving minors or those of unsound mind,[11] and except for those actions falling within the parameters of RC 2305.113(D).

Pursuant to RC 2305.113(D), the four-year limit also may be slightly extended if the injured party could not have discovered the injury within three years of the incident giving rise to the claim but, in the exercise of reasonable care and diligence, does discover the injury within four years of the incident giving rise to the claim. In that case, the injured party must commence the action within one year after the discovery of the injury.[12] The injured party must establish by clear and convincing evidence that with reasonable care and diligence he could not have discovered the injury within the three-year period.[13]

**Parents have special periods.** Parents enjoy the same extended statute of limitations for a medical malpractice injury as their child enjoys. The parents have a legal share in the child's claim. The parents' damages and the child's physical injury both derive from the same alleged facts and wrongful acts of defendants. While the parents' claim remains independent and separate in the sense that they alone control it, their claim is "joint and inseparable" from the child's claim because the parent cannot recover damages from defendants if defendants are found not to be liable for the child's injury.[14]

2

Because a parent's claim for loss of consortium against a third party for injuries to the parent's minor child is an interest that is "joint and inseparable" from the child's own claim for purposes of RC 2305.16, a parent's claim may be tolled during the child's disability.[15]

Oh. Personal Injury § 14:23 (2015 ed.)

**Statutes:**

**2305.113**

(C) Except as to persons within the age of minority or of unsound mind as provided by section 2305.16 of the Revised Code, and except as provided in division (D) of this section, both of the following apply:

(1) No action upon a medical, dental, optometric, or chiropractic claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim.

(2) If an action upon a medical, dental, optometric, or chiropractic claim is not commenced within four years after the occurrence of the act or omission constituting the alleged basis of the medical, dental, optometric, or chiropractic claim, then, any action upon that claim is barred.

(D)(1) If a person making a medical claim, dental claim, optometric claim, or chiropractic claim, in the exercise of reasonable care and diligence, could not have discovered the injury resulting from the act or omission constituting the alleged basis of the claim within three years after the occurrence of the act or omission, but, in the exercise of reasonable care and diligence, discovers the injury resulting from that act or omission before the expiration of the four-year period

3

specified in division (C)(1) of this section, the person may commence an action upon the claim not later than one year after the person discovers the injury resulting from that act or omission. Ohio Rev. Code Ann. § 2305.113 (West)

**O.R.C.-2305.116**

Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.

After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought.

Ohio Rev. Code Ann. § 2305.16 (West)

4

# LIST OF ALL CHILDREN'S CASES

## CHILDREN'S CASES IN WHICH THE PLAINTIFF SHOULD NOT BE CHEATED OUT OF THEIR CLAIMS (YOUNG) BASED UPON FRAUD IN THE CONCEALMENT OF DR. DURRANI'S CONDUCT

**These patients had no idea what Dr. Durrani did to them with Children's knowledge until after they were 19.**

**CHILDREN'S CASES**
**DATE OF BIRTH/DATE OF FILING**

| CHILDREN'S CASE | DOB | DATE OF FILING | FILED BEFORE 19th BDAY | AGE WHEN CASE WAS FILED |
|---|---|---|---|---|
| Laura Aker | /90 | 5/9/14 | NO | 23 |
| Brad Arnold | /88 | 4/10/13 | NO | 25 |
| Josh Ault | /90 | 5/28/14 | NO | 24 |
| Caiden Bailey | /92 | 8/4/14 | NO | 22 |
| Trey Billing | /92 | 5/28/14 | NO | 21 |
| Anthony Bode | /92 | 5/19/14 | NO | 21 |
| Kaitlyn Boggs | /93 | 4/10/14 | NO | 20 |
| Kayla Burton | /97 | 10/20/15 | YES | 18 |
| Kathleen Bushelman | /89 | 11/25/13 | NO | 24 |
| Patrick Calligan | /91 | 2/27/14 | NO | 22 |
| Andrew Carr | /79 | 4/11/13 | NO | 34 |
| John Collins | /89 | 2/3/14 | NO | 25 |
| Kenneth Conger | /90 | 5/9/14 | NO | 23 |
| Jacob Cotter | /96 | 2/27/14 | YES | 17 |
| K.C. | /00 | 10/26/15 | YES | 15 |
| Katherine Curley | /92 | 1/31/14 | NO | 21 |
| Scott Daniel | /77 | 1/31/14 | NO | 36 |
| Jacob Durham | /95 | 6/9/14 | YES | 18 |
| Carmille Easley | /85 | 4/19/13 | NO | 27 |
| Jacob Feltner | /94 | 2/19/13 | NO | 18 |
| Caela Finnell | /94 | 6/9/14 | NO | 19 |
| Troy Fite | /90 | 6/25/14 | NO | 23 |
| Shamyia Ford | /93 | 5/9/14 | NO | 20 |
| Christina Goldstein | /82 | 4/21/14 | NO | 31 |
| Paris Halbert | /92 | 8/4/14 | NO | 22 |
| Alyssa Hall | /87 | 2/4/14 | NO | 26 |
| Samantha Hamilton | /93 | 7/10/14 | NO | 21 |
| W.H. | /98 | 8/4/14 | YES | 16 |
| Adam Hartman | /92 | 8/4/14 | NO | 22 |
| Emily Haynes | /97 | 10/9/15 | YES | 18 |
| Minuet Healy | /95 | 6/25/14 | NO | 19 |
| Heather Heffner/ Leslie Powers | /84 | 7/18/14 | NO | 29 |
| E.G.H. | /98 | 6/12/14 | YES | 15 |
| Alyssa Hightchew | /94 | 10/14/13 | NO | 19 |

| | | | | |
|---|---|---|---|---|
| Robert Houghton II | /92 | 4/29/14 | NO | 21 |
| Charles Hurd | /93 | 4/15/13 | NO | 19 |
| Amber Johnson | /89 | 5/30/14 | NO | 25 |
| Sydney Jones | /90 | 6/9/14 | NO | 23 |
| Josh Kauffman | /92 | 7/3/14 | NO | 22 |
| Amanda Koch | /93 | 7/25/13 | NO | 20 |
| Brandon Lacinak | /93 | 1/31/14 | NO | 21 |
| Natasha Lainhart | /87 | 6/11/14 | NO | 26 |
| **N.L.** | /99 | 11/26/13 | YES | 13 |
| Beth Leisring | /93 | 4/8/13 | NO | 20 |
| Adrian Lilly | /90 | 12/27/13 | NO | 23 |
| Jack Marcheschi | /94 | 12/23/13 | NO | 19 |
| Brandon Mathis | /91 | 11/26/13 | NO | 21 |
| Kevin McDonald | /93 | 4/1/14 | NO | 20 |
| Kameron McNeal | /90 | 5/19/14 | NO | 23 |
| Tiffany Messerschmidt | /82 | 1/31/14 | NO | 31 |
| Kyra McClendon | /97 | 7/24/13 | YES | 16 |
| Grant McKenney | /92 | 8/4/14 | NO | 22 |
| Tyler McKnight | /92 | 7/11/14 | NO | 21 |
| Kameron McNeal | /90 | 5/19/14 | NO | 23 |
| Samantha Mink | /94 | 4/1/14 | NO | 19 |
| Stephanie Moore | /88 | 4/1/14 | NO | 25 |
| Sarra Mueller | /97 | 4/19/13 | YES | 15 |
| Tonya Neal | /92 | 4/9/13 | NO | 20 |
| Charles Nelson | /93 | 5/9/14 | NO | 21 |
| Michael Odulana | /91 | 7/25/13 | NO | 22 |
| Angela Pennington | /86 | 1/31/14 | NO | 27 |
| Heather Pickett | /89 | 10/31/13 | NO | 24 |
| Antoine Powell | /89 | 1/31/14 | NO | 24 |
| Samantha Redrow | /89 | 7/25/13 | NO | 24 |
| Laura Romito | /92 | 4/15/13 | NO | 20 |
| **C.R.** | /05 | 5/19/14 | YES | 9 |
| Brandon Schoborg | /89 | 3/4/14 | NO | 24 |
| Ali Scully | /89 | 4/15/13 | NO | 23 |
| Ruthie Sears | /94 | 6/12/14 | NO | 19 |
| Asia Shannon | /93 | 6/9/14 | NO | 20 |
| Heather Slayback | /90 | 2/3/14 | NO | 23 |
| Deon Stigall | /90 | 4/19/13 | NO | 22 |
| Ryan Tackett | /92 | 2/27/14 | NO | 22 |
| Alexander Taylor | /92 | 5/19/14 | NO | 21 |
| Ben Thaeler | /91 | 10/14/13 | NO | 21 |
| Jordan Vance | /94 | 6/9/14 | NO | 19 |
| Adrienne Thomas- | /88 | 5/9/14 | NO | 26 |

| (Westcott) | | | | |
|---|---|---|---|---|
| Shannon Wallace | /91 | 1/31/14 | NO | 22 |
| Lyndsey Walsh | /92 | 6/12/14 | NO | 21 |
| Cathleen Weber | /89 | 2/3/14 | NO | 24 |
| Brandon Webster | /87 | 4/2/13 | NO | 25 |
| Kirstein Weisman | /92 | 11/26/13 | NO | 21 |
| J.W. — | /00 | 10/26/15 | YES | 14 |
| Cory Wright | /94 | 2/24/13 | YES | 18 |
| Emanuel Wyatt | /91 | 5/28/14 | NO | 22 |
| Corinne Zachry | /91 | 2/27/14 | NO | 22 |

# FACT/ISSUE FOUR

## Trial Settings

The Court has many options on this issue:

1.  Schedule one trial.

2.  Set the Plaintiffs best cases for trial as soon as possible to facilitate resolution.

3.  Set trials by groups as the Court has in the past in *Suida*.

4.  Keep the current trial schedule and set others.

5.  Substitute trials in for other scheduled cases.

See following fact/issue sections.

# CASES SET FOR TRIAL IN HAMILTON AND MOVED BEFORE DECEMBER 14, 2015

# (READY FOR TRIAL)

## CASES SET FOR TRIAL IN HAMILTON AND MOVED
## BEFORE DECEMBER 14, 2015.
## (They Were Set And Ready To Go And Can Be Set Now)

1. Julie Wright

2. Deon Stigall

3. Jeff Potts

4. Jacob Feltner

5. Doris Botner

6. Tammy Mann

7. Beth Leisring

8. Cathy Beil

9. Brandon Webster

10. Brad Arnold

11. Karen Feltner

12. Sarra Mueller

13. Ali Scully

14. Michael Odulana

15. George Hutchinson

16. Sierra Stratman

17. Samantha Redrow

18. Frieda Aaron

19. Chris Clark

20. Rebecca Breitenstein

21. Mary Ravenscraft

22. Alissa Hightchew

# CASES BEFORE JUDGE RUEHLMAN BECAUSE FILED AFTER CONSOLIDATION AND WERE NEVER BEFORE ANOTHER HAMILTON COUNTY JUDGE

## HAMILTON COUNTY CASES

**CASES JUDGE RUEHLMAN HAD PRIOR TO CONSOLIDATION:**

| | |
|---|---|
| Patrick Calligan | 1. A1401182 |
| Jacob Feltner | 2. A1503379 |
| Alyssa Hall | 3. A1505430 |
| Alissa Hightchew | 4. A1306915 |
| Brandon Mathis | 5. A1307861 |
| Michael Odulana | 6. A1505419 |
| Alex Taylor | 7. A1402940 |
| Tammy Mann | 8. A1302870 |
| Judy Young | 9. A1406361 |
| Chris Haynes for Emily Haynes | 10. A1505433 |
| Karen Johnson | 11. A1505624 |

**CASES ASSIGNED TO JUDGE RUEHLMAN AFTER CONSOLIDATION ORDER:**

| | |
|---|---|
| Heather Pickett (Childrens) | 1. A1505428 |
| Brandon Webster | 2. A1505429 |
| Alyssa Hall | 3. A1505430 |
| Stephanie Moore | 4. A1505431 |
| Tiffany Messerschmidt | 5. A1505432 |

### HAMILTON COUNTY CASES

| | |
|---|---|
| Chris Haynes for Emily Haynes | 6.  A1505433 |
| Antoine Powell | 7.  A1505434 |
| Lynne List | 8.  A1505509 |
| Karen Johnson | 9.  A1505624 |
| Jan Campbell | 10. A1505625 |
| Kayla Burton | 11. A1505678 |
| Alisa Wilson on behalf of ▮▮▮ J.W. | 12. A1505775 |
| Forrest Crowe on behalf of ▮▮▮ K.C. | 13. A1505776 |
| Tara Brown | 14. A1505777 |
| Kenneth Mahlenkamp | 15. A1505868 |
| Gary Neu | 16. A1505869 |
| Victoria Landrum | 17. A1505870 |
| Earl Stamps Jr. | 18. A1505871 |
| Teresa Robbinson-Woods | 19. A1505872 |
| Tempie Stephenson | 20. A1505873 |
| Cheryl Wyatt | 21. A1505970 |
| Jennifer Myers | 22. A1505971 |
| Jessica Hastings | 23. A1505972 |
| Michelle Noble | 24. A1506041 |

### HAMILTON COUNTY CASES

| | |
|---|---|
| Thomas Augst | 25. A1506042 |
| Teresa Worley | 26. A1506043 |
| Gayle Bachman | 27. A1506044 |
| Michael Koelblin | 28. A1506160 |
| Mary Ravenscraft | 29. A1506161 |
| Patrick Schmit | 30. A1506162 |
| Joseph Davis | 31. A1506163 |
| Tammy Jones | 32. A1506164 |
| Jenny Grimm | 33. A1506165 |
| Stephanie Deaton | 34. A1506166 |
| Laura Weisbecker | 35. A1506223 |
| David Harris | 36. A1506224 |
| Barbara Boggs, Deceased | 37. A1506302 |
| Ronald Schuster | 38. A1506303 |
| Ryan Tanner | 39. A1506304 |
| Hannah Zmyslo | 40. A1506305 |
| Jacqueline Judkins | 41. A1506306 |
| Damon Deck | 42. A1506307 |
| Kimberly Luse | 43. A1506308 |

## HAMILTON COUNTY CASES

| | |
|---|---|
| Mark Reed | 44. A1506490 |
| Dana Setters | 45. A1506570 |
| Michelle Agee | 46. A1506571 |
| Heather McCann | 47. A1506572 |
| Todd Ray | 48. A1506573 |
| Robert Campbell | 49. A1506574 |
| Jordan Vance | 50. A1506575 |
| Lawrence Pridemore | 51. A1506576 |
| Mackenzie Bender | 52. A1506577 |
| Arlene and Philip Fait | 53. A1506606 |
| Linda Favaron for Neil Favaron | 54. A1506607 |
| Connie and Robert Ellington | 55. A1506608 |
| Edythe and Roy Bishop | 56. A1506609 |

# 2016 DURRANI TRIALS

## 2016 DURRANI TRIALS

| Name | County | Hospital | Date |
|------|--------|----------|------|
| Jason Romer | Butler | West Chester | January 11, 2016 |
| Leona Beyer | Butler | West Chester | February 22, 2016 |
| Karen Crissinger | Hamilton | No Hospital | March 7, 2016 |
| Steven Schultz | Butler | West Chester | March 14, 2016 |
| Mary Zuerick | Hamilton | Journey Lite | April 4, 2016 |
| Dorothy Rose | Butler | West Chester | April 11, 2016 |
| Kevin Schmit | Hamilton | Journey Lite | April 18, 2016 |
| Brandon Lacinak | Hamilton | Children's | May 2, 2016 |
| Carol Wilson | Butler | West Chester | May 2, 2016 |
| Gerald Botner | Butler | West Chester | June 6, 2016 |
| Amanda Ayers | Hamilton | No Hospital | July 11, 2016 |
| Minuet Healy | Hamilton | Children's | July 25, 2016 |
| Sherri Lynn Allen | Butler | West Chester | August 1, 2016 |
| Joetta Nafe | Butler | West Chester | August 1, 2016 |
| Sandra Radeke | Butler | West Chester | August 1, 2016 |
| Brenda Butler | Hamilton | Journey Lite | August 22, 2016 |
| Laura Aker | Hamilton | Children's | September 6, 2016 |
| Patricia Boone | Butler | West Chester | September 6, 2016 |
| Carolyn Dotson | Butler | West Chester | September 6, 2016 |
| Vicky Wilson | Butler | West Chester | September 6, 2016 |
| ████████ C.R. | Hamilton | Children's | September 19, 2016 |
| Teresa Nichols | Butler | West Chester | October 3, 2016 |
| Frieda Aaron | Butler | West Chester | October 3, 2016 |
| Deena Borchers | Butler | West Chester | October 3, 2016 |
| Charles Nelson | Hamilton | Children's | October 12, 2016 |
| Jacob Durham | Hamilton | Children's | November 7, 2016 |
| Timothy Schulze | Butler | West Chester | November 14, 2016 |
| Cory Wright | Hamilton | Children's | November 14, 2016 |
| Trey Billing | Hamilton | Children's | November 14, 2016 |
| Sandra Dennis | Butler | West Chester | November 21, 2016 |
| Eric Courtney | Hamilton | Journey Lite | November 28, 2016 |
| Kevin McDonald | Hamilton | Children's | December 5, 2016 |
| Joseph Schimmel | Butler | West Chester | December 5, 2016 |
| William Dabney | Butler | West Chester | December 5, 2016 |

**\*This is to reflect how Durrani Defense Counsel has on their calendar, all of these trials.  They have three trials a month for ten years.**

# CASES COMING FROM BUTLER COUNTY WITH COMPLETED DISCOVERY AND WERE SET FOR TRIAL

**CASES COMING FROM BUTLER COUNTY WITH COMPLETED DISCOVERY AND WERE SET FOR TRIAL**

1. Jason Romer
2. Carol Wilson
3. Cindy Bartlett
4. Steven Schultz
5. Billy Wolsing
6. Mike Sand
7. Dorothy Rose
8. James Brown, Jr.
9. Damon Deck
10. Ronald Schuster
11. Rebecca Applegate
12. Kristine Dority
13. Leona Beyer
14. Katrina Allen
15. Robert Wilson

# BEST CASES COMING FROM BUTLER COUNTY

## BEST CASES

1. Christopher Atwood
2. Edythe Bishop
3. Gerald Botner
4. Latoya Bradshaw
5. Rebekah Brady
6. Christina Brashear
7. Vicki Buschur
8. Jessica Cochran
9. Brenda Conley
10. Darrill Earls
11. Connie Ellington
12. Neil Favaron
13. Arlene Fait
14. Erin Greelish
15. William Hayes
16. Kelly Hennessey
17. Jennifer Hickey
18. Robert Houghton
19. Carolyn Hursong
20. Katelyn Kauffman
21. Heather McCann
22. Kyra McClendon
23. Tonia McQueary
24. Lyndsey Middendorf
25. Todd Ray
26. Debbie Rodriguez
27. Dorothy Rose
28. Mike Sand
29. Andrew Schultz
30. Dana Setters
31. David Shempert

# BEST CASES READY FOR TRIAL BASED UPON DISCOVERY COMPLETE AND NO ISSUE SUCH AS SOR

**BEST CASES READY FOR TRIAL BASED UPON DISCOVERY COMPLETE AND NO ISSUE SUCH AS SOR**

1. Cathy Beil
2. Jacob Cotter
3. Jacob Durham
4. Kyra McClendon
5. ███████ C.R.
6. Dana Setters
7. Todd Ray
8. Lyndsey Middendorf
9. Heather McCann
10. Brenda Conley
11. Neil Favaron
12. Tonia McQueary
13. Kayla Burton
14. Steven Schutlz
15. Edythe Bishop
16. Teresa Nichols
17. Marjorie Newman
18. Rebecca Breitenstein
19. Mike Sand
20. Mackenzie Bender
21. Debbie Rodriguez

# HAMILTON COUNTY 2016 DURRANI TRIALS

## HAMILTON COUNTY
## 2016 DURRANI TRIALS

| Name | County | Hospital | Date |
|---|---|---|---|
| Karen Crissinger | Hamilton | No Hospital | March 7, 2016 |
| Mary Zuerick | Hamilton | Journey Lite | April 4, 2016 |
| Kevin Schmit | Hamilton | Journey Lite | April 18, 2016 |
| Brandon Lacinak | Hamilton | Children's | May 2, 2016 |
| Amanda Ayers | Hamilton | No Hospital | July 11, 2016 |
| Minuet Healy | Hamilton | Children's | July 25, 2016 |
| Brenda Butler | Hamilton | Journey Lite | August 22, 2016 |
| Laura Aker | Hamilton | Children's | September 6, 2016 |
| ▮▮▮▮▮ C.R. | Hamilton | Children's | September 19, 2016 |
| Charles Nelson | Hamilton | Children's | October 12, 2016 |
| Jacob Durham | Hamilton | Children's | November 7, 2016 |
| Cory Wright | Hamilton | Children's | November 14, 2016 |
| Trey Billing | Hamilton | Children's | November 14, 2016 |
| Eric Courtney | Hamilton | Journey Lite | November 28, 2016 |
| Kevin McDonald | Hamilton | Children's | December 5, 2016 |

# FIRST AND SECOND GROUPS OF 20

## FIRST GROUP OF 20

| Name | Date |
|------|------|
| 1.  Jason Romer | January 11, 2016 |
| 2.  Leona Beyer | February 22, 2016 |
| 3.  Steven Schultz | March 14, 2016 |
| 4.  Dorothy Rose | April 11, 2016 |
| 5.  Carol Wilson | May 2, 2016 |
| 6.  Gerald Botner | June 6, 2016 |

## SECOND GROUP OF 20

| | |
|------|------|
| 7.  Sherri Lynn Allen | August 1, 2016 |
| 8.  Joetta Nafe | August 1, 2016 |
| 9.  Sandra Radeke | August 1, 2016 |
| 10. Patricia Boone | September 6, 2016 |
| 11. Carolyn Dotson | September 6, 2016 |
| 12. Vicky Wilson | September 6, 2016 |
| 13. Teresa Nichols | October 3, 2016 |
| 14. Frieda Aaron | October 3, 2016 |
| 15. Deena Borchers | October 3, 2016 |
| 16. Timothy Schulze | November 14, 2016 |
| 17. Sandra Dennis | November 21, 2016 |
| 18. Joseph Schimmel | December 5, 2016 |
| 19. William Dabney | December 5, 2016 |

# CASES IN BUTLER COUNTY WHICH WERE SET FOR TRIAL AND THE DISCOVERY CUT OFF OVER

## CASES IN BUTLER COUNTY WHICH WERE SET FOR TRIAL AND THE DISCOVERY CUT OFF OVER

| | |
|---|---|
| Gerald Botner | 1. CV 2013 04 1077 |
| Sherri Lynn Allen | 2. CV 2013 04 1078 |
| Joetta Nafe | 3. CV 2013 04 1081 |
| Sandra Radeke | 4. CV 2013 04 1103 |
| Patricia Boone | 5. CV 2013 04 1104 |
| Carolyn Dotson | 6. CV 2013 04 1105 |
| Vicky Wilson | 7. CV 2013 04 1106 |
| Teresa Nichols | 8. CV 2013 04 1128 |
| Frieda Aaron | 9. CV 2013 04 1129 |
| Deena Borchers | 10. CV 2013 04 1130 |
| Timothy Schulze | 11. CV 2013 04 1131 |
| Sandra Dennis | 12. CV 2013 04 1132 |
| Joseph Schimmel | 13. CV 2013 04 1133 |
| Andrew Carr | 14. CV 2013 04 1134 |
| William Dabney | 15. CV 2013 04 1179 |
| David Snider | 16. CV 2013 04 1180 |
| Gloria Greene | 17. CV 2013 04 1181 |
| Rober Densler, Sr. | 18. CV 2013 04 1182 |
| Derek Mayfield | 19. CV 2013 04 1183 |
| Mark McMurren | 20. CV 2013 04 1184 |

**CASES IN BUTLER COUNTY WHICH WERE SET FOR TRIAL AND THE DISCOVERY CUT OFF OVER**

| | |
|---|---|
| Marjorie Newman | 21. CV 2013 04 1185 |
| Dorothea Hamilton | 22. CV 2013 04 1186 |
| Lisa Reynolds | 23. CV 2013 04 1187 |
| Jennifer Hickey | 24. CV 2013 04 1188 |
| Nellie Davis | 25. CV 2013 04 1189 |
| Nicole Baker | 26. CV 2013 04 1190 |
| Donna Smallwood | 27. CV 2013 04 1191 |
| Gary Coots | 28. CV 2013 04 1192 |
| Todd Ray | 29. CV 2013 04 1193 |
| John Richardson | 30. CV 2013 04 1194 |
| Kent Reynolds II | 31. CV 2013 04 1195 |
| Dawn Dunklin | 32. CV 2013 04 1196 |
| Troy Wilder | 33. CV 2013 04 1197 |
| Debbie Moore | 34. CV 2013 04 1198 |
| Jennifer Ballinger | 35. CV 2013 04 1199 |
| David Smith | 36. CV 2013 04 1200 |
| Randall Metcalf | 37. CV 2013 04 1232 |
| Valarie Kopp | 38. CV 2013 04 1233 |
| Sarah Juergens | 39. CV 2013 04 1236 |

## CASES IN BUTLER COUNTY WHICH WERE SET FOR TRIAL AND THE DISCOVERY CUT OFF OVER

| | |
|---|---|
| Jessica Cochran | 40. CV 2013 04 1372 |
| Elizabeth Compo | 41. CV 2013 04 1373 |
| Nancy Begley | 42. CV 2013 05 1383 |
| Kathryn Rueve | 43. CV 2013 06 1902 |
| Robert Runtz | 44. CV 2013 06 1903 |
| Nancy Bowman | 45. CV 2013 06 1904 |
| Jason Riley | 46. CV 2013 07 2075 |
| George and Jean Arnold | 47. CV 2013 07 2076 |
| Linda Kallmeyer Ward | 48. CV 2013 07 2077 |
| Kelly and Steve Hennessy | 49. CV 2013 07 2078 |
| Rhonda and Mike Scott | 50. CV 2013 07 2079 |
| Kathryn and Robert Howell | 51. CV 2013 07 2080 |
| Tony & Tonya McClendon | 52. CV 2013 07 2081 |
| Carol Ross | 53. CV 2013 07 2082 |
| Shirley Mains | 54. CV 2013 07 2083 |
| Clarence and Pamela Phillips | 55. CV 2013 07 2086 |
| Jessica Hastings | 56. CV 2013 07 2087 |
| Charlotte King | 57. CV 2013 07 2088 |
| Tonya Neal | 58. CV 2013 07 2089 |

## CASES IN BUTLER COUNTY WHICH WERE SET FOR TRIAL AND THE DISCOVERY CUT OFF OVER

| | |
|---|---|
| Dana and Craig Setters | 59. CV 2013 07 2090 |
| Leah Rae Wright | 60. CV 2013 07 2091 |
| Sheila and Michael Krabacher | 61. CV 2013 07 2092 |
| Teresa A. McMillen | 62. CV 2013 07 2093 |
| Lonnie and Barbara Wheeler | 63. CV 2013 07 2094 |
| Celeste Hoffman | 64. CV 2013 07 2099 |
| Amanda Koch | 65. CV 2013 07 2100 |
| Batsche, Laura | 66. CV 2013 07 2145 |
| Brewer, Randal | 67. CV 2013 07 2181 |
| Frazier, Joann | 68. CV 2013 08 2203 |
| Hughes, Tammy | 69. CV 2013 08 2204 |
| Arletta Sue Bowling | 70. CV 2013 08 2205 |

# CASES FROM BUTLER COUNTY TO BE FILED ON OR BEFORE DECEMBER 14, 2015

**CASES FROM BUTLER COUNTY TO BE FILED**
**ON OR BEFORE DECEMBER 14, 2015**

1. Mackenzie Bender (Amy Young)
2. Edythe Bishop
3. Robert Campbell
4. Connie Ellington
5. Arlene Fait
6. Neil Favaron
7. Chelsea Johnson
8. Heather McCann
9. Kyra McClendon
10. Lyndsey Middendorf
11. Lawrence Pridemore
12. Todd Ray
13. Dorothy Rose
14. Mike Sand
15. Dana Setters
16. Billy Wolsing

# SUIDA V. HOWARD CASE- GROUP TRIALS ALLOWED

Siuda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

KeyCite Yellow Flag - Negative Treatment
**Distinguished by** Estate of Beavers v. Knapp, Ohio App. 10 Dist., April 29, 2008

2002 WL 946188

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio,
First District, Hamilton County.

Oscar SIUDA, Ruth Siuda, Ruth Hughes, and Lora Maxwell, Plaintiffs–Appellees, and
George Bell, Sallie Bell, Joyce Himmelblau, David Himmelblau, Rita Lawson, Linda Nickle, Nettie M. Peters, Jimmie Peters, Mary Sue Prine, John Prine, Sylvia Thomas, William Thomas, Charles Venable, and Joyce Venable, Plaintiffs–Appellees/Cross–Appellants,
v.
David G. HOWARD, M.D., and Tri–State Eye Care, Inc., Defendants–Appellants/Cross–Appellees.

Nos. C–000656, C–000687. [1]
| Decided May 10, 2002.

Former patients brought actions against ophthalmologist and his employer, alleging medical negligence, negligence, lack of informed consent, fraud, conspiracy to defraud, agency, battery, and punitive damages resulting from ophthalmologist's care in performing or recommending surgery for glaucoma and/or cataracts. Spouses filed derivative claims for loss of consortium. Actions were consolidated. Ophthalmologist and employer filed counterclaims against each plaintiff, alleging slander per se, libel, loss of business, and intentional infliction of emotional distress. The Court of Common Pleas, Hamilton County, granted summary judgment for some plaintiffs on their claims and for all plaintiffs on counterclaims. Cross-appeals were taken. The Court of Appeals, Sundermann, J., held that: (1) consolidation was warranted; (2) testimony of doctor specializing in areas of glaucoma and cataracts did not bring into play the learned-treatise barrier; (3) admission of testimony of local television reporter, who investigated ophthalmologist's medical practices, about his methods of investigation did not affect substantial rights of

ophthalmologist and his employer; (4) admission of expert witness's testimony relating to whether ophthalmologist ignored indications for surgery and operated needlessly was not an abuse of discretion; (5) ophthalmologist and employer were liable for prejudgment interest; and (6) award of punitive damages was appropriate.

Judgment affirmed.

West Headnotes (49)

[1]  **Appeal and Error**
 Defects, objections, and amendments
Defendant's failure to specify all of the parties or case numbers in their notice of appeal did not prejudice unnamed parties, where they were obviously aware of appeal because they filed a timely cross-appeal with other non-prevailing plaintiffs. Rules App.Proc., Rule 3(A).

Cases that cite this headnote

[2]  **Appeal and Error**
 Defects, objections, and amendments
When an appellate court is confronted with a notice of appeal that is arguably deficient for some reason other than timeliness, the court is vested with discretion to determine whether sanctions, such as dismissal, are warranted.

Cases that cite this headnote

[3]  **Action**
 Consolidation of Actions
 **Appeal and Error**
 Proceedings Preliminary to Trial
Decision whether to consolidate cases is within discretion of trial court, and Court of Appeals will not reverse its decision absent an abuse of discretion.

Cases that cite this headnote

[4]  **Action**
 Actions Which May Be Consolidated

Siuda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

**Action**
☞ Common questions of law or fact; same transaction or series of transactions

When considering consolidation of cases, a trial court must determine if there is sufficient commonality of issues and parties to warrant consolidating cases, and court should consider whether consolidation would save time and resources.

Cases that cite this headnote

[5]   **Action**
☞ Tort actions

Common issues of law and fact warranted the consolidation of cases brought by former patients against ophthalmologist and his employer; all of the cases consolidated concerned an attempt to hold ophthalmologist liable for his treatment and care of patients when he recommended eye surgery, in particular cataract, glaucoma, or YAG surgery, and to hold his employer liable for ratification of his acts, and all cases contained same defendants, set forth same legal theories, and would call upon similar expert testimony. Rules Civ.Proc., Rule 42(A).

Cases that cite this headnote

[6]   **Evidence**
☞ References to authorities on subject

Testimony of doctor specializing in areas of glaucoma and cataracts did not bring into play the learned-treatise barrier, although he referred to material that he had read in several sources to support his conclusion that YAG surgery had fallen out of use in medical community, where he also testified that he had used the new lens implant, and the studies he utilized thus provided only a partial basis for his knowledge about reduction in YAG surgeries since introduction of new lens implant.

Cases that cite this headnote

[7]   **Evidence**
☞ Contradiction and impeachment

Appropriate use of a learned treatise is limited to impeaching credibility of an expert who has relied upon treatise or acknowledged it as an authority, or to demonstrating that an expert is either unaware of the text or unfamiliar with its contents.

Cases that cite this headnote

[8]   **Evidence**
☞ References to authorities on subject

References to studies by other experts in a particular field do not automatically make expert's testimony tainted by a learned treatise; since experts derive much of their expertise from reading or studying written works of others in their field, mere acknowledgment of those studies does not necessarily bring into play the learned-treatise barrier.

1 Cases that cite this headnote

[9]   **Appeal and Error**
☞ Opinions and conclusions

Issue of whether expert witness provided accurate synopsis of another physician's deposition went to weight and sufficiency of evidence, and therefore any error in admitting the evidence did not affect any substantial rights of defendant ophthalmologist and his employer in medical malpractice action.

1 Cases that cite this headnote

[10]   **Appeal and Error**
☞ Particular Types of Evidence

Admission of testimony of local television reporter, who investigated ophthalmologist's medical practices, about his methods of investigation did not affect substantial rights of ophthalmologist and his employer in medical malpractice action, given that defense counsel had opportunity to cross-examine reporter about his reporter and effectively did so.

3 Cases that cite this headnote

[11]   **Evidence**

Sluda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

↦ Relevancy in general

Evidence
↦ Tendency to mislead or confuse

A trial court is vested with broad discretion when determining whether evidence is relevant and whether the adverse effect of relevant evidence substantially outweighs its probative value. Rules of Evid., Rules 401, 402.

Cases that cite this headnote

[12] Appeal and Error
↦ Rulings on admissibility of evidence in general

A reviewing court is limited to a determination of whether trial court abused its discretion in admitting disputed evidence as relevant and in determining whether its probative value is outweighed by unfair prejudice, and absent an abuse of discretion that materially prejudices a party, trial court's decision must stand. Rules of Evid., Rules 401, 402, 403.

Cases that cite this headnote

[13] Evidence
↦ Mode of examination in general

Admission of expert witness's testimony relating to whether ophthalmologist ignored indications for surgery and operated needlessly was not an abuse of discretion in medical malpractice action, although ophthalmologist claimed that because he treated the eleven plaintiffs for different conditions and with different procedures, expert should have discussed his opinions on patients separately, where expert did discuss plaintiffs' cases individually in depth. Rules of Evid., Rules 401, 402, 403.

Cases that cite this headnote

[14] Evidence
↦ Showing Intent or Malice or Motive

Evidence
↦ Showing knowledge

Expert witness's comment that treatment of one of ophthalmologist's patients resulted in blindness was admissible in medical malpractice action for purposes other than showing ophthalmologist's conforming conduct as comment related to ophthalmologist's motive to perform medically unnecessary surgeries, his knowledge as an ophthalmologist, and an absence of mistake or accident, and thus, admission of testimony was not an abuse of discretion. Rules of Evid., Rule 404(B).

Cases that cite this headnote

[15] Evidence
↦ Tendency to mislead or confuse

Probative value of testimony of expert witness about a "similar" case involving another doctor was not substantially outweighed by danger of unfair prejudice in medical malpractice action against ophthalmologist and his employer; testimony was relevant to rebut conspiracy theory raised against expert because it emphasized his concern about physicians who, in his opinion, deviated from the standard of care. Rules of Evid., Rule 403.

Cases that cite this headnote

[16] Evidence
↦ Knowledge, experience, and skill in general

While expert witness, a physician, was not qualified as an expert in handwriting, his testimony as to whether charts of two of ophthalmologist's patients had been altered fell within his qualifications as an expert because it related to specialized information, namely reviewing a medical record when making a medical diagnosis. Rules of Evid., Rule 702.

Cases that cite this headnote

[17] Interest
↦ Prejudgment Interest in General

To award prejudgment interest, a trial court must find that party required to pay judgment failed to make a good-faith effort to settle case, and that party to whom judgment is to be paid did not fail to make a good-faith effort to settle case. R.C. § 1343.03(C).

Sluda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

Cases that cite this headnote

[18]    Interest
        Prejudgment Interest in General
"Good faith" effort to settle a case, which will
preclude award of prejudgment interest, is full
cooperation in discovery proceedings, rational
evaluation of risks and potential liability, no
unnecessary delay of the proceedings, and a
good-faith settlement offer or a response in good
faith to an offer from the other party. R.C. §
1343.03(C).

Cases that cite this headnote

[19]    Interest
        Discretion in general
Decision whether to award prejudgment interest
lies within sound discretion of trial court. R.C. §
1343.03(C).

1 Cases that cite this headnote

[20]    Interest
        Torts; wrongful death
Ophthalmologist and his employer failed to
make a good faith settlement of medical
malpractice action and, thus, were liable
for prejudgment interest; ophthalmologist and
employer refused to negotiate a settlement
until an offer was made that treated cases
on an individual basis, ophthalmologist offered
aggregate settlement of $272,500 for three
plaintiffs who were awarded over $2 million
at trial, and ophthalmologist and employer
engaged in a lengthy delay in negotiating. R.C.
§ 1343.03(C).

Cases that cite this headnote

[21]    Evidence
        Due care and proper conduct in general
An ophthalmologist, was sufficiently involved
in active clinical practice and/or teaching to
testify as an expert in medical malpractice
trial, where he was medical director for eye
institute, consulted with patients, reviewed

patient records, engaged in research for
improving lens implants, and published
numerous articles, books, and videotapes
relating to ophthalmology, and he was a full-
time faculty member at American Academy
of Ophthalmology and had taught classes for
numerous other societies. Rules of Evid., Rule
601(D).

1 Cases that cite this headnote

[22]    Appeal and Error
        Rulings on admissibility of evidence in
general
        Evidence
        Determination of question of competency
Determination of competency of a medical
witness to testify is a discretionary one, and it
will not be reversed on appeal absent an abuse of
discretion. Rules of Evid., Rule 601(D).

Cases that cite this headnote

[23]    Evidence
        Knowledge, experience, and skill in general
Under evidentiary rule requiring a medical
expert to have devoted at least one-half of
his or her professional time to the active
clinical practice in his or her field of licensure,
"active clinical practice" not only includes
those physicians who spend their professional
time treating patients, but also encompasses
physician-specialist whose work is so related or
adjunctive to patient care as to necessarily be
included in scope of evidentiary rule. Rules of
Evid., Rule 601(D).

2 Cases that cite this headnote

[24]    Health
        Exemplary or punitive damages
Substantial    competent    evidence    that
ophthalmologist acted with conscious disregard
for rights and safety of two patients and that
the disregard had a great likelihood of causing
harm supported award of punitive damages in
medical malpractice action; expert testified that
YAG surgery on one patient was medically

Reuters. No claim to original U.S. Government Works.

4

unnecessary and that ophthalmologist breached standard of care in performing cataract and YAG surgeries and that glaucoma surgery and proposed cataract surgeries for another patient were unjustified. R.C. § 2315.21.

Cases that cite this headnote

[25] **New Trial**
⟜ Excessive damages in general

To support a finding of passion or prejudice in award of damages sufficient to warrant grant of new trial, it must be demonstrated that jury's assessment of damages was so overwhelmingly disproportionate as to shock reasonable sensibilities. Rules of Civ.Proc., Rule 59(A)(4).

Cases that cite this headnote

[26] **Appeal and Error**
⟜ Inadequate or excessive damages

In evaluating propriety of trial court's decision as to whether excessive or inadequate damages were awarded under the influence of passion or prejudice sufficient to warrant a new trial, a reviewing court may reverse only upon a demonstrated abuse of discretion. Rules of Civ.Proc., Rule 59(A)(4).

Cases that cite this headnote

[27] **Damages**
⟜ Grounds for Exemplary Damages

For purposes of an award of punitive damages, "actual malice" is either behavior characterized by hatred, ill will, or a spirit of revenge or a conscious disregard for rights and safety of other persons that has a great probability of causing substantial harm. R.C. § 2315.21.

2 Cases that cite this headnote

[28] **Damages**
⟜ Nature and Theory of Damages Additional to Compensation

Purpose of punitive damages is not to compensate plaintiffs, but to punish and deter certain conduct.

Cases that cite this headnote

[29] **Labor and Employment**
⟜ Punitive or Exemplary Damages

In general, an employer authorizes acts committed within the scope of employment, so as to be liable for punitive damages for conduct of employee, either expressly or impliedly. R.C. § 2315.21(B)(1).

Cases that cite this headnote

[30] **. Labor and Employment**
⟜ Punitive or Exemplary Damages

When an employee is acting within scope of his employment, doctrine of respondeat superior applies, and plaintiff need not prove ratification to hold employer liable for punitive damages; but if employee's act is outside scope of employment, plaintiff must demonstrate that employer ratified the willful and malicious conduct of employee. R.C. § 2315.21(B)(1).

1 Cases that cite this headnote

[31] **Labor and Employment**
⟜ Scope of Employment

Generally, determination of whether an employee has acted within scope of his employment, for purposes of determining whether punitive damages can be assessed against employer for conduct of employee, is a question of fact to be decided by jury. R.C. § 2315.21(B)(1).

Cases that cite this headnote

[32] **Labor and Employment**
⟜ Punitive or Exemplary Damages

Employer was liable for punitive damages in medical malpractice action, given evidence that ophthalmologist was acting within scope of his employment when he attended to plaintiff patients. R.C. § 2315.21(B)(1).

**[33] New Trial**
  Necessity of objection

Error in basing attorney fee award on patients who were awarded punitive damages and one patient who was not awarded punitive damages did not seriously affect basic fairness, integrity, or public reputation of judicial process and did not warrant a new trial in medical malpractice action, given that no objection was made to failure to include jury instruction allowing for consideration of attorney fees only upon an award of punitive damages.

Cases that cite this headnote

**[34] Costs**
  Attorney Fees

Generally, to award attorney fees in the absence of statutory authorization, a jury must make a finding of malice and actually award punitive damages.

Cases that cite this headnote

**[35] Costs**
  Nature and amount of items in general

Costs awarded to medical malpractice plaintiffs against ophthalmologist and his employer could be based on costs incurred while counsel was representing nonprevailing plaintiffs. Rules of Civ.Proc., Rule 54(D).

Cases that cite this headnote

**[36] Appeal and Error**
  Judgment or Order

Any error in denial of summary judgment for ophthalmologist and his employer in medical malpractice action was harmless, given that full development of facts at trial showed that former patients were entitled to judgment.

Cases that cite this headnote

**[37] Health**
  Instructions

Trial court's clarification of definition of injury did not impermissibly broaden characterization of what constituted an injury for purposes of plaintiffs' malpractice claims against ophthalmologist and his employer when it included mental pain and suffering in definition of injury.

Cases that cite this headnote

**[38] Trial**
  Scope and effect of summing up

Counsel is generally afforded broad latitude in closing argument.

Cases that cite this headnote

**[39] Trial**
  Matters Not Sustained by Evidence

**Trial**
  Deductions or inferences from evidence

Inferences and deductions drawn from evidence adduced at trial are ordinarily a legitimate subject of argument; but when argument is not supported by evidence and is used to arouse prejudice or to misrepresent evidence to the extent that there is a substantial likelihood that jury will be misled, it is improper.

Cases that cite this headnote

**[40] Appeal and Error**
  Conduct of trial or hearing in general

**Trial**
  Scope and effect of summing up

Trial court has discretionary power to determine whether bounds of permissible closing argument have been exceeded, and Court of Appeals will not reverse trial court's decision unless there has been an abuse of its discretionary power.

Cases that cite this headnote

**[41] Trial**

☞ Retaliatory statements and remarks

Comment by medical malpractice plaintiffs' counsel indicating that jury would not listen to someone who would say "not one penny" should be awarded for a rape victim or kidnap victim was made in response to defense counsel's comment in closing argument that not one "penny should be given to [the plaintiffs]" and, thus, comment did not tend to disparage defendant ophthalmologist or to inflame jury or prejudice him, particularly since jury returned verdict for only some plaintiffs and did not award all of prevailing plaintiffs punitive damages.

Cases that cite this headnote

[42] Appeal and Error
☞ Error Committed or Invited by Party Complaining

Under "invited error doctrine," a party may not take advantage of an error that he himself invited or induced trial court to make.

3 Cases that cite this headnote

[43] Appeal and Error
☞ Submitting issues or questions to jury in general

Since any error in failure to provide an interrogatory relating to battery claim was induced by medical malpractice plaintiffs' own assent to wording of interrogatories, invited error doctrine precluded them from claiming on appeal that they were prejudiced by its exclusion.

2 Cases that cite this headnote

[44] Health
☞ Necessity of Expert Testimony

Expert testimony is generally required to prove elements of medical malpractice whenever they are beyond common knowledge and understanding of jury.

Cases that cite this headnote

[45] Evidence

☞ Due care and proper conduct

Expert medical testimony supported jury verdict that ophthalmologist did not breach his duty of care in treatment of some plaintiffs.

Cases that cite this headnote

[46] Health
☞ Informed consent in general; duty to disclose

To establish a viable informed-consent claim for trial, it is necessary to demonstrate the following: (1) a physician failed to disclose material risks and dangers potentially involved in a given course of treatment; (2) undisclosed risks and dangers materialized as proximate cause of injuries sustained by patient; and (3) a reasonable person in patient's position would have declined treatment had material risks and dangers been brought to light by physician.

Cases that cite this headnote

[47] Health
☞ Weight and sufficiency of evidence

On an informed consent claim, medical expert testimony is normally necessary to establish material risks potentially involved in a given course of treatment, because probability and magnitude of those risks is a matter of medical judgment.

1 Cases that cite this headnote

[48] Evidence
☞ Due care and proper conduct

Competent, credible expert testimony supported finding that ophthalmologist adequately informed patients of material risks involved in cataract, glaucoma and/or YAG surgery.

Cases that cite this headnote

[49] Trial
☞ Retaliatory statements and remarks

Defense counsel's closing argument indicating that if jury gave money to medical malpractice

Siuda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

plaintiffs with this set of circumstances, with this kind of evidence and this kind of trial, jury would be empowering emperors who really had no clothes was appropriate response to plaintiffs' counsel's comments analogizing case to a nursery rhyme titled "The Emperor Has No Clothes."

  Cases that cite this headnote

Civil Appeals from Hamilton County Court of Common Pleas.

Attorneys and Law Firms

Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, Paul M. DeMarco, Colleen M. Hegge, and Jane H. Walker, and Barret & Weber and Michael R. Barrett, for plaintiffs-appellees and plaintiffs-appellees/cross-appellants.

Lindhorst & Dreidame, Michael F. Lyon, James L. O'Connell, and Bradley D. McPeek, and White, Getgey & Meyer Co., L.P.A., and David P. Kamp, for defendants-appellants/cross-appellees.

Opinion

SUNDERMANN, Judge.

*1 In 1998, seven separate complaints were filed in the court of common pleas against defendants Dr. David Howard, an ophthalmologist, and his employer, Tri-State Eye Care Service ("Tri-State"). The seven complaints named as plaintiffs Linda Nickel, Ruth Hughes, Joyce Himmelblau, Ruth Siuda, George Bell, Nettie Peters, Mary Sue Prine, Rita Lawson, Charles Venable, Lora Maxwell, and Sylvia Thomas,[2] all of whom were Howard's former patients. They asserted similar claims for medical negligence, negligence, lack of informed consent, fraud, conspiracy to defraud, agency, battery, and punitive damages resulting from Howard's care in performing or recommending surgery for glaucoma and/or cataracts. Oscar Siuda, Sallie Bell, Jimmie Peters, John Prine, William Thomas, Joyce Venable, and David Himmelblau filed derivative claims for loss of consortium. In response to the complaints, Howard and Tri-State filed the same four counterclaims against each plaintiff, including slander per se, libel, loss of business, and intentional infliction of emotional distress.

On April 14, 1999, the seven cases were consolidated under the case number A 9802378. Howard and Tri-State then filed a motion for separate trials, which was denied on January 24, 2000.

In November 1999, the plaintiffs filed a joint motion for summary judgment on Howard's and Tri-State's counterclaims. In turn, Howard and Tri-State moved separately for summary judgment against Ruth and Oscar Siuda, Charles and Joyce Venable, Linda Nickle, George and Sallie Bell, Sylvia Thomas, Lora Maxwell, Rita Lawson, Joyce and David Himmelblau, Mary Sue and John Prine, and Ruth Hughes. A motion for summary judgment was not filed against Nettie and Jimmie Peters. Following a hearing on the motions, the trial court granted summary judgment to all of the plaintiffs, presumably including Nettie and Jimmie Peters, on the four counterclaims asserted by Howard and Tri-State, but the court denied summary judgment to Howard and Tri-State on the claims asserted by the plaintiffs.

A jury trial commenced in February 2000, and one month later, on March 3, the jury returned verdicts in favor of (1) Ruth Siuda for medical negligence; (2) Oscar Siuda for loss of consortium; (3) Ruth Hughes for medical negligence, failure to obtain informed consent, and malicious or fraudulent acts by Howard that were ratified by Tri-State; and (4) Lora Maxwell for medical negligence and malicious or fraudulent acts by Howard that were ratified by Tri-State. Ruth Hughes was awarded $200,000 in compensatory damages and $500,000 in punitive damages against Howard, and $250,000 in punitive damages against Tri-State. Lora Maxwell was awarded $250,000 in compensatory damages and $500,000 in punitive damages against Howard, and $250,000 in punitive damages against Tri-State. Ruth Siuda was awarded $275,000 in compensatory damages, and her husband received $75,000 for his loss-of-consortium claim. The verdicts also granted attorney fees, costs, and prejudgment interest to the prevailing plaintiffs. Following a hearing, the trial court awarded the prevailing plaintiffs $920,000 in attorney fees, $10,237.05 in costs, and prejudgment interest at the rate of ten percent per annum.

*2 George Bell, Sallie Bell, Joyce Himmelblau, David Himmelblau, Rita Lawson, Linda Nickle, Nettie Peters, Jimmie Peters, Mary Sue Prine, John Prine, Sylvia Thomas, William Thomas, Charles Venable, and Joyce Venable filed a motion for judgment notwithstanding the verdict ("jnov") or, alternatively, for new trial, which the trial court denied.[3] Howard and Tri-State also filed a motion for jnov and a

Siuda v. Howard, Not Reported In N.E.2d (2002)

2002 -Ohio- 2292

motion for new trial against the Ruth and Oscar Siuda, Ruth Hughes, and Lora Maxwell, which the trial court denied.

Howard and Tri–State have appealed, contesting the order granting consolidation, the entry denying their motion for reconsideration of consolidation, the final judgment entry, the entry approving counsel's application for attorney fees, and the entry overruling their motions for jnov and a new trial. George and Sallie Bell, Joyce and David Himmelblau, Rita and Kenneth Lawson, Linda Nickle, Nettie and Jimmie Peters, Mary Sue and John Prine, Sylvia and William Thomas, and Charles and Joyce Venable have filed a cross-appeal against Howard and Tri–State. Despite the fact that the trial court entered a judgment against Kenneth Lawson and that he has been named as a party on the notice of cross-appeal, the record is devoid of any evidence that Kenneth Lawson had served notice of a loss-of-consortium claim against Howard or Tri–State or that he had moved to intervene in this action. On the state of this record, we do not consider the cross-appeal to include Kenneth Lawson. The appeal and the cross-appeal have been consolidated by this court.

[1] Preliminarily, we note that Howard and Tri–State did not specify all of the parties or the case numbers in their notice of appeal; rather the parties were referred to as "Oscar Siuda, et al.," and the case numbers were identified as those belonging to the prevailing parties. In the notice of cross-appeal, the nonprevailing plaintiffs used the same heading provided by Howard and Tri–State in their notice of appeal.

[2] The Ohio Supreme Court has held that inclusion of the designation "et al." in the notice of appeal, without specifically naming a party, constitutes sufficient compliance with App.R. 3(A) so as to vest jurisdiction in the court of appeals over the unspecified appellants.[4] This is so because the only jurisdictional requirement for a valid appeal is the *timely* filing of the notice of appeal.[5] Accordingly, when an appellate court is confronted with a notice of appeal that is arguably deficient for some reason other than timeliness, the court is vested with the discretion to determine whether sanctions, such as dismissal, are warranted.[6] The purpose of the notice of appeal is to apprise the opposing parties of the taking of an appeal;[7] if this is done without the potential for reasonable misunderstanding, the purpose of the notice of appeal has been accomplished.

While the omissions in this notice of appeal could have resulted in a failure to notify plaintiffs Linda Nickle, Joyce

and David Himmelblau, George and Sallie Bell, and Sylvia and William Thomas of the appeal against them, we hold that there has been no prejudice: they were obviously aware of the appeal because they filed a timely cross-appeal with the other non-prevailing plaintiffs. Given that, we are able to consider those assignments of error that relate to them. For the purposes of our review, we note that the parties have stipulated that the record has been supplemented after oral arguments to include all the findings and entries involving Linda Nickel, Joyce and David Himmelblau, George and Sallie Bell, and Sylvia and William Thomas. We now turn to the direct appeal filed by Howard and Tri–State.

*3 [3] [4] [5] The first issue presented for review is whether the trial court erred in granting the motion to consolidate. Civ.R. 42(A) permits, in actions involving a common question of law or fact, the trial court to consolidate some or all the issues in the actions after a hearing. The decision whether to consolidate cases is within the discretion of the trial court, and we will not reverse its decision absent an abuse of discretion.[8] An abuse of discretion has been defined as more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.[9] When considering consolidation, a trial court must determine if there is sufficient commonality of issues and parties to warrant consolidating the cases.[10] Further, the court should consider whether consolidation would save time and resources.[11]

Howard and Tri–State maintain that the trial court abused its discretion when granting consolidation because there was not a sufficient commonality of issues, and because there was a danger of jury confusion and prejudice. We do not agree.

All of the cases consolidated by the trial court concerned an attempt to hold Howard liable for his treatment and care of the plaintiffs when he recommended eye surgery, in particular cataract, glaucoma, or YAG surgery, and to hold Howard's employer, Tri–State, liable for the ratification of Howard's acts. All of the cases contained the same defendants, set forth the same legal theories, and would call upon similar expert testimony. Because common issues of law and fact existed, judicial economy was served by consolidation. Moreover, given the verdicts, there was no evident confusion by the jury. The jury was clearly able to handle the voluminous evidence and to resolve the cases individually. Accordingly, we hold that the trial court did not abuse its discretion in granting consolidation, and we overrule the first assignment of error.

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

The second issue for review presented by Howard and Tri-State is whether the trial court erred in admitting learned treatises in violation of Evid.R. 803, and whether the trial court erred in admitting hearsay and double hearsay in violation of Evid.R. 802.

[6] We first address the challenge to the introduction of learned treatises. Howard and Tri-State maintain that Dr. Robert Osher, a doctor specializing in the areas of glaucoma and cataracts, impermissibly referred to learned treatises while discussing whether YAG surgeries had become outdated since the introduction of new lenses. They argue that the testimony was prejudicial because it cast doubt on Howard's decision to perform YAG surgery on his patients, particularly Ruth Hughes.

[7] [8] Unlike the Federal Rules of Evidence, the Ohio Rules of Evidence do not incorporate a learned-treatise exception to the hearsay rules .[12] The appropriate use of a learned treatise in Ohio is limited to impeaching the credibility of an expert who has relied upon the treatise or acknowledged it as an authority, or to demonstrating that an expert is either unaware of the text or unfamiliar with its contents.[13] References to studies by other experts in a particular field, however, do not automatically make the expert's testimony tainted by a learned treatise. It is well established that experts derive much of their expertise from reading or studying the written works of others in their field; therefore, the mere acknowledgment of those studies does not necessarily bring into play the learned-treatise barrier.[14]

*4 On direct examination in this case, Dr. Osher explained how, in his opinion, the use of a new, lighter and more versatile lens implant for cataract surgeries diminished the need for most follow-up YAG surgeries performed on some patients who had undergone cataract surgery. While Dr. Osher referred to material that he had read in several sources, including the Referee Journal of Ophthalmology and a local American Academy newspaper, to support his conclusion that YAG surgery had fallen out of use in the medical community, Dr. Osher also testified that he had used the new lens implant, thereby suggesting that, in his experience, it had reduced the need for YAG surgeries. Because the studies utilized by Dr. Osher provided only a partial basis for his knowledge about the reduction in YAG surgeries since the introduction of the new lens implant, we cannot say that his testimony brought into play the learned-treatise barrier.

Howard and Tri-State also maintain that it was impermissible and highly prejudicial for Dr. Osher to relay hearsay testimony in violation of Evid.R. 802. These instances involved the following: (1) Dr. Osher's testimony about his conversation with Stephen Hill, a local television reporter who had aired an investigation relating to Howard's medical practices; (2) Dr. Osher's testimony about a letter that he had written to another doctor about Ruth Siuda; and (3) Dr. Osher's testimony about parts of Ruth Hughes's medical record.

Although defense counsel generally objected to what Dr. Osher said, the manner in which he had said it, and the way that he was expressing his opinion, no objections were made at the time that the alleged errors occurred. Moreover, the purported objections made at the end of Dr. Osher's testimony were so vague that they could have related to any one of many violations, including, but not limited to, issues of foundation requirements, expert-opinion requirements, or relevancy. Evid.R. 103(A)(1) requires a party to timely object to the admission of evidence and to state the specific ground of the objection if it is not otherwise apparent from the context of the testimony in order to preserve an error for appellate review. By failing to timely raise specific objections to these instances of hearsay violations, Tri-State and Howard denied the trial court the opportunity to effectively identify and correct the alleged errors.

When a party fails to so object, all but plain error is waived.[15] "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."[16] We conclude that no such exceptional circumstances exist in this case, and we decline to label as plainly erroneous the statements that were not met with appropriate objections.

*5 Tri-State and Howard did, however, raise timely objections before Dr. Osher summarized information contained in Dr. Aziz's deposition, and when Hill testified about his investigation methods for the television report.

Trial courts normally have broad discretion in admitting evidence, but Evid.R. 802 provides that hearsay is inadmissible unless an exception found in Evid.R. 803, 804, or 807 applies.[17] Consequently, unlike evidentiary rulings

Sluda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

that are within the trial court's discretion, the admission of hearsay is reviewed under a harmless-error standard. [18] In a civil case, harmless error is an error that does not affect the substantial rights of the parties. [19]

[9] As for the statement by Dr. Osher, we note that before Dr. Osher had the opportunity to summarize information contained in Dr. Aziz's deposition concerning Ruth Hughes, an objection was raised. The objection was overruled, and the court adjourned for the evening. The next morning, Dr. Osher, without reading Dr. Aziz's deposition, stated the following: "When we finished last night, I referred to a deposition with Doctor Aziz, where he acknowledged that he would not have scheduled the YAG laser in the other eye himself, given the way the other capsule looked. And that's where we left off." Without actual testimony as to the contents of the deposition, it appears that the issue here is not whether the court improperly admitted hearsay about Dr. Aziz's deposition testimony, but rather whether Dr. Osher provided an accurate synopsis of his testimony from the previous day. Given that, we are persuaded that the issue was fundamentally one going to the weight and sufficiency of the evidence, and therefore any error in admitting the evidence did not affect any substantial rights of Howard or Tri–State.

[10] Tri–State and Howard also contend that the trial court erred in admitting Hill's hearsay testimony that the information contained in his report (which was shown to the jury) was an accurate representation of what eight doctors had relayed to Hill about Howard. Hill, a local television reporter who had investigated Howard's medical practices as an ophthalmologist, testified, in part, about his methods of investigation. Having reviewed the record, we conclude that the admission of Hill's statements did not affect any substantial rights of Howard or Tri–State. Defense counsel had the opportunity to cross-examine Hill about his report and effectively did so. Thus, we conclude that the admission of the statements was harmless. For the reasons set forth above, the second assignment of error is overruled.

In the third assignment of error, Howard and Tri–State contend that portions of Dr. Osher's testimony were inadmissible under Evid.R. 402 and 404(B) because they were highly prejudicial and inflammatory, and because Osher had testified to matters that were outside his scope of expertise. The fourth issue presented for our review is whether the trial court erred in overruling Howard's and Tri–State's motion for a mistrial. We address these assignments in the aggregate.

*6 [11] [12] Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pursuant to Evid.R. 402, evidence that is not relevant is inadmissible. Evid.R. 403(A) mandates that relevant evidence should be excluded when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. A trial court is, nevertheless, vested with broad discretion when determining whether evidence is "relevant" pursuant to Evid.R. 401 and 402, and whether the adverse effect of relevant evidence "substantially outweig[hs]" its probative value pursuant to Evid.R. 403. [20] A reviewing court is, therefore, limited to a determination whether the trial court abused its discretion in admitting the disputed evidence. [21] Absent an abuse of discretion that materially prejudices a party, the trial court's decision must stand. [22]

[13] Dr. Osher stated the following over objections:

I just want to make a couple of comments on the cataracts. Just a few patients, I won't comment on.

I've shown you the anatomy of the diagnostic approach. Forget the indications for surgery. Forget the indications when you see Doctor Howard's cases in a moment. Look at the size of that. There are no significant cataracts. And he's operating needlessly. * * *

Dr. Osher later testified over objections, "I have seen four of Dr. Howard's patients with permanent serious complications. One resulted in blindness." Howard and Tri–State moved for a mistrial based on this testimony.

Howard and Tri–State now appear to argue that Dr. Osher's statements relating to whether Howard "ignore[s] indications for surgery" and "operates needlessly" misled the jury, because Howard had treated the eleven plaintiffs for different conditions and with different procedures, and because Dr. Osher should have discussed his opinions as to those patients separately. Their argument, however, ignores the fact that Dr. Osher did in fact discuss the plaintiff's cases individually and in depth. Insofar as there was any potential prejudice from Dr. Osher's statements, we are mindful that the jury was obviously not confused by the presentation of the evidence given its disposition of the case. As a result, we hold that the

Siuda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

trial court did not abuse its discretion in admitting Dr. Osher's testimony.

[14] Howard and Tri-State argue that Dr. Osher's second comment relating to the instance of blindness invoked Evid.R. 404(B), but we do not agree. Pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts are not admissible to prove conforming conduct by the defendant. "Other acts" evidence is, however, admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[23] The decision to admit or exclude relevant evidence is within the sound discretion of the trial court.[24]

*7 The contested comment was admissible for purposes other than showing Howard's conforming conduct because the comment related to one or more of the following: Howard's motive to perform medically unnecessary surgeries; his knowledge as an ophthalmologist; and an absence of mistake or accident. Therefore, the trial court did not abuse its discretion in admitting Dr. Osher's testimony. Having found no error in the admission of the contested testimony, we further hold that the trial court did not err in overruling the motion for a mistrial.

Howard and Tri-State also assert that other portions of Dr. Osher's testimony violated Evid.R. 404(B). In two of the contested instances where Dr. Osher commented on an ophthalmologist in Chicago and accused Howard of "raping the Hippocratic Oath," no objections were raised. The errors, therefore, were not preserved for appeal, and we decline to consider them as plain error.[25]

[15] In the third instance, an objection was raised. In this instance, Dr. Osher testified about a "similar" case in Dayton involving another doctor. In view of this opinion testimony and in the full context in which the testimony was given, we are unconvinced that the testimony was substantially outweighed by any danger of unfair prejudice. The testimony was relevant in order to rebut the conspiracy theory raised against Dr. Osher, because it emphasized his concern about physicians who, in his opinion, deviated from the standard of care. Accordingly, we find no error in admitting this part of Dr. Osher's testimony.

[16] Finally, Howard and Tri-State maintain that Dr. Osher was not qualified as an expert in handwriting; therefore, it was impermissible for him to testify about matters relating to whether the charts of Ruth Siuda and Lora Maxwell had

been altered. While Dr. Osher was not qualified as an expert in handwriting, we agree with the plaintiffs that Dr. Osher's testimony fell within his qualifications as an expert pursuant to Evid.R. 702, because it related to specialized information, namely reviewing a medical record when making a medical diagnosis, and because no prejudice was demonstrated. Accordingly, the trial court did not abuse its discretion in overruling the objections and admitting the testimony. For the reasons set forth above, the third and fourth assignments of error are overruled.

In the fifth assignment of error, Howard and Tri-State maintain that the trial court erred by awarding prejudgment interest. We do not agree.

[17] [18] [19] Prejudgment interest may be awarded pursuant to R.C. 1343.03(C). "The purpose of R.C. 1343.03(C) is to encourage litigants to make a good faith effort to settle their case, thereby conserving legal resources and promoting judicial economy."[26] In order to award prejudgment interest, a trial court must find that the party required to pay the judgment failed to make a good-faith effort to settle the case, and that the party to whom the judgment is to be paid did not fail to make a good-faith effort to settle the case.[27] Good faith, as defined by the Ohio Supreme Court, consists of the following: (1) full cooperation in discovery proceedings, (2) rational evaluation of risks and potential liability, (3) no unnecessary delay of the proceedings, and (4) a good-faith settlement offer or a response in good faith to an offer from the other party.[28] The decision whether to award prejudgment interest lies within the sound discretion of the trial court.[29]

*8 [20] Defense counsel argued below that the defendants had extended settlement offers to each individual plaintiff in good faith, but that the plaintiffs had failed to negotiate in good faith by failing to make individual claims. We note that Howard and Tri-State now appear to base their argument on the mistaken belief that the cases should never have been consolidated in the first place. As we have already held, the trial court did not err in consolidating the cases. Under these circumstances, any settlement offer extended after the order granting consolidation on April 14, 1999, should have treated the cases in consolidated fashion.

The record is clear that, at least eight months prior to trial, plaintiffs' counsel made repeated attempts to negotiate with Howard and Tri-State. Two days before trial, Howard and

Siuda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

Tri–State flatly refused to negotiate a settlement until an offer was made that treated the cases on an individual basis. According to an affidavit filed by one of the plaintiffs' attorneys, the day before the trial commenced, defense counsel finally evaluated the case at $1.3 million, but counsel refused to offer that amount as a settlement due to the absence of client approval. On February 1, 2000, Howard made a settlement offer to each plaintiff. Howard offered the following to the prevailing plaintiffs: (1) $10,000 to Ruth Hughes, (2) $45,000 to Lora Maxwell, and (3) $15,000 to Ruth Siuda. The total aggregate settlement offered was $272,500. The offer included restrictions as to the presentation of evidence and the testimony of expert witnesses. No offer was apparently made on behalf of Tri–State. During a pretrial conference transcribed for the record, the trial court stated that the amount finally offered by defense counsel was too low and not made in good faith. No offers were made once the trial commenced.

Following the trial, Ruth Hughes was awarded $950,000, Lora Maxwell was awarded $1,000,000 and Ruth and Oscar Siuda were awarded $350,000. Given the lengthy delay in negotiating with the plaintiffs, the demands made by defense counsel when proposing an offer, and the low offers, we cannot say that the trial court erred in determining that Howard and Tri–State had failed to make a settlement offer in good faith. The fifth assignment of error is, therefore, overruled.

For ease of analysis, we now address the sixth, seventh, eighth, and ninth assignments of error out of order.

[21] In the ninth assignment of error, Howard and Tri–State maintain that the trial court erred in overruling their motions for a directed verdict, because competent expert testimony was not admitted about the standard of care applicable to Ruth Hughes.

In considering a motion for a directed verdict, the trial court should construe the evidence most strongly in favor of the party opposing the motion. The court should grant the motion only when reasonable jurors could only come to one conclusion and that conclusion is adverse to the party opposing the motion.[30] It is well established that a motion for a directed verdict presents a question of law going to the sufficiency of the evidence, and that the court must not consider the weight of the evidence or the credibility of the witness.[31] This court reviews a ruling on a motion for a directed verdict de novo.[32]

*9 In their motion for a directed verdict, which was argued by agreement of all parties after the trial had concluded, Howard and Tri–State reasoned that a directed verdict was appropriate because Dr. Osher was not qualified to give an expert opinion about the standard of care as it related to plaintiffs. Specifically, they maintained that Dr. Osher did not meet the fifty-percent rule for the active practice or teaching of medicine. On appeal, Howard and Tri–State now maintain that, because Dr. Osher's competency was not established at trial under Evid.R. 601(D), there was insufficient evidence for Ruth Hughes to overcome a directed-verdict motion.

[22] [23] Evid.R. 601 provides, in part, that every person is competent to be a witness except any person giving expert testimony on the issue of liability in a civil action against a physician arising out of diagnosis, care or treatment by a physician, "unless " the person testifying is licensed to practice medicine and surgery, * * * by the state medical board or by the licensing authority of any state, and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school. [Emphasis added.]"[33] The experience required by Evid.R. 601(D) insures that the witness has some actual knowledge of the daily care of patients, which is the particular foundation that qualifies a witness to opine whether an action by a treating physician has deviated from the standard of conduct imposed by the medical community. The determination of the competency of a medical witness to testify is a discretionary one, and it will not be reversed on appeal absent an abuse of discretion.[34] For Dr. Osher's testimony to have been admissible, the record had to show that he was licensed to practice medicine and that he had devoted at least one-half of his professional time to active clinical practice or to its instruction at an accredited school. The term "active clinical practice" not only includes those physicians who spend their professional time treating patients, but also encompasses the physician-specialist whose work is so related or adjunctive to patient care as to necessarily be included in Evid.R. 601(D).[35]

The record in this case establishes that, at the time of the trial, Dr. Osher was board-certified in ophthalmology and licensed to practice medicine in Ohio and Kentucky. The record further establishes that, as a part of his practice, Dr. Osher was the medical director for the Cincinnati Eye Institute, consulted with patients, reviewed patients records, engaged in research for improving lens implants, and published numerous articles,

Siuda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

books, and videotapes relating to ophthalmology. Dr. Osher was a full-time faculty member at the American Academy of Ophthalmology and had taught classes for numerous other societies. And Dr. Osher had been listed in the Best Doctors in America since 1992, he had been listed as one of the top cataract surgeons in the United States by Ophthalmology Times, and he had recently won an award from the American Academy that was the highest honor given to cataract surgeons by the academy. These facts lent support to the trial court's finding that Dr. Osher was, at the time of the litigation, sufficiently involved in active clinical practice and/or teaching within the meaning of the evidence rule. Accordingly, the trial court did not abuse its discretion in determining that the requirements of Evid.R. 601(D) had been satisfied.

*10 Dr. Osher was the only expert to testify about Howard's breach of the standard of care in relation to Ruth Hughes. Given our finding that Dr. Osher was qualified to testify as an expert, we hold that, as a matter of law, sufficient evidence in the form of Dr. Osher's testimony was presented regarding the standard of care as it applied to Ruth Hughes. The ninth assignment is overruled.

[24] In the seventh assignment of error, Howard and Tri–State argue that the trial court erred in overruling their motions for jnov and a new trial. In particular, they argue that, because evidence was not presented that Howard had acted with actual malice against Lora Maxwell and Ruth Hughes, or that Tri–State had ratified Howard's conduct, excessive punitive damages were awarded to Lora Maxwell and Ruth Hughes in violation of Civ.R. 59(A)(4) and Civ.R. 59(A)(6).

[25] [26] Civ.R. 59(A) states, in relevant part, that a new trial may be "granted to all or any parties and on all or part of the issues upon the following grounds * * * (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice * * * or (6) The judgment is not sustained by the weight of the evidence * * *." Pursuant to Civ.R. 59(A)(6), a new trial should be granted where the jury's verdict is not supported by competent, substantial, and credible evidence. [36] To support a finding of passion or prejudice, pursuant to Civ.R. 59(A)(4), it must be demonstrated that the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities. [37] In evaluating the propriety of the trial court's decision premised on an assessment of the weight of the evidence, a reviewing court may reverse only upon a demonstrated abuse of discretion. [38]

[27] [28] R.C. 2315.21 governs the recovery of punitive and exemplary damages in tort actions. For a plaintiff to recover punitive damages in a tort action, the plaintiff must show by clear and convincing evidence that "[t]he actions or omissions of [the] defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate [and] the plaintiff in question has adduced proof of actual damages that resulted from the actions or omissions as described [above]." [39] For an award of punitive damages, actual malice is defined as either behavior characterized by "hatred, ill will, or a spirit of revenge or a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." [40] The purpose of punitive damages is not to compensate the plaintiffs, but to punish and deter certain conduct. [41]

Here, the trial court instructed the jury to complete interrogatories relating to punitive damages. After filling out the interrogatories as they pertained to each plaintiff, the jury awarded punitive damages to Lora Maxwell and Ruth Hughes. The trial court's decision on the motion for a new trial involved questions of fact. Having reviewed the record, we cannot say that the trial court abused its discretion in overruling Howard's and Tri–State's motion for a new trial on the issue of punitive damages.

*11 Although Dr. Thomas Steedle testified for the defendants that Howard had acted within the standard of care in treating Lora Maxwell and Ruth Hughes, and that they were not damaged as a result of Howard's care, we are persuaded that the trial court was better situated to pass on issues of credibility involved in his testimony and that of other witnesses.

The record demonstrates that Howard performed two cataract surgeries on Ruth Hughes's right and left eyes. After her cataract surgery, Howard recommended YAG surgery for both eyes to correct scar-tissue damage that had formed following the cataract surgeries. Following the YAG surgery in her right eye, Ruth Hughes developed an infection in her cornea, sought a second opinion, and cancelled the YAG surgery for her left eye. At trial, Dr. Osher concluded that the YAG surgery in the right eye had been medically unnecessary, that the YAG surgery scheduled for the left eye was unnecessary, and that Dr. Howard had breached the

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Siuda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

standard of care in performing cataract and YAG surgeries and in recommending the second YAG surgery.

The record further demonstrates that Howard performed two glaucoma surgeries, one on each of Lora Maxwell's eyes, and that he had also proposed cataract surgery for both eyes. Dr. Osher, who examined Lora Maxwell after she sought a second opinion, testified at trial that Lora Maxwell had no evidence of glaucoma damage, thereby suggesting that glaucoma surgeries were medically unnecessary, and that there was no need for cataract surgery in either eye. Given his findings, Dr. Osher opined that the glaucoma surgeries and the proposed cataract surgery were unjustified. Dr. Osher further testified that Howard had breached the standard of care when treating Lora Maxwell, that Howard's treatment was in total disregard for her safety, and that Howard had misrepresented the need for glaucoma and cataract surgeries to Lora Maxwell. Dr. Kolker, a glaucoma and cataract specialist, also testified that nothing in the record justified operating for glaucoma, and that the treatment of Lora Maxwell for both glaucoma and cataracts fell below the standard of care. Finally, both Drs. Kolker and Osher stated that Howard had failed to consider non-surgical options, such as eye drops or a change in prescriptions, before proposing surgery for Lora Maxwell.

Dr. Osher cautioned that most unnecessary eye surgery caused permanent damage to the operated eye. And, in Dr. Osher's expert medical opinion, subjecting patients to unnecessary surgery was harmful and did not fall within those standard of care in the medical community. Given those factors, Dr. Osher opined that Ruth Hughes and Lora Maxwell had suffered damage to their eyes by the mere fact that they had undergone surgery where there was no need for surgery in the first place. Further, Dr. Osher opined that Ruth Hughes had suffered permanent eyesight damage to her right eye from the YAG surgery.

In sum, substantial competent, credible evidence was presented that Howard had acted with a conscious disregard for the rights and safety of Ruth Hughes and Lora Maxwell, and that such disregard had a great likelihood of causing harm. Accordingly, the trial court did not abuse its discretion in denying the motion for a new trial as it applied to Howard and to the award of punitive damages to Ruth Hughes and Lora Maxwell.

*12 [29]  [30]  [31]  Next, we address the propriety of awarding $250,000 punitive damages to both Ruth Hughes and Lora Maxwell against Tri-State. Pursuant to R.C.

2315.21(B)(1), an employer is not liable for punitive damages unless the employer authorized, participated in, or ratified the actions of the employee. In general, an employer authorizes acts committed within the scope of employment, either expressly or impliedly.[42] When an employee is acting within the scope of his employment, the doctrine of respondeat superior applies, and the plaintiff need not prove ratification to hold the employer liable for punitive damages.[43] But if an employee's act is outside the scope of employment, the plaintiff must demonstrate that the employer ratified the willful and malicious conduct of the employee.[44] Generally, the determination of whether an employee has acted within the scope of his employment is a question of fact to be decided by the jury.[45]

[32]  Here, the parties stipulated at trial that Howard had been employed and was still employed by Tri-State. The record demonstrates that Howard's examination and treatment of, as well as the surgeries performed on, Ruth Hughes and Lora Maxwell occurred during the scope of his employment. Consequently, because the evidence supported a finding that Howard was acting within the scope of his employment when he attended to Ruth Hughes and Lora Maxwell, we cannot say that the trial court abused its discretion in refusing to grant a new trial for the claims against Tri-State and the award of punitive damages to Ruth Hughes and Lora Maxwell.

In their statement of the assignments of error for review, Howard and Tri-State have also assigned as error the trial court's denial of their motion for jnov. In their motion, Howard and Tri-State argued that pretrial summary judgment should have been granted to them because nothing in the record supported a determination that the testimony of Drs. Kolker and Osher met the requirements of Evid.R. 601(D), and that, in the alternative, judgment should have been entered for them in light of the fact that Drs. Kolker and Osher did not meet the competency requirements of Evid.R. 601(D) at trial. In their brief before this court, however, Howard and Tri-State have neglected to provide any argument relating to either of these issues. Pursuant to App.R. 16(A)(7), we decline to address the assignment insofar as it challenges the trial court's denial of their motion for jnov.[46] The seventh assignment is, therefore, overruled.

[33]  Howard and Tri-State allege in the sixth assignment of error that the trial court erred in awarding attorney fees and costs to plaintiffs and in denying their own application for costs.

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Siuda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

We first address the propriety of basing the award of attorney fees on all the damages recovered, including the damages recovered by Ruth Siuda, who was not awarded punitive damages. In support of their argument, Howard and Tri-State contend that an award of punitive damages is a prerequisite to an award of attorney fees in a tort case.

**\*13** The jury in this case was required to complete special interrogatories relating to the damages awarded to each plaintiff. The special interrogatories identified the amount, if any, of damages to be received by the plaintiffs. The form required the jurors to determine the following:

1. What amount will fairly and adequately compensate Plaintiff * * * for the damages [she or he] has sustained or will sustain?

$ _____

2. Do you find that Plaintiff * * * is entitled to an award of punitive damages against Dr. Howard?

Yes _____ No _____ If "yes," in what amount?
$ _____

3. Do you find that Plaintiff * * * is entitled to an award of punitive damages against Tri-State Eye Care?

Yes _____ No _____ If "yes," in what amount?
$ _____

4. Do you find that Plaintiff * * * is entitled to attorney fees?

Yes _____ No _____

For the plaintiffs whose spouses brought loss-of-consortium claims, the form also called for findings on the derivative claims brought by David Himmelblau, Sallie Bell, Jimmie Peters, John Prine, Joyce Venable, William Thomas, and Oscar Siuda.

**[34]** Generally, in order to award attorney fees in the absence of statutory authorization, a jury must make a finding of malice and actually award punitive damages.[47] Here, however, the general verdict form did not include an instruction allowing for the consideration of attorney fees only upon an award of punitive damages. Rather, the verdict form did not apprise the jurors that they could only award attorney fees after awarding punitive damages to the

plaintiffs. No objections were made relating to the form at any time during the conference with the trial court about the interrogatories and the verdict form, or during the trial court's instructions to the jury. The failure to object to the verdict form directly contributed to the errors of which Howard and Tri-State now complain.

Pursuant to Civ.R. 51(A), a party may not assign as error on appeal "the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." It is well settled that errors arising during the course of the trial that are not brought to the attention of the court by objection or otherwise are waived and may not be raised on appeal.[48] Thus, absent an objection, we review the absence of an instruction only for plain error.[49] We find no such error here.

In this case, the parties used special interrogatories to supplement the general verdict form. As we have already held, the trial court did not err in awarding punitive damages to Ruth Hughes and Lora Maxwell; therefore, the jury's award of attorney fees to them was proper. Further, without the full punitive-damage instruction, the verdict form reasonably led the jurors to believe that they had the legal authority to award attorney fees to Ruth Siuda without awarding punitive damages.

**\*14** Moreover, despite defense counsel's arguments to the contrary, fees were not awarded to the non-prevailing plaintiffs. When determining the amount of attorney fees, the court stated at the hearing on fees that it had considered the forty-percent contingency-fee arrangement, the time and labor expended in the litigation, the experience and skill of the attorneys, the complexity and difficulty of the questions involved, and the expenses of litigation.[50] Based on the court's consideration of all these factors and the fact that no objection to the jury instruction was made at the time that the error occurred, we cannot say that the error in basing attorney fees on Ruth Siuda's damages in addition to the damages recovered by Lora Maxwell and Ruth Hughes seriously affected the basic fairness, integrity, or public reputation of the judicial process.[51]

**[35]** Howard and Tri-State also submit that the trial court erred when awarding costs pursuant to Civ.R. 54(D), because the amount awarded to the plaintiffs was based, in part, on

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

2002 -Ohio- 2292

costs incurred while representing the nonprevailing plaintiffs. We do not agree.

Civ.R. 54(D) states, "Except when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party *unless the court otherwise directs*." (Emphasis added.) Howard and Tri-State submit that the Bells, the Himmelblaus, the Peterses, the Prines, the Thomases, the Venables, Rita Lawson, and Linda Nickle were not "prevailing parties" pursuant to the statute. Despite their argument to the contrary, Civ.R. 54(D) is clear that costs may still be awarded in the court's discretion regardless of the "prevailing party" language. Civ.R. 54(D) itself places the ultimate responsibility for the assessment of costs upon the court and, as a result, permits a court to award costs in its discretion unless another rule or statute directs otherwise. [52] Accordingly, we hold that the taxing of court costs against Howard and Tri-State was proper under the circumstances and did not constitute an abuse of discretion. For the foregoing reasons, the sixth assignment of error is not well taken and is overruled.

[36] In the eighth assignment of error, Howard and Tri-State argue that the trial court erred in denying their motions for summary judgment on all the plaintiffs' claims. In their motion, Howard and Tri-State argued that Drs. Osher and Kolker were not competent to testify as experts as to the standard of care within the medical community, whether there was a breach of that standard of care by Howard, and whether Howard's negligence had proximately caused injury to the plaintiffs. In support of their contention that no genuine issues of material fact remained to be resolved, Howard and Tri-State gave one or more of the following arguments against Charles and Joyce Venable, Linda Nickle, George and Sallie Bell, Ruth and Oscar Siuda, Lora Maxwell, Rita Lawson, Joyce and David Himmelblau, Mary Sue and John Prine, Ruth Hughes, and Sylvia and William Thomas: (1) no evidence was presented demonstrating an applicable standard of care in the medical community; (2) there was no evidence that Howard had deviated from a standard of care; (3) there was no evidence of damages suffered by the plaintiffs; (4) plaintiffs signed consent forms for surgery; and (5) the claims fell outside the one-year statute of limitations. Nothing in the record indicates that Howard and Tri-State filed a motion for summary judgment against Nettie or Jimmie Peters, but Howard and Tri-State argued at the summary-judgment hearing that Nettie Peters had failed to present evidence of a deviation from the standard of care and resulting damages, and that she had consented to surgery.

*15 In response to Howard and Tri-State's motion for summary judgment, the plaintiffs submitted two reports from Drs. Kolker and Osher, which, according to the plaintiffs, demonstrated a standard of care in the medical community, a breach of that standard of care by Howard, and resulting injury. At the summary-judgment hearing, deposition testimony of Drs. Osher and Kolker was also admitted into the record. At the hearing, Howard and Tri-State challenged the admissibility and authenticity of Drs. Osher's and Kolker's opinions in their reports.

Like a motion for directed verdict, a summary-judgment motion requires that the trial court, upon viewing the evidence in the light most favorable to the nonmoving party, determine whether there is no genuine issue of material fact, whether the moving party is entitled to judgment as a matter of law, and whether reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. [53] To resolve this assignment of error, however, we need not reach the merits of Howard and Tri-State's argument.

The Ohio Supreme Court has held that any error in the denial of a pretrial motion for summary judgment is rendered moot or harmless when a subsequent trial on the same issues reveals that there are genuine issues of material fact. [54] Under such circumstances, the denial of a motion for summary judgment is generally harmless, and it is not validly a point of consideration on appeal from a final judgment entered following a trial on the merits. But when a motion for summary judgment is predicated on a pure question of law, such as the legal effect of a party's failure to timely respond to requests for admissions, the denial of the motion is not harmless. [55] Thus, a narrow opening exists for appellate review of the denial of summary judgment after a cause of action has proceeded to a final judgment at trial if the adverse ruling is based on a pure question of law. [56]

Whether an expert is competent to testify is ordinarily a question of law reserved for the court. But the facts of this case as we now know them show that Dr. Osher was competent to testify as an expert, and the evidence adduced at trial revealed the existence of genuine issues of material fact concerning the negligence claims brought by Ruth Hughes, Ruth Siuda, and Lora Maxwell. Further, Dr. Kolker's competency has not been challenged in this appeal. Because the full development of the facts at trial showed that Ruth Hughes, Ruth and Oscar Siuda, and Lora

Reuters. No claim to original U.S. Government Works.

Sluda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

Maxwell were entitled to judgment, any error in the denial of Howard's and Tri–State's motion for summary judgment was harmless. Thus, we hold that the determination of whether Drs. Osher and Kolker were appropriate experts under the rules of evidence here was not the type of "pure" question of law contemplated by the Ohio Supreme Court. Accordingly, this assignment of error is not well taken insofar as it pertains to Ruth Hughes, Ruth and Oscar Siuda, and Lora Maxwell.

*16 Further, because Howard and Tri–State prevailed at trial against Linda Nickle, Joyce and David Himmelblau, George and Sallie Bell, Nettie and Jimmie Peters, Mary Sue and John Prine, Rita Lawson, Charles and Joyce Venable, and Sylvia and William Thomas, there was no prejudice in the trial court's decision overruling the motions for summary judgment as to the nonprevailing parties. Accordingly, the eighth assignment of error is overruled.

[37]  In their tenth assignment of error, Howard and Tri–State allege that the trial court erred when it gave the jury a dictionary definition of "injury." Howard and Tri–State maintain that the court's clarification of the definition impermissibly broadened the characterization of what constituted an injury for purposes of the plaintiffs' malpractice claims. They argue that, in a medical malpractice case, injury means "actual physical injury," and that the trial court improperly expanded injury in this case to include rights, reputation, property, feelings and dignity. In support of their contention that injury should only have been defined as a physical injury, Tri–State and Howard cite *Zimmie v. Calfee, Haiter & Griswold.* [57] That case involved professional malpractice and did not hold that injury can only mean "physical injury." In fact, we have found no case law or statute suggesting that the term "injury" should be limited only to "physical injury" in medical malpractice cases.

When clarifying the word "injury" for the jury, the trial court apparently thought that the jurors had been seeking such clarification as an aid in determining damages. In response to their question, the trial court stated that it was offering a "common sense" definition of injury that encompassed language from several dictionaries, including both legal and lay dictionaries. The court then redefined injury over objections as the following: "any wrong or damage done to another, either in his person, rights, reputation, or property, the invasion of any legally protected interest of another, and offense against a person's body, feelings, or dignity."

A reading of the court's answer to the jury's question does not indicate that the court impermissibly enhanced the scope of damages. Even if we were to hold that the clarification was impermissible, it was not misleading to the jury in the context of the court's instructions in their entirety. [58]  When originally giving the jury instructions, the court had stated to the jury that words "are to be given their normal and customary meaning in the English Language * * *." Further, the court instructed the jury that, when determining damages, it should consider the following types of damages: (1) actual injury and damage proximately caused by the negligence of Tri–State and Howard; (2) loss of ability to perform usual functions; (3) emotional distress; (4) permanent injury and expense; (5) expected life; (6) future damages; (7) loss of consortium; and (8) punitive damages. Of relevance here, "emotional distress" was defined by the court to include feelings of "humiliation," "mortification," "nervousness," "grief," "anxiety," "worry," and "apprehension." Because the court instructed the jury without objection to consider, among other damages, mental pain and suffering, we cannot say that the trial court erred when clarifying the definition of injury for the purposes of determining damages. The tenth assignment of error is, therefore, overruled.

*17 [38]  [39]  [40]  [41]  In their final assignment of error, Howard and Tri–State contend that the trial court erred by permitting opposing counsel to present impermissible and prejudicial closing arguments. They allege that it was reversible error for opposing counsel to make highly inflammatory remarks comparing Howard to a "rapist." Specifically, they object to the following statement made by counsel over objections:

> You are allowed to send a message to the community, to the would-be Doctor Howards, to the other doctors that are out there that would try to run an assembly line type of operation. You are allowed by your conduct in this courtroom to tell them you're not going the [sic] permit it. The benefit of this verdict goes to our plaintiffs, true. But the message goes to everybody. The message goes to everybody.
>
> Now, if somebody comes in here and says, 'Not one penny'—I was thinking about that. You know, if somebody were to come in here and tell a rape victim that survived the case [ ] or a kidnap victim that escaped, that there was no physical injury, that there was no damage [,] that there was no harm [.] You wouldn't listen to that. You wouldn't listen to that.

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Siuda v. Howard, Not Reported In N.E.2d (2002).

2002 -Ohio- 2292

Counsel is generally afforded broad latitude in closing argument. [59] Inferences and deductions drawn from the evidence adduced at trial are ordinarily a legitimate subject of argument. [60] But when the argument is not supported by the evidence and is used to arouse prejudice or to misrepresent the evidence to the extent that there is a substantial likelihood that the jury will be misled, it is improper. [61] The trial court has the discretionary power to determine whether the bounds of permissible closing argument have been exceeded, and we will not reverse the trial court's decision unless there has been an abuse of its discretionary power. [62] In order to disturb the trial court's exercise of discretion here, the record must demonstrate "highly improper argument by counsel that tend[ed] to inflame the jury." [63]

Having reviewed the totality of counsel's argument, we cannot agree that the comment disparaged Howard or misrepresented the evidence. Counsel's comment relating to "not one penny" was made in response to defense counsel's comment in closing argument that not one "penny should be given to [the plaintiffs]." Because the comment was made in response to the issue of damages, we cannot say that, when viewed in light of the entire closing argument, it tended to disparage Howard or to inflame the jury. Further, we note that the remarks made to the jury had little impact since the verdict it returned was only in favor of Ruth Hughes, Lora Maxwell, and Ruth and Oscar Siuda, and since only two of them were awarded punitive damages. For these reasons, we hold that Tri–State and Howard have failed to demonstrate any prejudicial effect. Accordingly, the trial court's actions did not constitute an abuse of discretion, and we overrule the final assignment of error brought by Howard and Tri–State.

*18 We now address the cross-appeal of George and Sallie Bell, Joyce and David Himmelblau, Rita Lawson, Linda Nickle, Nettie and Jimmie Peters, Mary Sue and John Prine, Sylvia and William Thomas, and Charles and Joyce Venable. In their first assignment, the cross-appellants allege that the trial court improperly instructed the jury concerning a finding on battery in connection with the interrogatories. They maintain that because an interrogatory was not provided for the claims related to battery, and because the court instructed the jury to consider the interrogatories before the general verdict form, the jury was precluded from considering the battery claim on the general verdict form.

Six interrogatories were provided for the jury's consideration with respect to the claims of Linda Nickel, Ruth Hughes, Joyce Himmelblau, Ruth Siuda, George Bell, Nettie Peters, Mary Sue Prine, Rita Lawson, Charles Venable, Lora Maxwell, and Sylvia Thomas. The interrogatories related to their claims for negligence, injury resulting as a direct and proximate cause of the negligence, failure to obtain consent, damage as a result of the lack of informed consent, and fraud. The interrogatories were assembled and approved by both parties at a conference with the trial court.

The court also adopted a general verdict form, which derived from a proposal by plaintiffs' counsel. On the general verdict form, the jury was required to check two of the following statements as they pertained to plaintiffs Linda Nickel, Ruth Hughes, Joyce Himmelblau, Ruth Siuda, George Bell, Nettie Peters, Mary Sue Prine, Rita Lawson, Charles Venable, Lora Maxwell, and Sylvia Thomas:

____ We find in favor of Plaintiff * * * and against Defendant Howard

____ We find in favor of Plaintiff * * * and against Defendant Tri–State

____ We find against Plaintiff * * * and in favor of Defendant Howard

____ We find against Plaintiff * * * and in favor of Defendant Tri–State

Our review of the record reveals that, in the discussion with the court before the instructions were given, plaintiffs' counsel did not object either to the inconsistency in the interrogatories or to the court's instruction that the jury was to consider the interrogatories before the general verdict. [64] And no objection was lodged to the change in the interrogatory that was made when the court delivered its instructions, which included a reading of the interrogatories. [65]

[42] [43] Since plaintiffs' counsel failed to object to the exclusion of the battery theory in the special interrogatories, the issue cannot be raised on appeal absent plain error. [66] But we decline to find plain error here where plaintiffs' counsel invited the error. Under the "invited error" doctrine, a party may not take advantage of an error that he himself invited or induced the trial court to make. [67] Since any error in the failure to provide an interrogatory relating to the battery claim was induced by plaintiffs' own assent to the wording of the interrogatories, they arguably cannot now

Sluda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

claim that they were prejudiced by its exclusion. Moreover, had the plaintiffs' included findings as to all three claims on the general verdict form adopted by the court, there would have been no discrepancies between the interrogatories and the general verdict form. Accordingly, we overrule the first assignment in the cross-appeal.

*19 In their second assignment, the cross-appellants argue that the trial court erred in denying their motion for a new trial or for jnov on their negligence claim, because the verdicts were against the weight of the evidence. In their third assignment, the cross-appellants argue that the trial court erred in denying their motion for a new trial or for jnov on their informed-consent claim, because the verdicts were against the weight of the evidence. For ease of analysis, we address these assignments in the aggregate.

As we have already noted, when deciding a motion for a new trial premised on Civ R.59(A)(6), the court must determine whether the verdict is against the manifest weight of the evidence, and it is granted discretion when choosing to grant or deny the motion. [68] In contrast, deciding whether to grant a motion for jnov does not require the court to weigh the evidence or to evaluate the credibility of the witnesses. Our standard of review for a ruling on a motion for jnov made pursuant to Civ.R. 50(B) is the same as that for a ruling on a motion for a directed verdict pursuant to Civ .R. 50(A), [69] except that a motion for jnov is evaluated on all of the evidence presented at trial. [70] Thus, a motion for jnov tests the legal sufficiency of the evidence and presents a question of law. [71]

In challenging the denial of their jnov motion, the cross-appellants assert that their evidence relating to negligence and informed consent was more credible than the evidence presented by Howard and Tri-State. But, in considering a motion for jnov, a court does not weigh the evidence or test the credibility of the witnesses. [72] The testimony and the evidence offered by the nonmoving party, here Howard and Tri-State, must be construed most strongly in their favor. [73] Construing the evidence in this manner, we hold that reasonable minds could have concluded that Howard's treatment of George Bell, Mary Sue Prine, Linda Nickle, Joyce Himmelblau, Nettie Peters, Rita Lawson, Charles Venable, and Sylvia Thomas was within the appropriate standards of care, and that Howard obtained valid consent when performing cataract, glaucoma, and/or YAG surgery on George Bell, Mary Sue Prine, Linda Nickle, Joyce Himmelblau, Nettie Peters, Rita Lawson, Charles Venable, and Sylvia Thomas.

In challenging the denial of their motion for a new trial, the cross-appellants make much of the fact that they presented competent, credible evidence to support their allegations of negligence and lack of informed consent. In particular, they direct us to the testimony of their experts, Drs. Osher and Kolker. Having reviewed the record in its entirety, we are persuaded that their points merely highlight the fact that there were conflicts in the evidence on nearly every aspect of this case and do nothing to negate the substantial credible evidence presented by Howard and Tri-State.

[44] [45] To prove their claim for medical negligence, the cross-appellants were required to establish the existence of a standard of care within the medical community, a breach of that standard of care by the defendants, and proximate cause between the medical negligence and the injury sustained. [74] The essence of this medical malpractice claim was whether the care and treatment by Howard fell below the appropriate standard of care. Expert testimony is generally required to prove the elements of medical malpractice whenever they are beyond the common knowledge and understanding of the jury. [75] After reviewing the record, we conclude that the evidence was sufficient to warrant a denial of their motion for a new trial. Given the testimony of Dr. Steedle, the jury could reasonably have concluded that Howard did not breach his duty of care in his treatment of George Bell, Mary Sue Prine, Linda Nickle, Joyce Himmelblau, Nettie Peters, Rita Lawson, Charles Venable, and Sylvia Thomas. Moreover, the jury could also have reasonably concluded that George Bell, Mary Sue Prine, Linda Nickle, Joyce Himmelblau, Nettie Peters, Rita Lawson, Charles Venable, and Sylvia Thomas were not injured as a result of the surgery performed and/or recommended by Howard. Accordingly, sufficient competent, credible evidence was adduced at trial to support a verdict in Howard's and Tri-State's favor on the negligence claims brought by George Bell, Mary Sue Prine, Linda Nickle, Joyce Himmelblau, Nettie Peters, Rita Lawson, Charles Venable, and Sylvia Thomas.

*20 [46] [47] To establish a viable informed-consent claim for trial, it was necessary for the cross-appellants to demonstrate the following: (1) a physician failed to disclose the material risks and dangers potentially involved in a given course of treatment; (2) the undisclosed risks and dangers materialized as the proximate cause of injuries sustained by the patient; and (3) a reasonable person in the patient's

Thomson Reuters. No claim to original U.S. Government Works.

20

Sluda v. Howard, Not Reported In N.E.2d (2002)

2002 -Ohio- 2292

position would have declined the treatment had the material risks and dangers been brought to light by the physician.[76] Medical expert testimony is normally necessary, to establish the material risks, because the probability and magnitude of those risks is a matter of medical judgment.[77]

[48] The record establishes that George Bell signed a consent form for the cataract surgery on his left eye and the scheduled surgery on his right eye; Mary Sue Prine signed a consent form for glaucoma surgery on her right and left eyes; Linda Nickle signed consent forms for cataract surgery on her right and left eyes in 1997 and for the YAG surgery scheduled for her left eye in 1997, but no consent forms are in the record relating to any eye surgery before 1997; Joyce Himmelblau signed consent forms for cataract surgery on her right and left eyes and the YAG surgery on her right eye; Nettie Peters signed consent forms for cataract surgery on her right and left eyes; Rita Lawson signed consent forms for glaucoma surgery on her right and left eyes and for cataract surgery on her right and left eyes; Charles Venable signed consent forms for cataract surgery on his right and left eyes; and Sylvia Thomas signed a consent form for a cataract surgery that was subsequently aborted. Except for the consent form signed by Sylvia Thomas, all the consent forms for cataract surgery identified the following risks: "infection, hemorrhage, or possible total loss of the eye." On the consent form signed by Sylvia Thomas, alternatives to surgery were identified in depth and complications from surgery were discussed in greater detail. On all of the consent forms for YAG surgery, the risks identified on the form included the following: "temporary increase in intraocular pressures, retinal detachment, failure of procedure to improve vision." On all the consent forms for glaucoma surgery, the risks identified included "blurred vision, temporary rise in intraocular pressure, failure of procedure to lower intraocular pressure."

The cross-appellants maintain that the signed consent forms were fraudulently or deceitfully obtained because Howard had falsely represented that surgery was required.[78] By raising the issue of fraud and/or deceit, the cross-appellants are again challenging whether Howard had acted within the standard of care in the medical community. Having already held that sufficient competent and credible testimony was presented relating to George Bell, Mary Sue Prine, Linda Nickle, Joyce Himmelblau, Nettie Peters, Rita Lawson, Charles Venable, and Sylvia Thomas, we find this argument to be feckless. To the extent that their assignment addresses whether Howard apprised George Bell, Mary Sue Prine,

Linda Nickle, Joyce Himmelblau, Nettie Peters, Rita Lawson, Charles Venable, and Sylvia Thomas of the material risks associated with their surgeries, we are persuaded that competent and credible testimony, both expert and otherwise, was admitted to demonstrate that George Bell, Mary Sue Prine, Linda Nickle, Joyce Himmelblau, Nettie Peters, Rita Lawson, Charles Venable, and Sylvia Thomas were apprised of the material risks involved in cataract, glaucoma and/ or YAG surgery. Though testimony was presented to the contrary, credibility was an issue to be resolved by the trier of fact, and we should not reverse its judgment if it is supported by some competent, credible evidence.[79] Confronted with conflicting competent and credible testimony, the trial court did not err in denying the motion for a new trial on the informed-consent claims.

*21 In sum, because there was competent, credible evidence presented at trial to support a verdict in favor of Tri–State and Howard on the negligence claims and the informed-consent claims brought by George Bell, Mary Sue Prine, Linda Nickle, Joyce Himmelblau, Nettie Peters, Rita Lawson, Charles Venable, and Sylvia Thomas, the trial court did not abuse its discretion in denying their motions for a new trial. The second and third assignments in the cross-appeal are overruled.

[49] The final assignment in the cross-appeal addresses the propriety of defense counsel's closing arguments. The cross-appellants allege that defense counsel's closing argument was peppered with reprehensible remarks about plaintiffs' attorney Stanley Chesley and medical expert Dr. Osher. They point to the following statement as evidence of such objectionable misconduct:

> If you do not—if you give money to these people with this set of circumstances, with this kind of evidence and this kind of trial, you will empower the Robert Oshers of the world, you will empower the Stanley Chesleys of the world, you'll empower these emperors who really— the bottom line is they have no clothes. They have no credibility.

The cross-appellants offered no objection below to the various remarks against Dr. Osher and attorney Chesley that they now assert were disparaging to their case.

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Siuda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

Having reviewed the entire closing argument, we are not convinced that defense counsel's comments were disparaging or that they tended to inflame the jury. During plaintiffs' closing arguments, attorney Chesley began his remarks by analogizing this case to a nursery rhyme titled "The Emperor Has No Clothes." Chesley pointed out that, like the child in the nursery rhyme who truthfully told the powerful emperor that he had no clothes, the defense had been stripped of its clothes by failing to present evidence of a conspiracy theory. In reply, defense counsel turned the nursery rhyme on its head to show how the plaintiffs could be compared to the emperor. Basically, this analogy, as used by both plaintiffs' and defendants' counsel, related to the presentation of credible evidence. Under these circumstances, we cannot say that the trial court abused its discretion in permitting the comments during closing arguments.[80] Accordingly, the fourth assignment of error in the cross-appeal is overruled.

The judgment of the court of common pleas is hereby affirmed.

*Judgment affirmed.*

GORMAN, P.J., and WINKLER, J., concur.
*Please Note:*

The court has placed of record its own entry in this case on the date of the release of this Decision.

**All Citations**

Not Reported in N.E.2d, 2002 WL 946188, 2002 -Ohio- 2292

Footnotes

1   The appeals have *sua sponte* been consolidated under the case number C–000656.
2   Claims were filed by Ruth and Oscar Siuda under the case number A–9802378; by Ruth Hughes under the case number A–9804397; by Lora Maxwell, Rita Lawson, Nettie and Jimmie Peters, Mary Sue and John Prine, and Charles and Joyce Venable under the case number A–9805831; by Linda Nickle under the case number A–9806989; by Joyce and David Himmelblau under the case number A–9804714; by Sylvia and William Thomas under the case number A–9804537; and by George and Sallie Bell under the case number A–9804413.
3   Kenneth Lawson was also named as a party in this motion.
4   See *Transamerica Ins. Co. v. Nolan* (1995), 72 Ohio St.3d 320, 322, 649 N.E.2d 1229, 1231.
5   See App.R. 3(A); *Id.* at syllabus.
6   See *Transamerica Ins. Co. v. Nolan, supra,* at syllabus.
7   See *Maritime Mfrs. Inc. v. Hi–Skipper Marina* (1982), 70 Ohio St.2d 257, 436 N.E.2d 1034.
8   See *McDonnold v. McDonnold* (1994), 98 Ohio App.3d 822, 827, 649 N.E.2d 1236, 1239–1240.
9   See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, 1142.
10  See *Jamestown Village Condo. Owners Assn. v. Market Media Research, Inc.* (1994), 96 Ohio App.3d 678, 687, 645 N.E.2d 1265, 1272; *Waterman v. Kitrick* (1990), 60 Ohio App.3d 7, 14, 572 N.E.2d 250, 256.
11  See *Waterman v. Kitrick, supra,* at 14, 572 N.E.2d 250, 572 N.E.2d at 257.
12  Compare Evid.R. 803 with Fed.R.Evid. 803(18).
13  See *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph two of the syllabus.
14  See *State v. Echols* (1998), 128 Ohio App.3d 677, 698, 716 N.E.2d 728, 742–743.
15  See *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099, 1103.
16  *Id.* at syllabus.
17  See Evid.R. 802.
18  See *Meyers v. Hot Bagel Factory, Inc.* (1999), 131 Ohio App.3d 82, 100–101, 721 N.E.2d 1068, 1081; *State v. Sorrels* (1991), 71 Ohio App.3d 162, 165, 593 N.E.2d 313, 314–315.
19  See *Meyers v. Hot Bagel Factory, Inc., supra.*
20  See *Cincinnati v. Banks* (2001), 143 Ohio App.3d 272, 287, 757 N.E.2d 1205, 1217; *Brokamp v. Mercy Hospital Anderson* (1999), 132 Ohio App.3d 850, 863, 726 N.E.2d 594, 603.
21  See *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291, 1299.
22  See *Id.*
23  Evid. R. 404(B).

Thomson Reuters. No claim to original U.S. Government Works.

Siuda v. Howard, Not Reported In N.E.2d (2002)

2002 -Ohio- 2292

24    See *State v. Bey* (1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484, 490.

25    See *Goldfuss v. Davidson*, *supra*.

26    *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 167, 495 N.E.2d 918, 921.

27    See *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 658, 635 N.E.2d 331, 347.

28    See *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 495 N.E.2d 572, syllabus.

29    See *Id.* at 159, 495 N.E.2d at 574.

30    See Civ.R. 50(A)(4).

31    See *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119–120, 671 N.E.2d 252, 255–256; *Titanium Indus. v. S.E.A., Inc.* (1997) 118 Ohio App.3d 39, 47–48, 691 N.E.2d 1087, 1093.

32    See *Titanium Indus. v. S.E.A., Inc.*, *supra*; *Byrley v. Nationwide Life Ins. Co.* (1994), 94 Ohio App.3d 1, 18, 640 N.E.2d 187, 198.

33    Evid.R. 601(D).

34    See *Campbell v. Warren Gen. Hosp.* (1994), 105 Ohio App.3d 417, 421, 664 N.E.2d 542, 544.

35    See *McCrory v. State* (1981), 67 Ohio St.2d 99, 423 N.E.2d 156, syllabus

36    See *Dillon v. Bundy* (1992), 72 Ohio App.3d 767, 773 774, 596 N.E.2d 500, 504.

37    See *Jeanne v. Hawkes Hosp. of Mt. Carmel* (1991), 74 Ohio App.3d 246, 257, 598 N.E.2d 1174, 1181.

38    See *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 262 N.E.2d 685, paragraph one of the syllabus.

39    R.C. 2315.21(B)(1) and (2).

40    *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus.

41    See *Moskovitz v. Mt. Sinai Med. Ctr.*, *supra*, at 651, 635 N.E.2d at 343.

42    See *Fulwiler v. Schneider* (1995), 102 Ohio App.3d 398, 406, 662 N.E.2d 82, 86–87.

43    See *Id.* at 406, 662 N.E.2d at 87.

44    See *Id.*

45    See *Osbourne v. Leyles* (1992), 63 Ohio St.3d 326, 330, 587 N.E.2d 825, 829.

46    See App.R. 16(A)(7).

47    See *Digital & Analog Design Corp. v. North Supply Co.* (1992), 63 Ohio St.3d 657, 662, 590 N.E.2d 737, 742; *Tulloh v. Goodyear Atomic Corp.* (1994), 93 Ohio App.3d 740, 757, 639 N.E.2d 1203, 1214.

48    See *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 436 N.E.2d 1001, paragraph one of the syllabus.

49    See *Goldfuss v. Davidson*, *supra*; *Capretta v. Goodson* (Dec. 18, 2000), Cuyahoga App. No. 76932, unreported.

50    See *Villella v. Walkem Motors, Inc.* (1989), 45 Ohio St.3d 36, 41, 543 N.E.2d 464, 470, holding modified on other grounds in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.3d 331, paragraph two of the syllabus.

51    See *Goldfuss v. Davidson*, *supra*.

52    See *State ex rel. Fent v. Regional Transit Auth.* (1990), 48 Ohio St.3d 39, 548 N.E.2d 240.

53    See Civ R. 56(C); *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267, 274.

54    See *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615, syllabus.

55    See *id.* at 157, 642 N.E.2d at 621, citing *Balson v. Dodds* (1980), 62 Ohio St.2d 287, 405 N.E.2d 293.

56    See *Universal Window & Doors, Inc. v. Eagle Window & Door, Inc.* (1996), 116 Ohio App.3d 692, 699, 689 N.E.2d 56, 60, fn. 3; *Air Products Chemical, Inc. v. Indiana Ins. Co.* (Dec. 23, 1999), Hamilton App. Nos. C–980947 and C–990009, unreported.

57    (Dec. 10, 1987), Cuyahoga App. No. 52353, unreported.

58    See *Kokitka v. Ford Motor Co.* (1995), 73 Ohio St.3d 89, 93, 652 N.E.2d 671, 674–675.

59    See *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph two of the syllabus.

60    See *Coffey v. Shenk* (1974), 39 Ohio App.2d 156, 160, 316 N.E.2d 917, 920.

61    See *Brokamp v. Mercy Hospital Anderson*, *supra*, at 866, 726 N.E.2d at 607.

62    See *Pang v. Minch*, *supra*, at paragraph three of the syllabus.

63    *Brokamp v. Mercy Hospital Anderson*, *supra*.

64    Plaintiffs' counsel maintain that they had raised an objection to the forms at an in-chambers conference with no court reporter present, but there is no record of that conference.

Sluda v. Howard, Not Reported in N.E.2d (2002)

2002 -Ohio- 2292

65   While counsel did alert the trial court that he "always make[s] a general objection * * * I have nothing more to say," this commentary was not sufficient to constitute an appropriate objection.

66   See *Goldfuss v. Davidson, supra.*

67   See *State ex rel. Fowler v. Smith* (1994), 68 Ohio St.3d 358, 359, 626 N.E.2d 950, 952, citing *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 313, 511 N.E.2d 106, 109.

68   See *Rohde v. Farmer, supra,* at 90, 262 N.E.2d at 690.

69   See *Posin v. A.B.C. Motor Court Hotel* (1970), 45 Ohio St.2d 271, 275, 344 N.E.2d 334, 338

70   See *Chemical Bank of N.Y. v. Neman* (1990), 52 Ohio St.3d 204, 207, 556 N.E.2d 490, 493–494.

71   See *Posin v. A.B.C. Motor Court Hotel, supra.*

72   See *Posin v. A.B.C. Motor Court Hotel, supra.*

73   See *id.*

74   See *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 131–132, 346 N.E.2d 673, 677–678.

75   See *Bruni v. Tatsumi, supra,* at 130, 346 N.E.2d at 676–677.

76   See *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 477 N.E.2d 1145, syllabus.

77   See *Ratcliffe v. University Hospitals of Cleveland* (Mar. 11, 1993), Cuyahoga App. No. 61791, unreported.

78   While the cross-appellants include Ruth Sluda and Lora Maxwell (both of whom lost on the issue of informed consent) in their analysis, they never filed a cross-appeal; therefore, we cannot now consider the assignment of error to apply to them.

79   See *Brokamp v. Mercy Hosp. Anderson, supra,* at 874, 726 N.E.2d at 611.

80   See *Pang v. Minch, supra,* at paragraph three of the syllabus.

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

End of Document

Thomson Reuters. No claim to original U.S. Government Works.

# SUGGESTED GROUP TRIALS

## PLAINTIFFS PREFERENCES IN ORDER OF PREFERENCE FOR TRIAL SETTINGS

**1. One scheduled trial for ALL cases set August 1, 2016.**

Reason?

Every Plaintiff deserves their trial and it's going on three years. August 1, 2016 will be three years since all these clients filed for the most part and three years since Dr. Durrani was indicted.

The Court has the power and authority to control discovery. We have completed for the most part, written discovery.

They have the following from our Clients:

1.      Their Complaints
2.      Answered Written Discovery
3.      Our Clients' Narratives
4.      Medical Records
5.      Medical Bills
6.      Radiology
7.      Photographs of Our Clients' Scars
8.      Ten Minute Video Interview of our Clients
9.      Our Nurse Reviews
10.     Our Expert's Affidavit

The cases have the following in common:

1. Unnecessary Surgeries Based Upon:

   A. Radiology which contradicts Dr. Wilkey's findings

   B. Clinical findings

   C. Patient condition

2. Misdiagnosis/Exaggerated Diagnosis:

A. Always falsely claiming severe stenosis and spondylolisthesis (he knew it would obtain insurance approval)

B. Claiming conditions like scoliosis, etc.

3. Fraud/Misrepresentations:  Claiming if didn't have surgery, they would be paralyzed, etc.

August 1, 2016 gives eight months to conduct discovery.  They can depose every Plaintiff they want.  The Court can set a one-hour limit for depositions.

Why is this best?

1. Likelihood of resolution

2. One, not 520, jury selection, openings, closings.

3. Direct/Cross can be limited one hour by Plaintiff.

4. Experts can testify one time, but at length as restricted to time per case.

5. There can be ten alternates chosen for jury service.

6. It is truly the best manner to resolve this litigation.

Every accommodation can be made to do this.

Where there is a will, there is a way.

2. Group Trials with Many Options:

A. All Children's
B. All West Chester/UC Health
C. Journey Lite
D. Cases in which there is no hospital
E. Cases continued already so discovery done

# GROUP TRIALS IN SUGGESTED PRIORITY LIST WITH COMMONALITY OF FACTS AND/OR INJURY

## 1. C1-C2 Cases

These are surgeries performed in the C1-C2 spine region. These are cases the U.S. Government prosecuted Dr. Durrani on including our clients testifying to the grand jury. They also are part of the cases West Chester paid $4.1 million to the U.S. under a now public false claims case settlement for unnecessary surgeries paid for by Medicaid and Medicare. There are under 30 of them.

## 2. Aorta Cases

These are cases where Dr. Durrani placed a screw up against patient's aorta. There are about 10 of them.

## 3. Surgeries While Suspended

These are cases where Dr. Durrani performed a surgery at West Chester while suspended at West Chester. There are about 32 of them.

## 4. Minor

These are cases where the patients were minors. There are ___ of them.

## 5. Insurance Denial

These are cases where the patient's health insurance denied paying the claim.

## 6. Retrograde Ejaculation

These are cases where men suffered this horrendous condition.

## 7. No OP Report

These are cases where Dr. Durrani dictated no OP Report.

## 8. Threats to Have Surgery

These are cases where Dr. Durrani falsely threatened patients that they would suffer paralysis or other great harm if they did not have immediate surgery.

**9. Blank Consent Form**

These are cases with blank or no written consent forms.

**10.Late Dictation**

These are cases plus 30 days late in dictation which would have warranted a suspension.

**\*The claims against the hospital Defendants are the same in every case. It's silly to try the same fact issue against the hospital to 500 juries. We once proposed one trial against each hospital. They would not agree. The claims against Dr. Durrani have some of the same similarities. The defense is going to try everything to avoid group trials when group trials are the solution to getting all the cases tried. Resolution is not happening because of the defense, not Plaintiffs. It will be three years in February this began. There have been only five total trials.**

3. Cases Chosen by Plaintiffs and/or Defendants.

The following cases we have proof (attached) Dr. Durrani had his privileges suspended at West Chester and still performed the following surgeries between August 6, 2010 and October 5, 2010 at West Chester:

| | | |
|---|---|---|
| Couch, Jackie | WCH | 08/11/10 |
| Stanfield, Rick | WCH | 08/13/10 |
| Underwood, Connie | WCH | 08/13/10 |
| McQueary, Tonia | WCH | 08/16/10 |
| Botner, Gerald | WCH | 08/23/10 |
| Houghton, Robert | WCH | 08/23/10 |
| Ross, Carol | WCH | 08/25/10 |
| Rowley, Ronald | WCH | 08/25/10 |
| Brady, Rebekah | WCH | 08/27/10 |
| Allen, Sherry Lynn | WCH | 08/30/10 |
| Kallmeyer, Ward, Linda | WCH | 08/30/10 |
| Rosebery, Faye | WCH | 09/08/10 |
| Shempert, David | WCH | 09/10/10 |
| Bachmann, Gayle | WCH | 09/15/10 |
| Juergens, Sarah | WCH | 09/15/10 |
| Quinn, Marcia | WCH | 09/17/10 |
| Rodriguez, Debbie | WCH | 09/17/10 |
| Spivy, Billy | WCH | 09/17/10 |
| Bradshaw, Latoya | WCH | 09/20/10 |
| Koch, Amanda | WCH | 09/20/10 |
| Atwood, Christopher | WCH | 09/22/10 |
| Favaron, Neil | WCH | 09/22/10 |
| Kauffman, Katelyn | WCH | 09/22/10 |
| Goldstein, Christine | WCH | 09/24/10 |

| Ray, Todd | WCH | 09/29/10 |
|---|---|---|
| Hickey, Jennifer | WCH | 10/01/10 |
| Hursong, Carolyn | WCH | 10/01/10 |
| Shempert, David | WCH | 10/01/10 |
| Bayliss, Steve (Louise) | WCH | 10/04/10 |
| Kallmeyer, Ward, Linda | WCH | 10/04/10 |
| Marksberry, Paul | WCH | 10/04/10 |
| McCauley, Hiram | WCH | 10/04/10 |

# GROUP TRIALS IN SUGGESTED PRIORITY LIST WITH COMMONALITY OF FACTS AND/OR INJURY

1. **C1-C2 Cases**

   These are surgeries performed in the C1-C2 spine region.  These are cases the U.S. Government prosecuted Dr. Durrani on including our clients testifying to the grand jury. They also are part of the cases West Chester paid $4.1 million to the U.S. under a now public false claims case settlement for unnecessary surgeries paid for by Medicaid and Medicare.

2. **Aorta Cases**

   These are cases where Dr. Durrani placed a screw up against patient's aorta.

3. **Surgeries While Suspended**

   These are cases where Dr. Durrani performed a surgery at West Chester while suspended at West Chester.

4. **Minor**

   These are cases where the patients were minors.

5. **Insurance Denial**

   These are cases where the patient's health insurance denied paying the claim.

6. **Retrograde Ejaculation**

   These are cases where men suffered this horrendous condition.

7. **No OP Report**

   These are cases where Dr. Durrani dictated no OP Report.

8. **Threats to Have Surgery**

   These are cases where Dr. Durrani falsely threatened patients that they would suffer paralysis or other great harm if they did not have immediate surgery.

9. **Blank Consent Form**

   These are cases with blank or no written consent forms.

10. **Late Dictation**

These are cases plus 30 days late in dictation which would have warranted a suspension.

**\*The claims against the hospital Defendants are the same in every case.  It's silly to try the same fact issue against the hospital to 500 juries.  We once proposed one trial against each hospital.  They would not agree.  The claims against Dr. Durrani have some of the same similarities.  The defense is going to try everything to avoid group trials when group trials are the solution to getting all the cases tried.  Resolution is not happening because of the defense, not Plaintiffs.  It will be three years in February this began.  There have been only five total trials.**

# COMMON TO ALL CASES

1. Unnecessary Surgeries Based Upon:

    A. Radiology which contradicts Dr. Wilkey's findings

    B. Clinical findings

    C. Patient condition

2. Misdiagnosis/Exaggerated Diagnosis:

    A. Always falsely claiming severe stenosis and spondylolisthesis (he knew it would obtain insurance approval)

    B. Claiming conditions like scoliosis, etc.

3. Fraud/Misrepresentations: Claiming if didn't have surgery, they would be paralyzed, etc.

**ADDITIONAL CATEGORIES WHICH SUPPORT SIGNIFICANT VALUE INCLUDING MOST HAVING MORE THAN ONE OF THE FOLLOWING**

1. Surgery while suspended

2. No operative report

3. Lost wages

4. No consent form for Durrani

5. No consent form for Hospital

6. Late operative report (far past 30 days)

7. BMP-2 Used (increased cancer risk)

8. PureGen Used (never approved by FDA)

9. Surgery on minor

10. Multiple surgeries

11. Exposed to Dr. Durrani's MRSA infested dog "Hank" at Dr. Durrani's office

12. Threatened patient falsely they would be paralyzed if no surgery.

13. Without informing patient, he made Dr. Shanti do the surgery for him.

14. C1-C2 False Panus surgery. These were some of the surgeries the U.S. government indicted Dr. Durrani on.

15. Insurance denied paying for the surgery.

16. Screws up against aortas.

## LIST OF NAMES BY CATEGORY

**SCREW NEAR AORTA/PENETRATED AORTA**

1. Rebecca Breitenstein
2. Michael Brophy
3. Sandra Dennis
4. Connie Ellington
5. Carla Griessman
6. Josh Kauffman
7. Tonya Neal
8. Carol Pummell
9. Dorothy Rose
10. Karen Taylor
11. Kimberly Underwood

**EDS**

1. Gayle Bachman
2. Edythe Bishop
3. Michael Brophy
4. Erin Greelish
5. Kelly Hennessy
6. Stephanie Jobe
7. Sheila Krabacher
8. Derek List
9. Sherri Puckett-Morrissette
10. Kim Schmidt
11. Edward Thiessen

**C12 FUSION/C1C2 FALSE PANNUS**

1. Patricia Adams
2. Joseph Baumgardner
3. Edythe Bishop
4. Latoya Bradshaw
5. Christina Brashear
6. Jacob Cotter
7. Sandra Dennis
8. Arlene Fait
9. Christina Goldstein
10. Erin Greelish
11. Kelly Hennessy
12. Stephanie Jobe
13. Sheila Krabacher
14. Adrian Lilly

15.   Heather McCann
16.   Lyndsey Middendorf
17.   Vera Moffitt
18.   Marjorie Newman
19.   Katie Prater
20.   Sherri Puckett-Morrissette
21.   John Richardson
22.   Debbie Rodriguez
23.   Rhonda Scott
24.   Dana Setters
25.   Vicky Wilson
26.   Carla Wooten

**RETROGRADE EJACULATION**

1.   Brian Atkins
2.   Christopher Atwood
3.   Duane Pelfrey
4.   Steven Andrew Schultz

**THREAT OF PARALYSIS/WHEELCHAIR**

1.   Jimmy Allen
2.   Brian Atkins
3.   Joseph Baumgardner
4.   Troy Beckelheimer
5.   Cathy Beil
6.   Denise Bess
7.   Edythe Bishop
8.   Connie Ellington
9.   Arlene Fait
10.   Donna Good
11.   Erin Greelish
12.   Melissa Habermehl
13.   George Hutchinson
14.   Stephanie Jobe
15.   Katelyn Kauffman
16.   Rose Koehler
17.   Valarie Kopp
18.   Sheila Krabacher
19.   Laura Kranbuhl-McKee
20.   Patricia Legendre
21.   Tamala Lovette
22.   Timothy Marshall
23.   Tiffany Messerschmidt
24.   Diane Meyer

25. Rahmann Nisbett
26. Timothy Osborn
27. Angela Pennington
28. Crystal Pierce
29. Margaret Radenheimer
30. Valerie Reeves
31. Laura Romito
32. Asia Shannon
33. Sierra Stratman
34. Karen Taylor
35. Benjamin Thaeler
36. Brian Thien
37. Jordan Vance
38. Cathleen Weber
39. Robert Wilson
40. Cory Wright
41. Corrine Zachry

**INSURANCE DENIALS**

1. Cindy Bartlett
2. Michelle Byar
3. Bobbie Douglas
4. Connie Ellington
5. Michael Hillard
6. Roger Johnson
7. Deborah Kidd
8. Valarie Kopp
9. Dana Setters
10. Ryan Tackett
11. Shannon Wallace
12. Lindsay Walsh
13. Daniel Webber
14. Priscilla Wittmeyer

**LATE DICTATIONS FOR OPERATIVE REPORT**

1. Patricia Adams
2. Michelle Agee
3. Katrina Allen
4. Sheri Allen
5. Rebecca Applegate
6. Diana Ashcraft
7. Christopher Atwood
8. Amanda Ayres
9. Jennifer Ballinger

10.   Cindy Bartlett
11.   Nicholas Battista
12.   Joseph Baumgardner
13.   Louise Bayliss
14.   Judy Beck
15.   Nancy Begley
16.   Cathy Beil
17.   Terry Beil
18.   Denise Benge
19.   Nick Benge
20.   Shawnda Benton
21.   Leona Beyer
22.   Kaitlyn Boggs
23.   Jennifer Bookman
24.   Patricia Boone
25.   Deena Borchers
26.   Doris Botner
27.   Gerald Botner
28.   Nancy Bowman
29.   Penny Brackett
30.   LaToya Bradshaw
31.   Rebekah Brady
32.   Christina Brashear
33.   Melissa Braucher
34.   Rebecca Breitenstein
35.   Sharon Brice
36.   Michael Brophy
37.   Patricia Bruce
38.   Kathleen Bushelman
39.   Brenda Butler
40.   Doug Callahan
41.   Andrew Carr
42.   Tonya Chisman
43.   Jessica Cochran
44.   Lisa Compo
45.   David Conger
46.   Brenda Conley
47.   Michael Cook
48.   Gary Coots
49.   Michael Crail
50.   Karen Crissinger
51.   Joi Crowe
52.   Joy Cullins
53.   William Dabney
54.   Tammy Dale
55.   Ollie Deaton

56. Deborah Doyle
57. Douglas Drafts
58. Patrick Dugan
59. Kevin Elfers
60. Connie Ellington
61. Robert Ellington
62. Arlene Fait
63. Neil Favaron
64. Karen Feltner
65. Amanda Franks
66. Julie Freeman
67. Judith Gardner
68. Christine Geralds
69. Christina Goldstein
70. Maurice Grabow
71. Robbie Gregory
72. Susan Griffin
73. Kevin Haggard
74. Lynn Haley
75. Ruhama Hall
76. Dorothea Hamilton
77. Samantha Hamilton
78. Adam Hartman
79. Kevin Hartness
80. Wayne Hatfield
81. William Hayes
82. Evelyn Helton
83. Kelly Hennessy
84. Ryan Hensley
85. ██████████ E.H.
86. Kathy Hersley
87. Jennifer Hickey
88. Loretta Hon
89. Chelsea Hortman
90. Robert Houghton
91. Ricky Hounchell
92. Tammy Hughes
93. Kevin Hunley
94. Carolyn Hursong
95. George Hutchinson
96. Elsa Ieraci
97. Tracy Janson
98. Chelsea Johnson
99. Roger Johnson
100. Phyllis Judkins
101. Linda Kallmeyer Ward

102. Deborah Kidd
103. Christopher Knaer
104. Amanda Koch
105. Rose Koehler
106. Shannon Koehler
107. Valarie Kopp
108. Larry Krech
109. Natasha Lainhart
110. Karen Leger
111. Derek List
112. Tammie Little
113. Tamala Lovette
114. Rhonda Mains
115. Shirley Mains
116. Paul Marksberry
117. Derek Mayfield
118. Jenna McCall
119. Hiram McCauley
120. Kyra McClendon
121. Candi McKinney
122. Teresa McMillen
123. Mark McMurren
124. Kerry McNeal
125. Tonia McQueary
126. Dawn Merland
127. Randall Metcalf
128. Lyndsay Middendorf
129. Ryan Miller
130. Samantha Mink
131. Vera Moffitt
132. Billie Moore
133. Robert Mounce
134. Tonya Neal
135. Ruvimbo Nyemba
136. Rahmann Nisbett
137. Wendy Oberlander
138. Timothy Osborn
139. Haley Payne
140. Jeff Peddicord
141. Kenneth Pfetsch
142. Clarence Phillips
143. Crystal Pierce
144. Carol Pummell
145. Marcia Quinn
146. Margaret Radenheimer
147. Todd Ray

148. Danielle Reed
149. Valerie Reeves
150. Holly Reifenberger
151. Jason Riley
152. Donna Rister
153. Deborah Roark
154. Kelly Robinson
155. Debbie Rodriguez
156. Dorothy Rose
157. Carol Ross
158. Ronald Rowley
159. Robert Runtz
160. Mike Sand
161. Michael Sander
162. Robin Schiller
163. Susan Schock
164. Delores Scott
165. Rhonda Scott
166. Glenna Shafer
167. Greg Shott
168. Brenda Shell
169. David Smith
170. David Snider
171. Sherry Spangenberg
172. Billy Spivy
173. Patrick Stephenson
174. Kathleen Telscher
175. Ben Thaeler
176. Brian Thien
177. Connie Underwood
178. Kim Underwood
179. Jordan Vance
180. Katherine Walls
181. Tracey Walsh
182. Michelle Walters
183. Michael Watkins
184. Elaine Waxler
185. Brandon Webster
186. Regina Wesley
187. Timothy Whalen
188. Lonnie Wheeler
189. Tamathy Wilder
190. Troy Wilder
191. Benjamin Williams
192. Kelly Williams
193. Patrick Willoughby

194. Paul Wilson
195. Paula Wilson
196. Robert Wilson
197. Vicky Wilson
198. Priscilla Wittmeyer
199. Deborah Worley
200. Leah Wright
201. Judy Young
202. Keith Young

**NO HOSPITAL AND/OR CAST SIGNED CONSENT**

1. Frieda Aaron
2. Patricia Adams
3. Katrina Allen
4. Phyllis Bechtold
5. Denise Benge
6. Edythe Bishop
7. Rebecca Breitenstein
8. Gary Coots
9. Damon Deck
10. Darrell Earls
11. Neil Favaron
12. Erma Gilbert
13. Donna Good
14. Susan Griffin
15. Dorothy Hamilton
16. William Hayes
17. Rita Hounchell
18. Martha Hutton
19. Sarah Juergens
20. Amanda Koch
21. Mike Koelblin
22. Patricia Legendre
23. Jenna McCall
24. Sarra Mueller
25. Michelle Noble
26. Marcia Quinn
27. Theresa Robbinson-Woods
28. Billy Spivy
29. Eddie Stallings
30. Patrick Stephenson
31. Vickie Wallace
32. Daniel Webber
33. Troy Wilder
34. Paul Wilson

**BLANK SIGNED OFFICE CONSENT**

1.   Patricia Adams
2.   Katrina Allen
3.   Nancy Begley
4.   Edythe Bishop
5.   Damon Deck
6.   Erma Gilbert
7.   Donna Good
8.   Susan Griffin
9.   Dorothy Hamilton
10.  Tammy Hughes
11.  Sarah Juergens
12.  Linda Kallymeyer Ward
13.  Amanda Koch
14.  Shirley Mains
15.  Hiram McCauley
16.  Marjorie Newman
17.  Marcia Quinn
18.  Antoine Powell
19.  Brenda Shell
20.  Patrick Stephenson
21.  Theresa Robbinson-Woods
22.  Michelle Walters

**FIVE SURGERIES**

1.   Laura Aker
2.   Gerald Botner
3.   Elizabeth Compo
4.   Sandra Dennis
5.   Christina Goldstein
6.   Samantha Hamilton
7.   Heather Heffner
8.   Celeste Hoffman
9.   Chelsea Johnson
10.  Rhonda Mains
11.  Timothy Osborn
12.  Jordan Vance
13.  Tamathy Wilder

**SIX SURGERIES**

1.   David Conger
2.   Ollie Deaton

3.   Valarie Kopp

**SEVEN SURGERIES**

1.   Brenda Conley
2.   Amber Johnson
3.   Carol Pummell
4.   Valerie Reeves
5.   Elaine Waxler

**EIGHT SURGERIES**

1.   Debbie Rodriguez

**NINE SURGERIES**

1.   Gayle Bachmann

**TEN SURGERIES**

1.   Tonia McQueary

**MINOR**

1.   Laura Aker
2.   Josh Ault
3.   Caidan Bailey
4.   Trey Billing
5.   Kaitlyn Boggs
6.   Kathleen Bushelman
7.   Patrick Calligan
8.   Joy Cullins
9.   Kenneth Conger
10.  Jacob Cotter
11.  Kathryn Curley
12.  Jacob Durham
13.  Jacob Feltner
14.  Caela Finnell
15.  Troy Fite
16.  Shamiya Ford
17.  Paris Halbert
18.  ████████████ W.H.
19.  Adam Hartman
20.  ████████████ E.H.
21.  Alissa Hightchew
22.  Loretta Hon

23. Robert Houghton II
24. Chelsea Johnson
25. Sydney Jones
26. Joshua Kauffman
27. Brandon Lacinak
28. ███████████ N.L.
29. Beth Leisring
30. Adrian Lilly
31. Jack Marcheshi
32. Brandon Mathis
33. Jenna McCall
34. Kyra McClendon
35. Kevin McDonald
36. Tyler McKnight
37. Kameron McNeal
38. Lyndsay Middendorf
39. Samantha Mink
40. Sarra Mueller
41. Charles Nelson
42. Michael Odulana
43. Haley Payne
44. Angela Pennington
45. Samantha Redrow
46. Jordan Ribariu
47. Laura Romito
48. ███████████ C.R.
49. Brandon Schoborg
50. Ali Scully
51. Ruthie Sears
52. Asia Shannon
53. Heather Slayback
54. Deon Stigall
55. Ryan Tackett
56. Alexander Taylor
57. Jordan Vance
58. Shannon Wallace
59. Lindsay Walsh
60. Cathleen Weber
61. Kirstin Weisman
62. Cory Wright
63. Corrine Zachry
64. Hannah Zmyslo

# C12 FUSION/C1C2 FALSE PANNUS CASES

## C12 FUSION/C1C2 FALSE PANNUS CASES

1.   Patricia Adams
2.   Joseph Baumgardner
3.   Edythe Bishop
4.   Latoya Bradshaw
5.   Christina Brashear
6.   Jacob Cotter
7.   Sandra Dennis
8.   Arlene Fait
9.   Christina Goldstein
10.  Erin Greelish
11.  Kelly Hennessy
12.  Stephanie Jobe
13.  Sheila Krabacher
14.  Adrian Lilly
15.  Heather McCann
16.  Lyndsey Middendorf
17.  Vera Moffitt
18.  Marjorie Newman
19.  Katie Prater
20.  Sherri Puckett-Morrissette
21.  John Richardson
22.  Debbie Rodriguez
23.  Rhonda Scott
24.  Dana Setters
25.  Vicky Wilson
26.  Carla Wooten

# CASES WHEN SUSPENDED

The following cases we have proof (attached) Dr. Durrani had his privileges suspended at West Chester and still performed the following surgeries between August 6, 2010 and October 5, 2010 at West Chester:

| | | |
|---|---|---|
| Couch, Jackie | WCH | 08/11/10 |
| Stanfield, Rick | WCH | 08/13/10 |
| Underwood, Connie | WCH | 08/13/10 |
| McQueary, Tonia | WCH | 08/16/10 |
| Botner, Gerald | WCH | 08/23/10 |
| Houghton, Robert | WCH | 08/23/10 |
| Ross, Carol | WCH | 08/25/10 |
| Rowley, Ronald | WCH | 08/25/10 |
| Brady, Rebekah | WCH | 08/27/10 |
| Allen, Sherry Lynn | WCH | 08/30/10 |
| Kallmeyer, Ward, Linda | WCH | 08/30/10 |
| Rosebery, Faye | WCH | 09/08/10 |
| Shempert, David | WCH | 09/10/10 |
| Bachmann, Gayle | WCH | 09/15/10 |
| Juergens, Sarah | WCH | 09/15/10 |
| Quinn, Marcia | WCH | 09/17/10 |
| Rodriguez, Debbie | WCH | 09/17/10 |
| Spivy, Billy | WCH | 09/17/10 |
| Bradshaw, Latoya | WCH | 09/20/10 |
| Koch, Amanda | WCH | 09/20/10 |
| Atwood, Christopher | WCH | 09/22/10 |
| Favaron, Neil | WCH | 09/22/10 |
| Kauffman, Katelyn | WCH | 09/22/10 |
| Goldstein, Christine | WCH | 09/24/10 |

| Ray, Todd | WCH | 09/29/10 |
|---|---|---|
| Hickey, Jennifer | WCH | 10/01/10 |
| Hursong, Carolyn | WCH | 10/01/10 |
| Shempert, David | WCH | 10/01/10 |
| Bayliss, Steve (Louise) | WCH | 10/04/10 |
| Kallmeyer, Ward, Linda | WCH | 10/04/10 |
| Marksberry, Paul | WCH | 10/04/10 |
| McCauley, Hiram | WCH | 10/04/10 |

# CLASS ACTIONS THEY ARE TRYING TO REMOVE TO FEDERAL COURT

# CLASS ACTIONS THEY ARE TRYING TO REMOVE TO FEDERAL COURT

1. BMP-2      West Chester/UC Health

   Lyndsey Middendorf v. West Chester Hospital, LLC – A1502907 -- USDC 1:15-cv-00439

2. PureGen      West Chester/UC Health

   Heather McCann v. West Chester Hospital, LLC – A1502909 – USDC -- 1:15-cv-00440

3. Billing      Journey Lite

   Dana Setters v JourneyLite of Cincinnati, LLC – A1502629 –USDC 1:15-cv-00487

4. BMP-2      Children's

   Jacob Durham v. Cincinnati Children's Hospital Medical Center – A1502909 – USDC – 1:15-cv-00438

5. PureGen      Alphatech Spine/Parcells

   Michelle Agee v. Alphatec Spine, Inc., et al. – A1505508 – USDC 1:15-cv-00750

# OTHER CLAIMS

# OTHER CLAIMS

West Chester/UC Health Clients vs. Children's for their failure to report Dr. Durrani to the National Practitioner Data Bank

HAMILTON COUNTY
A1407452

# BUTLER COUNTY CASES ALL RULE 41A AND REFILING IN HAMILTON COUNTY

## BUTLER COUNTY CASES

### *All RULE 41A AND REFILING IN HAMILTON COUNTY*

| NAME | CASE NUMBER |
|------|-------------|
| Jason Romer | 1.  CV 2013 02 0521 |
| Carol Wilson | 2.  CV 2013 02 0523 |
| Steven Schultz | 3.  CV 2013 03 0910 |
| Billy Wolsing | 4.  CV 2013 03 0964 |
| Mike Sand | 5.  CV 2013 03 0965 |
| Dorothy Rose | 6.  CV 2013 03 0980 |
| Rebecca Applegate | 7.  CV 2013 04 1072 |
| Leona Beyer | 8.  CV 2013 04 1074 |
| Sherri Lynn Allen | 9.  CV 2013 04 1078 |
| Joetta Nafe | 10. CV 2013 04 1081 |
| Sandra Radeke | 11. CV 2013 04 1103 |
| Patricia Boone | 12. CV 2013 04 1104 |
| Carolyn Dotson | 13. CV 2013 04 1105 |
| Vicky Wilson | 14. CV 2013 04 1106 |
| Teresa Nichols | 15. CV 2013 04 1128 |
| Frieda Aaron | 16. CV 2013 04 1129 |
| Deena Borchers | 17. CV 2013 04 1130 |
| Timothy Schulze | 18. CV 2013 04 1131 |

| | |
|---|---|
| Sandra Dennis | 19. CV 2013 04 1132 |
| Joseph Schimmel | 20. CV 2013 04 1133 |
| William Dabney | 21. CV 2013 04 1179 |
| Gloria Greene | 22. CV 2013 04 1181 |
| Rober Densler, Sr. | 23. CV 2013 04 1182 |
| Derek Mayfield | 24. CV 2013 04 1183 |
| Mark McMurren | 25. CV 2013 04 1184 |
| Marjorie Newman | 26. CV 2013 04 1185 |
| Dorothea Hamilton | 27. CV 2013 04 1186 |
| Lisa Reynolds | 28. CV 2013 04 1187 |
| Jennifer Hickey | 29. CV 2013 04 1188 |
| Nellie Davis | 30. CV 2013 04 1189 |
| Nicole Baker | 31. CV 2013 04 1190 |
| Gary Coots | 32. CV 2013 04 1192 |
| Todd Ray | 33. CV 2013 04 1193 |
| John Richardson | 34. CV 2013 04 1194 |
| Kent Reynolds II | 35. CV 2013 04 1195 |
| Dawn Dunklin | 36. CV 2013 04 1196 |
| Troy Wilder | 37. CV 2013 04 1197 |
| Debbie Moore | 38. CV 2013 04 1198 |

| | |
|---|---|
| Jennifer Ballinger | 39. CV 2013 04 1199 |
| David Smith | 40. CV 2013 04 1200 |
| Randall Metcalf | 41. CV 2013 04 1232 |
| Valarie Kopp | 42. CV 2013 04 1233 |
| Sarah Juergens | 43. CV 2013 04 1236 |
| Jessica Cochran | 44. CV 2013 04 1372 |
| Elizabeth Compo | 45. CV 2013 04 1373 |
| Nancy Begley | 46. CV 2013 05 1383 |
| Kathryn Rueve | 47. CV 2013 06 1902 |
| Robert Runtz | 48. CV 2013 06 1903 |
| Nancy Bowman | 49. CV 2013 06 1904 |
| Jason Riley | 50. CV 2013 07 2075 |
| George and Jean Arnold | 51. CV 2013 07 2076 |
| Linda Kallmeyer Ward | 52. CV 2013 07 2077 |
| Kelly and Steve Hennessy | 53. CV 2013 07 2078 |
| Rhonda and Mike Scott | 54. CV 2013 07 2079 |
| Kathryn and Robert Howell | 55. CV 2013 07 2080 |
| Tony & Tonya McClendon | 56. CV 2013 07 2081 |
| Carol Ross | 57. CV 2013 07 2082 |

Page 4

| | |
|---|---|
| Shirley Mains | 58. CV 2013 07 2083 |
| Clarence and Pamela Phillips | 59. CV 2013 07 2086 |
| Charlotte King | 60. CV 2013 07 2088 |
| Tonya Neal | 61. CV 2013 07 2089 |
| Leah Rae Wright | 62. CV 2013 07 2091 |
| Sheila and Michael Krabacher | 63. CV 2013 07 2092 |
| Teresa A. McMillen | 64. CV 2013 07 2093 |
| Lonnie and Barbara Wheeler | 65. CV 2013 07 2094 |
| Amanda Koch | 66. CV 2013 07 2100 |
| Batsche, Laura | 67. CV 2013 07 2145 |
| Brewer, Randal | 68. CV 2013 07 2181 |
| Frazier, Joann | 69. CV 2013 08 2203 |
| Deborah Kidd | 70. CV 2013 08 2363 |
| Jenna McCall | 71. CV 2013 08 2377 |
| Ruhama Hall | 72. CV 2013 08 2502 |
| Karen & Clinton Taylor | 73. CV 2013 09 2710 |
| Brenda & David Errgang | 74. CV 2013 09 2744 |
| Paula Wilson | 75. CV 2013 09 2745 |
| Katherine & Duane Prater | 76. CV 2013 10 2818 |

| Patrick & Hazel Stephenson | 77. CV 2013 10 2984 |
|---|---|
| Sharon Pritchard, by and through her husband and next friend, Tom Pritchard | 78. CV 2013 11 3032 |
| Connie Mclure-Ellington, et al. | 79. CV 2013 11 3033 |
| Robert Ellington et al. | 80. CV 2013 11 3088 |
| Rita Hounchell et al. | 81. CV 2013 11 3089 |
| Billie Moore et al. | 82. CV 2013 11 3090 |
| Donna Rister et al. | 83. CV 2013 11 3091 |
| Vicki Buschur, et al. | 84. CV 2013 11 3093 |
| Diane Meyer | 85. CV 2013 11 3265 |
| Priscilla & David Wittmeyer | 86. CV 2013 11 3267 |
| Kirstin Weisman | 87. CV 2013 11 3268 |
| Darrell & Jennifer Earls | 88. CV 2013 11 3269 |
| Eileen & Richard Brorein | 89. CV 2013 11 3270 |
| Jetton Wilson | 90. CV 2013 11 3292 |
| Thomas & Tracy Lynn Meyers | 91. CV 2013 11 3293 |
| Larry Stephen Hayes As Administrator of the Estate Of William Hayes | 92. CV 2013 11 3295 |
| Vera & Robert Moffitt | 93. CV 2013 12 3504 |
| Francine & Norris Ford 12/27/2013 | 94. CV 2013 12 3548 |

| Susan Griffin | 95. CV 2013 12 3549 |
|---|---|
| Michael & Towana Hillard | 96. CV 2013 12 3572 |
| Michele Byar | 97. CV 2013 12 3573 |
| Dirk & Donna Hitchcock | 98. CV 2013 12 3574 |
| Edythe & Roy Bishop | 99. CV 2013 12 3575 |
| Edward Thiessen | 100. CV 2014 01 0036 |
| Kimberly Underwood & Michael Collins | 101. CV 2014 01 0094 |
| Amber Work | 102. CV 2014 01 0152 |
| Tammy Wilder | 103. CV 2014 01 0153 |
| Paul Marksberry, Jr. | 104. CV 2014 01 0168 |
| Eddie & Aiko Stallings | 105. CV 2014 01 0169 |
| Douglas Drafts | 106. CV 2014 01 0316 |
| Jeffrey & Cheryl Peddicord | 107. CV 2014 01 0317 |
| Tammy & Walter Dale | 108. CV 2014 01 0318 |
| Denise & Christopher Bess | 109. CV 2014 01 0319 |
| Dawn & Mark Wingert | 110. CV 2014 01 0320 |
| Dannie Mae Owens | 111. CV 2014 01 0321 |
| Lynn & Mark Haley | 112. CV 2014 01 0322 |
| Chelsea Hortman | 113. CV 2014 01 0323 |

Page 7

| | | |
|---|---|---|
| Lois Hughes | 114. | CV 2014 01 0324 |
| Violet Whalen | 115. | CV 2014 01 0325 |
| Erma Jean & Jerry Gilbert | 116. | CV 2014 01 0326 |
| Jonathan & Christine Brunner | 117. | CV 2014 01 0327 |
| Arlene & Philip Fait | 118. | CV 2014 01 0328 |
| Ailene Levan | 119. | CV 2014 01 0330 |
| Bill & Melissa Dugger | 120. | CV 2014 01 0331 |
| Brian Atkins | 121. | CV 2014 01 0332 |
| Neil Favaron | 122. | CV 2014 01 0337 |
| Stephanie Jobe | 123. | CV 2014 01 0339 |
| Loretta Hon | 124. | CV 2014 01 0340 |
| Ronald Rowley | 125. | CV 2014 01 0341 |
| Lisa Hall | 126. | CV 2014 01 0342 |
| Robert & Melanie Houghton | 127. | CV 2014 01 0343 |
| Danielle Reed | 128. | CV 2014 02 0466 |
| James R. McCain, Jr. | 129. | CV 2014 02 0468 |
| Brian Thien | 130. | CV 2014 02 0469 |
| Dana Conley et al. | 131. | CV 2014 02 0470 |
| Hobert "Duane" Pelfrey | 132. | CV 2014 02 0519 |

Page 8

| | | |
|---|---|---|
| Patrick Keith Willoughby | 133. | CV 2014 02 0609 |
| Judy Beck | 134. | CV 2014 02 0610 |
| Nancy Boland | 135. | CV 2014 02 0611 |
| Kelly Williams | 136. | CV 2014 02 0612 |
| Margaret Radenheimer | 137. | CV 2014 02 0613 |
| Michael Crail | 138. | CV 2014 02 0615 |
| Rebekah Brady | 139. | CV 2014 02 0617 |
| Tammie Sue Little | 140. | CV 2014 02 0618 |
| Patrick Dugan | 141. | CV 2014 02 0619 |
| Karen Lynne Miller | 142. | CV 2014 02 0621 |
| Paul Wilson | 143. | CV 2014 02 0623 |
| Bunnavuth Chhun | 144. | CV 2014 03 0669 |
| Patricia Bruce | 145. | CV 2014 03 0670 |
| Tony A & Todd Chisman | 146. | CV 2014 03 0671 |
| Amanda Franks | 147. | CV 2014 03 0672 |
| Elaine Carol Waxler | 148. | CV 2014 03 0896 |
| Juanita Jane Reeder | 149. | CV 2014 03 0897 |
| Wayne Hatfield & Beverly Hatfield | 150. | CV 2014 03 0900 |
| Glenna Shafer | 151. | CV 2014 04 0946 |

| | | |
|---|---|---|
| Latoya Bradshaw | 152. | CV 2014 04 0947 |
| Karen & Kenneth Higginbothan | 153. | CV 2014 04 0948 |
| Patricia Lynn & Larry Adams | 154. | CV 2014 04 0949 |
| Debbie & Joe Rodriguez | 155. | CV 2014 04 1060 |
| Billy Spivy | 156. | CV 2014 04 1075 |
| Nicholas Quinn | 157. | CV 2014 04 1112 |
| Nicholas Battista | 158. | CV 2014 05 1247 |
| Wendy & Chad Oberlander | 159. | CV 2014 05 1250 |
| Christopher Atwood | 160. | CV 2014 05 1253 |
| Elsa & Rocco Ieraci | 161. | CV 2014 05 1254 |
| Penny and Ronald Brackett | 162. | CV 2014 05 1256 |
| Michelle & Jason Walters | 163. | CV 2014 05 1258 |
| Delores Jean & Riley Scott | 164. | CV 2014 05 1259 |
| Jonathan & Vanessa Atwell | 165. | CV 2014 05 1260 |
| Donna Good | 166. | CV 2014 05 1355 |
| Tiffany Meadows | 167. | CV 2014 05 1357 |
| Kevin & Idllary Hartness | 168. | CV 2014 05 1358 |
| Jeffrey Scott Mcclure | 169. | CV 2014 05 1354 |
| Ricky & Rita Hounchell | 170. | CV 2014 05 1356 |

| | | |
|---|---|---|
| Jennifer Lauren Bookman | 171. | CV 2014 05 1359 |
| Sherri Puckett-Morrissette | 172. | CV 2014 05 1360 |
| Crystal Slone | 173. | CV 2014 05 1361 |
| Michael & Diana Sander | 174. | CV 2014 05 1362 |
| Jeffrey Remley | 175. | CV 2014 05 1363 |
| Robbie & Jody Gregory | 176. | CV 2014 05 1364 |
| Jackie & Sandra Couch | 177. | CV 2014 05 1365 |
| James Kenton Pumpelly | 178. | CV 2014 05 1366 |
| Phyllis & Joseph Bechtold | 179. | CV 2014 05 1367 |
| Melissa & Jared Habermehl | 180. | CV 2014 05 1368 |
| Katelyn Kauffman | 181. | CV 2014 05 1369 |
| Kimberly & Warren Mayer | 182. | CV 2014 05 1464 |
| Sharon Brice | 183. | CV 2014 05 1465 |
| Robert W. Moore | 184. | CV 2014 05 1466 |
| Ryan Miller | 185. | CV 2014 05 1467 |
| Richard Allen Stanfield | 186. | CV 2014 05 1468 |
| Robin & Ronald Schiller | 187. | CV 2014 05 1469 |
| Hiram & Dawn Mccauley | 188. | CV 2014 05 1474 |
| Kevin & Kimberly Elfers | 189. | CV 2014 05 1475 |

| | | |
|---|---|---|
| Kelly & Stephanie Robinson | 190. | CV 2014 05 1477 |
| Kimberly & Tony Jenkins | 191. | CV 2014 06 1574 |
| Donald & Kathy Moore | 192. | CV 2014 06 1575 |
| Carrie Britten | 193. | CV 2014 06 1578 |
| Caela Finnell | 194. | CV 2014 06 1579 |
| Marcella & Ron McDonald | 195. | CV 2014 06 1582 |
| Timothy Whalen | 196. | CV 2014 06 1583 |
| Lennie & Paige Fossett | 197. | CV 2014 06 1612 |
| David & Nancy Shempert | 198. | CV 2014 06 1613 |
| Evelyn Helton | 199. | CV 2014 06 1614 |
| Lenora & Glenn Haggard | 200. | CV 2014 06 1618 |
| Irene & Jack Hyde | 201. | CV 2014 06 1619 |
| Diana & Michael Ashcraft | 202. | CV 2014 06 1620 |
| Judith & Roger Gardner | 203. | CV 2014 06 1621 |
| Carolyn & William Hursong | 204. | CV 2014 06 1622 |
| Lindsay Bray | 205. | CV 2014 06 1625 |
| Douglas & Carolon Callahan | 206. | CV 2014 06 1626 |
| Karen & Franklin Leger | 207. | CV 2014 06 1628 |
| Rhonda Mains | 208. | CV 2014 06 1630 |

| Michelle Stephens | 209. | CV 2014 06 1631 |
| Chris & Lisa Scheper | 210. | CV 2014 06 1632 |
| Tamala Lovette | 211. | CV 2014 06 1634 |
| Terry & Robert Beil | 212. | CV 2014 06 1635 |
| Joann Young | 213. | CV 2014 06 1636 |
| Joan Jones | 214. | CV 2014 06 1638 |
| Courtney Hammons | 215. | CV 2014 06 1639 |
| Maurice & Hannah Grabow | 216. | CV 2014 06 1712 |
| Derrill Reynolds | 217. | CV 2014 06 1763 |
| Larry & Kathleen Krech | 218. | CV 2014 07 1869 |
| Ruvimbo Nyemba | 219. | CV 2014 07 1872 |
| Samantha Hamilton | 220. | CV 2014 07 1875 |
| Michael Watkins | 221. | CV 2014 07 1877 |
| William & Lana Benton | 222. | CV 2014 07 1879 |
| Valarie & Steve Reeves | 223. | CV 2014 07 1942 |
| Lyndsey Middendorf | 224. | CV 2014 07 1943 |
| Steven Bayliss | 225. | CV 2014 07 1944 |
| Kenneth & Nancy Pfetsch | 226. | CV 2014 07 1986 |
| Sandra Lemmel | 227. | CV 2014 07 1987 |

| | | |
|---|---|---|
| Debra & James Henderson | 228. | CV 2014 07 1988 |
| David Huser, Executor of the Estate of Connie Huser | 229. | CV 2014 07 1990 |
| Benjamin & Sondra Williams | 230. | CV 2014 08 2106 |
| Ralph & Caroline Dawson | 231. | CV 2014 08 2108 |
| Deborah Worley | 232. | CV 2014 08 2110 |
| Keith Young | 233. | CV 2014 08 2111 |
| Haley Payne | 234. | CV 2014 08 2114 |
| Carla Wooten | 235. | CV 2014 10 2674 |
| Cindy Bartlett | 236. | CV 2013 02 0665 |
| Gerald Botner | 237. | CV 2013 04 1077 |
| Donna Smallwood | 238. | CV 2013 04 1191 |
| Dana and Craig Setters | 239. | CV 2013 07 2090 |
| Celeste Hoffman | 240. | CV 2013 07 2099 |
| Hughes, Tammy | 241. | CV 2013 08 2204 |
| Christina Brashear | 242. | CV 2013 10 2843 |
| Tonia & John McQueary | 243. | CV 2013 10 2844 |
| Melissa & Scott Braucher | 244. | CV 2013 11 3296 |
| Corinne Zachry | 245. | CV 2014 02 0624 |
| Regina Wesley | 246. | CV 2014 05 1248 |

Page 14

| | | |
|---|---|---|
| Holly Jo Reifenberger | 247. | CV 2014 05 1251 |
| Rachel & Jeff Jones | 248. | CV 2014 05 1261 |
| Timothy & Rhonda Hannon | 249. | CV 2014 05 1457 |
| Deborah Kay Roark | 250. | CV 2014 05 1472 |
| Erin & Jeffrey Greelish | 251. | CV 2014 06 1616 |
| Denise & Donald Helton | 252. | CV 2014 07 1939 |
| Brenda & Steve Conley | 253. | CV 2014 08 2112 |
| Lawrence Pridemore | 254. | CV 2014 12 3118 |
| Heather McCann | 255. | CV 2015 01 0101 |
| Robert Campbell | 256. | CV 2015 06 1482 |
| Amy Young (Mackenzie Bender) | 257. | CV 2015 09 1993 |
| Phyllis Judkins (Will be Refiled After Estate is Set Up) | 258. | CV 2015 01 0002 |

# NEGLIGENT RETENTION AND CREDENTIALING LAW

## Negligent Retention and Credentialing Law

By R.C. 2305.251(B) regarding the negligent credentialing of physicians. Therein, it is provided:

(1) A hospital shall be presumed to not be negligent in the credentialing of an individual who has, or has applied for, staff membership or professional privileges at the hospital pursuant to section 3701.351 of the Revised Code . . . if the hospital . . . proves by a preponderance of the evidence that, at the time of the alleged negligent credentialing of the individual, the hospital . . . was accredited by one of the following:

(a) The joint commission on accreditation of healthcare organizations;
(b) The American osteopathic association;
(c) The national committee for quality assurance;
(d) The utilization review accreditation commission.

R.C. 2305.251(B)(1).

However, pursuant to R.C. 2305.251, **Plaintiff may rebut this presumption against**

negligence by showing, by a preponderance of the evidence, any of the following:

(a) The credentialing and review requirements of the accrediting organization did not apply to the hospital . . . the individual, or the type of professional care that is the basis of the claim against the hospital . . . .

(b) The hospital . . . failed to comply with all material credentialing and review requirements of the accrediting organization that applied to the individual.

(c) The hospital . . . through its medical staff executive committee or its governing body and sufficiently in advance to take appropriate action, knew that a previously competent individual had developed a pattern of incompetence or otherwise inappropriate behavior, either of which indicated that the individual's staff membership, professional privileges, or participation as a provider should have been limited or terminated prior to the individual's provision of professional care to the plaintiff.

(d) The hospital . . . through its medical staff executive committee or its governing body and sufficiently in advance to take appropriate action, knew that a previously competent individual would provide fraudulent medical treatment but failed to limit or terminate the individual's staff membership, professional privileges, or participation as a provider prior to the individual's provision of professional care to the plaintiff.

# 40 CASES THAT HAVE TO STAY IN BUTLER COUNTY BUT ARE SUBJECT TO A PENDING MOTION TO TRANSFER TO HAMILTON COUNTY

## CASES THAT HAVE TO STAY IN BUTLER COUNTY

| NAME | CASE NUMBER |
|------|-------------|
| Kristine & Rodney Dority | 1.  CV 2014 05 1461 |
| Christine Geralds | 2.  CV 2014 06 1680 |
| Katrina Allen | 3.  CV 2015 03 0793 |
| David Snider | 4.  CV 2015 05 1183 |
| Tracey Walsh | 5.  CV 2015 09 1991 |
| Susan Schock | 6.  CV 2015 09 1992 |
| Sherrie Spangengerg | 7.  CV 2015 09 1994 |
| Adrienne Thomas | 8.  CV 2015 09 2143 |
| Joi Crowe | 9.  CV 2015 09 2144 |
| Caidan Bailey | 10. CV 2015 09 2145 |
| William Wolder | 11. CV 2015 09 2146 |
| Chelsea Johnson | 12. CV 2015 09 2147 |
| Roger and Antoinette Johnson | 13. CV 2015 09 2210 |
| Ollie and Eugene Deaton | 14. CV 2015 09 2211 |
| Shannon Koehler | 15. CV 2015 09 2212 |
| Kathleen Bushelman | 16. CV 2015 09 2213 |
| David and William Conger | 17. CV 2015 09 2214 |
| Joy Cullins | 18. CV 2015 09 2215 |

| Stacy John Martin | 19. CV 2015 09 2226 |
| Connie Underwood | 20. CV 2015 09 2227 |
| Robert Masters | 21. CV 2015 09 2228 |
| Carol Pummell | 22. CV 2015 09 2229 |
| Natasha Dressman | 23. CV 2015 09 2230 |
| Jacklen Upchurch | 24. CV 2015 09 2231 |
| Kerry McNeal | 25. CV 2015 09 2232 |
| Kathy Jill Hersley | 26. CV 2015 09 2258 |
| Christina Goldstein | 27. CV 2015 09 2259 |
| Candi McKinney | 28. CV 2015 10 2274 |
| Leslie Powers (Childrens) | 29. CV 2015 10 2329 |
| Michael Cook (Deaconess) | 30. CV 2015 10 2330 |
| Dominique Bray | 31. CV 2015 10 2331 |
| Kaitlyn Boggs (Childrens) | 32. CV 2015 10 2332 |
| Jordan Ribariu | 33. CV 2015 10 2367 |
| Gregory Graber | 34. CV 2015 10 2368 |
| Sandra Roundtree | 35. CV 2015 10 2369 |
| Donald Smith (Deaconess) | 36. CV 2015 10 2370 |
| Michael & Kimberly Cook | 37. CV 2014 07 1941 |

| Leslie Powers | 38. CV 2014 07 1940 |
| Donald Smith, Jr. | 39. CV 2014 07 1873 |
| Kaitlyn Boggs | 40. CV 2014 04 1017 |

# MOTION FOR CHANGE OF VENUE/TRANSFER FROM BUTLER COUNTY

FILED BUTLER CO.
COURT OF COMMON PLEAS

DEC 0 1 2015

MARY L. SWAIN
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO
CIVIL DIVISION

PLAINTIFFS EXHIBIT A            :        Case No. (Listed in Exhibit A)
                                :
          Plaintiffs,           :        Judge Kessler/Bessey
                                :
v.                              :
                                :
ABUBAKAR ATIQ DURRANI, et al.   :
                                :
          Defendants.           :
                                :
                                :
                                :
                                :

---

**PLAINTIFFS MOTION AND MEMORANDUM FOR CHANGE OF VENUE AND/OR
TRANSFER OF EXHIBIT A CASES**

---

### INTRODUCTION/SUMMARY

Plaintiffs listed in **Exhibit A**, by and through counsel, request a change of venue and/or transfer for all cases listed in **Exhibit A** from Butler County to Hamilton County and Judge Ruehlman. Approximately ten (10) more of these 45 cases can be Rule 41A still and refiled in Hamilton County. Pending the outcome of the Motion, we will take that option if necessary. We delay it solely because of the partial dismissal issues in those cases.

The Court has great discretion on this Motion. "Civil Rule 3(B) of the Ohio Rules of Civil Procedure indicates proper venue in "(1) The county in which the Defendant resides;" or "(2) The county in which the defendant has his or her principal place of business;" or "(3) the county in which the defendant conducted activity that gave rise to the claim of relief." All of the corporate Defendants in this action maintain their principal places of business in Hamilton County." The

1

above quote comes from the law firm representing a third of the West Chester cases and Good Samaritan in Dr. Durrani litigation, Rendigs. They filed a Motion to Change Venue from Butler to Hamilton County in CV 2014 07 1873. The Court, in transferring these 45 cases to Hamilton County, would NOT be transferring them to a county in which they could not have been filed originally.

Under the facts and circumstances of this litigation, the Court should exercise that discretion to unify all cases in Hamilton County under Judge Ruehlman. As of this filing, he has 159 cases (**Exhibit** B) and when the 253 cases that were Rule 41 A are refiled there, he will have 412 cases and counting. Plaintiffs' counsel has 520 cases. So 480 of 520 of these cases will be filed in Hamilton County.

These cases need to be under one judge for the following reasons:

1. Avoid inconsistent rulings between counties.

2. Avoid conflicts in trial scheduling between counties.

The one judge should be Judge Robert Ruehlman in Hamilton County for the following reasons:

1. All the Hamilton County cases have been consolidated with him.

2. The Butler County cases CAN be refiled and filed in Hamilton County, but the Hamilton County cases can't be filed in Butler County. He will have 412 cases and counting. He may as well have these 45 too.

3. Judge Ruehlman has the most familiarity with the cases and the Motions.

4. Judge Ruehlman has expressed his desire to help resolve cases and he has a history of doing so (See attached **Exhibit C** from his website).

2

5. Judge Ruehlman has successfully presided over and been upheld on group medical malpractice trials (**Exhibit D**).

The cases filed up until now in Hamilton County that did not include West Chester as a Defendant such as cases filed only against Christ, Children's or Journey Lite HAD to be filed in Hamilton County. There was no option for Butler County. Relevancy? Cases HAD to be filed in Hamilton County. The same is NOT the case for Butler County where all Butler County cases can be filed in Hamilton County. These cases need to be consolidated under ONE Judge who wants to help resolve them.

Any ruling this Court may make on any pending Motion on these 40 cases creates the potential for a conflicting decision with the 400 plus cases now in and/or going to be in Hamilton County. It's wrong. Period. There needs to be ONE Judge. Since Butler County has no jurisdiction over most of the cases in **Exhibit B**, and those cases CAN'T be in Butler County, it makes sense all cases be under Judge Ruehlman in Hamilton County.

Litigation evolves. The manner in which this has evolved NOW has a perfect situation for ONE Judge in ONE county. It hasn't happened over night. But it has happened.

### FILING HISTORY

Plaintiffs began filing these cases in Butler County without the knowledge that UC Health owned West Chester Hospital. UC Health corporate headquarters is in Hamilton County. All claims against them involving negligent retention and credentialing involve decisions from these headquarters. These claims are in every case. The ownership information was not obtained until discovery with West Chester Hospital. Plaintiffs continued to file their cases in Butler County after this discovery under the belief that Judge Guckenberger would resolve the litigation under the complex litigation rules within three (3) years. This would have been and should have been August

3

Having Judge Ruehlman preside over all cases in Hamilton County will foster consistent rulings expediting the resolution of the litigation. Judge Ruehlman has been involved in Durrani litigation for three years and all cases were consolidated to him on January 29, 2015. Inconsistent rulings between two counties is a disaster. In addition, the current Butler County Judge admitted on November 21, he was not familiar with all the motions and issues and would take time to become familiar. He also referenced he would not be following the *Young* decision, which proves Plaintiffs' point regarding inconsistent rulings. We asked and asked and have never received an answer from Judge Guckenberger: does the gag order in Butler County apply to Hamilton County where there is no gag order? Yet another situation.

Many of the Plaintiffs listed in **Exhibit A** also live in Hamilton County or Kentucky making Hamilton County the appropriate venue for their case. Having Plaintiffs travel to Butler County every day for trial is an unnecessary burden on Plaintiffs when Hamilton County is an appropriate venue and has jurisdiction for the reasons stated above.

## CONCLUSION

Plaintiffs request the Court does the "right thing" and place in his discretion ALL these cases in front of Judge Ruehlman.

Respectfully Submitted,

*/s/Matthew Hammer*
Matthew J. Hammer (#0092483)
The Deters Law Firm
635 West 7th Street, Ste. 401
Cincinnati, OH 45203
(513) 729-1999 Phone
(513) 381-4084 Fax
mhammer@ericdeters.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

5

I hereby certify that a true and accurate copy of the foregoing was served electronically this 1st day of December 2015 upon the following.

/s/Matthew Hammer
Matthew Hammer

6

# HOSPITALS WHO HAVE NOT PRODUCED ANY WRITTEN DISCOVERY ON THE NEGLIGENT CREDENTIALING AND RETENTION CLAIMS

# HOSPITALS WHO HAVE NOT PRODUCED ANY WRITTEN DISCOVERY ON THE NEGLIGENT CREDENTIALING AND RETENTION CLAIMS

1. Christ

2. Deaconess

3. Good Samaritan

4. Riverview (Dayton)

# ANSWERED WRITTEN DISCOVERY PROOF

Discovery Log — Durrani Clients
As of 8/28/15

Gray = Completed/Sent  Whi[te] = NEED TO DO
Orange = DISMISSED

| # | LAST | FIRST | REQUESTS From: | DUE | SENT | Notes Cont'd |
|---|------|-------|----------------|-----|------|--------------|
| 1 | Aaron | Frieda | Durrani/CAST | | 08/20/13 | |
| 2 | Aaron | Frieda | SUPPLEMENT | | 10/08/13 | |
| 3 | Aaron | Frieda | UC Health | | 08/26/13 | |
| 4 | Aaron | Frieda | WCH | | 08/26/13 | |
| 5 | Adams | Patricia | Durrani/CAST | Due 5/26 | 08/20/14 | |
| 6 | Adams | Patricia | UC | | 08/20/14 | |
| 7 | Adams | Patricia | WCH | | 08/20/14 | |
| 8 | Agee | Michelle | Durrani/CAST | Due 6/12 | 07/25/14 | |
| 9 | Aker | Laura | Durrani | Due 10/13 | 10/17/14 | |
| 10 | Allen | Jimmy | TriHealth/Good Sam | Due 6/26 | Sent | |
| 11 | Allen | Jimmy | Durrani/CAST | Due 6/12 | Sent | |
| 12 | Allen | Katrina | Durrani/CAST | | 07/16/13 | DISMISSED 41a - K. Allen |
| 13 | Allen | Katrina | Durrani/CAST 2nd Set | | 10/02/13 | DISMISSED 41a - K. Allen |
| 14 | Allen | Katrina | UC | | 08/20/13 | DISMISSED 41a - K. Allen |
| 15 | Allen | Katrina | WCH | | 08/08/13 | DISMISSED 41a - K. Allen |
| 16 | Allen | Katrina | Durrani/CAST NEW CASE | Due 5/19/15 | | Refiled 2015 - already answered-ignore |
| 17 | Allen | Sherri Lynn | Durrani/CAST | | 07/31/13 | |
| 18 | Allen | Sherri Lynn | UC | | 08/07/13 | |
| 19 | Allen | Sherri Lynn | WCH | | 08/07/13 | |
| 20 | Applegate | Rebecca | Durrani/CAST | | 07/16/13 | |
| 21 | Applegate | Rebecca | UC | | 07/16/13 | |
| 22 | Applegate | Rebecca | WCH | | 07/16/13 | |
| 23 | Arnold | Brad | Children's | | 07/30/13 | Dismissed 41a - B. Arnold |
| 24 | Arnold | Brad | Durrani/CAST | | 07/30/13 | Dismissed 41a - B. Arnold |
| 25 | Arnold | George | Durrani/CAST | Due 3/20 | 04/03/14 | |
| 26 | Arnold | George | UC/WCH | | 02/13/14 | |
| 27 | Ashcraft | Diana | Durrani/CAST | Due 8/14 | 04/20/14 | ON CD |
| 28 | Ashcraft | Diana | WCH/UC | Due 10/3 | 04/20/14 | ON CD |
| 29 | Atkins | Brian | Durrani/CAST | Due 3/14 | 05/09/14 | |
| 30 | Atkins | Brian | UC Health | Due 7/16 | 08/20/14 | |
| 31 | Atkins | Brian | WCH | Due 7/16 | 08/20/14 | |
| 32 | Atwell | Jonathan | Durrani/CAST | Due 6/25 | 01/05/15 | ON CD - Resent with UC/WCH |
| 33 | Atwell | Jonathan | WCH/UC | Due 10/3 | 04/20/15 | ON CD |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log**
**As of 8/28/15**

Durrani Clients

Gray = Completed/Sent   Wh... = NEED TO DO
Orange = DISMISSED

| # | Last | First | Provider | Due | Date | Notes |
|---|---|---|---|---|---|---|
| 34 | Atwood | Christopher | Durrani/CAST | Due 6/20 | 07/09/14 | |
| 35 | Atwood | Christopher | UC Health | Due 7/16 | 08/20/14 | |
| 36 | Atwood | Christopher | WCH | Due 7/16 | 08/20/14 | |
| 37 | Ault | Joshua | CCHMC RFA | Due 7/18 | 09/11/14 | |
| 38 | Ault | Joshua | Durrani | Due 10/14 | 09/17/14 | |
| 39 | Bachman | Gale | UC/WCH | Due 3/14 | 03/17/14 | |
| 40 | Bailey | Caidan | CCHMC RFA | Due 9/18 | | Dismissed 41a - C.Bailey |
| 41 | Bailey | Caidan | Durrani/CAST | Due 10/23 | | Dismissed 41a - C.Bailey |
| 42 | Bailey | Caiden | UC | Due 10/6 | | Dismissed 41a - C.Bailey |
| 43 | Bailey | Caiden | WCH | Due 10/6 | | Dismissed 41a - C.Bailey |
| 44 | Baker | Nicole | Durrani/CAST | | 07/01/13 | |
| 45 | Baker | Paul | Durrani/CAST | Due 4/24 | 04/22/14 | DISMISSED 41a - P.Baker |
| 46 | Baker | Paul | TriHealth/Good Sam | Due 4/23 | 04/22/14 | |
| 47 | Baker | Nicole | UC | | 08/07/13 | |
| 48 | Baker | Nicole | WCH | | 08/07/13 | |
| 49 | Ballinger | Jennifer | Durrani/CAST | | 07/25/13 | |
| 50 | Ballinger | Jennifer | UC | | 07/25/13 | |
| 51 | Ballinger | Jennifer | West Chester | | 07/25/13 | |
| 52 | Bartlett | Cindy | Durrani/CAST | | 07/22/13 | |
| 53 | Bartlett | Cindy | UC | | 09/04/13 | |
| 54 | Bartlett | Cindy | WCH | | 08/26/13 | |
| 55 | Batsche | Laura | Durrani/CAST | Due 4/24 | 04/03/14 | |
| 56 | Batsche | Laura | UC/WCH | | 02/12/14 | |
| 57 | Batsche | Laura | UC/WCH | | 02/12/14 | |
| 58 | Battista | Nicholas | Durrani/CAST | Due 6/24 | 08/20/14 | |
| 59 | Battista | Nicholas | UC:Health | Due 7/16 | 07/25/14 | |
| 60 | Battista | Nicholas | WCH | Due 7/16 | 07/25/14 | |
| 61 | Baumgardner | Joseph | Durrani/CAST | Due 8/19 | | Dismissed Rule 41a - Baumgardner |
| 62 | Bayliss | Steven | Durrani/CAST | Due 9/5 | 04/29/15 | ON CD |
| 63 | Bayliss | Steven | UC/WCH | Due 9/5 | 04/29/15 | ON CD |
| 64 | Beavan | Michelle | Durrani/CAST | Due 7/1 | 07/09/14 | Dismissed Rule 41a - Beavan |
| 65 | Bechtold | Phyllis | Durrani/CAST/SHANTI | Due 7/15 | 08/27/14 | |
| 66 | Bechtold | Phyllis | UC:Health | Due 7/16 | 08/27/14 | |
| 67 | Bechtold | Phyllis | WCH | Due 7/16 | 08/27/14 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log: 'Durrani Clients'**
**As of 8/28/15**

Gray = Completed/Sent  Wh... = NEED TO DO  Orange = DISMISSED

| # | Last | First | Description | Due | Date | CD |
|---|------|-------|-------------|-----|------|-----|
| 68 | Bechtold | Phyllis | WCH/UC/2nd Request | | 09/11/14 | |
| 69 | Beck | Judy | Durrani/CAST | Due 4/24 | 05/14/14 | |
| 70 | Beckelhimer | Troy | Durrani | Due 5/29 | 06/06/14 | |
| 71 | Begley | Nancy | Durrani/CAST | | 09/24/13 | |
| 72 | Begley | Nancy | UC/WCH | | 02/10/14 | |
| 73 | Beil | Cathy | 2nd RFPD D/CAST | Due 8/21 | 10/09/14 | |
| 74 | Beil | Cathy | Durrani/CAST | | 06/25/13 | |
| 75 | Beil | Cathy | UC | | 09/24/13 | |
| 76 | Beil | Cathy | WCH | | 09/24/13 | |
| 77 | Beil | Tammy | Durrani/CAST | Due 8/11 | | |
| 78 | Benjamin | Antoinette | Durrani/CAST | Due 10/23 | | |
| 79 | Benjamin | Antoinette | TriHealth/Good Sam | Due 10/7 | | |
| 80 | Benton | Shawnda | Durrani/CAST | Due 8-12-15 | | |
| 81 | Bess | Denise | Durrani/CAST | Due 3/18 | 04/03/14 | |
| 82 | Beyer | Leona | Durrani/CAST | | 08/09/13 | |
| 83 | Beyer | Leona | UC | | 08/12/13 | |
| 84 | Beyer | Leona | WCH | | 08/12/13 | |
| 85 | Billing | Trey | CCHMC RFA | Due 7/18 | 08/20/14 | |
| 86 | Billing | Trey | Durrani | Due 10/9 | | |
| 87 | Bishop | Edythe | Durrani/CAST | | 02/13/14 | |
| 88 | Bishop | Edythe | UC/WCH | | 02/13/14 | |
| 89 | Bode | Anthony | CCHMC RFA | Due 7/16 | 08/27/14 | |
| 90 | Bode | Anthony | Durrani | Due 8/13 | 08/27/14 | |
| 91 | Boggs | Kaitlyn | CCHMC RFA | Due 7/9 | 08/27/14 | |
| 92 | Boggs | Kaitlyn | Durrani/CAST | Due 5/26 | 05/27/14 | |
| 93 | Boggs | Katelyn | UC Health | Due 7/16 | 08/27/14 | |
| 94 | Boggs | Katelyn | WCH | Due 7/16 | 08/27/14 | |
| 95 | Boland | Nancy | Durrani/CAST | Due 4/24 | 05/27/14 | |
| 96 | Bookman | Jennifer | Durrani/CAST | Due 7/10 | 04/20/15 | ON CD |
| 97 | Bookman | Jennifer | WCH/UC | Due 9/26 | 04/20/15 | ON CD |
| 98 | Boone | Patricia | Durrani/CAST | | 08/14/13 | |
| 99 | Boone | Patricia | UC | | 08/14/13 | |
| 100 | Boone | Patricia | WCH | | 08/14/13 | |
| 101 | Borchers | Deena | Durrani/CAST | | 09/13/13 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log**
**As of 8/28/15**
**Durrani Clients**

Gray = Completed/Sent  Wh[ite] = NEED TO DO
Orange = DISMISSED

| # | Last | First | Type | Due | Date | Notes |
|---|---|---|---|---|---|---|
| 102 | Borchers | Deena | UC | | 09/26/13 | |
| 103 | Borchers | Deena | WCH | | 09/11/13 | |
| 104 | Botner | Gerald | Children's | | 07/30/13 | |
| 105 | Botner | Doris | Durrani/CAST | | 08/13/12 | |
| 106 | Botner | Gerald | Durrani/CAST | | 06/26/13 | |
| 107 | Botner | Gerald | UC | | 07/22/13 | |
| 108 | Botner | Gerald | WCH | | 07/22/13 | |
| 109 | Bowling | Arletta | Durrani/CAST | Due 4/24 | 06/02/14 | |
| 110 | Bowman | Nancy | Durrani/CAST | Due 3/20 | 04/03/14 | |
| 111 | Bowman | Nancy | UC/WCH | | 02/12/14 | |
| 112 | Brackett | Penny | Durrani/CAST | Due 6/27 | 07/10/14 | |
| 113 | Bradshaw | Latoya | Durrani/CAST | Due 5/26 | 08/27/14 | |
| 114 | Bradshaw | Latoya | WCH/UC | Due 6/3 | 08/27/14 | |
| 115 | Brady | Rebekah | Durrani/CAST | Due 4/24 | 06/02/14 | |
| 116 | Brady | Rebekah | UC | | | |
| 117 | Brady | Rebekah | WCH | | | |
| 118 | Bray | Lindsey | Durrani/CAST | Due 8/18 | 07/22/15 | READY - NO VERIFICATION |
| 119 | Bray | Lindsey | UC/WCH | Due 12/1 | 07/22/15 | READY - NO VERIFICATION |
| 120 | Bray | Dominique | Durrani/CAST | Due 10/8 | | |
| 121 | Breitlenstein | Rebecca | Durrani/CAST | | 07/24/13 | |
| 122 | Brewer | Randall | Durrani/CAST | Due 4/24 | 03/09/14 | |
| 123 | Brewer | Randall | UC/WCH | Due 3/14 | 04/03/14 | |
| 124 | Brice | Sharon | Durrani/CAST | Due 7/25 | Sent | |
| 125 | Britten | Carrie | Durrani/CAST | Due 8/19 | 07/22/15 | READY - NO VERIFICATION |
| 126 | Britten | Carrie | WCH/UC | Due 10/3 | 07/22/15 | READY - NO VERIFICATION |
| 127 | Brophy | Michael | Durrani | Due 5/1 | | Dismissed 41a - M. Brophy |
| 128 | Brorein | Eileen | UC/WCH | Due 3/14 | 04/11/14 | |
| 129 | Brown | James | Durrani/CAST | | 07/26/13 | |
| 130 | Brown | James | UC | | 07/29/13 | |
| 131 | Brown | James | WCH | | 07/29/13 | |
| 132 | Bruce | Patricia | Durrani/CAST | 05/06/14 | | |
| 133 | Bruce | Patricia | UC | | | |
| 134 | Bruce | Patricia | WCH | | | |
| 135 | Brunner | Jonathan/Christine | Durrani/CAST | DUE 3/24 | 05/15/14 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

Discovery Log, 'Durrani Clients
As of 8/28/15

Gray = Completed/Sent    Wh... NEED TO DO
Orange = DISMISSED

| # | Last | First | Provider | Due | Date | Notes |
|---|---|---|---|---|---|---|
| 136 | Brunner | Jonathan | UC | Due 5/7 | 05/15/14 | |
| 137 | Brunner | Jonathan | WCH | Due 5/7 | 05/15/14 | |
| 138 | Bushelman | Kathleen | CCHMC RFA | Due 4/28 | 06/02/14 | Dismissed 41a Bushelman |
| 139 | Buskirk | Annette | Durrani/CAST | Due 6/25 | 09/11/14 | |
| 140 | Butler | Brenda | Durrani/CAST | Due 8/22 | | |
| 141 | Byar | Michele | Durrani/CAST | DUE 3/7 | 03/07/14 | |
| 142 | Byrd | Timothy | Durrani | Due 10/14 | | |
| 143 | Callahan | Douglas | Durrani/CAST | Due 10/15 | 04/20/15 | ON CD |
| 144 | Callahan | Douglas | WCH/UC | Due 10/3 | 04/20/15 | ON CD |
| 145 | Calligan | Patrick | CCHMC RFA | Due 4/23 | 05/27/14 | |
| 146 | Calligan | Patrick | Durrani | Due 6/6 | 05/15/14 | |
| 147 | Campbell | Jan | Durrani/SHANTI | 7/30 | | |
| 148 | Carr | Andrew | Children's | | 07/31/13 | |
| 149 | Carr | Andrew | Durrani/CAST | | 07/03/13 | |
| 150 | Carr | Andrew | UC | | 07/31/13 | |
| 151 | Carr | Andrew | WCH | | 07/31/13 | |
| 152 | Chhun | Bunnavuth | Durrani/CAST | Due 4/24 | 04/22/14 | |
| 153 | Chhun | Bunnavuth | UC/WCH | | 04/22/14 | |
| 154 | Chisman | Tonya | Durrani/CAST | Due 4/24 | 07/09/14 | |
| 155 | Cinquina | Sherri | Durrani/CAST | | 07/01/13 | DISMISSED - S. Cinquina - NOT REFILING |
| 156 | Clark | Chris | Durrani/CAST | | 06/28/13 | |
| 157 | Clark | Chris | JourneyLite | | 08/14/13 | |
| 158 | Clark | Chris | UC Health | | 08/20/13 | |
| 159 | Clark | Chris | WCH | | 08/20/13 | |
| 160 | Cochran | Jessica | Durrani/CAST | | 10/04/13 | |
| 161 | Cochran | Jessica | UC/WCH | | 01/27/14 | |
| 162 | Collins | John | CCHMC RFA | Due 4/2 | 03/26/14 | |
| 163 | Collins | John | Durrani | DUE 3/22 | 09/24/13 | |
| 164 | Compo | Elizabeth | Durrani/CAST | | 09/24/13 | |
| 165 | Compo | Elizabeth | UC/WCH | | 02/12/14 | |
| 166 | Conger | Kenneth | CCHMC RFA | Due 7/9 | 07/25/14 | |
| 167 | Conger | David | Durrani/CAST | Due 4/24 | 07/11/14 | Dismissed 41a - D. Conger |
| 168 | Conger | Kenneth | Durrani/CAST | Due 7/1 | 07/25/14 | |
| 169 | Conger | David | UC Health | Due 7/16 | 07/11/14 | Dismissed 41a - D. Conger |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log** **Durrani Clients**
As of 8/28/15

Gray = Completed/Sent  Wh... = NEED TO DO
Orange = DISMISSED

| # | Last | First | Entity | Due | Date | Notes |
|---|---|---|---|---|---|---|
| 170 | Conger | David | WCH | Due 7/16 | 07/11/14 | Dismissed 41a - D. Conger |
| 171 | Conley | Dana | Durrani | Due 4/9 | 07/09/14 | |
| 172 | Conley | Dana | UC | Due 5/7 | 07/09/14 | |
| 173 | Conley | Dana | WCH | Due 5/7 | 07/09/14 | |
| 174 | Conley | Brenda | Durrani/CAST | Due 9/30 | | |
| 175 | Cook | Michael | Durrani/CAST | Due 9/5 | | |
| 176 | Cook | Michael | UC Health | Due 9/12 | | |
| 177 | Cook | Michael | WCH | Due 9/12 | | |
| 178 | Coots | Gary | Durrani/CAST | | 08/29/13 | |
| 179 | Coots | Gary | UC | | 08/29/13 | |
| 180 | Coots | Gary | WCH | | 08/29/13 | |
| 181 | Cotter | Jacob | CCHMC RFA | Due 4/23 | 05/09/14 | |
| 182 | Cotter | Jacob | Durrani | 2/23/2015 | 01/30/15 | Ready - Melissa Cotter emailing forms/verif |
| 183 | Couch | Jackie | Durrani/CAST | | 09/02/14 | |
| 184 | Couch | Jackie | UC Health | Due 7/16 | 09/02/14 | |
| 185 | Couch | Jackie | WCH | Due 7/16 | 09/02/14 | |
| 186 | Courtney | Eric | Durrani/CAST | Due 5/14 | 08/25/14 | |
| 187 | Crail | Michael | Durrani/CAST | Due 5/22 | 08/20/14 | |
| 188 | Crissinger | Karen | Durrani | DUE 3/24 | 06/30/14 | DISMISSED 41a (CHRIST ONLY) - K. Crissinger |
| 189 | Crowe | Joi | Durrani/CAST | Due 8/19 | | |
| 190 | Curley | Kathryn | CCHMC RFA | Due 4/7 | 03/26/14 | |
| 191 | Curley | Kathryn | Durrani | Due5/2 | 04/10/14 | |
| 192 | Dabney | William | Durrani/CAST | | 09/26/13 | |
| 193 | Dabney | William | UC | | 08/28/13 | |
| 194 | Dabney | William | WCH | | 09/24/13 | |
| 195 | Dailey | Margaret | | | NOT ON Q | DISMISSED 41a - M. Dailey |
| 196 | Dale | Tammy | Durrani/CAST | Due 3/14 | 03/28/14 | ON CD - Resent with UC/WCH |
| 197 | Dale | Tammy | WCH/UC | Due 4/7 | 03/28/14 | ON CD - Resent with UC/WCH |
| 198 | Daniel | Scott | CCHMC RFA | Due 4/2 | 04/03/14 | |
| 199 | Daniel | Scott | Durrani | Due 4/7 | 04/03/14 | |
| 200 | Davis | Nellie | Durrani/CAST | | 10/03/13 | |
| 201 | Davis | Nellie | UC | | 10/09/13 | |
| 202 | Davis | Nellie | WCH | | 10/09/13 | |
| 203 | Deaton | Ollie | Durrani/CAST | Due 8/26 | | DISMISSED 41a - Deaton |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log**
**As of 8/28/15**   **"Durrani Clients"**

Gray = Completed/Sent   White = NEED TO DO
Orange = DISMISSED

| # | Last | First | Entity | Due | Sent | Status |
|---|---|---|---|---|---|---|
| 204 | Deaton | Ollie | UC Health | Due 9/12 | | DISMISSED 41a - Deaton |
| 205 | Deaton | Ollie | WCH | Due 9/12 | | DISMISSED 41a - Deaton |
| 206 | Deck | Damon | Durrani/CAST | | | |
| 207 | Deck | Damon | UC | | 06/28/13 | |
| 208 | Deck | Damon | WCH | | 08/06/13 | |
| 209 | Dennis | Sandra | Durrani/CAST | | 07/31/13 | |
| 210 | Dennis | Sandra | UC | | 07/29/13 | |
| 211 | Dennis | Sandra | WCH | | 08/16/13 | |
| 212 | Densler | Robert | Durrani/CAST | | 08/09/13 | |
| 213 | Densler | Robert | UC | | 09/11/13 | |
| 214 | Densler | Robert | WCH | | 09/11/13 | |
| 215 | Dority | Kristine | Durrani/CAST | | 09/11/13 | DISMISSED - K. Dority |
| 216 | Dority | Kristine | UC | | 07/25/13 | DISMISSED - K. Dority |
| 217 | Dority | Kristine | WCH | | 07/25/13 | DISMISSED - K. Dority |
| 218 | Dority | Kristine | Durrani/CAST | Due 7/24 | 08/05/13 | DISMISSED - K. Dority |
| 219 | Dority | Kristine | UC Health | Due 7/16 | | DISMISSED - K. Dority |
| 220 | Dority | Kristine | WCH | Due 7/16 | | DISMISSED - K. Dority |
| 221 | Dotson | Carolyn | Durrani/CAST | | 08/09/13 | |
| 222 | Dotson | Carolyn | UC | | 08/09/13 | |
| 223 | Dotson | Carolyn | WCH | | 08/09/13 | |
| 224 | Doyle | Deborah | Durrani/CAST | Due 2/27 | | |
| 225 | Drafts | Douglas | Durrani/CAST | Due 3/25 | 04/17/14 | |
| 226 | Drafts | Douglas | UC | Due 5/7 | 06/06/14 | |
| 227 | Drafts | Douglas | WCH | Due 5/7 | 06/06/14 | |
| 228 | Dugan | Patrick | Durrani/CAST | Due 4/24 | 07/09/14 | |
| 229 | Dugan | Patrick | WCH | Due 4/24 | 07/09/14 | |
| 230 | Dugger | Bill | Durrani/CAST | Due 3/14 | 04/10/14 | ON CD - Resent with UC/WCH |
| 231 | Dugger | Melissa/Bill | WCH | Due 4/1 | 04/29/15 | ON CD |
| 232 | Dunklin | Dawn | Durrani/CAST | 01/17/14 | 01/17/14 | |
| 233 | Dunklin | Dawn | UC/WCH | 02/10/14 | 02/10/14 | |
| 234 | Durham | Jacob | Durrani/CAST | Due 8/14 | | |
| 235 | Easley | Carmille | Children's | | 08/01/13 | DISMISSED - C. Easley |
| 236 | Elfers | Kevin | Durrani/CAST | Due 7/22 | Sent | |
| 237 | Elfers | Kevin | WCH/UC | Due 10/3 | Sent | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log**    **Durrani Clients**              Gray = Completed/Sent

As of 8/28/15               WH... NEED TO DO / Orange = DISMISSED

| # | Last | First | Provider | Due | Date | Notes |
|---|---|---|---|---|---|---|
| 238 | Ellington | Connie | UC/WCH | | 02/24/14 | |
| 239 | Ellington | Robert | UC/WCH | | 02/24/14 | |
| 240 | Elliot | Richard | Durrani/CAST | Due 8/22 | | Dismissed 41a - R. Elliot |
| 241 | Elliot | Richard | TriHealth/Good Sam | Due 8/8 | | Dismissed 41a - R. Elliot |
| 242 | Esselman | Tracy | Riverview-RFA | Due 7/10 | 09/09/14 | DISMISSED 41a - T. Esselman |
| 243 | Esselman | Tracy | Durrani/CAST | Due 5/27 | | DISMISSED 41a - T. Esselman |
| 244 | Esselman | Tracy | Riverview Health | Due 7/10 | | DISMISSED 41a - T. Esselman |
| 245 | Fait | Arlene | Durrani/CAST | Due 3/14 | 04/01/14 | |
| 246 | Favron | Neil | Durrani/CAST | Due 3/14 | 04/15/14 | |
| 247 | Favron | Neil | UC/WCH | Due 3/28 | 04/25/14 | |
| 248 | Felther | Karen | Durrani Only | Due 9-1-15 | | |
| 249 | Feltner | Jacob | Durrani/CAST | | 06/26/13 | Refiled 2015 - already answered |
| 250 | Feltner | Karen | Durrani/CAST | | 09/04/13 | DISMISSED 41a - K. Feltner |
| 251 | Finnell | Caela | CCHMC INT & RFPD | 2/12/2015 | 02/23/15 | Ext. 4/13 |
| 252 | Finnell | Caela | CCHMC-RFA | 2/12/2015 | 02/20/15 | Ext. 4/13 |
| 253 | Finnell | Caela | Durrani/CAST | Due 8/7 | 02/23/15 | EXT 10-6-14 |
| 254 | Finnell | Caela | TriHealth/Good Sam | Due 7/25 | 02/24/15 | |
| 255 | Fite | Troy | CCHMC RFA | Due 8/8 | 07/25/14 | |
| 256 | Fite | Troy | Durrani | Due 10/2 | 10/09/14 | |
| 257 | Ford | Shamyia | CCHMC RFA | Due 7/9 | 07/11/14 | |
| 258 | Ford | Francine | Durrani/CAST | DUE 3/7 | 03/07/14 | |
| 259 | Ford | Shamyia | Durrani/CAST | Due 6/30 | 07/11/14 | |
| 260 | Ford | Francine | UC/WCH | DUE 3/3 | 03/07/14 | |
| 261 | Fossett | Lennie | Durrani/CAST | Due 8/22 | | |
| 262 | Fossett | Lennie | UC | Due 9/24 | | |
| 263 | Fossett | Lennie | WCH | Due 9/24 | | |
| 264 | Franks | Amanda | Durrani/CAST | Due 4/24 | 07/25/14 | |
| 265 | Franks | Amanda | WCH | Due 5/20 | 07/25/14 | |
| 266 | Frazier | Joanne | Durrani/CAST | Due 4/24 | 05/14/14 | |
| 267 | Freeman | Jolie | Durrani | Due 9/17 | | DISMISSED 41a - J. Freeman |
| 268 | Gardner | Judith | Durrani/CAST | Due 8/22 | | |
| 269 | Geralds | Christine | Durrani/CAST | Due 8/30 | | |
| 270 | Geralds | Christine | UC | Due 9/24 | | |
| 271 | Geralds | Christine | WCH | Due 9/24 | | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log**
**As of 8/28/15** — Durrani Clients

Gray = Completed/Sent  White = NEED TO DO  Orange = DISMISSED

| # | Last | First | Provider | Due | Status | Date |
|---|------|-------|----------|-----|--------|------|
| 272 | Gilbert | Erma Jean | Durrani/CAST | | | 04/22/14 |
| 273 | Gilbert | Erma | Durrani/CAST | | | 04/22/14 |
| 274 | Gilbert | Erma | UC/WCH | Due 4/7 | | 04/22/14 |
| 275 | Goldstein | Christina | **CCHMC RFA** | Due 7/9 | DISMISSED 41a - Goldstein | 07/09/14 |
| 276 | Goldstein | Christina | Durrani/CAST | Due 5/26 | DISMISSED 41a - Goldstein | 07/11/14 |
| 277 | Goldstein | Christina | UC Health | Due 7/16 | DISMISSED 41a - Goldstein | 07/11/14 |
| 278 | Goldstein | Christina | WCH | Due 7/16 | DISMISSED 41a - Goldstein | 07/11/14 |
| 279 | Good | Donna | Durrani/CAST | Due 7/11 | | 08/20/14 |
| 280 | Gordon | Gregory | Durrani/CAST | Due 4/24 | | 04/29/14 |
| 281 | Gordon | Gregory | WCH | Due 4/24 | | 04/29/14 |
| 282 | Graber | Gregory | Durrani/CAST | Due 9/30 | | |
| 283 | Grabow | Maurice | Durrani/CAST | Due 8/25 | **ON CD** | 04/20/15 |
| 284 | Grabow | Maurice | WCH/UC | Due 9/26 | **ON CD** | 04/20/15 |
| 285 | Greelish | Erin | Durrani/CAST | Due 8/14 | | |
| 286 | Greelish | Erin | UC | Due 9/24 | | |
| 287 | Greelish | Erin | WCH | Due 9/24 | | |
| 288 | Greene | Gloria | Durrani/CAST | | | 08/29/13 |
| 289 | Greene | Gloria | UC | | | 09/24/13 |
| 290 | Greene | Gloria | WCH | | | 09/10/13 |
| 291 | Gregory | Robbie | Durrani/CAST | Due 7/10 | | 04/29/15 |
| 292 | Gregory | Robbie | WCH/UC | Due 10/3 | ON CD | 04/29/15 |
| 293 | Greissman | Carla | Durrani/CAST | DUE 3/13 | DISMISSED 41a - C. Greissman | 03/17/14 |
| 294 | Griffin | Susan | Durrani/CAST | DUE 3/7 | | 03/06/14 |
| 295 | Griffin | Susan | UC/WCH | DUE 3/3 | | 03/06/14 |
| 296 | Grimm | Jenny | Durrani/CAST | | | 08/20/13 |
| 297 | Grimm | Jenny | UC | | | 08/12/13 |
| 298 | Grimm | Jenny | WCH | | | 08/12/13 |
| 299 | Habermehl | Melissa | Durrani/CAST | Due 7/10 | | |
| 300 | Haggard | Lenora | Durrani/CAST | Due 8/22 | | |
| 301 | Haley | Lynn | Durrani/CAST | Due 3/14 | | 04/11/14 |
| 302 | Hall | Alyssa | **CCHMC RFA** | Due 4/8 | | 05/27/14 |
| 303 | Hall | Lisa | Durrani/CAST | Due 3/27 | | 04/22/14 |
| 304 | Hall | Lisa | UC/WCH | Due 4/7 | | 04/22/14 |
| 305 | Hamilton | Dorthea | Durrani/CAST | | | 10/23/13 |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

Discovery Log
As of 8/28/15

'Durrani Clients

Gray = Completed/Sent    Wh... = NEED TO DO
Orange? = DISMISSED

| # | Last | First | W.H. | Entity | Due | Date | Notes |
|---|------|-------|------|--------|-----|------|-------|
| 306 | Hamilton | Dorthea | | UC | | 10/23/13 | |
| 307 | Hamilton | Dorthea | | WCH | | 10/23/13 | |
| 308 | Hamilton | ▮ | Denise | Durrani | Due 10/21 | | |
| 309 | Hamilton | Samantha | | CCHMC RFA | | 08/13/15 | PRIORITY!!!!!!!!!!! - sent to client 8-12-15 |
| 310 | Hamilton | Samantha | | Durrani/CAST | Due 8/27 | | |
| 311 | Hamilton | Samantha | | UC Health | Due 9/12 | | |
| 312 | Hamilton | Samantha | | WCH | Due 9/12 | | |
| 313 | Hammons | Courtney | | Durrani/CAST | 7/29 | | |
| 314 | Hammons | Courtney | | UC | Due 9/24 | | |
| 315 | Hammons | Courtney | | WCH | Due 9/24 | | |
| 316 | Hannon | Timothy | | Durrani/CAST | Due 7/25 | Sent | |
| 317 | Harbert | Robin | | Durrani/CAST | Due 7/11 | 08/16/13 | |
| 318 | Hartness | Kevin | | Durrani/CAST | Due 7/11 | 12/01/14 | Mailed |
| 319 | Hartness | Kevin | | UC Health | Due 7/16 | 12/01/14 | Mailed |
| 320 | Hartness | Kevin | | WCH | Due 7/16 | 12/01/14 | Mailed |
| 321 | Hastings | Jessica | | Durrani/CAST | Due 3/20 | 04/01/14 | |
| 322 | Hastings | Jessica | | UC/WCH | Due 3/14 | 03/18/14 | |
| 323 | Hatfield | Wayne | | Durrani/CAST | Due 5/26 | 07/09/14 | |
| 324 | Healey | Minuet | | CCHMC & RFA | Due 5/20/15 | | RFA SENT 6-16-15 |
| 325 | Healey | Minuet | | Durrani | Due 10/9 | | |
| 326 | Heffner | Heather/Leslie | | UC Health | | 12/09/14 | mailed |
| 327 | Heffner | Heather/Leslie | | WCH | | 12/09/14 | mailed |
| 328 | Heffner | Heather/Leslie | | Children's & RFA | | | Dismissed 41a - Powers/Heffner |
| 329 | Helton | Denise | | Durrani/CAST | Due 9/9 | | |
| 330 | Helton | Evelyn | | Durrani/CAST | Due 8/14 | | |
| 331 | Henderson | Debra | | Durrani/CAST | | 04/20/15 | ON CD |
| 332 | Henderson | Debra | | WCH | Due 10/13 | 04/20/15 | ON CD |
| 333 | Hennessy | Kelly | | Durrani/CAST | Due 3/20 | 03/28/14 | ON CD from 4-20-15 - Resent |
| 334 | Hennessy | Kelly | | UC/WCH | Due 3/14 | 03/28/14 | ON CD from 4-20-15 - Resent |
| 335 | Hensley | Ryan | | UC Health | Due 9/12 | | Dismissed 41a - R. Hensley |
| 336 | Hensley | Ryan | | WCH | Due 9/12 | | Dismissed 41a - R. Hensley |
| 337 | Herbert/Hensley E.H. | [Mom-Hensley] | | CCHMC no RFA | Ext 6-8 | | Due 4-8 |
| 338 | Herbert/Hensley E.H. | [Mom-Hensley] | | Durrani | Ext 6-15 | | Due 4-14 |
| 339 | Hickey | Jennifer | | Durrani/CAST | | 08/20/13 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log**
**As of 8/28/15**   'Durrani Clients

Gray = Completed/Sent    Wh' = NEED TO DO
Orange = DISMISSED

| # | Last | First | Type | Due | Date | Notes |
|---|------|-------|------|-----|------|-------|
| 340 | Hickey | Jennifer | UC | | 08/20/13 | |
| 341 | Hickey | Jennifer | WCH | | 08/20/13 | |
| 342 | Higginbothan | Karen | Durrani/CAST | | 06/30/14 | |
| 343 | Higginbothan | Karen | WCH/UC | | 06/30/14 | |
| 344 | Hightchew | Alyssa | | Due 12/31 | 02/26/15 | |
| 345 | Hightchew | Alyssa | | Due 12/31 | 01/30/15 | Sent to Erica to Sign 1/28 |
| 346 | Hillard | Michael | CCHMC RFA | DUE 3/7 | 03/06/14 | |
| 347 | Hitchcock | Dirk | Durrani/CAST | | 02/17/14 | |
| 348 | Hitchcock | Dirk | SUPPLEMENT | | 02/17/14 | |
| 349 | Hitchcock | Dirk | UC | | 02/17/14 | |
| 350 | Hitchcock | Dirk | WCH | | 02/17/14 | |
| 351 | Hoffman | Celeste | Durrani/CAST | Due 3/25 | 04/03/14 | |
| 352 | Hoffman | Celeste | Durrani/CAST | Due 3/27 | 04/03/14 | |
| 353 | Hoffman | Celeste | JourneyLite | Due 3/19 | 09/13/13 | |
| 354 | Hoffman | Celeste | SUPPLEMENT | | 02/17/14 | |
| 355 | Hoffman | Celeste | UC/WCH | | 02/13/14 | |
| 356 | Hon | Loretta | Durrani/CAST | Due 3/25 | 03/25/14 | |
| 357 | Hon | Loretta | UC | | | |
| 358 | Hon | Loretta | WCH | | | |
| 359 | Hortman | Chelsea | Durrani/CAST | Due 3/27 | 05/27/14 | |
| 360 | Hortman | Chelsea | UC/WCH | Due 4/7 | 05/27/14 | |
| 361 | Houghton | Robert | Durrani/CAST | Due 3/19 | 04/17/14 | |
| 362 | Houghton II | Robert | Durrani | Due 9/4 | | DISMISSED 41a - R. Houghton II |
| 363 | Hounchell | Ricky | Durrani/CAST | Due 7/11 | 03/03/15 | |
| 364 | Hounchell | Ricky | WCH/UC | Due 10/3 | 03/06/15 | Sent to Erica 3/4/15 |
| 365 | Howell | Kathryn | Durrani/CAST | Due 3/20 | 04/14/14 | |
| 366 | Howell | Kathryn | UC/WCH | Due 3/14 | 04/17/14 | |
| 367 | Hughes | Lois | Durrani/CAST | Due 3/26 | 6/7/14 | |
| 368 | Hughes | Tammy | Durrani/CAST | Due 4/24 | Sent | |
| 369 | Hughes | Tammy | JourneyLite | | 09/24/13 | |
| 370 | Hughes | Tammy | UC/WCH | | 02/19/14 | |
| 371 | Hunley | Kevin | Durrani | Due 9/1 | | DISMISSED 41a - K. Hunley |
| 372 | Hunley | Kevin | Durrani Only | Due 9-1-15 | | |
| 373 | Hurd | Charles | Children's | | 08/13/13 | DISMISSED 41a - C. Hurd |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log — Durrani Clients**
As of 8/28/15

Gray = Completed/Sent  Wh... = NEED TO DO  Orange = DISMISSED

| # | Last | First | Type | Due | Date | Status |
|---|---|---|---|---|---|---|
| 374 | Hursong | Carolyn | Durrani/CAST | Due 8/25 | | |
| 375 | Huser | David/Connie | UC/WCH | Due 10/17 | 04/20/15 | ON CD |
| 376 | Hutton | Martha | Durrani/CAST | Due 9/15 | | DISMISSED 41a - M. Hutton |
| 377 | Hyde | Irene | Durrani/CAST | Due 8/14 | 07/22/15 | READY |
| 378 | Hyde | Irene | WCH/UC | Due 10/27 | 07/22/15 | READY |
| 379 | Ieraci | Elsa | Durrani/CAST | Due 6/24 | 11/03/14 | |
| 380 | Ieraci | Elsa | UC Health | Due 7/16 | 11/03/14 | |
| 381 | Ieraci | Elsa | WCH | Due 7/16 | 11/03/14 | |
| 382 | Janson | Tracy | CCHMC RFA | Due 4/28 | 05/09/14 | DISMISSED 41a - T. Janson |
| 383 | Janson | Tracy | Durrani | Due 5/1 | 06/02/14 | DISMISSED 41a - T. Janson |
| 384 | Jenkins | Kimberly | Durrani/CAST | Due 8/7 | 04/20/15 | ON CD |
| 385 | Jenkins | Kimberly | WCH/UC | Due 9/26 | 04/20/15 | ON CD |
| 386 | Jobe | Stephanie | Durrani/CAST | Due 3/19 | 04/22/14 | |
| 387 | Johnson | Roger | Durrani/CAST | Due 5/22 | 08/25/14 | DISMISSED 41a - R. Johnson |
| 388 | Johnson | Roger | UC Health | Due 7/16 | 08/27/14 | DISMISSED 41a - R. Johnson |
| 389 | Johnson | Roger | WCH | Due 7/16 | 08/27/14 | DISMISSED 41a - R. Johnson |
| 390 | Johnson | Chelsea | Durrani/CAST | Due 8/22 | | |
| 391 | Johnson | Chelsea | UC | Due 9/24 | | |
| 392 | Johnson | Chelsea | WCH | Due 9/24 | | |
| 393 | Jones | Rachel | Riverview RFA 2nd | 1/26/2015 | 01/23/15 | |
| 394 | Jones | Joan | Durrani/CAST | Due 9/5 | 04/20/15 | ON CD FOR 4-17-15 |
| 395 | Jones | Rachel | Durrani/CAST | Due 6/20 | 10/17/14 | |
| 396 | Jones | Rachel | Riverview Health | Due 7/25 | 10/17/14 | |
| 397 | Jones | Rachel | Riverview RFA | Due 7/25 | 09/09/14 | |
| 398 | Jones | Joan | WCH/UC | Due 9/26 | 04/20/15 | ON CD FOR 4-17-15 |
| 399 | Jones | Sydney | Durrani | Due 10/9 | | |
| 400 | Jones | Tammy | Durrani/CAST | Due 8/7 | | |
| 401 | Judkins | Phyliss | Durrani/CAST | Due 2-16-15 | | NEED WORD FORMAT - EXT 4-17-15 |
| 402 | Juergens | Sarah | Durrani/CAST | | 01/27/14 | Dismissed 41a - Juergens |
| 403 | Juergens | Sarah | UC/WCH | | 01/27/14 | Dismissed 41a - Juergens |
| 404 | Kauffman | Joshua | Durrani/CAST | Due 8/27 | | DISMISSED 41a - J. Kauffman |
| 405 | Kauffman | Joshua | Durrani/CAST | Due 8-13-15 | | |
| 406 | Kauffmann | Katelyn | Durrani/CAST/SHANTI | Due 6/30 | 08/25/14 | |
| 407 | Kauffmann | Katelyn | UC Health | Due 7/16 | 08/25/14 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

Discovery Log   Durrani Clients
As of 8/28/15

Gray = Completed/Sent    Whi? = NEED TO DO
Orange = DISMISSED

| # | Last Name | First Name | Facility | Due Date | Date | Notes |
|---|---|---|---|---|---|---|
| 408 | Kauffmann | Katelyn | WCH | Due 7/16 | 08/25/14 | |
| 409 | Kidd | Deborah | UC/WCH | Due 3/14 | 03/17/14 | |
| 410 | King | Charlotte | Durrani/CAST | Due 3/20 | 04/07/14 | |
| 411 | King | Charlotte | UC/WCH | Due 3/14 | 04/07/14 | |
| 412 | Knauer | Maggie | Durrani | Due 3/22 | 03/28/14 | |
| 413 | Koch | Amanda | CCHMC RFA | Due 4/28 | 05/15/14 | Alex |
| 414 | Koch | Amanda | Durrani/CAST | Due 3/27 | 05/06/14 | |
| 415 | Koeblin | Michael | Durrani/CAST | Due 6/12 | 10/09/14 | DISMISSED 41a - M. Koeblin |
| 416 | Koehler | Shannon | Durrani/CAST | Due 8/25 | | DISMISSED 41a - S. Koehler |
| 417 | Koehler | Rose | Durrani/CAST | Due 9/9 | | DISMISSED 41a - R. Koehler |
| 418 | Kopp | Valerie | Durrani/CAST | | 10/04/13 | |
| 419 | Kopp | Valerie | WCH | | 10/04/13 | |
| 420 | Krabacher | Sheila | Durrani/CAST | Due 3/27 | 04/11/13 | |
| 421 | Krabacher | Sheila | UC/WCH | Due 3/14 | 03/17/14 | |
| 422 | Kranbuhl-Mckee | Laura | Durrani/CAST | | 08/13/13 | |
| 423 | Kranbuhl-Mckee | Laura | UC | | 10/15/13 | |
| 424 | Kranbuhl-Mckee | Laura | WCH | | 08/13/13 | |
| 425 | Krech | Larry | Durrani/CAST | Due 8/27 | Sent | |
| 426 | Krech | Larry | UC Health | Due 9/10 | Sent | |
| 427 | Krech | Larry | WCH | Due 9/10 | Sent | |
| 428 | Lacinak | Brandon | CCHMC RFA | Due 4/2 | 04/09/14 | |
| 429 | Lacinak | Brandon | Durrani | Due 4/7 | 04/07/14 | |
| 430 | Lainhart | Natasha | Durrani/CAST | Due 8/18 | | DISMISSED 41a - Lainhart |
| 431 | Lainhart | Natasha | UC | Due 9/24 | | DISMISSED 41a - Lainhart |
| 432 | Lainhart | Natasha | WCH | Due 9/24 | | DISMISSED 41a - Lainhart |
| 433 | ▉ | N (MINOR) | Children's RFA | DUE 3/19 | 03/20/14 | |
| 434 | Legendre | Patricia | SUPPLEMENT | | 12/23/13 | |
| 435 | Leger | Karen | Durrani/CAST | Due 8/22 | 04/20/15 | ON CD |
| 436 | Leger | Karen | WCH/UC | Due 9/26 | 04/20/15 | ON CD |
| 437 | Leisring | Beth Ann | Children's | | 08/08/13 | DISMISSED 41a - B. Leisring |
| 438 | Leisring | Beth Ann | Durrani/CAST | | 10/07/13 | DISMISSED 41a - B. Leisring |
| 439 | Leisring | Beth Ann | Durrani - WILKEY Qs | | | DONE - GAVE TO ERIC FOR STEPH TO SIGN |
| 440 | Lemmel | Sandra | Durrani/CAST | Due 9/11 | 04/25/14 | |
| 441 | Levan | Ailene | Durrani/CAST | Due 3/27 | | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log:** **Durrani Clients**
As of 8/28/15

Gray = Completed/Sent   Wh' = NEED TO DO
Orange = DISMISSED

| # | Last | First | Entity | Due | Date | Notes |
|---|---|---|---|---|---|---|
| 442 | Levan | Ailene | UC/WCH | Due 4/7 | 04/25/14 | |
| 443 | Levandofsky | Hilary | Durrani/CAST | Due 4/24 | 07/09/14 | |
| 444 | Lilly | Adrian | Children's RFA | | 02/27/14 | DISMISSED 41a - Lilly |
| 445 | Lilly | Adrian | Durrani | Due 5/2 | 04/10/14 | DISMISSED 41a - Lilly |
| 446 | List | Derek | Durrani/CAST | Due 3/13 | 03/17/14 | Refiled 2015 - already answered |
| 447 | List | Lynn/Mike | Durrani/CAST | DUE 3/24 | 07/25/14 | |
| 448 | Little | Tammie Sue | Durrani/CAST | Due 4/24 | 6/?/2014 | |
| 449 | Little | Tammie Sue | UC | Due 5/7 | 6/?/2014 | |
| 450 | Little | Tammie Sue | WCH | Due 5/7 | 6/?/2014 | |
| 451 | Lovette | Tamala | Durrani/CAST | Due 8/11 | | |
| 452 | Mains | Shirley | Durrani/CAST | Due 3/20 | 04/03/14 | |
| 453 | Mains | Vicky | Durrani/CAST | Due 5/26 | 09/02/14 | |
| 454 | Mains | Shirley | UC/WCH | Due 3/14 | 04/03/14 | |
| 455 | Mains | Rhonda | Durrani/CAST | Due 8/18 | | |
| 456 | Mains | Rhonda | UC | Due 9/24 | | |
| 457 | Mains | Rhonda | WCH | Due 9/24 | | |
| 458 | Mann | Tammy | Durrani/CAST | | 06/25/13 | |
| 459 | Marcheschi | Jack | CCHMC RFA | Due 4/4 | 04/17/14 | |
| 460 | Marcheschi | Jack | Durrani | Due5/2 | 04/17/14 | |
| 461 | Marksberry | Paul | Durrani/CAST | Due 3/19 | 02/27/14 | |
| 462 | Marksberry | Paul | Durrani/CAST | | 02/27/14 | |
| 463 | Marksberry | Paul | UC/WCH | | 02/27/14 | |
| 464 | Marshall | Timothy | Durrani/CAST | | 07/11/13 | |
| 465 | Marshall | Timothy | UC | | 08/20/13 | |
| 466 | Marshall | Timothy | WCH | | 08/20/13 | |
| 467 | Martin | Julie | Durrani/CAST | | 08/08/13 | |
| 468 | Martin | Julie | UC | | 08/07/13 | |
| 469 | Martin | Julie | WCH | | 07/26/13 | |
| 470 | Martin | Stacy | Durrani/CAST | Due 8/7 | | DISMISSED 41a - S. Martin |
| 471 | Martin | Stacy | Durrani/CAST | Due 8/7 | | DISMISSED 41a - S. Martin |
| 472 | Masters | Robert | Durrani/CAST | Due 6/24 | 07/09/14 | DISMISSED 41a - Masters |
| 473 | Masters | Robert | UC Health | Due 7/16 | 07/11/14 | DISMISSED 41a - Masters |
| 474 | Masters | Robert | WCH | Due 7/16 | 07/11/14 | DISMISSED 41a - Masters |
| 475 | Mathis | Brandon | Durrani | Due 9/10 | | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log**  
**As of 8/28/15**

**Durrani Clients**

Wh[ite] = NEED TO DO  
Orange = DISMISSED  
Gray = Completed/Sent

| # | Last | First | Provider | Due Date | Date | Notes |
|---|------|-------|----------|----------|------|-------|
| 476 | Mayer | Kimberly | Durrani/CAST | Due 7/25 | 04/29/15 | ON CD |
| 477 | Mayer | Kimberly | WCH | Due 11/24 | 04/29/15 | ON CD |
| 478 | Mayfield | Derek | Durrani/CAST | | 08/26/13 | |
| 479 | Mayfield | Derek | UC | | 08/29/13 | |
| 480 | Mayfield | Derek | WCH | | 08/26/13 | |
| 481 | McCain | James | Durrani | Due 4/9 | 05/14/14 | |
| 482 | McCall | Jenna | UC/WCH | Due 3/14 | 03/17/14 | |
| 483 | McCann | Heather | Durrani/CAST | Due 2/27 | 08/05/15 | ON CD |
| 484 | McCann | Heather | UC/WCH | Ext. 6/1 | 08/05/15 | ON CD |
| 485 | McCauley | Hiram | Durrani/CAST | Due 7/23 | | |
| 486 | McClendon | Kyra | CCHMC RFA | Due 4/28 | 04/10/14 | |
| 487 | McClendon | Kyra | Durrani/CAST | Due 4/28 | 04/10/14 | |
| 488 | McClure | Jeffrey | Durrani/CAST | Due 7/11 | | |
| 489 | McDonald | Marcella | Durrani/CAST | Due 8/19 | | |
| 490 | McDonald | Kevin | Durrani | Due 8/26 | | |
| 491 | McKinney | Candi | Durrani/CAST | Due 7/8 | 08/20/14 | Dismissed 41a - McKinney |
| 492 | McKinney | Candi | UC Health | Due 7/16 | 08/20/14 | Dismissed 41a - McKinney |
| 493 | McKinney | Candi | WCH | Due 7/16 | 08/20/14 | Dismissed 41a - McKinney |
| 494 | McKnight | Tyler | Durrani Only | Due 9-1-15 | | |
| 495 | McMillen | Teresa | Durrani/CAST | Due 3/27 | 04/07/14 | |
| 496 | McMillen | Teresa | UC/WCH | Due 3/14 | 04/07/14 | |
| 497 | McMurren | Mark | Durrani/CAST | | 10/04/13 | |
| 498 | McMurren | Mark | UC | | 10/04/13 | |
| 499 | McMurren | Mark | WCH | | 10/04/13 | |
| 500 | McNeal | Kerry | Deaconess | Due 7/14 | 08/25/14 | DISMISSED 41a - Kerry McNeal |
| 501 | McNeal | Kameron | Durrani/CAST | Due 7/10 | 07/25/14 | DISMISSED 41a - Kameron McNeal |
| 502 | McNeal | Kerry | Durrani/CAST | Due 7/24 | 08/25/14 | DISMISSED 41a - Kerry McNeal |
| 503 | McNeal | Kameron | TriHealth/Good Sam | Due 7/10 | 07/25/14 | DISMISSED 41a - Kameron McNeal |
| 504 | McNeal | Kerry | UC Health | Due 7/16 | 08/25/14 | DISMISSED 41a - Kerry McNeal |
| 505 | McNeal | Kerry | WCH | Due 7/16 | 08/25/14 | DISMISSED 41a - Kerry McNeal |
| 506 | McNeal | Kameron | TriHealth/Good Sam | Due 9/3/15 | | |
| 507 | McNeal | Kameraon | Durrani Only | Due 9-1-15 | | |
| 508 | Meadows | Tiffany | Durrani/CAST | Due 7/8 | 10/09/14 | BAD NARRATIVE SENT! - Meadows |
| 509 | Meadows | Tiffany | WCH/UC | Due 9/26 | 10/09/14 | BAD NARRATIVE SENT! - Meadows |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log**
**As of 8/28/15**

**Durrani Clients**

Gray = Completed/Sent   Wh... ...g NEED TO DO
Orange = DISMISSED

| # | Last | First | Provider | Due | Date | Notes |
|---|---|---|---|---|---|---|
| 510 | Merland | Dawn | Durrani/CAST | Due 8-12-15 | | |
| 511 | Messerschmidt | Tiffany | CCHMC RFA | Due 4/2 | 03/25/14 | |
| 512 | Metcalf | Randall | Durrani/CAST | | 07/29/13 | |
| 513 | Metcalf | Randall | UC | | 08/15/13 | |
| 514 | Metcalf | Randall | WCH | | 08/15/13 | |
| 515 | Middendorf | Lyndsey | UC Health | Due 9/12 | | |
| 516 | Middendorf | Lyndsey | WCH | Due 9/12 | | |
| 517 | Miller | Karen | Durrani | Due 4/23 | 05/14/14 | |
| 518 | Miller | Karen | Durrani/CAST | Due 4/24 | 05/09/14 | |
| 519 | Miller | Ryan | Durrani/CAST | Due 7/24 | 07/22/15 | |
| 520 | Miller | Ryan | WCH/UC | Due 9/26 | 07/22/15 | |
| 521 | Mink | Samantha | CCHMC RFA | Due 7/24 | 09/08/14 | |
| 522 | Mink | Samantha | Durrani/CAST | Due 8/26 | 09/08/14 | |
| 523 | Moffitt | Vera | Durrani/CAST | DUE 3/7 | 03/06/14 | NO WCH |
| 524 | Moore | Stephanie | CCHMC RFA | Due 7/9 | 07/25/14 | |
| 525 | Moore | Debbie | Durrani/CAST | | 10/02/13 | |
| 526 | Moore | Donald | Durrani/CAST | Due 8/19 | 10/09/14 | Kelly Gose |
| 527 | Moore | Stephanie | Durrani/CAST | Due 7/9 | 07/25/14 | |
| 528 | Moore | Debbie | UC | | 10/02/13 | |
| 529 | Moore | Debbie | WCH | | 10/02/13 | |
| 530 | Moore | Robert | Durrani/CAST | Due 7/25 | | |
| 531 | Mueller | Sarah | Children's | 7/29/13 | Sent | |
| 532 | Myers | Jennifer | Durrani/CAST | Due 8/11 | | |
| 533 | Nafe | Joetta | Durrani/CAST | | 07/26/13 | |
| 534 | Nafe | Joetta | UC | | 07/25/13 | |
| 535 | Nafe | Joetta | WCH | | 07/29/13 | |
| 536 | Neal | Tonya | CCHMC RFA | Due 4/28 | 04/29/14 | |
| 537 | Neal | Tonya | Durrani/CAST | Due 3/20 | 04/29/14 | |
| 538 | Nelson | Charles | Durrani | Due 9/3 | | |
| 539 | Newman | Majorie | Durrani/CAST | | 08/22/13 | |
| 540 | Newman | Majorie | UC | | 08/22/13 | |
| 541 | Newman | Majorie | WCH | | 08/22/13 | |
| 542 | Nichols | Teresa | Durrani/CAST | | 08/14/13 | |
| 543 | Nichols | Teresa | UC | | 08/20/13 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log**
**As of 8/28/15**

Gray = Completed/Sent  White = NEED TO DO
Orange = DISMISSED

| # | Last | First | Entity | Due | Date | Notes |
|---|---|---|---|---|---|---|
| 544 | Nichols | Teresa | WCH | | 08/20/13 | |
| 545 | Nisbett | Rahman | Durrani | 9/9/2015 | | |
| 546 | Noble | Michelle Ann | Durrani/CAST | Due 6/30 | 07/09/14 | |
| 547 | Nyemba | Ruvimbo | Durrani/CAST | Due 8/26 | | |
| 548 | Nyemba | Ruvimbo | UC Health | Due 9/12 | | |
| 549 | Nyemba | Ruvimbo | WCH | Due 9/12 | | |
| 550 | Oberlander | Wendy | Durrani/CAST | Due 6/27 | 07/25/14 | Sent again 4-29-15 |
| 551 | Oberlander | Wendy | WCH/UC | Due 9/26 | 04/29/14 | |
| 552 | Osborne | Timothy | Durrani/CAST | Due 5/22 | 08/20/14 | |
| 553 | Owens | Dannie Mae | Durrani/CAST | Due 3/27 | 06/06/14 | |
| 554 | Owens | Dannie Mae | UC | | 06/06/14 | |
| 555 | Owens | Dannie Mae | WCH | | 06/06/14 | |
| 556 | Payne | Haley | Durrani/CAST | Due 10/15 | | |
| 557 | Payne | Hailey | UC | Due 10/6 | | |
| 558 | Payne | Hailey | WCH | Due 10/6 | | |
| 559 | Peddicord | Jeff | Durrani/CAST | Due 3/25 | 04/17/14 | |
| 560 | Peddicord | Jeff | UC/WCH | | | |
| 561 | Pelfrey | Hobert | Durrani/CAST | Due 4/24 | 07/09/14 | ON CD - Resent with UC/WCH |
| 562 | Pelfrey | Hobert | SUPPLEMENTED ALL WCH | Due 4/24 | 04/20/15 | ON CD |
| 563 | Pelfrey | Hobert | WCH | Due 4/16 | 07/09/14 | ON CD - Resent with UC/WCH |
| 564 | Pennington | Angela | CCHMC RFA | Due 4/7 | 03/25/14 | DISMISSED 41a |
| 565 | Pennington | Angela | Durrani | Due 4/7 | 04/29/14 | DISMISSED 41a |
| 566 | Pfetsch | Kenneth | Durrani/CAST | | 04/20/15 | ON CD |
| 567 | Pfetsch | Kenneth | WCH | Due 11/14 | 04/20/15 | ON CD |
| 568 | Phillips | Clarence | Durrani/CAST | Due 3/20 | 04/03/14 | |
| 569 | Phillips | Clarence | UC/WCH | | 02/28/14 | |
| 570 | Pickett | Heather | Durrani/CAST | Due 5/8 | 06/24/14 | |
| 571 | Pierce | Crystal | SUPPLEMENT | | 09/04/13 | |
| 572 | Potts | Jeff | SUPPLEMENT | | 10/16/13 | |
| 573 | Potts | Jeff | SUPPLEMENT | | 10/16/13 | |
| 574 | Powell | Antoine | CCHMC RFA | Due 4/8 | 04/17/14 | |
| 575 | Powell | Antoine | Durrani | Due 4/7 | 04/17/14 | |
| 576 | Prater | Katie | UC/WCH | | 02/19/14 | |
| 577 | Prater | Katie | WCH | | 02/19/14 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log  Durrani Clients**
**As of 8/28/15**

Gray = Completed/Sent  Wh... = NEED TO DO
Ora... = DISMISSED

| # | | | | | | | EXT 4-17-15 |
|---|---|---|---|---|---|---|---|
| 578 | Pridmore | Lawrence | Durrani/CAST | Due 2-16-15 | | | |
| 579 | Pritchard | Sharon | UC/WCH | | 07/22/15 | READY | |
| 580 | Puckett | Sherri | Durrani/CAST | Due 3/14 | 11/03/14 | | |
| 581 | Puckett | Sherri | WCH/UC | Due 7/14 | 11/03/14 | | |
| 582 | Pummell | Carol | Durrani/CAST | Due 9/26 | 06/06/14 | Dismissed 41a - Pummell | |
| 583 | Pummell | Carol | UC Health | Due 5/19 | 08/20/14 | Dismissed 41a - Pummell | |
| 584 | Pummell | Carol | WCH | Due 7/16 | 08/20/14 | Dismissed 41a - Pummell | |
| 585 | Pumpelly | James | Durrani/CAST | Due 7/8 | | | |
| 586 | Quinn | Marcia | Durrani/CAST | Due 9/26 | 06/23/15 | READY 6-23-15 CD | |
| 587 | Quinn | Marcia | WCH/UC | Due 9/26 | 06/23/15 | READY 6-23-15 CD | |
| 588 | Radeke | Sandra | Durrani/CAST | | 08/07/13 | | |
| 589 | Radeke | Sandra | UC | | 08/07/13 | | |
| 590 | Radeke | Sandra | WCH | | 08/07/13 | | |
| 591 | Radenheimer | Margaret | Durrani/CAST | | 05/27/14 | | |
| 592 | Radenheimer | Margaret | WCH | | 05/27/14 | | |
| 593 | Ravenscraft | Mary | Durrani/CAST | Due 3/19 | 04/07/14 | | |
| 594 | Ray | Todd | Durrani/CAST | | 10/02/13 | | |
| 595 | Ray | Todd | UC | | 10/02/13 | | |
| 596 | Ray | Todd | WCH | | 10/02/13 | | |
| 597 | Redrow | Samantha | CCHMC RFA | Due5/2 | 05/09/14 | | |
| 598 | Reed | Danielle | Durrani/CAST | Due 4/9 | 06/25/14 | | |
| 599 | Reed | Danielle | UC/WCH | Due 6/5 | 06/25/14 | | |
| 600 | Reeder | Juanita/Jane | Durrani/CAST | Due 5/22 | 05/27/14 | | |
| 601 | Reeder | Juanita/Jane | WCH | Due 6/3 | 05/27/14 | | |
| 602 | Reeves | Valarie | Durrani/CAST | Due 9/9 | 06/23/15 | READY | |
| 603 | Reeves | Valarie | UC/WCH | Due 11/14 | 06/23/15 | READY | |
| 604 | Reifenberger | Holly Jo | Durrani/CAST | Due 6/27 | 07/25/14 | | |
| 605 | Remley | Jeffrey | Durrani/CAST/SHANTI | Due 7/15 | 12/04/14 | mailed | |
| 606 | Remley | Jeffrey | WCH/UC | Due 9/26 | 12/04/14 | mailed | |
| 607 | Reynolds | Kent | Durrani/CAST | | 08/13/13 | | |
| 608 | Reynolds | Lisa | Durrani/CAST | | 08/14/13 | | |
| 609 | Reynolds | Kent | UC | | 08/13/13 | | |
| 610 | Reynolds | Lisa | UC/WCH | Due 3/14 | 03/06/14 | | |
| 611 | Reynolds | Kent | WCH | | 08/13/13 | | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log : Durrani Clients**
**As of 8/28/15**

Gray = Completed/Sent   Whi' ⟩ NEED TO DO
Orange = DISMISSED

| # | Last | First | Provider | Due | Date | Notes |
|---|---|---|---|---|---|---|
| 612 | Reynolds | Derrill | Durrani/CAST | Due 8/25 | | |
| 613 | Reynolds | Derrill | UC | Due 9/24 | | |
| 614 | Reynolds | Derrill | WCH | Due 9/24 | | |
| 615 | Ribariu | Jordan | Durrani/CAST | Due 9/30 | | |
| 616 | Richardson | John | Durrani/CAST | | 09/23/13 | |
| 617 | Richardson | John | UC | | 09/13/13 | |
| 618 | Richardson | John | WCH | | 08/29/13 | |
| 619 | Riley | Jason | Durrani/CAST | Due 3/20 | 04/03/14 | |
| 620 | Riley | Jason | UC/WCH | | 02/20/14 | |
| 621 | Roark | Deborah | Durrani/CAST | Due 7/23 | 10/10/14 | |
| 622 | Roark | Deborah | Riverview Health | Due 7/25 | 10/10/14 | need exhibit & witness list Riverview |
| 623 | Roark | Deborah | Riverview RFA | Due 7/25 | 09/09/14 | need exhibit & witness list Riverview |
| 624 | Roark | Deborah | **Riverview RFA** | 1/26/2015 | 01/12/15 | |
| 625 | Robbinson-Woods | Theresa | Durrani/CAST | Due 4/24 | 05/09/14 | |
| 626 | Robbinson-Woods | Teresa | WCH/UC | Due 9/26 | | |
| 627 | Robinson | Kelly | Durrani/CAST | Due 7/22 | 10/09/14 | |
| 628 | Robinson | Kelly | WCH/UC | Due 9/26 | 10/09/14 | |
| 629 | Rodriguez | Debbie | Durrani/CAST | Due 5/26 | 08/27/14 | |
| 630 | Romer | Jason | Durrani/CAST | | 07/30/13 | |
| 631 | Romer | Jason | UC | | 08/08/13 | |
| 632 | Romer | Jason | WCH | | 08/12/13 | |
| 633 | Romito | Laura | Children's | | 07/29/13 | DISMISSED 41a |
| 634 | Romito | Laura | Durrani/CAST | | 07/26/13 | DISMISSED 41a |
| 635 | Rose | Dorothy | Durrani/CAST | | 09/11/13 | |
| 636 | Rose | Dorothy | UC | | 09/26/13 | |
| 637 | Rose | Dorothy | WCH | | 09/04/13 | |
| 638 | Rosebery | Fay | Durrani/CAST | Due 9/11 | 07/22/15 | DONE BUT NEED RELEASES! MAILED 6-16- |
| 639 | Rosebery | Fay | UC/WCH | Due 11/14 | 07/22/15 | DONE BUT NEED RELEASES! MAILED 6-16- |
| 640 | Ross | Carol | Durrani/CAST | Due 3/20 | 04/03/14 | |
| 641 | Ross | Carol | UC/WCH | | 02/20/14 | |
| 642 | Roundtree | Sandra | Durrani/CAST | Due 9/11 | | DISMISSED 41a - S. Roundtree |
| 643 | Rowely | Ronald | Durrani/CAST | Due 3/19 | 04/10/14 | |
| 644 | Rueve | Kathryn | Durrani/CAST | Due 3/20 | 04/01/14 | |
| 645 | Rueve | Kathryn | UC/WCH | Due 3/14 | 03/17/14 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

Discovery Log  Durrani Clients
As of 8/28/15

Gray = Completed/Sent   White = NEED TO DO
Orange = DISMISSED

| # | Last | First | | Type | Due | Date | Notes |
|---|---|---|---|---|---|---|---|
| 646 | Runtz | Robert | | Durrani/CAST | Due 3/20 | 04/01/14 | |
| 647 | Runtz | Robert | | UC/WCH | | 02/06/14 | |
| 648 | | C.R. | | Durrani | Due 8/29 | 11/03/14 | |
| 649 | Sand | Mike | | Durrani/CAST | | 07/23/13 | |
| 650 | Sand | Mike | | UC | | 07/23/13 | |
| 651 | Sand | Mike | | WCH | | 07/23/13 | |
| 652 | Sander | Michael | | Durrani/CAST | Due 7/2 | 07/25/14 | |
| 653 | Scheper | Chris | | Durrani/CAST | Due 7/29 | 09/08/14 | |
| 654 | Schiller | Robin | | Durrani/CAST | Due 7/23 | 10/09/14 | |
| 655 | Schimmel | Jospeh | | Durrani/CAST | | 08/13/13 | |
| 656 | Schimmel | Jospeh | | UC | | 08/13/13 | |
| 657 | Schimmel | Jospeh | | WCH | | 08/13/13 | |
| 658 | Schmit | Patrick | | Durrani | Due 4/9 | 06/06/14 | DISMISSED 41a - P. Schmit |
| 659 | Schmit | Kevin | | Durrani/CAST | Due 4/9 | 07/25/14 | |
| 660 | Schoborg | Brandon | | Durrani | Due 5/28 | 07/09/14 | |
| 661 | Schoeck | Susan | | UC | Due 9/24 | | DISMISSED 41a - Shock |
| 662 | Schoeck | Susan | | WCH | Due 9/24 | | DISMISSED 41a - Sheck |
| 663 | Schott | Patricia | | Durrani/CAST | Due 8-12-15 | | Refiled 2015 - already answered |
| 664 | Schultz | Steven | | Durrani/CAST | | 08/16/13 | |
| 665 | Schultz | Steven | | UC | | 08/16/13 | |
| 666 | Schultz | Steven | | WCH | | 08/16/13 | |
| 667 | Schulze | Timothy | | Durrani/CAST | | 08/09/13 | |
| 668 | Schulze | Timothy | | UC | | 08/16/13 | |
| 669 | Schulze | Timothy | | WCH | | 08/16/13 | |
| 670 | Schuster | Ronald | | Durrani/CAST | | 09/10/13 | |
| 671 | Schuster | Ronald | | SUPPLEMENT | | 01/22/14 | |
| 672 | Schuster | Ronald | | UC Health | | 09/11/13 | |
| 673 | Schuster | Ronald | | WCH | | 09/11/13 | |
| 674 | Schuster | Ronald | | WCH & UC Health 2nd Set | | 01/22/14 | |
| 675 | Scott | Rhonda | | Durrani/CAST | Due 3/20 | 02/27/14 | |
| 676 | Scott | Delores Jean | | Durrani/CAST | Due 6/26 | 07/25/14 | |
| 677 | Scott | Dave | | Durrani/CAST | Due 3/14 | 08/29/13 | |
| 678 | Scott | Dave | | UC | | 08/29/13 | |
| 679 | Scott | Rhonda | | UC/WCH | | 02/27/14 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log** | Durrani Clients
**As of 8/28/15**

Gray = Completed/Sent
NEED TO DO W' ⌐
Orange = DISMISSED

| # | Last | First | Type | Due | Date | Status |
|---|------|-------|------|-----|------|--------|
| 680 | Scott | Dave | WCH | | 08/29/13 | |
| 681 | Scott | Delores Jean | WCH/UC | Due 9/26 | 04/20/15 | ON CD |
| 682 | Scully | Alexandra | Children's | | 07/26/13 | DISMISSED 41a - A. Scully |
| 683 | Sears | Ruthie | Durrani | Due 10/3/14 | | |
| 684 | Setters | Dana | Durrani/CAST | Due 3/27 | 03/06/14 | |
| 685 | Setters | Dana | JourneyLite | | 09/26/13 | |
| 686 | Setters | Dana | UC/WCH | Due 3/14 | 03/06/14 | |
| 687 | Shafer | Glenna | Durrani/CAST | Due 5/22 | 07/25/14 | |
| 688 | Shannon | Asia | Durrani | Due 10/3/14 | | |
| 689 | Shell | Brenda | SUPPLEMENT | | 01/17/14 | |
| 690 | Shell | Brenda | SUPPLEMENT | | 10/16/13 | |
| 691 | Shell | Brenda | SUPPLEMENT | | 10/16/13 | |
| 692 | Shempert | David | Durrani/CAST | Due 7/29 | 04/29/15 | ON CD |
| 693 | Shempert | David | UC/WCH | Due 12/1 | 04/29/15 | ON CD |
| 694 | Shepard | Charlann | Durrani/CAST | Due 6/12 | | |
| 695 | Slayback | Heather | CCHMC RFA | Due 4/28 | 04/03/14 | |
| 696 | Slayback | Heather | Durrani | Due 3/22 | 04/03/14 | |
| 697 | Slone | Crystal | Durrani/CAST | Due 6/27 | | DRAFTED |
| 698 | Slone | Crystal | TriHealth/Good Sam | Due 7/9 | | DRAFTED |
| 699 | Smallwood | Donna | Children's | | 08/08/13 | |
| 700 | Smallwood | Donna | Durrani/CAST | | 08/07/13 | |
| 701 | Smith | David | Durrani/CAST | | 09/24/13 | |
| 702 | Smith | David | UC/WCH | Due 3/14 | 03/04/14 | |
| 703 | Smith | Donald | Durrani/CAST | Due 8/26 | | |
| 704 | Smith | Donald | TriHealth/Good Sam | Due 9/15 | | |
| 705 | Smoote | Ordis | Durrani/CAST | Due 9/9 | | DISMISSED 41a - Smoote |
| 706 | Snider | David | Durrani/CAST | | 07/31/13 | DISMISSED 41a - D. Snider |
| 707 | Snider | David | UC | | 08/06/13 | DISMISSED 41a - D. Snider |
| 708 | Snider | David | WCH | | 08/06/13 | DISMISSED 41a - D. Snider |
| 709 | Spangenberg | Sherri | Durrani/CAST | Due 7/23 | | DISMISSED 41a - S. Spangenberg |
| 710 | Spangenberg | Sherri | UC Health | Due 7/16 | | DISMISSED 41a - S. Spangenberg |
| 711 | Spangenberg | Sherrie | WCH | Due 7/16 | | DISMISSED 41a - S. Spangenberg |
| 712 | Spivy | Billy | Durrani/CAST | | 06/06/14 | |
| 713 | Spivy | Billy | UC | | | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log  ...l Durrani Clients**
**As of 8/28/15**

Gray = Completed/Sent   W = NEED TO DO
Orange = DISMISSED

| # | Last | First | Provider | Due | Date | Notes |
|---|---|---|---|---|---|---|
| 714 | Spivy | Billy | | | | |
| 715 | Stallings | Eddie | WCH | Durrani/CAST Due 3/19 | 04/17/14 | |
| 716 | Stallings | Eddie | UC/WCH | Due 3/25 | 04/17/14 | |
| 717 | Stanfield | Richard | Durrani/CAST | Due 7/24 | 10/09/14 | |
| 718 | Stephens | Michelle | Durrani/CAST | Due 8/18 | 06/23/15 | READY |
| 719 | Stephens | Michelle | UC/WCH | Due 12/1 | 06/23/15 | |
| 720 | Stephenson | Patrick | Durrani/CAST | Due 6/13 | 06/30/14 | |
| 721 | Stigall | Deon | Children's | | 08/07/13 | DISMISSED 41a - Stigall - REFILED 2015 |
| 722 | Stigall | Deon | Durrani | Due 5/14/15 | | EXT 7/15 - For 2015 Case |
| 723 | Tackett | Ryan | CCHMC RFA | Due 5/2 | 05/05/14 | DISMISSED 41a - Tackett |
| 724 | Tackett | Ryan | Durrani | Due 5/29 | 05/05/14 | DISMISSED 41a - Tackett |
| 725 | Taylor | Karen | UC/WCH | Due 3/14 | 04/22/14 | |
| 726 | Thaeler | Benjamin | CCHMC RFA | Due 4/8 | 04/17/14 | |
| 727 | Theissen | Edward | Durrani/CAST | DUE 3/7 | 03/04/14 | |
| 728 | Theissen | Edward | WCH/UC | DUE 3/7 | 03/04/14 | |
| 729 | Thien | Brian | Durrani/CAST | Due 4/9 | 05/27/14 | |
| 730 | Thien | Brian | UC | | 05/27/14 | |
| 731 | Thien | Brian | WCH | | 05/27/14 | |
| 732 | Thomas | Adrienne | CCHMC RFA | Due 7/9 | | Dismissed 41a - A Thomas |
| 733 | Thomas | Adrienne | Durrani/CAST | Due 6/27 | | Dismissed 41a - A Thomas |
| 734 | Thomas | Adrienne | UC Health | Due 7/16 | | Dismissed 41a - A Thomas |
| 735 | Thomas | Adrienne | WCH | Due 7/16 | | Dismissed 41a - A Thomas |
| 736 | Underwood | Kimberly | Durrani/CAST | DUE 3/13 | 02/27/14 | |
| 737 | Underwood | Kimberly | UC/WCH | | 02/27/14 | |
| 738 | Underwood | Connie | Durrani/CAST | Due 7/29 | | DISMISSED 41a - C. Underwood |
| 739 | Underwood | Connie | UC | Due 9/24 | | DISMISSED 41a - C. Underwood |
| 740 | Underwood | Connie | WCH | Due 9/24 | | DISMISSED 41a - C. Underwood |
| 741 | Upchurch | Jacklen | Durrani/CAST | Due 8/30 | | DISMISSED 41a - Upchurch |
| 742 | Vance | Jordan | CCHMC RFA | Due 2/12/15 | | Dismissed - Rule 41a - Vance |
| 743 | Vance | Jordan | Durrani/CAST | Due 8/7 | | EXT 10-6-14 |
| 744 | Wallace | Shannon | Durrani | Due 4/7 | 06/24/14 | |
| 745 | Wallace | Vickie | Durrani | Due 4/30 | 07/09/14 | D/CAST Partial - V. Wallace - Still TriHealth |
| 746 | Wallace | Shannon | CCHMC RFA | Due 4/8 | 06/24/14 | |
| 747 | Walls | Katherine | Durrani/CAST | Due 3/27 | 04/17/14 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log   'l Durrani Clients**
**As of 8/28/15**

Gray = Completed/Sent   W' = NEED TO DO
Orange = DISMISSED

| # | Last | First | Facility/Type | Due | Date | Status |
|---|------|-------|---------------|-----|------|--------|
| 748 | Walsh | Lindsey | CCHMC RFA | Due 8/29 | 12/01/14 | Mailed |
| 749 | Walsh | Lindsey | Durrani | Due 10/6 | 12/01/14 | Mailed |
| 750 | Walsh | Tracy/Gerald | Durrani/CAST | Due 3/27 | 05/15/14 | DISMISSED 41a - T. Walsh |
| 751 | Walters | Michelle | Durrani/CAST | Due 6/20 | | |
| 752 | Ward | Helen | Durrani/CAST | Due 7/3 | 09/17/14 | |
| 753 | Ward | Linda | Durrani/CAST | Due 3/20 | 03/26/14 | |
| 754 | Ward | Helen | Good Sam | Due 7/3 | 09/17/14 | |
| 755 | Ward | Linda | UC/WCH | Due 3/14 | 03/25/14 | |
| 756 | Watkins | Michael | Durrani/CAST | Due 8/26 | 04/29/15 | ON CD |
| 757 | Watkins | Michael | UC/WCH | Due 9/10 | 04/29/15 | ON CD |
| 758 | Waxler | Elaine | Durrani/CAST | Due 5/19 | 03/06/15 | |
| 759 | Waxler | Elaine | UC Health | Due 7/16 | 03/06/15 | EXT 9-12 |
| 760 | Waxler | Elaine | WCH | Due 7/16 | 03/06/15 | EXT 9-12 |
| 761 | Webber | Daniel | Riverview RFA | 1/26/2015 | 01/12/15 | 2014 Case |
| 762 | Weber | Cathleen | CCHMC RFA | Due 4/2 | 03/25/14 | DISMISSED 41 a - C. Weber |
| 763 | Weber | Cathleen | Durrani | Due 3/22 | 03/25/14 | DISMISSED 41 a - C. Weber |
| 764 | Webster | Brandon | Children's | | 07/11/13 | |
| 765 | Webster | Brandon | Durrani | | 07/26/13 | |
| 766 | Weisman | Kristin | CCHMC RFA | Due 4/28 | 05/14/14 | |
| 767 | Wesley | Regina | Durrani/CAST | | 07/22/15 | READY - On Kelly's Desk |
| 768 | Wesley | Regina | WCH/UC | Due 11/28 | 07/22/15 | READY - On Kelly's Desk |
| 769 | Whalen | Violet | Durrani/CAST | Due 3/14 | 05/27/14 | |
| 770 | Whalen | Timothy | Durrani/CAST | Due 8/11 | 04/20/15 | ON CD |
| 771 | Whalen | Timothy | WCH/UC | Due 11/27 | 04/20/15 | ON CD |
| 772 | Wheeler | Lonnie | Durrani/CAST | Due 3/27 | 04/01/14 | |
| 773 | Wheeler | Lonnie | UC/WCH | | 02/13/14 | |
| 774 | White | Sophia | WCH/UC | Due 9/26 | | |
| 775 | White | Sophia | Durrani/CAST | Due 8/11 | | |
| 776 | Wilder | Tamathy | Durrani/CAST | Due 3/25 | 06/24/14 | |
| 777 | Wilder | Troy | Durrani/CAST | | 09/13/13 | |
| 778 | Wilder | Tamathy | UC | Due 3/25 | 06/25/14 | |
| 779 | Wilder | Troy | UC | | 09/13/13 | |
| 780 | Wilder | Tamathy | WCH | Due 3/25 | 06/25/14 | |
| 781 | Wilder | Troy | WCH | | 09/13/13 | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log**   **Durrani Clients**
As of 8/28/15

Gray = Completed/Sent   W| = NEED TO DO   Orange = DISMISSED

| # | Last | First | Category | Due | Date | Notes |
|---|------|-------|----------|-----|------|-------|
| 782 | Willoughby | Patrick | Durrani/CAST | Due 4/25 | 05/14/14 | |
| 783 | Willoughby | Patrick | UC | Due 5/7 | 05/14/14 | |
| 784 | Willoughby | Patrick | WCH | Due 5/7 | 05/14/14 | |
| 785 | Wilson | Carol | Durrani/CAST | | 06/19/13 | |
| 786 | Wilson | Jetton | Durrani/CAST | Due 6/13 | 12/10/14 | Mailed |
| 787 | Wilson | Paul | Durrani/CAST | Due 4/24 | 05/14/14 | |
| 788 | Wilson | Paula | Durrani/CAST | Due 6/13 | 07/25/14 | |
| 789 | Wilson | Robert | Durrani/CAST | | 09/11/13 | |
| 790 | Wilson | Terry | Durrani/CAST | Due 6/26 | 08/20/14 | |
| 791 | Wilson | Vicky | Durrani/CAST | | 08/29/13 | |
| 792 | Wilson | Carol | UC | | 09/24/13 | |
| 793 | Wilson | Robert | UC | | 09/11/13 | |
| 794 | Wilson | Vicky | UC | | 08/29/13 | |
| 795 | Wilson | Carol | WCH | | 09/24/13 | |
| 796 | Wilson | Paul | WCH | Due 4/30 | 05/27/14 | |
| 797 | Wilson | Robert | WCH | | 09/11/13 | |
| 798 | Wilson | Vicky | WCH | | 08/29/13 | |
| 799 | Wingert | Dawn | Durrani/CAST | Due 3/14 | 03/28/14 | ON CD - Resent with UC/WCH |
| 800 | Wingert | Dawn | SUPPLEMENT | Due 4/7 | 04/20/15 | ON CD - Resent with UC/WCH |
| 801 | Wingert | Dawn | WCH | Due 4/7 | 03/28/14 | ON CD - Resent with UC/WCH |
| 802 | Wittmeyer | Pricilla | UC/WCH | Due 3/14 | 03/17/14 | |
| 803 | Wolder | William | Durrani/CAST | Due 7/22 | 09/08/14 | |
| 804 | Wolder | William | UC Health | Due 7/16 | 09/08/14 | |
| 805 | Wolder | William | WCH | Due 7/16 | 09/08/14 | |
| 806 | Wolsing | Billy | | | 07/30/13 | |
| 807 | Wolsing | Billy | Durrani/CAST | | 07/30/13 | |
| 808 | Wolsing | Billy | UC | | 07/30/13 | |
| 809 | Wooten | Carla | Durrani/CAST | Due 11-17 | | |
| 810 | Work | Amber | UC/WCH | | 03/07/14 | |
| 811 | Wright | Julie/Cory | Children's | | 07/25/13 | |
| 812 | Wright | Julie/Cory | Durrani/CAST | | 08/01/13 | |
| 813 | Wright | Leah Rae | UC/WCH | | 02/12/14 | |
| 814 | Wright | Cory | CCHMC | Due 7/22 | | |
| 815 | Wright | Cory | Durrani | Due 8/18 | | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

**Discovery Log   |Durrani Clients**
**As of 8/28/15**

Gray = Completed/Sent   WI ) NEED TO DO
Orange = DISMISSED

| # | Last | First | Provider | Due | Date | Notes |
|---|------|-------|----------|-----|------|-------|
| 816 | Wright | Leah | Durrani/CAST | Due 3/27 | 04/29/14 | |
| 817 | Wyatt | Emanuel | Durrani | Due 10/8 | | |
| 818 | Wyatt | Cheryl | Durrani/CAST | Due 9/15 | | DISMISSED 41 A - Wyatt |
| 819 | Yeakle | Veronica | Durrani/CAST | Due 3/18 | 04/03/14 | |
| 820 | Yeakle | Veronica | UC Health | Due 7/16 | 08/20/14 | |
| 821 | Yeakle | Veronica | WCH | Due 7/16 | 08/20/14 | |
| 822 | Young | Evelyn | Durrani/CAST | DUE 3/13 | 03/12/14 | Refiled 2015 - already answered |
| 823 | Young | Joann | Durrani/CAST | Due 8/19 | | |
| 824 | Young | Judy | Durrani/CAST | Due 9/5 | | DISMISSED 41a - Judy Young |
| 825 | Young | Judy | WCH | Due 9/24 | | DISMISSED 41a - Judy Young |
| 826 | Young | Judy | UC | Due 9/24 | | DISMISSED 41a Judy Young |
| 827 | Zachary | Corrine | Durrani/CAST | Due 5/7 | 05/15/14 | |
| 828 | Zachary | Corrine | UC | Due 5/7 | 05/27/14 | |
| 829 | Zachary | Corrine | WCH | Due 5/7 | 05/15/14 | |
| 830 | Zachary | Corine | CCHMC RFA | Due 4/28 | 05/15/14 | |
| 831 | Zureick | Mary | Durrani/CAST | Due 3/19 | 05/14/14 | |
| 832 | Zymslo | Hannah | Durrani/CAST | Due 9/15 | | |

*NOTE* 60 DAY EXTENSIONS FROM DUE DATE

# JUDY & CECIL
# YOUNG DECISION



D111837302

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

JUDGE ROBERT RUEHLMAN
Court of Common Pleas
Hamilton County, Ohio

JUDY & CECIL YOUNG

                :        Case No. A1406361

            Plaintiffs      :        (Judge Ruehlman)

  v.                 :

UC HEALTH, et al.      **ENTERED**     :        **ENTRY DENYING**
                **SEP 02 2015**       **CHRIST HOSPITAL'S**
                                        **MOTION TO DISMISS**

          Defendants      : 

---

In August of 2008, Ms. Young first consulted with Defendant, Dr. Durrani at Christ Hospital, for treatment for lower back and neck pain. Dr. Durrani recommended surgery to correct Ms. Young's pain and assured her that her pain would be completely relieved as a result. At Christ, on November 6, 2008, Dr. Durrani performed a cervical spinal fusion surgery and implanted hardware. Plaintiffs allege that in the course of the surgery, Dr. Durrani used a bone morphogenetic protein product known as Infuse/BMP-2 without informing Ms. Young or obtaining her legal consent.

Ms. Young continued to see Dr. Durrani for follow-up care at Christ, and alleges she was still suffering pain in her neck from the first surgery. In the course of this continued treatment, Dr. Durrani recommended that Ms. Young undergo further surgery on her lower back. On September 25, 2009, Dr. Durrani performed a lumbar spinal fusion surgery and installed hardware in Ms. Young at Defendant West Chester. It is alleged that Dr. Durrani used the Infuse/BMP-2 product again without Ms. Young's knowledge or consent.



EXHIBIT
A

1

Following the second surgery, Ms. Young continued to receive follow-up care from Dr. Durrani at the Blue Ash, Ohio offices of Defendant Center for Advanced Spine Technologies, Inc. known as CAST. She allegedly continued to have so much pain after the second surgery that she requested Dr. Durrani remove the hardware. He refused. As a result, Ms. Young allegedly continued to suffer from lower back pain and constant discomfort. Ms. Young alleges that both surgeries were medically unnecessary and improperly performed and as a direct and proximate result of the surgeries she suffered harm.

Ms. Young alleges she was unaware of Dr. Durrani's use of Infuse/BMP-2 until her counsel reviewed her medical records prior to the initial filing of this action. It was filed on June 11, 2014 in the Butler County Common Pleas. Plaintiffs voluntarily dismissed that action under Civ.R. 41(A) on September 2, 2014. It was re-filed on October 28, 2014 in Hamilton County.

Under indictment, Dr. Durrani fled the country and has refused to give a deposition in this case.

Christ seeks dismissal of all of Plaintiffs' claims asserting 1) the applicability of the statute of limitations contained in either R.C. § 2305.113, R.C. § 1345.10 or R.C. § 2305.09; 2) the applicability of the statute of repose contained in R.C. § 2305.113(C); 3) that Christ is not a "supplier" under the terms of OPLA; 4) that Plaintiffs have failed to sufficiently plead a valid claim for a violation of the CSPA; 5) that Plaintiffs' constitutional challenges are "non-justiciable" as they are allegedly outside the statute of limitations and would result in a "mere advisory opinion" and the statutes at issue have previously been held constitutional, thereby precluding any equitable estoppel argument; 6) that

Plaintiffs cannot demonstrate any prejudice from the alleged spoliation of evidence, and; 7) that Plaintiffs have improperly referenced other legal actions.

In considering a motion to dismiss pursuant to Civ.R. 12(B)(6), the Court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Conkin v. CHS-Ohio Valley, Inc.,* 1st Dist. Hamilton No. A-1104723, 2012-Ohio-2816 (citing *Mitchell v. Lawson Milk Co.,* 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988)). "A complaint may be dismissed under Civ.R. 12(B)(6) only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief." *Id.* (citing *O'Brien v. Univ. Community Tenants Union, Inc.,* 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus).

Under the notice pleading requirements of Civ.R. 8(A)(1), a plaintiff only needs to plead sufficient, operative facts to support recovery under his claims. *Doe v. Robinson,* 6th Dist. Lucas No. L-07-1051, 2007-Ohio-5746, ¶ 17.

> Civ.R. 8(A) sets forth requirements for a complaint and provides in pertinent part:
>
> "A pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled."

*Tortora v. Messenger,* 7th Dist. Mahoning No. 03-MA-214, 2004-Ohio-5930, ¶¶ 13-14. When determining whether a complaint states a claim, the court must liberally construe the pleadings. *Miller v. Med. Economics Consultants Co., Inc.,* 2nd Dist. Montgomery No. 19177, 2002-Ohio-4972, ¶ 10; Civ.R. 8(F). To survive a motion to dismiss for failing to state a claim upon which relief may be granted, the plaintiff is not required to allege in the complaint every fact it intends to prove; such facts

3

may not be available until after discovery. *State ex rel. Hanson v. Guernsey Cty. Bd. of Comm'rs.*, 65 Ohio St.3d 545, 549, 605 N.E.2d 378 (1992).

In reviewing the Complaint, the Court finds the facts alleged in Ms. Young's Complaint satisfy the pleading standards for all causes of action. The Complaint alleges that Dr. Durrani was a reckless and dishonest physician which finally led to Christ revoking his privileges to practice at their facility. The Complaint alleges Christ did not disclose to Ms. Young and other similarly situated Dr. Durrani Plaintiffs what Dr. Durrani was doing while privileged at Christ and allowed Dr. Durrani to have privileges without disclosing to Ms. Young that Christ was aware of his dangerous and negligent practices. These allegations, if true, would support an action for negligence, negligent credentialing and supervision, fraud, violations of the CSPA and OPLA, and loss of consortium against Christ. The Complaint is sufficient to withstand scrutiny under Civ.R. 12(B)(6).

Christ asserts that Plaintiffs' claims against it for negligence, negligent credentialing and retention, fraud, violations of the CSPA and OPLA, and loss of consortium are subject to the one-year statute of limitations for medical claims contained in R.C. § 2305.113. That statute provides the following:

(A) Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued.

It also sets forth a definition of "medical claims," which provides, in relevant part, the following:

(E) As used in this section:

(1) "Hospital" includes any person, corporation, association, board, or authority that is responsible for the operation of any

4

hospital licensed or registered in the state, including, but not limited to, those that are owned or operated by the state, political subdivisions, any person, any corporation, or any combination of the state, political subdivisions, persons, and corporations. "Hospital" also includes any person, corporation, association, board, entity, or authority that is responsible for the operation of any clinic that employs a full-time staff of physicians practicing in more than one recognized medical specialty and rendering advice, diagnosis, care, and treatment to individuals. "Hospital" does not include any hospital operated by the government of the United States or any of its branches.

(2)    "Physician" means a person who is licensed to practice medicine and surgery or osteopathic medicine and surgery by the state medical board or a person who otherwise is authorized to practice medicine and surgery or osteopathic medicine and surgery in this state.

(3) "Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:

(a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;

(b) Claims that arise out of the medical diagnosis, care, or treatment of any person and to which either of the following applies:

(i)    The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

(c) Claims that arise out of the medical diagnosis, care, or treatment of any person and that are brought under section 3721.17 of the Revised Code.

5

* * *

(7) "Derivative claims for relief" include, but are not limited to, claims of a parent, guardian, custodian, or spouse of an individual who was the subject of any medical diagnosis, care, or treatment, dental diagnosis, care, or treatment, dental operation, optometric diagnosis, care, or treatment, or chiropractic diagnosis, care, or treatment, that arise from that diagnosis, care, treatment, or operation, and that seek the recovery of damages for any of the following:

> (a) Loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, or any other intangible loss that was sustained by the parent, guardian, custodian, or spouse;

> (b) Expenditures of the parent, guardian, custodian, or spouse for medical, dental, optometric, or chiropractic care or treatment, for rehabilitation services, or for other care, treatment, services, products, or accommodations provided to the individual who was the subject of the medical diagnosis, care, or treatment, the dental diagnosis, care, or treatment, the dental operation, the optometric diagnosis, care, or treatment, or the chiropractic diagnosis, care, or treatment.

R.C. § 2305.113(E).

According to § 2305.113, where the plaintiff's claims against a hospital or doctor arose out of the "medical diagnosis, care, or treatment of any person," then the one-year statute of limitations would ordinarily apply. § 2305.113(E)(3). Christ maintains that each of Ms. Young's claims is, with the exception of the spoliation claim, a "medical claim" within the meaning of § 2305.113(E) and that none of their claims herein are separate, non-medical claims. As such, they assert that Ms. Young did not bring them

6

within the applicable one-year limitations period and that they must be dismissed, citing *In re estate of Natherson*, 102 Ohio App. 475, 134 N.E.2d 852 (8th Dist. 1956).[1]

In re estate of Natherson, the court held that "the action [did] not have its inception in fraud but rather [was] founded upon negligence or malpractice," and therefore, the petitioners' claim that the decedent fraudulently concealed his alleged negligence did not toll the statute of limitations until the fraud or concealment was discovered. Rather, the statute of limitations for fraud, which is provided for in R.C. § 2305.09, was not applicable because it only applied where "fraud [was] the ground or gist of the action." *In re Natherson* at 481. The issues presented by Ms. Young's action is not for lack of a better expression- simple medical malpractice. It involves fraud and complex questions of both State and Federal Constitutional law as they relate not only to the statute of repose provided in R.C. § 2305.113(C) but also to Ohio's peer review immunity statute, R.C. § 2305.251.

A court in considering a Civ.R. 12(B)(6) motion to dismiss based on statute of limitations grounds, should not dismiss the complaint unless the face of the complaint conclusively shows that the action is barred by the applicable statute of limitations. *Mitchell v. Speedy Car-X, Inc.*, 127 Ohio App.3d 229, 231, 712 N.E.2d 768 (9th Dist. 1998), and the defendant bears the burden of establishing the statute of limitations defense. *Leichliter v. Nat'l City Bank of Columbus*, 134 Ohio App.3d 26, 32, 729 N.E.2d 1285 (10th Dist. 1999).

When considering the statute of limitations in a medical malpractice action, the court must review numerous factors in order to determine the accrual date. *Zimmie v. Calfee, Halter, and Griswold*, 43 Ohio St.3d 54, 57, 538 N.E.2d 398 (1989) (legal

7

malpractice). The trial court must look to the facts of the particular case and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition. *Prysock v. Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin No. 01AP-1131, 2002-Ohio-2811, ¶ 12 (citing *Hershberger v. Akron City Hosp.* 34 Ohio St.3d 1, 516 N.E.2d 204 (1987), paragraph one of the syllabus). Where reasonable minds can differ as to the accrual date in a particular case, summary judgment in favor of the defendant on the basis that the statute of limitations has run is error. *Zimmie* at 57. It only stands to reason that if the applicability of the statute of limitations is based upon such a factual inquiry, then surely it should not be dismissed at the pleadings stage before discovery is complete.

Christ claims that Ms. Young's individual claims for negligence, negligent credentialing, supervision and retention, fraud, violations of the CSPA, and violations of the OPLA, are subject to the same statute of limitations the medical malpractice claims. However, fraud, claims pursuant to the CSPA and OPLA, and loss of consortium are actually individual, non-medical claims with separate statutes of limitation.

Ms. Young initially filed this action in the Butler County on June 11, 2014. This was well within the applicable statute of limitations for negligence and negligent credentialing, supervision and retention. There must be an "alerting event" to trigger the discovery rule, which in turn marks the point at which the statute of limitations begins to

8

run. *Browning v. Burt*, 66 Ohio St. 3d 544, 561, 613 N.E.2d 993 (1993). Despite Christ's arguments to the contrary, not all claims asserted against a hospital are medical claims subject to the limitations period set forth in R.C. § 2305.113. *Browning* at 556-57. "An action against a hospital for bodily injury arising out of the hospital's negligence in credentialing a physician is neither 'malpractice' nor a 'medical claim' to which the limitations period found in R.C. 2305.11 applies." *Id.* at 557 (discussing the former version of R.C. § 2305.113). In fact, the "triggering event" which initiates the statute of limitations for a medical malpractice claim against a doctor does not necessarily begin the running of the statute of limitations on claims against a hospital for hospital negligence. *Id.* at 560. Medical malpractice claims against the doctor and negligent credentialing claims against a hospital are different causes of action. *Schelling v. Humphrey*, 123 Ohio St.3d. 287, 2009-Ohio-4175, 916 N.E.2d 1029, ¶ 19.

The Complaint sets forth separate claims for Dr. Durrani's medical malpractice and Christ's negligence in credentialing and retaining him. Ms. Young brought her action well within the one-year discovery rule and the two-year statute of limitations provided in R.C. § 2305.10. Ms. Young was not on notice during the time frame Christ suggests because Ms. Young was still treating with Dr. Durrani. The Complaint alleges independent negligence on the part of Christ, including their negligence in credentialing and retaining Dr. Durrani, and because there is no statute of limitations issue, the Court denies Christ's Motion on those grounds.

Fraud is a non-medical claim that has a four-year statute of limitations pursuant to R.C. § 2305.09 and can be brought independently of a medical malpractice claim. *Prysock v. Ohio State Univ. Med Ctr.* (10th App. Dist. Case No. 01AP-1131).

In *Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, the court ruled that fraud was not a separate medical claim. Relying heavily on *Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709 (1987), the court stated that "a physician's knowing misrepresentation of a material fact concerning a patient's condition, on which the patient justifiably relies to his detriment may give rise to a cause of action in fraud independent from an action in medical malpractice." *Id.* at ¶ 18, citing *Gaines.* "Importantly, though, the court qualified its holding by explaining that the *claims were 'only independent where "the decision to misstate facts cannot be characterized as medical in nature."* Id.

While fraud may not constitute a separate, non-medical claim, it may still affect the statute of limitations that applies to medical claims. In *Tausch et. al., v. Riverview Health Institute*, 187 Ohio App.3d 173, 2010-Ohio-502, 931, N.E.2d 613, the plaintiff suffered "drop-foot" after a spinal surgery. The defendant doctor told the plaintiff that the condition was temporary. Contrary to this statement, the condition was later ruled permanent. The court distinguished this from *Richards v. St. Thomas Hospital,* where a plaintiff's paralysis was discoverable right away.  In *Tausch*, the court said that that this was distinguishable because the plaintiff reasonably relied on his doctor that the pain would go away. The court stated: "Rather, the misrepresentation is a separate wrong independent of that breach of duty. Therefore, the misrepresentation may independently extend the statute of limitations governing the malpractice claim when it reasonably causes the plaintiff not to seek other medical advice." *Tausch* at ¶ 45.

In *McCulley v. Good Samaritan Hosp,* the plaintiff was awake during the surgery because of a faulty anesthetic device. The facts indicated that the hospital knew of the

10

defect but concealed the knowledge from the plaintiff. The court would not allow a separate fraud claim, but it did allow an extension of the statute of limitations: "McCulley urges us to recognize such a claim in this case independent of his malpractice claim. We decline to do this and hold that, on the record presented, *the misleading actions only tolled the statute of limitations and did not, on these facts, create a separate claim for fraud.*" *McCulley v. Good Samaritan Hosp.*, 131 Ohio App. 3d 341, 348, 722 N.E.2d 563 (1998) (emphasis added).

Based upon Ohio law, the concealment of the use of Infuse/BMP-2 constitutes a concealment that requires an extension of the statute of limitations until plaintiffs discovered its use. In addition, since Ms. Young relied on Dr. Durrani's false assurances that she would get better, the statute of limitations is extended on her fraud claims.

Christ contends that Ms. Young failed to adequately plead her claim pursuant to the CSPA, R.C. Ch. 1345. Christ acknowledges that hospitals are not exempt from their obligations under R.C. § 1345.02(A) to refrain from engaging in unfair or deceptive acts or practices in connection with consumer transactions. Christ argues that Ms. Young's allegations in the Complaint with regard to Christ's alleged misrepresentations to Ms. Young are overly broad and vague in that they fail to state with specificity the way in which Christ was "unfair" or "deceptive." Christ contends that Ms. Young has not alleged reliance or proximate cause based on Christ's conduct and that Ms. Young has not adequately alleged a "consumer transaction." *Id.*

Ms. Young is not required to allege every detail of her claim in order to survive a motion to dismiss and such facts may not be available until after discovery takes

place. *State ex rel. Hanson v. Guernsey Cty. Bd. of Comm'rs.*, 65 Ohio St.3d 545, 549, 605 N.E.2d 378 (1992).

This issue has also been addressed by Judge Guckenberger in Butler County Court of Common Pleas in *Reynolds v. Durrani* in his Order of June 2, 2014 in Denial of Motion to Strike/Dismiss by Defendants, West Chester Hospital, LLC and UC Health, *Reynolds v. Durrani*, CV 2013 04 1187 (June 2, 2014). The *Reynolds* court held that

> . . . claims under the Consumer Sales Practices Act (CSPA), R.C. Chapter 1345, are not required to be stated with particularity. Civ.R. 9(B). "A pleading that sets forth a claim for relief need not state with precision all elements that give rise to a legal basis for recovery as long as a fair notice of the action is provided." *In re Removal of Kiehnle,* 161 Ohio App.3d 399, 830 N.E.2d 1173, 2005-Ohio-2373, ¶ 143 (12th Dist.)

> Count IV states a cause of action under the CSPA. Defendants agree that "the CSPA exempts physicians but does not exempt hospitals from its obligations," . . . Plaintiffs allege in paragraph 133 of the amended complaint "a 'consumer transaction' as defined in ORC Section 1345.01(A)" and in paragraphs 134-139 allege violations of R.C. 1342.02 and 1345.03. Paragraph 141 of the amended complaint makes a demand for judgment as allowed in R.C. 1345.09.

> The context of Count IV becomes more specific in light of the fact that R.C. 1345.01 to 1345.13 do not apply to personal injury claims. R.C. 1345.12. One obvious purpose of the plaintiffs' CSPA claim, see paragraph 141, is to recover the cost of medical bills issued by West Chester Hospital, LLC and UC Health for alleged unnecessary surgery, regardless of any personal injury claim. *See Whitaker v. M.T. Automotive, Inc.,* 111 Ohio St.3d 177, 855 N.E.2d 825, 206-Ohio-5481, ¶ 30. While this approach may be duplicative of other causes of action, it would possibly give plaintiffs the ability to recover damages pursuant to R.C. 1345.09, including certain attorney fees.

The Court held that the plaintiff had sufficiently stated a right to recovery. Because the Infuse/BMP-2 was provided and billed for by Christ and Dr. Durrani's services are at issue in this action, then the CSPA is implicated because a "consumer transaction" includes the sale of goods or services, or both. The Court did not find that

12

the statute of limitations for a medical claim contained in R.C. § 2305.113(A) applied to bar the action, nor will this Court do so here.

The general products-liability statute of limitations, R.C. § 2305.10(A), provides that, subject to certain exceptions (including those in R.C. § 2305.10(C)), such a claim "shall be brought within two years after the cause of action accrues."*Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 226, 2008-Ohio-546, 883 N.E.2d 377, ¶ 195. Ms. Young brought her claim in 2014 after her counsel informed them of BMP-2/Infuse use in her surgery. This was well within the two year statutory time frame established under 2305.10(A) and therefore is not time barred.

Ms. Young also must have a reasonable amount of time in which to bring her claim regardless of the expiration of the statute of repose. To determine what is a reasonable time, R.C. § 2305.10(C)(4) provides a two-year limitations period for commencing an action for injuries occurring before the expiration of the ten-year repose period provided in R.C. § 2305.10(C)(1), "but less than two years prior to the expiration of that period." For example, under R.C. § 2305.10(C)(4), if the product was delivered to the end user nine years prior to the injury, then the injured plaintiff would still have two years in which to file his action. *Groch v. Gen. Motors Corp.*, 117 Ohio St. 3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 193. Under the reasonableness standard set forth in *Groch,* even if Ms. Young asserted her claim one day before the expiration of the statute of repose, she would still be given the full two years to bring their claim.

Ms. Young brought her claim within the two-year statute of limitations set forth in R.C. § 2305.10(A). Therefore, her claims are not time-barred.

Under R.C. § 2305.09, the statute of limitations for a loss of consortium claim is four years. *Kahn v. CVS Pharmacy, Inc.*, 1st Dist. Hamilton Nos. C–040869, C–050048, 165 Ohio App.3d 420, 2006-Ohio-112, 846 N.E.2d 904, ¶ 13.

The court in *Musick v. Dutta*, 4th Dist. Jackson No. 05CA15, 167 Ohio App.3d 269, 2006-Ohio-2864, 854 N.E.2d 1114, ¶ 14, addressed this issue, and held that the statute

> should begin to run on the date the injured spouse discovers the malpractice. In *Vlock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 16, 13 OBR 8, 467 N.E.2d 1378, [footnote omitted] the court observed that a consortium claim may accrue at a different time from the injured spouse's cause of action:
>
>> We recognize that in many instances, * * * the accrual of the loss of consortium of one's spouse will, necessarily, coincide with the accrual of that spouse's cause of action. We do, however, also recognize that in a case such as the one we must now decide, the injured spouse's cause of action and his/her spouse's cause of action for loss of consortium may not have accrued at the same time. Restated, consortium may not always be lost when an injured plaintiff knew or reasonably should have known that he/she was injured by the conduct of the defendant. In such cases, it is difficult to imagine how the claim for loss of consortium can accrue, even though the injured spouse's cause of action accrued, if consortium has not been lost.
>>
>> When a person is injured to the extent that such person is no longer capable of giving love, affection, society and comfort to his or her spouse, that spouse has suffered a direct and real personal loss. *Clouston, supra*, 22 Ohio St.2d at 74, 51 O.O.2d 96, 258 N.E.2d 230. This loss results in a distinct cause of action for loss of consortium, separate from that of his or her spouse for injuries against the tortfeasor. *Clouston, supra*, at 69, 51 O.O.2d 96, 258 N.E.2d 230. Thus, unless and until consortium has been lost, an action for its loss has not accrued within the meaning of R.C. 2305.09(D).

14

The *Viock* court reversed the trial court's summary judgment on the wife's consortium claim because the record contained no evidence regarding when the wife lost her husband's consortium.

*Id.*

Cecil Young's claim for loss of consortium did not accrue until the Youngs discovered Dr. Durrani's malpractice, and that date may not be the same as the date that Plaintiffs' malpractice accrued. Because Dr. Durrani was still performing surgery and treating Ms. Young, Mr. Young might not have experienced loss until some later time. As such, the four-year limitations period had not expired upon the filing of this action, and Mr. Young's claim for loss of consortium is not time-barred.

Since Infuse/BMP-2 is a sold good, Christ supplied and billed for the good, and Dr. Durrani provided his services at Christ, Ms. Young has sufficiently pled a CSPA claim. R.C. §§ 1345.02–.03. The CSPA prohibits suppliers from acting unfairly, deceptively, or unconscionably in connection with a consumer transaction. Christ and their agents are "suppliers" within the scope of the CSPA because they were engaged in the business of effecting or soliciting a consumer transaction. R.C. § 1345.01(C). In Ms. Young's Complaint, she alleges that Defendants violated the CSPA when their agents and employees not only misrepresented, but omitted, suppressed, and concealed facts from Ms. Young, with the intent that Ms. Young rely on these facts. Defendants, as alleged, misrepresented Dr. Durrani's services as being safe, necessary, and medically sound, when they knew, or had reason to know, that the BMP2/Infuse product Dr. Durrani used was unsafe. Because a consumer transaction under the CSPA includes the sale of a good or service, or both, the Infuse/BMP-2 medical device and Dr. Durrani's services are at issue, the CSPA is implicated in this

15

case, and Ms. Young has sufficiently pled facts amounting to a CSPA violation. The court in *Reynolds, supra,* has held that a plaintiff may have a right to recover under CSPA in these circumstances. Ms. Young also argues her counsel is currently uncovering more medical bills with unexplained miscellaneous charges to Dr. Durrani patients in similarly situated cases. Ms. Young alleges she is waiting on the production of the medical billing in this case.

Ms. Young's OPLA claims succeed because Christ is deemed a "supplier" under OPLA, R.C. § 2307.71(A)(15)(a).

A "supplier" is defined in R.C. § 2307.71(A)(15) in the following manner:

(15)(a) "Supplier" means, subject to division (A)(15)(b) of this section, either of the following:

    (i) A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce;

    (ii) A person that, in the course of a business conducted for the purpose, installs, repairs, or maintains any aspect of a product that allegedly causes harm.

(b) "Supplier" does not include any of the following:

    (i) A manufacturer;

    (ii) A seller of real property;

    (iii) A provider of professional services who, incidental to a professional transaction the essence of which is the furnishing of judgment, skill, or services, sells or uses a product;

    (iv) Any person who acts only in a financial capacity with respect to the sale of a product, or who leases a product under a lease arrangement in which the selection,

possession, maintenance, and operation of the product are controlled by a person other than the lessor.

Christ stored, supplied, and distributed Infuse/BMP-2 within the meaning of OPLA, R.C. § 2307.71(A)15(a)(i). A "supplier" is "[a] person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce." R.C. § 2307.71(A)(15)(a). In *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.*, 107 Ohio App.3d 218, 668 N.E.2d 529 (1st Dist. 1995), the court declined to limit supplier liability to an actual sale in the traditional sense, holding that the only relevant question was whether the "seller" "otherwise participated" in placing the product into the stream of commerce. *Id.* at 227. *Welch* was decided under a previous version of the OPLA statute; however, the definition of "supplier" is unchanged in the current version. Because the seller facilitated placing the product into the stream of commerce, the court found that it fit the statutory definition of a "supplier." *Id.* at 228. The court concluded that even though the seller was a "supplier" within the meaning of the OPLA statute, it was not liable because there was no causal connection between its misrepresentation to the plaintiff and the plaintiff's injury. *Welch* at 229. See *Saylor v. Providence Hosp.*, 113 Ohio App.3d 1, 5, 680 N.E.2d 193 (1st Dist. 1996).

"Ohio's codification of products liability law is a continuum which follows the product. The consumer, in this case the patient, is at the least culpable end of the chain. See O'Reilly & Cody, Ohio Products Liability Manual (1992), Chapter 13; *Saylor v. Providence Hosp.*, 113 Ohio App.3d 1, 5, 680 N.E.2d 193 (1st Dist. 1996).

A hospital is not specifically excluded from the definition of "supplier" by the terms of R.C. § 2307.71(A)(15)(b)(iii); Christ wants to create a new exception in spite of

17

traditional statutory interpretation. *Expressio unius est exclusio alterius* is generally known to mean "the expression of one thing is the exclusion of another." The exception provided under R.C. § 2307.71(A)(15)(b)(iii) applies to doctors, not to hospitals, and applies to attorneys, but not a firm. The "plain language rule" is commonly known to mean that whenever possible, a court will look to the plain language of a statute to interpret its meaning. *See Campbell v. City of Carlisle*, 127 Ohio St.3d 275, 2010-Ohio-5707, 939 N.E.2d 153, ¶ 8. Hospitals are not included in the narrow exception provided by § 2307.71(15)(b)(iii); therefore, Christ is not excluded from the definition of "supplier." *See Saylor v. Providence Hosp.*, 113 Ohio App.3d 1, 5, 680 N.E.2d 193 (1st Dist. 1996).

Ms. Young alleges in the Complaint that Christ was in the business of ordering, maintaining, and storing Infuse/BMP-2, which allows the Court to infer that Christ would install, repair, and maintain Infuse/BMP-2 while it is in Christ's possession. Christ also is able to hold itself out to the public as a hospital that provides competent and qualified medical, nursing, and treatment services while still being able to order, store, maintain, and repair Infuse/BMP-2; the two representations are not mutually exclusive. Christ was, as alleged, in the business of selling and placing Infuse/BMP-2 in the stream of commerce as a supplier because Christ must order the Infuse/BMP-2 and physically insert the product into the patient.

Ms. Young has asserted all of the necessary and available facts to establish a valid claim that Christ is a supplier under R.C. § 2307.71(A)(15)(a) and is therefore subject to liability in accordance with R.C. § 2307.78(A).

Ms. Young's Complaint alleges Christ intentionally destroyed medical records. Ms. Young has pled the requisite elements for their claim of spoliation of evidence. At

18

this stage, the Court does not need to decide whether or not Ms. Young can prove it. The specific intent required to prove the claim is that the defendant must have intentionally destroyed evidence with the specific intent of disrupting the plaintiff's case. *Smith v. Howard Johnson* Co., 67 Ohio St. 3d 28, 29, 615 N.E.2d 1037 (1993). It is alleged from the pleadings in the Complaint that Defendants were aware of Dr. Durrani's malpractice and were aware, or should have been aware, that he was subject to numerous malpractice claims. Ms. Young has alleged that Christ materially hindered Ms. Young in her search for the production of medical records.

Ms. Young does not have to prove intent in the pleading stage. Christ's intent to hinder Ms. Young is inferred from the pleadings and circumstances. The damage to Ms. Young by this destruction of evidence, if true, is clear on its face. Ms. Young fully alleges all necessary elements of the claim.

Ms. Young has brought this action as one for declaratory judgment in order to challenge the constitutionality of both the statute of repose, R.C. § 2305.113, and Ohio's peer review statute, R.C. § 2305.251, because as Christ argues, "a declaratory judgment action is a procedural device used to vindicate substantive rights." *Toledo Museum of Art v. Ullin*, 477 F.Supp.2d 802, 806 (N.D.Ohio 2006). Christ contends that Ms. Young cannot maintain such an action where the underlying substantive claim is time-barred. This would be true in actions where either the statute of limitations or the statute or repose are at issue, so for purposes of this declaratory judgment action, the term "limitations period" would encompass both. Ms. Young has sufficient facts to survive a motion to dismiss on the issue of whether any of their claims are time-barred, whether it be by the statute of limitations or the statute of repose.

19

Ms. Young argues that the declaratory judgment requirement that the underlying substantive claim not be time-barred logically should not apply in cases where the underlying substantive claim is *whether the limitations period is valid.* If carried to its conclusion, this premise would result in a logical fallacy that would prevent limitations periods from *ever* being challenged in declaratory judgment actions; in other words, no plaintiff would bring a declaratory judgment action seeking a determination as to the validity of the limitations period *if the statute itself was not going to be at issue in the underlying case.* To then say that because the defendant in that action plans to raise the issue, or in other words, to assert the limitations period as a defense, that the plaintiff cannot then challenge the validity of that defense in a declaratory judgment action makes no sense and leaves plaintiffs without recourse to challenge the validity of the statute.

R.C. § 2305.113 violates a plaintiff's Constitutional Right to Redress of Injury to the person and Due Process protected by Article I, Section 16 of the Ohio Constitution and the First Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, in denying access to the courts before the plaintiff even knows of the cause of action.

"'*Meaningful* access' to the courts is the touchstone" of the Constitutional right of access to the courts. *Hampton v. Hobbs,* 106 F.3d 1281, 1284 (6th Cir. 1997). In *Hampton,* a prisoner filed a civil rights action alleging that the Prison Litigation Reform Act, Pub.L.No. 104-134, §§ 801-10, 110 Stat. 1321 (1996); 28 U.S.C. § 1915 which required him to pay a fee for court filings, violated his fundamental right of access to the courts. The United States Court of Appeals for the Sixth Circuit found that while "the

20

constitutional source of the right of access to the courts is somewhat nebulous, 'the parameters of the doctrine are relatively clear.'" *Id.*, citing *Knop v. Johnson*, 977 F.2d 996, 1003 (6th Cir. 1992). Although the court found that the statute did not violate the prisoner's fundamental rights, it emphasized that access to the courts is a fundamental right protected under the United States Constitution. The court went on to find that regulations "and practices that unjustifiably obstruct...aspects of the right of access to the courts are invalid." *Id.*, citing *Procunier v. Martinez*, 416 U.S. 396, 419 (1974).

The purpose of such access "is for the plaintiff to have the opportunity to redress her grievances in court." *Orick v. Banziger*, 945 F.Supp. 1084, 1092 (S.D.Ohio 1996) (citing *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 958 (6th Cir. 1986)). In *Orick*, the Sixth Circuit reiterated that a plaintiff's right of access to the courts is protected by the First Amendment of the Constitution, "[a] deprivation of which is actionable" under 42 U.S.C. § 1983. *Id.* Although the plaintiff failed to state an actionable claim in that case, the court highly emphasized the right of access to the courts in order for plaintiffs to obtain redress for their injuries.

Article 1, Section 16 of Ohio's Constitution provides that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." R.C. § 2305.113 violates Article 1, Section 16 of Ohio's Constitution by closing the courts to potential civil plaintiffs.

Article I, Sections 16 and 19a should operate to "*prohibit the abolition or diminution of legal remedies* for personal injuries or wrongful death." *McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15, 19 (Ky. 1990) (citing

21

*Carney v. Moody*, 646 S.W.2d 40 (Ky. 1982)). Although *McCollum* is a Kentucky case, the relevant sections of the Ohio Constitution are almost identical to those in the Kentucky Constitution referred to in *McCollum*. In that case, the Kentucky Supreme Court found that Kentucky's statute of repose, which prevented medical malpractice claims from being brought five years after the alleged negligent acts, was unconstitutional due to the effects of Ky. Const. §§ 14, 54, and 241. These sections, like Ohio Const. art. I, §§ 16 and 19a, protect open access to the courts and prohibit the legislature from placing limits on the amount a plaintiff can recover for a defendant's negligence.

Furthermore, in *State ex rel Ohio Academy of Trial Attorneys*, 86 Ohio St.3d 451, 1999-Ohio-123, 715 N.E. 2d 1062 (1999), the Ohio Supreme Court struck down the previous six-year statute of repose for medical malpractice claims based on the open courts provision and the separation of powers principles embodied in the Ohio Constitution. The Ohio General Assembly then shortly thereafter reenacted an even shorter statute of repose, in direct contravention to the decision of the state's highest court.

Article II, § 32 of the Ohio Constitution provides: "The general assembly shall grant no divorce, nor, exercise any judicial power, not herein expressly conferred." Article IV, § 1 provides: "The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law."

The Ohio Supreme Court, in *State v. Hochhausler*, 76 Ohio St.3d 455, 668 N.E.2d 457 (1996), found that a provision of a license suspension statute that prevented

22

courts from staying the administrative suspension of a person's driver's license violated Ohio's Constitution. In so holding, the Court explained that other branches of government cannot direct, control, or impede the exercise of judicial functions. *Id.* at 463-64 (citing *State ex. rel Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981). Disallowing a plaintiff from bringing a case before the plaintiff knows whether he or she has an actionable claim is directing an "inherent" judicial function by dismissing the claim.

*Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, involved a physician's failure to act or an omission, which resulted in the death of plaintiff's spouse. Specifically, in December of 2008, the patient complained of abdominal pain, which was ultimately diagnosed as a liver lesion and hepatitis C. *Id.* at ¶ 3. Plaintiff later discovered, upon reviewing her husband's medical records, that he had had elevated liver enzymes as early as 1995, but his doctor at the time, now defendant, had failed to inform him. *Id.* at ¶ 3-4. The plaintiff surviving spouse brought an action against the doctor and his medical practice in May of 2009, contending that the four-year statute of repose for medical malpractice claims, R.C. § 2305.113(C), was unconstitutional as applied to her in that it violated the right-to-remedy provision of Article I, § 16 of the Ohio Constitution. *Id.* at ¶ 1. Her husband died while the case was pending. *Id.* at ¶ 5. The doctor and medical practice sought summary judgment on the ground that the action was barred by § 2305.113(C) as it was brought over ten years after the alleged act of malpractice. *Id.* at ¶ 6. The trial court denied the motion, finding that the statute, as applied, violated Ohio Const. Art. I, § 16.

23

Relying on *Hardy v. VerMeulen*, 32 Ohio St.3d 45, 512 N.E.2d 626 (1987), the Twelfth District Court of Appeals affirmed and held that § 2305.113(C) was unconstitutional, but on discretionary review, the Ohio Supreme Court reversed. The Court noted that a "plain" reading of Art. I, § 16 indicated that remedies are not provided for "without limitation or for any perceived injury." *Id.* at ¶ 12. Instead, the right-to-remedy clause allows open courts for plaintiffs to seek a remedy "by due course of law." *Id.* Moreover, the provision applies only to "existing, vested rights and ... the legislature determines what injuries are recognized and what remedies are available." *Id.* at ¶ 13. The Court held that the General Assembly has the right to determine allowable causes and to alter the common law by abolishing the action, defining it, or by limiting the time that it creates a legal injury. *Id.* at ¶ 14.

With these considerations in mind, the Court turned to the question of whether § 2305.113(C) was a valid exercise of legislative authority to define or limit a cause of action. *Id.* at ¶ 15. The Court concluded that it was because 1) the statute did not extinguish a vested right, but rather prevented a right from vesting more than four years after the alleged negligent act, *Id.* at ¶¶ 16-18, and; 2) there was a rational basis for the legislation, namely, to protect medical providers from having to defend actions that occur too remotely in time to the alleged negligent act. *Id.* at ¶¶ 19-21. Therefore, the Court overruled *Hardy*, relying in part on Wisconsin law as representative of the majority view. *Id.* at ¶¶ 32-34.

However, the Court failed to recognize in its analysis that Wisconsin, along with 14 others of the 32 states that have a statute of repose as pointed out by Ms. Young, has a fraud exception. In the states that have a fraud exception to their statute of

24

repose, a defendant's concealment works to toll the running of the repose period. In addition, some states that do toll the repose period for fraud have held that a defendant's concealment of the patient's cause of action thereby estops the defendant from asserting the statute of repose.

There are two factors that relate to a jurisdiction's application of the concealment doctrine: 1) whether the misrepresentation or omission is required to have been knowingly or intentional, rather than simply negligent, and; 2) whether the asserted act of negligence can also from the basis of the claim of concealment. 19 A.L.R. 6th 476.

Ohio does not currently have a fraud exception to the statute of repose, R.C. § 2305.113(C). *See Meros v. Univ. Hospitals of Cleveland*, 435 N.E.2d 1117, 1119, fn 4 (1982); *Byrne v. Pediatric Associates, Inc*, 84AP-593, 1985 WL 10234 (Ohio Ct. App. Apr. 4, 1985) *rev'd sub nom. Byrne v. Pediatric Associates, Inc.*, 28 Ohio St. 3d 300, 503 N.E.2d 740 (1986). There is no case in which the Ohio Supreme Court ruled on the request for a fraud exception.

It is noteworthy that R.C. § 2305.113(C) was amended in 2002. As the Ohio Supreme Court has stated, "a newly enacted statue warrants a fresh review on its individual merits" *Ruther* at ¶ 22.

The *Ruther* court relied heavily on the Wisconsin opinion. *Id.* at 416. The Court in Ruther cited the Wisconsin Supreme Court, which stated:

> We find [the statutes of limitations and repose] constitutional, despite the harsh results they yield in this case. We hold that [the statues] do not violate the right-to-remedy clause because a prospective claimant does not have a legislative right to pursue a medical malpractice action if the injury is discovered after the statutory time limitation period elapses.

25

*Aicher v. Wisconsin Patients Comp. Fund*, 237 Wis.2d 99, 2000 WI 98, 613 N.W.2d 849, ¶ 85. The *Ruther* court then held that "[a] plaintiff like Mrs. Ruther, whose cause of action for medical malpractice does not accrue until after the statue of repose has expired pursuant to R.C. 2305.113(C), is not deprived of a vested of right." *Ruther* at ¶ 35.

The clear distinction to be made is that Wisconsin does have a fraud exception in their statute of repose. Wis. Stat. Ann. § 893.55 provides:

> If a health care provider conceals from a patient a prior act or omission of the provider which has resulted in injury to the patient, an action shall be commenced within one year from the date the patient discovers the concealment or, in the exercise of reasonable diligence, should have discovered the concealment or within the time limitation provided by sub. (1m), whichever is later.

Additionally, the court cites to an Oregon case in footnote to uphold the open court's doctrine. Oregon also has a fraud exception Or. Rev. Stat. § 12.110(4). The court also sites to a Maine case and a Connecticut case. While these two state's do not have fraud exceptions in their statute. Connecticut does have a continuing treatment theory, which means that if a doctrine continues to treat a patient after the doctor's negligence and the doctor does not reveal his negligence the statute of repose is tolled until treatment terminates. This applies to Ms. Young's claims in issue.

Given the recognized fiduciary relationship between Ms. Young and Dr. Durrani it seems unlikely that Ms. Young would have thought that Dr. Durrani continued to wrong her. If a fraud exception does not exist, Ohio courts would be infringing upon Ms. Young's, and others similarly situated, due process rights and allowed negligent defendants to get away with actionable and wrongful conduct.

As noted by Justice Pfeifer in his dissent in *Ruther*:

26

> *Continued erosion of the venerable right of every citizen to remedy in open court for injury done will inevitably from the General Assembly. It may come in small drips or in tidal waves, but it will come.... Their [the Ruthers] personal tragedy has evolved into a undiscovered nightmare for legions of Ohioans who will find the courthouse doors barred for the presentation of their future legitimate injury claims.*

*Ruther* at ¶ 45.

Ms. Young argues Dr. Durrani Plaintiffs are the tidal wave. They certainly are an example of Justice Pfeifer's concerns. The absence of a fraud exception will allow Justice Pfeifer's warnings in his dissent to become true in only two years from his warning. As alleged, Dr. Durrani, along with the hospitals who employed him, as alleged, negligently operated on at least 450 men, women, and children and concealed his negligence from them under the guise of being a physician at nationally renowned hospitals. Allowing a fraud in the concealment exception serves justice.

*Shadrick v. Coker*, 963 S.W.2d 726 (Tenn. 1998), is illustrative of how Tennessee would apply a fraud exception in a case quite similar to Plaintiffs' and the hundreds of other Dr. Durrani plaintiffs' cases. Moreover, it illustrates the importance of obtaining a fraud exception in Ohio.

In *Shadrick*, the patient sued his doctor and medical center for medical malpractice, lack of informed consent, battery, and fraudulent concealment, and his wife sued for loss of consortium. The court held that issues of material fact existed regarding when the statute of limitations began to run and whether the fraudulent concealment exception to the statute of repose applied. *Id.* at 737.

In 1988, the plaintiff injured his back at work and was treated by the defendant, an orthopedic surgeon. In March 1990, after three previous surgeries performed by the defendant failed to plaintiff's back pain, the defendant performed a laminectomy and

disc excision. During the surgery the defendant inserted "pedicle screws." When the plaintiff awoke from surgery he was told about the insertion of the screws and that they were a part of a routine surgery. Prior to the surgery he was not told the screws would be used or the risk involved. *Id.* at 729.

After the surgery, the plaintiff continued to have trouble with his back and a leg went out due to pain. In November 1990, he had the screws removed. He continued to suffer pain, and the defendant told him that the pain was due to scarring. The plaintiff continued to have pain for three years. In December 1993, he saw an episode of the "20/20" television program that discussed how "pedicle screws" were not approved by the FDA for use in the spine and how such screws caused a number of problems for individuals. The plaintiff filed his lawsuit against the defendant four years and nine months after the screws were implanted. Tennessee has a three-year statute of repose.

The court stated:

> The fact that Shadrick was informed that the screws had been put in his back after the surgery "*did not mean anything to [him] because nobody ever told [him] about any risk of injury or any problems that could be caused by the screws. At the time, [he] had no idea that the screws were experimental, that they had not been approved by the Food and Drug Administration for use in the spine, or that they would cause [him] any problems.*" Indeed, it was not until December 17, 1993 while watching television that Shadrick learned that pedicle screws were experimental, that they had not been approved by the Food and Drug Administration for use in the spine, and that such screws had been found to cause a number of problems in patients. Until seeing the television program Shadrick had been "**led to believe that [he] had undergone a routine procedure....**" <u>As a reasonable lay person, Shadrick could have believed Dr. Coker when he informed him that the screws were routine for use in back-fusion surgeries, especially since Dr. Coker had never disclosed any risks or potential complications related to the use of the screws or even their experimental nature.</u>

*Id.* at 734

28

The court also set out the four elements necessary to establish a fraudulent concealment action:

> a plaintiff in a lack of informed consent case (or any other medical malpractice case) attempting to toll the statute of repose contained in T.C.A. 29-26-116(a)(3) by relying upon the fraudulent concealment exception to the statute must establish that (1) *the health care provider took affirmative action to conceal the wrongdoing or remained silent and failed to disclose material facts despite a duty to do so, (2) the plaintiff could not have discovered the wrong despite exercising reasonable care and diligence, (3) the health care provider knew of the facts giving rise to the cause of action and, (4) a concealment, which may consist of the defendant withholding material information, making use of some device to mislead the plaintiff, or simply remaining silent and failing to disclose material facts when there was a duty to speak.*

*Id.* at 736.

The court found that there was sufficient evidence to create a jury issue on the elements of fraudulent concealment. *Id.* See also *Merlo v. Maxwell*, 1999 WL 820728 (Tenn. Ct. App. 1999) (unreported opinion) (plaintiff's complaint sufficiently stated a claim for fraudulent concealment where defendant misrepresented to the plaintiff that he had implanted saline breast implants, when in fact he had implanted silicone implants).

Kansas has a four-year statute of repose, which does not include a fraud exception. Kan. Stat. Ann. § 60-513(7)(c). In *Robinson v. Shah*, 23 Kan. App. 2d 812 (1997), the defendant performed a hysterectomy on the plaintiff in 1983. The plaintiff continued to suffer pain after the surgery, and at some point x-rays were taken and the defendant learned of the presence of a surgical sponge. Despite this knowledge, the defendant did not inform the plaintiff when he continued to see her and she continued to complain of pain for a number of years. *Robinson* at 814. In 1993, the plaintiff underwent pelvic sonograms that revealed the presence of a sponge.

In deciding her case against the doctor, the court held that

29

[t]his is an appropriate case for application of the doctrine of equitable estoppel. *We hold that the defendant in a malpractice case cannot take advantage of a defense based on the statute of limitations or the statute of repose where the defendant's own fraudulent concealment has resulted in the delay in discovering the defendant's wrongful actions. Under such facts, a defendant is equitably estopped from raising the defenses of the statute of limitations and the statute of repose.*

*Id.* at 832 (emphasis added).

The court relied on New Mexico and Indiana cases to establish the doctrine of equitable estoppel to prevent a defendant from relying upon the statute of repose defense when he is responsible for concealing his own negligent conduct. *Id.* at 829.

Such a legal theory could be applied to Ohio. For example, a recent Butler County case stated the following:

The doctrine of equitable estoppel may be employed to prevent a defendant from asserting an otherwise valid right. *Livingston v. Diocese of Cleveland* (1998), 126 Ohio App.3d 299, 314, 710 N.E.2d 330. In order to establish equitable estoppel, a plaintiff must prove (1) that the defendant made a factual misrepresentation, (2) that it is misleading, (3) that the misrepresentation induced actual reliance which is reasonable and in good faith, and (4) that the reliance caused detriment to the relying party.

*A.S. v. Fairfield Sch. Dist.*, 2003-Ohio-6260.

Ms. Young, as alleged, relied upon Dr. Durrani's opinions as her treating physician, and because she trusted him and the hospitals where he held privileges, she did not believe that what he was doing was negligent.

As alleged, Dr. Durrani was aware of the problems with his surgeries and knew that Ms. Young and other patients were sustaining injuries as a result of the surgeries. As alleged, he was put on notice in several instances of numerous negative side effects of the methods he used to perform spinal surgeries. As alleged, Dr. Durrani and Christ also concealed the use of Infuse/BMP-2 which as alleged, causes an increased risk of

30

cancer. As alleged, Dr. Durrani intentionally ignored and kept his patients in the dark regarding these negative side effects, while continuing to perform the surgeries. As alleged, Dr. Durrani, knew that if he continued to use negligent methods of surgery what injuries would incur; and those injuries did, in fact, occur to Ms. Young and others. As alleged, Christ and other hospitals concealed all of this from Ms. Young and others. Dr. Durrani, Christ and the other hospitals, should not be protected by the statute of repose.

One of the policy reasons cited by the *Ruther* court for the implementation of R.C. § 2305.113(C) is to prevent doctors from having to defend against claims when there is a "possibility that pertinent documents were not retained." *Ruther* at ¶ 20. Under OAC 3701-84-11, healthcare providers who receive Medicaid reimbursement from the State of Ohio must maintain a patient's medical records for six years from the discharge of the patient. Here, the General Assembly set the statute of repose at four years in order to address the worry of losing important documents. Placing a four-year limit is too restrictive to address this policy concern. If the General Assembly was so worried about lost documentation, it could have set the restriction at six years. R.C. § 2305.113(C) does not reasonably address this policy concern, and therefore, it should be struck down as unconstitutional.

Another policy reason the *Ruther* court propounds is that advances in technology would "create a different and more stringent standard not applicable to the earlier time." *Ruther* at ¶ 20. This policy concern can be addressed without cutting off a plaintiff's claim before the plaintiff can reasonably discover their injury. Instead of eliminating all chances of redress, the General Assembly could require courts to apply the standard of

31

care that courts used when the alleged negligent acts occurred. In this way, R.C. § 2305.113(C) is too restrictive and, as a result, should be struck down.

Ohio, like most states, has a statutory provision called the Savings Clause. R.C. § 2305.15(A) states:

> When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.98, and 1304.35 of the Revised Code does not begin to run until the person comes into the state or while the person is so absconded or concealed. *After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.*

*Id.* The Savings Clause has been applied in many situations, including where a doctor is absent from the state. *See Fisher v. Austrieco* (Medina 1981) 2 Ohio App.3d 133, 440 N.E.2d 1241, 2 O.B.R. 147 ("When, pursuant to RC 2305.11, written notice of a possible medical claim is provided to a physician, and the notice is given either prior to the expiration of one year after the cause of action accrued or within the period of time that the one-year period of limitation contained in RC 2305.11 is tolled, pursuant to RC 2305.15, by the physician's absence from the state, the action may be commenced within 180 days after the notice is given to the physician"); *Conway v. Smith,* (Cuyahoga 1979) 66 Ohio App.2d 65, 419 N.E.2d 1117, 20 O.O.3d 134 ("RC 2305.15 applies where a defendant leaves the state regardless of whether or not a complaint has been filed" ); *Barile v. University of Virginia,* (Cuyahoga 1986) 30 Ohio App.3d 190, 507 N.E.2d 448, 30 O.B.R. 333 ("RC 2305.15, the tolling statute, applies to a defendant who is absent from the state even though he is amenable to process under the long-arm statute, RC 2703.20.).

32

Based on these cases and the facts of Ms. Young's case, the statutes of limitations and repose should have been tolled when Dr. Durrani left the United States for Pakistan in December of 2013. Dr. Durrani left the country to avoid federal prosecution and civil trials. *Permanent Gen. Ins. Cos., Inc. v. Dressler,* (Ohio App. 1 Dist., 12-04-1998) 130 Ohio App.3d 628, 720 N.E.2d 959 (Saving Cause did not apply when the defendant did not leave to avoid prosecution).

R.C. § 2305.09 provides: "Except as provided for in division (C) of this section, an action for any of the following causes shall be brought within four years after the cause therefore accrued . . ." and R.C. § 2305.09(D) provides: "For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code."

In *Byrne v. Pediatric Associates, Inc,* 84AP-593, 1985 WL 10234 (Ohio Ct. App. Apr. 4, 1985) rev'd sub nom. *Byrne v. Pediatric Associates, Inc.,* 28 Ohio St. 3d 300, 503 N.E.2d 740 (1986), the defendants improperly administered a series of vaccinations for diptheria-pertussis-tetanus to plaintiff in 1966, beginning when she was only four months old. The defendants continued the vaccinations, contrary to accepted medical practice, after the plaintiff reacted with convulsions, with the result that the plaintiff's mental development was permanently halted. The plaintiff did not discover the impropriety of the defendants' actions until February 24, 1981. The complaint was filed on February 22, 1983, stating both medical malpractice and fraud claims.

The court stated:

> In order for the R.C. 2035.09 period of limitation to apply to cause of action, the essence of claim must be that a plaintiff's injury was the result of a defendant's fraud. By contrast, when the plaintiffs' fraudulent concealment allegations are examined closely, they will be seen to fall into

33

categories: those alleging the defendants concealed their malpractice from plaintiffs; and those essentially alleging that defendants violated their duty to disclose sufficient information concerning the hazards of the treatment to enable plaintiffs to make an informed and independent decision as to whether to undergo the treatment.

*Id.* at *3.

The court held that because the "gist of the allegations is medical malpractice" then the medical malpractice statute applied. *Id.* Despite this harsh ruling, the court did recognize a medical practitioner might be liable for fraud. *Id.* In reaching this conclusion, the court discussed *Estate of Leach v. Shapiro*, 13 Ohio App. 3d 393, 469 N.E.2d 1047 (1984), stating:

> Perhaps it is conceivable that under some circumstances a medical practitioner might be liable for fraud, as distinguished from malpractice-in Leach, for example, plaintiffs apparently alleged that the patient's true condition was fraudulently concealed so that defendants could use her as a human guinea pig in order to observe the effect of experimental drugs upon her, and then charge plaintiffs for treatment that was of no benefit. If those facts were to be proved, the fraud could be said to be the cause of unnecessary suffering for the patient, and unnecessary expenses for the estate.

*Byrne* at *3

Additionally, the *Estate of Leach* court stated:

> [A] fiduciary relationship exists between the physician and patient. When the physician has knowledge of a fact concerning the patient's physical condition which is material to the patient, this fiduciary relationship may render the physician's silence fraudulent. *Nixdorf v. Hicken* (Utah 1980), 612 P.2d 348; *Hudson v. Moore* (1940), 239 Ala. 130, 194 So. 147; *Nelson v. Gaunt* (1981), 125 Cal App.3d 623, 178 Cal.Rptr. 167; and *Adams v. Ison* (Ky.1952), 249 S.W.2d 791.

*Estate of Leach* at 397 (emphasis added). The court went on to hold:

> The disparity in expertise between the physician and patient has increased dramatically since the *Netzel* case was decided, due to staggering technological and medical advances. Because the importance of adequate disclosure increases as the patient is placed at a greater

34

informational disadvantage, we join those courts holding that a physician's non-disclosure may give rise to an action in fraud independent of malpractice.

*Id.* at 397-398 (emphasis added).

The "continuous treatment doctrine" is the legal theory that the statue of repose begins to run at the end of a continuous course of negligent treatment of the patient for the same condition, where the alleged negligence occurred during that course of treatment. The doctrine allows for acts or omissions not within the statutory period to be included with other acts in the statutory period. In this case, Ms. Young continued treatment with Dr. Durrani throughout the course of her several surgeries and thereafter for follow-up care. It is unclear when the treatment relationship ended, as that is an issue that needs discovery. *See Ander v. Clark*, 10th Dist. Franklin No. 14AP-65, 2014-Ohio-2664, ¶¶ 8-10.

In 2009, the Supreme Court of Appeals of West Virginia stated: "Under the 'continuous treatment' doctrine, the running of the statute of limitations is tolled when a course of treatment that includes wrongful acts or omissions has run continuously and is related to the original condition or complaint. *Forshey v. Jackson*, 222 W. Va. 743, 751, 671 S.E.2d 748, 756 (2008) (internal citations omitted).

The *Forshey* court relied heavily on an Arkansas Supreme Court Case that described the relational for as follows:

The so-called "continuous treatment" rule has been defended on the grounds of fairness as well as on the basis of logic. Certainly it would not be equitable to bar a plaintiff, who for example, has been subjected to a series of radiation treatments in which the radiologist negligently and repeatedly administered an overdosage, simply because the plaintiff is unable to identify the one treatment that produced his injury. Indeed, in such a situation no single treatment did cause the harm; rather it was the result of several treatments, a cumulative effect. From the point of view of

35

> the physician, it would seem reasonable that if he had made a mistake, a misdiagnosis for example, he is entitled to the opportunity to correct the error before harm ensues. And, as one court has put it, "It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician."

*Forshey* at 751, citing *Lane v. Lane*, 295 Ark. 671, 675, 752 S.W.2d 25, 27 (1988).

Although the *Forshey* court did not uphold that the continuous treatment applied in its specific instance because the act could be ascertainable in one event (the physician left a scalpel in a man's thumb during a surgery and the patient did not seek a second surgery), the court did hold that such a doctrine applied to West Virginia.

For the same reasons enumerated for challenging the constitutionality of the statute of repose contained in R.C. § 2305.113, the peer review immunity that is provided by R.C. §§ 2305.251 likewise offends Art. I, § 16 of the Ohio Constitution, as it denies Plaintiffs' right to redress injury and due process, as well as their First Amendment rights under the United States Constitution. The peer review statute deprives Ms. Young of her access to the courts before she was even aware that she has a cause of action. R.C. § 2305.251 improperly protects hospitals from liability, at the very least without the application of a fraud exception.

For Ms. Young to prove her claims against Defendants, including Christ, she must have access to all the information that reasonably relates to the physician's conduct, and there is no better evidence that a physician engaged in a pattern of negligent conduct with his patients than that contained in the physician's peer review file. The information relates directly to the issue of what institutional defendants such as Christ knew about the physicians that practiced at or had privileges at their hospitals and is therefore not only appropriate but necessary to support Plaintiffs' claim that

Christ and others negligently credentialed, supervised, and/or retained Dr. Durrani. While Ms. Young has supported her Complaint with affidavits, a blanket immunity that allows Christ and other Defendants to conceal their culpability is a serious impediment to all Ms. Young and similarly situated plaintiffs who would have otherwise valid claims against such defendants.

The immunity provided by R.C. § 2305.251 was not intended to protect hospitals and physicians, but rather is intended to protect the public by encouraging the members of peer review committees to engage in forthright and honest discussions of their physicians' conduct. As applied, the immunity not only does not protect the public, but does irreparable damage to the public by preventing the disclosure of the best evidence to support their claims while simultaneously protecting the negligent physicians and hospitals. There are countless preferable alternatives to immunity, including the application of a fraud exception or the disclosure of such information under a protective order. Both methods would serve the dual purpose of encouraging candid peer review and protecting aggrieved plaintiffs.

Ms. Young has more than adequately stated her claims against Christ to survive a motion to dismiss when the facts and allegations as pleaded are construed in the light most favorable to her. Discovery in this matter should proceed and could produce more evidence upon which her claims will be substantiated. Therefore, Christ's Motion to Dismiss is DENIED in its entirety.

JUDGE ROBERT R. RUEHLMAN
Court of Common Pleas
Hamilton County, Ohio

JUDGE ROBERT RUEHLMAN

37